1  James L. Greeley (SBN 218975)
      jgreeley@vgcllp.com
2  Diyari Vázquez (SBN 222461)
      dvazquez@vgcllp.com
3  VGC, LLP
   1515 7th Street, No. 106
4  Santa Monica, California 90401
   Telephone:  (424) 272-9885

Attorneys for Plaintiff
JOSEPH DIAZ, JR.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> RALPH HEREDIA, true name RAFAEL HEREDIA TARANGO, a/k/a RAFAEL HEREDIA, a/k/a RAFAEL BUSTAMANTE; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 5:20-cv-02332-JWH-KK <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT RALPH HEREDIA'S MOTION TO COMPEL ARBITRATION AND/OR STAY THE PROCEEDINGS PENDING ARBITRATION** <br><br> Date:        March 12, 2021 <br> Time:        9:00 a.m. <br> Courtroom:   2 <br> Judge:       Hon. John W. Holcomb <br><br> [Declarations of James L. Greeley and Joseph Diaz, Jr. submitted herewith] |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ......................................................2

I.    FACTS ALLEGED IN THE COMPLAINT[2] ..................................................2

II.   THE BOXER-MANAGER CONTRACT.........................................................3

ARGUMENT ........................................................................................................5

I.    HEREDIA'S MOTION SHOULD BE DENIED BECAUSE HE ONCE AGAIN FLAUNTED THE CENTRAL DISTRICT'S LOCAL RULES..........................5

II.   HEREDIA'S MOTION FAILS ON THE MERITS..............................................6

A.    THERE IS NO AGREEMENT TO ARBITRATE BETWEEN PLAINTIFF AND HEREDIA.................................................................................................7

B.    THE BOXER-MANAGER CONTRACT (TO WHICH HEREDIA IS NOT A PARTY) DOES NOT ENCOMPASS THIS DISPUTE..........................................*9*

III.  HEREDIA WAIVED ANY RIGHT TO ARBITRATION..........................................11

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES[1]

## CASES

Alcatel-Lucent USA, Inc. v. Dugdale Comms., Inc.,
  2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009)……………………..……..5

Ashbey v. Archstone Prop. Mgmt., Inc.,
  785 F.3d 1320, 1323 (9th Cir. 2015)……………….....……………………....7

AT&T Techs., Inc. v. Comms. Workers of Am.,
  475 U.S. 643, 648 (1986)..………………………………………………….....…..1

Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,
  50 F.3d 388, 391 (7th Cir. 1995)……………………....……………………...1

Comedy Club, Inc. v. Improv West Assocs.,
  553 F.3d 1277, 1287 (9th Cir. 2009)…………………………….....………7

Comer v. Micor, Inc.,
436 F.3d 1098, 1104 n.11 (9th Cir. 2006)……………………………………….7

Conover v. Dean Witter Reynolds, Inc.,
  837 F.2d 867, 868 (9th Cir. 1988)………………………....……………...11

ConWest Resources, Inc. v. Playtime Novelties, Inc.,
  2007 WL 1288349, at *6 (N.D. Cal. May 1, 2007)……………………....14

E.E.O.C. v. Waffle House, Inc.,
534 U.S. 279, 289 (2002)……………………………....……………………….9

First Options of Chicago, Inc. v. Kaplan,
  514 U.S. 938, 944 (1995)……………………………………………………....7

Hooper v. Advance Am.,
  589 F.3d 917, 921 (8th Cir. 2009)…………………………………………..12

Johnson v. Couturier,

---

[1] All emphases in this brief are added and internal citations omitted unless stated otherwise.

ii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

572 F.3d 1067, 1083 (9th Cir. 2009)……………………..……………………….7

Knutson v. Sirius XM Radio Inc.,

   771 F.3d 559, 565 (9th Cir. 2014)……………………………………………………1

Lewallen v. Green Tree Servicing, L.L.C.,

   487 F.3d 1085, 1090 (8th Cir. 2007)……………………………………………….12

Lounge-A-Round v. GCM Mills, Inc.,

   109 Cal. App. 3d 190, 201 (1980)………………………………………………….14

Martin v. Yasuda,

   829 F.3d 1118, 1125 (9th Cir. 2016)………..……………………………………...12

Mastrobuono v. Shearson Lehman Hutton, Inc.,

   514 U.S. 52, 57 (1995)………………………………………………………………9

Perez v. DirecTV Group Holdings, LLC,

   251 F. Supp. 3d 1328, 1337 (C.D. Cal. 2017)……………………………….........7

Singer v. Live Nation Worldwide, Inc.,

   2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012)…………………………….....5

Superbalife, Int'l v. Powerpay,

   2008 WL 4559752, at *2 (C.D. Cal. Oct. 7, 2008)……………………..………...5

TFT-LCD (Flat Panel) Antitrust Litig.,

   2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011)……………………………...12

Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs.,

   838 F. Supp. 2d 967, 976 (C.D. Cal. 2012)…………………………….………..11

Van Ness Townhouses v. Mar Indus. Corp.,

   862 F.2d 754, 758-59 (9th Cir. 1988)……………………………………….......1

**STATUTES**

Cal. Civ. Code § 1550……………………………………………………………….8

Cal. Bus. & Prof. Code §§18600, *et seq*..……………………………………………10

Cal. Code. Regs., title 4, §§ 201, *et seq* ……………………………………………10

Plaintiff Joseph Diaz, Jr. ("Plaintiff" or "Diaz") hereby opposes Defendant Ralph Heredia's ("Heredia") Motion to Compel Arbitration and/or Stay the Proceedings Pending Arbitration.

**INTRODUCTION**

The Court has no less than *three* independent bases on which to deny Heredia's ill-conceived motion to compel arbitration.  First, in what has become a disturbing pattern in this case, and despite being expressly admonished by the Court following Heredia's first motion to dismiss, Heredia's counsel once again failed to meet and confer with Plaintiff's counsel in advance of filing their motion.  A one-sentence email sent a few hours before filing a motion asking whether Plaintiff will agree to submit this matter to arbitration does not come close to satisfying the requirements of Local Rule 7-3.

Second, Heredia's motion fails on the merits because *there is no agreement between the parties to arbitrate this dispute*.  The "Boxer-Manager Contract" referenced in Heredia's motion is not between Plaintiff and Heredia.  Heredia is not a party to the contract.  He did not sign the contract.  He is not referenced anywhere in the contract.  His name does not appear anywhere on the contract.  Under clear U.S. Supreme Court and Ninth Circuit precedent, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Comms. Workers of Am., 475 U.S. 643, 648 (1986); Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014).  And, beyond this threshold flaw, the Boxer-Manager Contract (to which Heredia is not a party) does not encompass this dispute.

Third, even if Heredia had the right to arbitrate this dispute (he does not), Heredia waived that right by engaging in litigation activities that are inconsistent with assertion of the right to arbitrate and which caused Plaintiff prejudice.  Courts in the Ninth Circuit and elsewhere have found that activities such as removing a case to federal court and filing multiple motions to dismiss are cause to find a waiver of the right to arbitrate.  See, e.g., Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754,

758-59 (9th Cir. 1988); Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995).

For *any* of the above three reasons (each of which is sufficient by itself to deny Heredia's motion), the Court should deny the instant motion to compel arbitration and/or stay the proceedings pending arbitration.

## RELEVANT FACTUAL BACKGROUND

### I. Facts Alleged in the Complaint[2]

Plaintiff is a world champion professional boxer. (Compl. (ECF No. 3) ¶ 1.) Heredia acts as his boxing manager, which is a defined role under the federal Muhammad Ali Boxing Reform Act ("Ali Act"), and owes a fiduciary duty to Plaintiff. (Id. ¶¶ 2-3, 16, 29, 61.) Rather than fulfill his fiduciary and other obligations to Plaintiff, Heredia manipulated, exploited, and stole from Plaintiff. Heredia concealed from Plaintiff, among other things, that he is a convicted felon using the name "Ralph Heredia" as an alias and that he is not licensed by the California State Athletic Commission ("Commission") as a boxing manager. (Id. ¶¶ 4, 36, 44-45, 47, 61-67.) Heredia used Plaintiff to get his foot in the door with the well-known boxing promotion firm, Golden Boy Promotions, and then repeatedly put his own interests over Plaintiff's interests, including by currying favor with Golden Boy instead of vigorously advocating for Plaintiff in negotiations, obtaining illicit benefits from Golden Boy at Plaintiff's expense, and failing to adequately advance Plaintiff's career. (Id. ¶¶ 5, 38-42, 46, 55-58, 83, 89-94, 99-101, 104.)

Heredia did not just fail to protect Plaintiff's interests—as he was legally required to do—but he also actively *stole* from Plaintiff. Heredia stole 2% of Plaintiff's boxing proceeds purportedly to pay for a lawyer who he claimed he had retained on Diaz's behalf to help with his affairs. (Id. ¶¶ 43, 48-51, 83, 104.) But Plaintiff never agreed to pay for any lawyer retained by Heredia, and alleges that the 2% was actually used to pay for *Heredia's* lawyer: Defendant John Doe, Esq. (Id. ¶ 49.) Heredia also stole from Plaintiff in violation of an implied contract between the parties relating to a

2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

2016 Lexus RC350 that Heredia purportedly purchased for Plaintiff's benefit. (Id. ¶¶ 52-54, 76-80, 83, 104.) Specifically, even though Heredia "loaned" the vehicle to Plaintiff and accepted a $25,000.00 payment from Plaintiff toward the vehicle, in September 2020 (following a business dispute between the parties), Heredia repossessed the vehicle and took it back for himself, keeping Plaintiff's $25,000.00 payment *plus* his investment of an additional $4,000.00 in improvements to the vehicle and $300.00 of Plaintiff's cash that was in the vehicle. (Id. ¶¶ 52-54.)

Plaintiff initiated this lawsuit by filing his Complaint against Defendants on October 7, 2020, asserting claims for: (1) fraud; (2) breach of fiduciary duty; (3) breach of implied-in-fact contract (relating to the Lexus); (4) conversion; (5) tortious interference; (6) violation of the Ali Act; (7) quantum meruit; and (8) accounting. (See ECF No. 3.) Heredia removed the action to this Court on November 9, 2020. (See ECF No. 1.) Heredia then filed two motions to dismiss, the first of which was denied due to his counsel's failure to meet and confer in accordance with Local Rule 7-3 (see ECF No. 22), and the second of which Heredia "withdrew" (notably *after* Plaintiff had already incurred the expense of opposing the motion again) to request that the Court compel arbitration pursuant to the inapposite Boxer-Manager Contract instead (see ECF No. 25).

## II. The Boxer-Manager Contract

The Boxer-Manager Contract referenced in Heredia's motion is expressly between Plaintiff and *Moses* Heredia—not Defendant Ralph Heredia. (See Diaz Decl., Ex. A (Boxer-Manager Contract).[2]) Defendant Heredia is not a party to the contract.

---

[2] While Heredia attached a purported copy of the Boxer-Manager Contract to his motion as Exhibit A (ECF No. 25-2), the Court should disregard all of the "facts" and "evidence" submitted with Heredia's motion because they lack foundation and have no evidentiary value. Heredia has not offered a single declaration from himself, his counsel, so-called "Arbitration counsel," or anybody else affirming any of the supposed "facts" in his motion or authenticating any of the exhibits thereto. Heredia provides a factual narrative in his motion without a *single citation* to admissible

(footnote continued)

1  He is not referenced anywhere in the contract.  His name does not appear anywhere on
2  the contract.  He did not sign the contract.  (See id.)  These facts are all consistent with
3  Plaintiff's allegations that Defendant Heredia purposely used his half-brother Moses
4  (who is licensed by the Commission as a boxing manager, while Ralph Heredia is not)
5  to sign the contract but at all times acted as Plaintiff's de facto manager.  (Compl. ¶¶
6  58-59.)

7  The Boxer-Manager Contract contains an arbitration clause in section C.4,
8  which states: "All controversies arising **between the parties hereto**, including but not
9  limited to controversies concerning the validity and/or enforceability of this contract."
10  (Diaz Decl., Ex. A, § C.4.)

11  On August 24, 2020, Plaintiff received an email from the Commission informing
12  him that Moses Heredia had made a request for arbitration and asking that Diaz respond
13  within twenty (20) calendar days.  (Diaz Decl., Ex. B (email from Patrisha
14  Blackstock).)  Diaz retained the undersigned counsel, who prepared and submitted a
15  response to the Commission on Diaz's behalf.  (Greeley Decl. ¶ 2 & Ex. D (email from
16  Alex Safyan to Patrisha Blackstock).)  At issue in the arbitration—*according to Moses*
17  *Heredia's own submission*—is whether Diaz signing a business advisory agreement
18  with a third party violates the terms of Moses Heredia's Boxer-Manager Contract with
19  Diaz.  (See Diaz Decl. ¶ 4 & Ex. B (declaration of Moses Heredia attached to
20  Commission's email).)  Defendant Ralph Heredia is not a party to the arbitration (nor
21  can he be since he is not a party to the Boxer-Manager Contract).  The arbitration has
22  not yet been scheduled.  (Greeley Decl. ¶ 3.)

---

evidence, and his supposed "facts" are based on "information and belief," hearsay (e.g., "According to Arbitration counsel …"), and utterly bare assertions with no reference to any materials in the record.  (See Def.'s Mem. at 1-3.)

4

# ARGUMENT

## I. Heredia's Motion Should Be Denied Because He Once Again Flaunted the Central District's Local Rules

The Court will recall that in connection with Heredia's first motion to dismiss, Plaintiff indicated to the Court that Heredia's counsel violated Local Rule 7-3 by failing to engage in any conference of counsel prior to filing the motion. (See Pl.'s Opp. (ECF No. 14) at 4.) The Court consequently denied Heredia's motion but did so without prejudice, which Heredia seized upon to delay addressing the merits of this action by refiling a nearly *verbatim* copy of his first motion several weeks later, following a short phone call between counsel. Plaintiff's opposition to Heredia's (now withdrawn) second motion to dismiss pointed out that courts in the Central District routinely deny *dispositive* motions for failure to comply with the meet and confer requirement, and do so with prejudice to avoid the offending party (in this case, Heredia) seeking a second bite at the apple without repercussions. (See Pl.'s Opp. (ECF No. 24) at 4; Alcatel-Lucent USA, Inc. v. Dugdale Comms., Inc., 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) (denying motion to dismiss for failure to comply with Local Rule 7-3); Superbalife, Int'l v. Powerpay, 2008 WL 4559752, at *2 (C.D. Cal. Oct. 7, 2008) (denying motion to dismiss for failure to comply with Local Rule 7-3); Singer v. Live Nation Worldwide, Inc., 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) (denying motion for summary judgment for failure to comply with Local Rule 7-3).) The Court never got a chance to rule on Heredia's second motion to dismiss because the day that Heredia's reply was due, Heredia filed the instant motion to "withdraw" his motion to dismiss and ask the Court to compel arbitration instead.

Despite being expressly admonished by the Court for failing to meet and confer in accordance with Local Rule 7-3 prior to bringing his first motion to dismiss, Heredia once again disregarded Local Rule 7-3 in connection with the instant motion. Only a few hours before filing the motion did Heredia's counsel raise the subject of the motion *for the first time* in a single-sentence communication to Plaintiff's counsel via email.

That email, sent at 12:51 p.m. on Friday afternoon, February 5, 2021, stated simply: "Good afternoon.  The purpose of this email to request [sic] whether Mr. Diaz will consent to a motion to stay the proceedings pending arbitration?" (See Greeley Decl., Ex. E (email from Eric Montalvo to Alex Safyan).)  There was no other communication of any kind from Heredia's counsel relating to the instant motion.  (Id. ¶ 6.)

As stated previously, Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss *thoroughly* … the *substance* of the contemplated motion and any potential resolution.  The conference shall take place at least *seven (7) days* prior to the filing of the motion." L.R. 7-3.  There was no attempt by Heredia here to "discuss thoroughly … the substance of the contemplated motion and any potential resolution."  There was no indication in Heredia's counsel's email that Heredia would be withdrawing his second motion to dismiss or any discussion whatsoever of the basis for Heredia's request that Plaintiff "consent" to stay the proceedings pending arbitration.  (See Greeley Decl., Ex. E.)  Heredia's counsel's email also was not sent "at least seven (7) days prior to the filing of the motion."  It was sent literally *hours* before the motion was filed, later in the evening of February 5.  (Id. ¶ 6.)

The first time a party fails to comply with an important Local Rule may be chalked up to ignorance.  The second time—especially after being expressly admonished by the Court—is a deliberate flaunting of the Rule.  The Court cannot countenance such behavior any longer.  It should deny Heredia's motion—with prejudice—and allow this case to proceed without any further delay.

II. **Heredia's Motion Fails on the Merits**

Turning to the merits of Heredia's motion, the motion fails for multiple reasons.  To begin with, Heredia acknowledges that it is the moving party's burden on a motion to compel arbitration to demonstrate that (1) a valid agreement to arbitrate exists and, if it does, (2) the agreement encompasses the dispute at issue.  (Def.'s Mem. at 5; Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015).)

However, Heredia fails to acknowledge the critical legal principle that is applicable here, which is that arbitration is fundamentally "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., 475 U.S. at 648; Knutson, 771 F.3d at 565.

The "Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so." Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009). The "strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1287 (9th Cir. 2009); Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) ("The question here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite.").

Heredia cannot carry his burden to demonstrate *either* of the two elements that he must establish. His motion to compel arbitration necessarily fails because (1) *there is no arbitration agreement between Plaintiff and Heredia*, and (2) the Boxer-Manager Contract (to which Heredia is not a party) does not encompass the dispute at issue.

**A.  There Is No Agreement to Arbitrate Between Plaintiff and Heredia**

"The threshold issue in deciding a motion to compel arbitration is whether the parties agreed to arbitrate." Perez v. DirecTV Group Holdings, LLC, 251 F. Supp. 3d 1328, 1337 (C.D. Cal. 2017). When making that determination, courts "apply ordinary state law principles that govern contract formation." Id.; see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under California law, "mutual assent is a required element of contract formation." Perez, 251 F. Supp. 3d at 1337 (quoting Knutson, 771 F.3d at 565). A valid contract requires the "consent" of both parties to the contract. Cal. Civ. Code § 1550. Here, there is no contract between the parties that evinces "mutual assent" or "consent" to arbitrate any dispute. The Boxer-Manager Contract is plainly between Plaintiff and Moses Heredia *only*. (See Diaz Decl., Ex. A.) Defendant Heredia is not

a party to the contract. He is not referenced anywhere in the contract. His name does not appear anywhere on the contract. He did not sign the contract. And Plaintiff never signed any agreement with or agreed to arbitrate any potential claims against Defendant Heredia. (See id. at ¶ 3). To wit, the contract has a specific space for a "Co-Manager" to print and sign his or her name. (Diaz Decl., Ex. A at p. 2.) This spot is noticeably blank in the Boxer-Manager Contract. There is simply no argument that there was any kind of "mutual assent" between Plaintiff and Defendant Heredia to arbitrate any dispute.

Heredia makes a vague reference in the beginning of his motion to an entity called "Heredia Boxing Management, Inc. ('HBM')" and asserts that he is "the employee of HBM," which is run by Moses. (Def.'s Mem. at 1.) Putting aside the fact that this statement (like all of the "factual statements" in Heredia's motion) lacks any foundation and should be disregarded for that reason alone, there is no legal significance to this statement. Neither Heredia Boxing Management nor HBM is a party to the Boxer-Manager Contract. (See Diaz Decl., Ex. A.) Moses Heredia signed it in his individual capacity. (Id.) Neither Heredia Boxing Management nor HBM is referenced anywhere in the contract. (Id.) Plaintiff has always dealt with Moses and Defendant Heredia on an individual basis only and has never met any purported "employees" of HBM. (Id. ¶¶ 8-9.) Plaintiff certainly never agreed to arbitrate any disputes against Heredia Boxing Management or HBM. (Id. ¶ 9.) Any argument by Defendant Heredia to try to "shoehorn" himself into the Boxer-Manager Contract through a third-party boxing management company he worked for with Moses fails on its face.

Because there is no agreement to arbitrate between Plaintiff and Defendant Heredia, the Court *must*, as a matter of law, deny Heredia's motion to compel arbitration.

## B. The Boxer-Manager Contract (to Which Heredia is Not a Party) Does Not Encompass this Dispute

To be clear, the fact that no agreement to arbitrate exists between Plaintiff and Defendant Heredia is a threshold matter that should end the Court's inquiry as to whether to compel arbitration of this dispute. But, even if the Court continues the inquiry (it need not), Heredia also cannot establish the second requisite element, which is that the arbitration agreement must "encompass the dispute at issue." <u>Ashbey</u>, 785 F.3d at 1323. The U.S. Supreme Court has explained that "it is the language of the contract that defines the scope of disputes subject to arbitration." <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 289 (2002) (citing <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties")). "For nothing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." <u>Id.</u>

By its plain terms, the Boxer-Manager Contract states: "All controversies arising *between the parties hereto*, including but not limited to controversies concerning the validity and/or enforceability of this contract, shall be submitted for arbitration … [pursuant to the procedure set forth in the contract]." (Diaz Decl., Ex. A, § C.4.) The "parties hereto" (i.e., the parties to the contract) are Plaintiff and Moses Heredia. (<u>Id.</u> at p. 2.) Moses Heredia is not a defendant in this case. There is no controversy between Plaintiff and Moses Heredia that is being adjudicated here. Plaintiff has brought claims only against Ralph Heredia, who is not a party to the Boxer-Manager Contract. Plaintiff has not brought any claims relating to the Boxer-Manager Contract. He is not challenging the validity or enforceability of the Boxer-Manager Contract in this case. *Those* claims, which are between Plaintiff and Moses Heredia, are before the Commission and will be adjudicated according to the procedure in the Boxer-Manager Contract.

Defendant Heredia argues in his motion that Plaintiff's allegations that Moses

9
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Heredia was Plaintiff's "paper" manager while Defendant Heredia was Plaintiff's "true" or "de facto" manager is evidence that Plaintiff is challenging the "validity and/or enforceability" of the Boxer-Manager Contract. (Def.'s Mem. at 6-7.) That is not so. Again, Plaintiff has not brought any claims relating to the Boxer-Manager Contract—which is evident from a simple review of Plaintiff's Complaint. He is not alleging breach of the Boxer-Manager Contract in this case. The "validity or enforceability" of the Boxer-Manager Contract does not "control[] the outcome" of *any* causes of action in this case, let alone "so many," like Heredia contends. (See Def.'s Mem. at 7.) Plaintiff's claims in this case are for fraud, breach of fiduciary duty, breach of an implied contract relating to a Lexus, and theft—all against *Ralph* Heredia, not Moses. Indeed, Plaintiff *could not* have asserted these claims in arbitration before the Commission. Not only is Defendant Heredia not a party to the Boxer-Manager Contract but, as mentioned in Plaintiff's Complaint, Defendant Heredia is not licensed by the Commission. (Compl. ¶¶ 35-36.) The Commission would therefore have no jurisdiction over Defendant Heredia (which, of course, is by his design) or any ability to hold Defendant Heredia liable for the damages caused to Plaintiff relating to the matters alleged in this case.[3]  See Cal. Bus. & Prof. Code §§18600, *et seq.*; Cal. Code. Regs., title 4, §§ 201, *et seq.* (no authority for Commission to award damages; expressly referencing "licensing, regulatory, and disciplinary functions").

None of this can be disputed. In fact, even Moses Heredia himself recognizes that the Commission's jurisdiction in this dispute is limited to determining *his* rights as Plaintiff's manager, while the "federal courts" are the proper forum to determine damages. (See Diaz Decl., Ex. C (email from Moses Heredia to Diaz).) And, again, Plaintiff asserts no claims against Moses Heredia in this case anyway. The dispute in

---

[3] As just two examples, the Commission would not be able to order Defendant Heredia to pay damages to Plaintiff for stealing his car or for Heredia's violations of the federal Ali Act, for which Congress specifically provided a private right of action to boxers to be brought "in the appropriate Federal or State court." 15 U.S.C. § 6309(d).

this case is between Plaintiff and Defendant Ralph Heredia, which dispute is not encompassed by the Boxer-Manager Contract.

## III. Heredia Waived Any Right to Arbitration

As if the Court needed a third independent basis to deny Heredia's motion (it does not), Heredia also waived any right to arbitrate this dispute—if he had that right at all. The right to arbitration, like any other contract right, can be waived. See Van Ness, 862 F.2d at 758-59. "A party waive[s] its right to insist upon arbitration when it acts in a manner inconsistent with assertion of the right to arbitrate and causes the plaintiffs prejudice." Conover v. Dean Witter Reynolds, Inc., 837 F.2d 867, 868 (9th Cir. 1988). "To demonstrate waiver of the right to arbitrate, a party must show: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., and Prods. Liab. Litig., 838 F. Supp. 2d 967, 976 (C.D. Cal. 2012).

As to the first element, Heredia cannot argue that he did not know of the right to compel arbitration. His brother Moses initiated arbitration with the Commission against Diaz on August 20, 2020. (See Def.'s Mem. at 2.) Heredia *claims* that he and Moses work together and both served as Plaintiff's boxing managers (id. at 1), which is also demonstrated in Plaintiff's Complaint, particularly as it relates to the Heredias' agreement and relationship with Golden Boy (see Compl. ¶¶ 44-46).

As to the second element, Heredia's conduct in first removing Plaintiff's Complaint to federal court, then filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and then filing a *second* motion to dismiss are all plainly inconsistent with the right to arbitrate. "A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007). To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to

proceed judicially or by arbitration." <u>Cabinetree</u>, 50 F.3d at 39.  Courts in the Ninth Circuit and elsewhere have expressly found that litigation activities such as removing a case to federal court or filing a motion to dismiss are inconsistent with the right to arbitrate and are cause for finding a waiver of that right.  <u>See</u>, <u>e.g.</u>, <u>Martin v. Yasuda</u>, 829 F.3d 1118, 1125 (9th Cir. 2016) ("We find this element [of inconsistent acts] satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court. [Citing <u>Van Ness</u>, 862 F.2d at 756, 759] (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings)"; <u>Cabinetree</u>, 50 F.3d at 390 (removing case to federal court was a presumptive waiver of the right to arbitrate because "it manifested an intention to resolve the dispute through the processes of the federal court," not arbitration); <u>Hooper v. Advance Am.</u>, 589 F.3d 917, 921 (8th Cir. 2009) (a Rule 12(b)(6) motion to dismiss that encouraged the court to dismiss the entire complaint "substantially invoked the litigation machinery" and was sufficient to constitute waiver); <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, 2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011) (where "Defendants failed to so much as mention the arbitration clauses at issue in their multiple motions to dismiss," this was an act that was inconsistent with the right to arbitrate).

Here, after Plaintiff filed his Complaint on October 7, 2020 and before he had even served it, Defendant Heredia removed the action to this Court on November 9, 2020. (<u>See</u> ECF No. 1.)  Thirty days later, on December 9, 2020, Heredia filed his first motion to dismiss Plaintiff's Complaint, encouraging the Court to dismiss every cause of action in the Complaint.  (<u>See</u> ECF No. 9.)  This motion was fully briefed, including Plaintiff's opposition and a reply brief from Heredia, and denied by the Court without prejudice on January 5, 2021.  (<u>See</u> ECF No. 22.)  Two weeks later, on January 19, 2021, Heredia filed a *second* motion to dismiss, which similarly encouraged the Court to dismiss every cause of action in the Complaint.  (<u>See</u> ECF No. 23.)  It was not until *after* Plaintiff filed his opposition to this second motion to dismiss, and on the day that

Heredia's reply brief was due, February 5, 2021, that Heredia filed the instant motion to compel arbitration and/or stay the proceedings pending arbitration. (See ECF No. 25.) Heredia "substantially invoked the litigation machinery" with his removal of the case to federal court and multiple motions to dismiss. He manifested an intention to proceed judicially—not by arbitration—by expressly choosing to litigate in federal court through removal, and then took advantage of being in federal court by invoking Federal Rule of Civil Procedure 12(b)(6) with not one but *two* motions to dismiss. Neither Heredia's first motion to dismiss nor his second made any mention of arbitration—despite the fact that Moses Heredia's request for arbitration to the Commission had been made months earlier, in August 2020. Heredia claims that he did not know until January 13, 2021 that Diaz had "acknowledged the arbitration request" and that this was the reason for his delay. (See Def.'s Mem. at 3, 9.) This argument fails for at least two reasons: (1) whether Diaz had "acknowledged the arbitration request" has no bearing on Heredia's assertion of *his* supposed right to arbitration, which he could have raised at any time; and (2) even if the January 13, 2021 date was at all material, Heredia still filed his second motion to dismiss after that date and waited until after Plaintiff had incurred the expense of opposing his second motion before making the instant motion. Heredia clearly and knowingly engaged in conduct that was inconsistent with the right to arbitrate, which is cause for waiver of that right.

As to the third element, Plaintiff has been prejudiced and will be further prejudiced if this case is dismissed or stayed pending arbitration. Courts will find "waiver where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate, such as by filing substantive motions." ConWest Resources, Inc. v. Playtime Novelties, Inc., 2007 WL 1288349, at *6 (N.D. Cal. May 1, 2007); Lounge-A-Round v. GCM Mills, Inc., 109 Cal. App. 3d 190, 201 (1980) (finding prejudice where during defendant's months-long delay in moving to compel arbitration plaintiff "had incurred the monetary expense

involved in the furtherance of the litigation"). Plaintiff here has incurred over $23,000 in attorneys' fees and expenses having to respond to Heredia's two substantive motions to dismiss. (Greeley Decl. ¶ 7.) He has also been delayed more than four months—through no fault of his own—in having his claims even be at issue as a result of Heredia's procedural maneuvers and lack of compliance with the Local Rules. See Guess?, Inc. v. Super. Ct., 79 Cal. App. 4th 553, 555, 558 (2000) (finding prejudice where defendant waited three months after filing answer to bring motion to compel arbitration). Moreover, courts do not look favorably upon the type of forum shopping Heredia has engaged in here, where parties try their hand in court and then seek arbitration following the loss or anticipated loss of a motion. See, e.g., ConWest, 2007 WL 1288349, at *5 ("What may be fairly inferred from … seeking arbitration after an unfavorable ruling … is that ConWest is seeking an alternative forum sensing an adverse ruling in this one. Such use of arbitration as a method of forum shopping would be prejudicial to Playtime."); Cabinetree, 50 F.3d at 391 (affirming district court's finding of waiver because "Kraftmaid wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration"). Plaintiff would also be further prejudiced by the grant of Heredia's motion because, as mentioned above, his claims for damages against Heredia *cannot* be adjudicated before the Commission, whose jurisdiction is limited to the enforcement of boxing (and other martial arts) rules and regulations, not damages for unlawful conduct. Plaintiff would therefore be effectively left without a remedy against Defendant Heredia, depriving him of any ability to recover damages for Defendant Heredia's conduct described in his Complaint. There can be no more extreme prejudice.

**CONCLUSION**

For any of the three independent reasons discussed above, the Court should deny Heredia's motion to compel arbitration.

Dated:  February 19, 2021          VGC, LLP


By:  */s/ Diyari Vázquez*

James L. Greeley
Diyari Vázquez
Attorneys for Plaintiff
JOSEPH DIAZ, JR.