# EXHIBIT 2

## TERM SHEET

The following sets forth the material terms of the agreement ("Agreement") between Golden Boy Promotions, LLC ("Promoter") on the one hand, and Joseph Diaz Jr. ("Boxer") and Moses Heredia and Ralph Heredia (collectively "Managers") on the other hand regarding the grant of Boxer's exclusive promotional rights to Promoter.

1. Term / Bouts: Commencing upon the date of Boxer's first Bout, as defined hereunder, and continuing until the date which is five (5) years after the date of this first bout, subject to any applicable early termination or extensions and excluding any period of time that Boxer is unable to compete due to injury or other cause as set forth herein (the "Term").

    Boxer's first bout hereunder shall be on May 6, 2017, against Manuel Avila, and his purse for such bout will be One Hundred Fifty Thousand Dollars ($150,000.00). In the event that Boxer is declared the winner of his first bout under this Agreement, Boxer's second bout will take place on the subsequent Saul "Canelo" Alvarez Pay Per View Boxing Event, currently scheduled for September 16, 2017, against an opponent to be mutually agreed upon by the parties. If the main event bout on the subsequent Canelo Pay Per View Boxing Event currently scheduled for September 16, 2017, is Saul "Canelo" Alvarez vs. Gennady Golovkin, Boxer's purse will be Two Hundred Thousand Dollars ($200,000.00), otherwise Boxer's purse shall be a minimum of One Hundred Fifty Thousand Dollars ($150,000).

2. Rights: Boxer hereby grants to Promoter the sole and exclusive right to promote all professional boxing matches in which Boxer participates during the Term (the "Bouts" and each, a "Bout"). Boxer agrees that during the Term: (a) Boxer shall not engage in any boxing match other than Bouts promoted by Promoter under this Agreement; and (b) neither Boxer nor anyone acting on Boxer's behalf shall negotiate for, nor contract for, Boxer to engage in any boxing match other than as set forth herein.

3. Signing/Performance Bonuses: (a) Upon the full execution of this Agreement in accordance with all applicable State Athletic Commission requirements (if any) and provided Boxer is not in breach or default hereunder, Promoter shall remit to Boxer a signing bonus of One Hundred Fifty Thousand Dollars ($150,000.00) ("Signing Bonus").

    (b) Additionally, a one-time bonus of One Hundred Thousand Dollars ($100,000.00) will be paid to Boxer if he wins an IBF, WBA, WBC, or WBO world title (a "Major World Title") (excluding an interim title) provided that Boxer has not been declared the loser of any Bout between the date hereof and winning the Major World Title ("Major World Title Bonus").



Page 1

(c) If Boxer participates in a Boxing event on HBO World Championship Boxing or HBO Boxing After Dark as the originally billed Main Event and Boxer is the (A) side than Promoter shall pay Boxer a one-time bonus of One Hundred Thousand Dollars ($100,000.00) ("HBO A Side Bonus").

The Parties agree that in the event that Boxer retires or no longer continues to participate in professional Bouts under this Agreement, prior to the conclusion of the Term of this Agreement (unless such retirement is caused by an injury, verified by a doctor retained by Promoter after an examination, suffered by Boxer while participating in a Bout hereunder), Boxer shall reimburse Promoter for any Signing Bonus received herein on a pro-rata basis. The pro-rata amount shall be calculated based upon the parties' agreement that such bonus shall be divided equally over the term of the Agreement.

4. Bouts / Minimum Purses:

(a) Promoter shall use its reasonable good faith efforts to arrange Bouts for Boxer as determined in Promoter's discretion, in accordance with the terms set forth herein. As used herein, "year" is defined as each successive, consecutive twelve-month period commencing upon the date of Boxer's first Bout under of this Agreement. As used herein "Major World Title" shall mean a title of the IBF, Ring Magazine, WBA, WBC and/or WBO (excluding interim titles unless otherwise stated).

(b) Boxer's purse for each Bout will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then-current market conditions, the opponent, the event budget and other similar factors, provided that no delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement, and further provided that in no event shall Boxer's purse for any Bout be less than the applicable minimums (if any) set forth below.

Promoter shall offer Boxer the opportunity to participate in four (4) Bouts per year in accordance with the terms set forth below. Notwithstanding the foregoing, if Boxer wins a Major World Title during the Term, then the annual minimum number of Bouts shall be reduced to two (2).

| Type of Bout | Minimum Purses |
|---|---|
| ESPN TV Bouts | $30,000.00 |
| Major World Title Challenge (excluding Interim) | $100,000.00 |
| HBO Boxing After Dark Televised Co – Main Event | $75,000.00 |
| HBO Boxing After Dark Televised Main Event | $200,000.00 |



Page 2

| HBO Boxing After Dark Televised Main Event (Major World Title Defense) | $250,000.00 |
|---|---|
| HBO or Showtime World Championship Boxing Televised Co- Main Event | $150,000.00 |
| HBO or Showtime World Championship Boxing Televised Main Event | $250,000.00 |
| HBO or Showtime World Championship Boxing Televised Main Event Major World Title Defense | $500,000.00 |

In addition to the amounts set forth above, Promoter shall remit an additional Payment of Fifteen Thousand Dollars ($15,000) to Boxer ("Training Expenses") for each Major World Title Challenge or Major World Title Defense.

For purposes of clarity, in the event that more than one minimum purse described above applies to a particular bout, the higher minimum purse shall control.

(c) <u>Headline Main Event Promoter Pay-Per-View Bouts</u>: If Boxer participates in the main event of a Pay Per View Event wherein Golden Boy Promotions is the lead promoter, and Boxer is the originally scheduled featured A side main attraction of the Pay Per View Event, Boxer will be entitled to receive 70% of the "Net Bout Revenues" derived therefrom.

    i. "Net Bout Revenues" shall be defined as any and all revenues actually received by Promoter from the 1) distribution and 2) exploitation of such Bout and event of which it is a part for a period of one year after the date of the such Bout, including, without limitation, television license fees, pay-per-view revenues, site fees/gate revenues, sponsorships exclusive to the Event (not including any sponsorships received directly by Boxer for the use of his image, name or brands), Event merchandise <u>less</u> all costs, fees and expenses relating to the Bout and the Pay Per View Event, including, without limitation, opponent purses and expenses, undercard purses and expenses which are not covered by other purses or parties, promotion, publicity and travel exclusively relating to the Event, insurance, facility-related expenses, payment to other promoters, official fees and expenses, promoter sanction fees, television and production expenses and any other costs, fees or expenses relating to advertising, publicizing, staging, producing and distributing the applicable Bout and/or Event and any prior Bouts and Events hereunder.

    ii. Boxer's purse for such Pay Per View Bout (as mutually agreed upon by Boxer and Promoter) shall constitute an advance against Boxer's 70% share of Net Bout Revenues.



Page 3

   iii. For purposes of determining the "Net Bout Revenues" Promoter within 30 (thirty) days following the Bout and/or Event shall provide a detailed report (based on the current actuals available) to the Represented, in which it is explained in detail, the concepts for earned income, as well as the specific report of the incurred expenses, with the understanding that during training for the Bout or the Event, or immediately following the same, the Represented can request, with advance notice, to schedule a time to perform an audit and review documents, receipts, policies and other supporting documents which show distributions; Promoter shall cooperate with the Represented and/or designated individuals to perform such review or audit.

 (d) For Bouts other than those listed above, Boxer's purse for each such Bout will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then current market conditions, Boxer's preceding purse amounts for comparable bouts, the opponent, the event budget and other similar factors. Promoter shall be deemed to have satisfied its obligation to offer Boxer the right to participate in a Bout if Promoter offers Boxer an opportunity to participate in a Bout (in writing) in boxer's weight class, which are reasonable under the circumstances regarding Boxer's health and preparation time, for at least the applicable minimum purse as outlined in Paragraph 4 (b) above.

5. <u>Bout Arrangements</u>: (a) Boxer's opponent for each Bout will be selected by Promoter, subject to Boxer's approval (which approval shall not be unreasonably withheld). All proposals for Bouts and opponents shall be made by Promoter in writing. Boxer shall not withhold his approval for any opponent proposed by Promoter if such opponent is within Boxer's weight class and is rated within the top ten (10) of any major sanctioning organization (the IBF, WBA, WBC and/or WBO) or Ring Magazine. In the event that Boxer rejects three (3) or more opponents proposed by Promoter for any Bout, then Promoter shall be deemed to have satisfied its obligation with respect to offering Boxer such Bout and such Bout shall count towards the minimum number of Bouts which Promoter is obligated to offer Boxer pursuant to paragraph 4(b) above. Additionally, Promoter may terminate this Agreement or extend this Agreement by an additional two (2) months for each opponent (in his weight class) rejected by Boxer. By way of example if Boxer rejects two opponents and promoter decides not to terminate this Agreement, Promoter may extend by an additional four (4) months.

 (b) For each Bout promoted by Promoter hereunder, Promoter shall provide Boxer with the following (for use by Boxer and Boxer's personnel): (i) six (6) round-trip coach airfares (on an if available, if used basis) from a major airport nearest Boxer's training camp to the major airport nearest to the city



Page 4

of the Bout; and (ii) five (5) standard hotel rooms and (iii) per diems or meal coupons for six (6) persons for such period of time prior to the Bout as determined by Promoter in good faith; for a **Major World Title Defense**: (i) six (6) round-trip coach airfares and one (1) premium class airfare from a major airport nearest Boxer's training camp to the major airport nearest to the city of the Bout; and (ii) five (5) standard hotel rooms and one (1) suite and per diems or meal coupons for seven (7) persons.

(c) Promoter shall provide Boxer with the following complimentary tickets of admission for each Bout in which Boxer is a participant and that is exclusively promoted by Promoter: Promoter shall provide Boxer with eight (8) P1 and (6) P2 tickets to non-PPV Promoter fight events and four (4) P1 and (4) P2 tickets to Promoter PPV fight events and events wherein Promoter is not the lead promoter.

(d) For each Bout promoted by Promoter hereunder, Boxer shall execute and comply with the terms of Promoter's customary Bout agreement and/or the Bout contract required by the applicable athletic or boxing commission ("Commission") and shall cooperate as required by Promoter to comply with any applicable law or regulation. Boxer agrees to comply with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities including, but not limited to, attaining the proper weight at the appropriate time for each Bout. Boxer agrees to perform such additional acts, make such appearances before the Commission, and to execute and deliver any additional documents as Promoter may deem necessary to effectuate this Agreement.

(e) For each Bout promoted hereunder, Boxer shall cooperate fully to ensure that all medical examinations and other testing of Boxer are undertaken prior to the Bouts and likewise address all related matters in preparation for the Event to ensure full compliance with the applicable Commission regulations. Boxer will submit to medical examinations as may be required by Promoter's (or its designee's) insurance carrier or the Commission. In addition to any other document that Boxer is required to execute in accordance herewith, Boxer specifically agrees to completely, accurately and truthfully execute the medical examination questionnaire (or similar document) required by Promoter's insurance carrier within one (1) day of Promoter's request for Boxer to execute such questionnaire.

(f) Boxer agrees to submit to anti-doping testing (in accordance with the standards of the Commission). In addition to such Commission required testing, Boxer shall submit to and fully comply with any and all additional drug testing protocols and procedures instituted by Promoter in connection with the Bouts hereunder, including Olympic-style drug testing, which shall be paid by Promoter, Boxer's opponent or the asking party, including, but not limited to, multiple, random urine and blood tests at any time prior to any



Bout hereunder, and urine and blood tests immediately following any Bout hereunder for all substances and processes banned by the entity designated by Promoter to conduct the testing, the Commission and/or sanctioning body if applicable ("Banned Substances"). All such testing shall be conducted by an accredited entity designated by Promoter in its sole discretion, provided that Promoter shall ensure that it is a condition of Boxer's opponents' bout agreements that the opponents shall submit to and comply with such additional drug testing protocols and procedures and that identical drug testing protocols and procedures shall apply to the opponents. Boxer hereby authorizes Promoter and whichever testing agency designated by Promoter to conduct anti-doping testing, to report all results of such testing to Promoter and Boxer's opponents' representatives immediately after the agency receives the results of such tests. In the event that Boxer tests positive for any Banned Substance (following the testing of an A sample and a B sample of the specimen in question), Boxer further authorizes the agency designated by Promoter to deliver the anti-doping testing report to the Commission and Fight Fax, Inc. Boxer agrees to execute any documents that are necessary in order to grant such authorizations.

(g) Notwithstanding anything to the contrary contained herein, if any Bout promoted hereunder is subject to a purse bid ("Purse Bid Bout"), Promoter may, but is not required to, submit a bid for such Bout. Promoter shall communicate to Boxer and Boxer's manager, in writing, any and all notices issued by any sanctioning organizations with regard to any Purse Bid Bouts. If Promoter wins the applicable purse bid, then: (i) the terms applicable to the Purse Bid Bout shall be as determined by the purse bid, in lieu of the terms set forth in this Agreement; (ii) Boxer agrees that Boxer's purse for such Purse Bid Bout shall be an amount equal to 80% of the amount which he would otherwise be entitled to receive pursuant to the rules and regulations of the applicable sanctioning organization (and Boxer acknowledges that he has granted Promoter a 20% reduction in the amount of the purse which he would otherwise be entitled to receive because Boxer understands and agrees that it is in his interest for Promoter to win the rights to all Purse Bid Bouts). If Promoter submits a bid but does not win, then: (i) Promoter' rights hereunder shall continue in full force and shall not be affected in any way; (ii) Promoter shall be entitled to receive, and Boxer shall direct the applicable promoter of the Purse Bid Bout to pay directly to Promoter, an amount equal to 20% of Boxer's gross purse for such purse bid bout, which payment shall be delivered to Promoter within three business days after the applicable bout; and (iii) Boxer's obligations hereunder shall continue immediately following the Purse Bid Bout, provided that the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout.

(h) Promoter shall be the exclusive owner of all rights in and to the Bouts, in all media throughout the world in perpetuity, and Boxer's grant of rights

hereunder includes, without limitation, all rights required to arrange, stage and sell tickets of admission to the Bouts; all exclusive worldwide rights to broadcast, telecast, record, film, stream and transmit electronically such Bouts for exhibition in all media; all merchandising and other ancillary and subsidiary rights therein; the unrestricted worldwide right to use, reproduce and display Boxer's name, voice, likeness and/or biography in connection with the advertising, promotion and exploitation of all such Bouts and any related activities (and all rights therein and/or footage thereof) and Boxer's career and Promoter's business and activities and as otherwise determined by Promoter in Promoter's sole discretion.

To the extent owned by Promoter, and subject to the terms and conditions of any applicable agreements with television networks and/or distributors and/or other third parties, Boxer shall retain the non-exclusive right to use clips from each Bout hereunder in aggregate length of no more than the lesser of: (i) fifty (50) percent of the length of each Bout; or (ii) three (3) minutes from each Bout for his own promotional purposes only.

6. Publicity / Sponsorship:

Boxer agrees to cooperate and assist in publicizing, advertising and promoting each Bout hereunder and to appear at and participate in a reasonable number of press conferences, interviews and other publicity appearances and activities at times and places designated by Promoter. For overnight travel to press conferences in connection with HBO or major pay-per-view Bouts, Promoter shall provide Boxer with: (a) two (2) round-trip airfares (on an if available, if used basis); and (b) two (2) standard hotel rooms and (c) per diems or meal coupons for two (2) persons. Except for the names of athletic equipment manufacturers appearing on Boxer's equipment in a reasonable size, location and placement, Boxer agrees that no advertising or promotional material shall appear on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event without the prior written approval of Promoter (which approval shall not be unreasonably withheld). In any event, no advertising or promotional material appearing on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event shall conflict with any sponsor of the Event or the site; shall display the name, logo or identification of any hotel, casino or gaming, wagering, betting or line service, or any other entity involved with gaming, wagering or betting lines; display the name, logo or identification of any soft drink or other beverage manufacturer or distributor; be in the form of a body or other temporary tattoo or artwork; or be lewd, obscene or otherwise inappropriate (as determined by Promoter and/or the applicable television network in its absolute discretion) for display to the intended live and/or television audience(s).

7. Cancellation /
   Postponement:   In the event that: (a) Boxer fails or is unable to perform any obligation hereunder due to any illness, injury or disability or due to an order of an athletic commission or other legal or regulatory entity or as a result of Boxer's breach or non-performance hereunder or failure to approve opponents or agree on applicable purses; or (b) any Bout scheduled under this Agreement is postponed, or Promoter's performance hereunder is prevented or materially impeded, as a result of any reason provided in the immediately preceding clause (for which Promoter will provide Boxer written notice thereof) (a) or in the applicable Bout Agreement, or due to an event of force majeure, disaster, labor action, power outage or other reason beyond Promoter's reasonable control, then the Term shall be automatically extended for the period of the applicable event causing the postponement or other delay.

8. Extension/
   Early Termination :   In the event that during the Term: (a) Boxer becomes a party to any agreement with a media network or outlet; or (b) any such agreement with a media network or outlet to which Boxer is a party is extended, then the Term of this Agreement shall be extended so that it is coterminous with the complete period of the term of any such agreement. Additionally, if Boxer wins a Major World Title (including interim titles) during the Term, then this Agreement shall automatically extend for an additional year or until Boxer has competed in two (2) Bouts following the Term. Notwithstanding anything to the contrary contained herein, in no event shall the term of this Agreement extend beyond the maximum term permitted by any applicable law or regulation. In the event that Boxer is declared the loser of any professional boxing match during the Term, then: (a) Promoter shall have no further obligation to pay the amounts described in Paragraph 4 above; and (b) Promoter shall have the right to renegotiate the guaranteed minimum purses hereunder, which purses shall be mutually agreed pursuant to reasonable, good faith negotiations in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account the event budget, the opponent and other similar factors, provided that no delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement. In addition, in the event that Boxer is declared the loser of any professional boxing match during the Term, then Promoter shall have the right to terminate this Agreement. No action taken by Promoter following a Bout in which Boxer is not declared the winner shall not be considered a waiver of any rights of Promoter hereunder. Promoter shall have the right to terminate this Agreement if: (a) Boxer fails to engage in any Bout hereunder other than due to injury, illness or force majeure; (b) Boxer engages in any activity or conduct which is illegal, which violates any applicable law or governmental, regulatory or sanctioning body rule or regulation, or which subjects Boxer or Promoter to public ridicule, scorn, contempt or embarrassment, including but not limited to the use of Performance Enhancing Drugs (i.e.: steroids); (c) Boxer is in breach of any of his obligations to Promoter (e.g., Boxer violates Promoter's exclusive promotional rights by negotiating with

or entering into an agreement with another Promoter, by refusing to participate in a bout after signing a bout contract (other than due to injury or other valid reason), etc.); or (d) any prior promotional agreement between Boxer and any third party is determined to be binding upon Boxer or any claim or proceeding alleging same is filed or commenced.  In the event that this Agreement is terminated pursuant to clauses (b), (c) or (d) in the immediately preceding sentence, then Boxer shall, upon Promoter's request, refund any advance or signing bonus paid prior to termination (if any).  At Promoter's election, this Agreement may be suspended during any period of retirement by Boxer from the sport of boxing, but this Agreement shall be automatically operative and in full force and effect should Boxer resume his professional boxing career.

9. <u>First Negotiation and Last Refusal</u>: Upon expiration or termination of the Term, the parties will negotiate exclusively in good faith for a period of at least thirty (30) days regarding a new promotional agreement between Boxer and Promoter.  In the event Promoter and Boxer fail to reach agreement within such thirty (30) day period, Promoter shall be entitled to a right of last refusal regarding any offer received by Boxer within one (1) year after the expiration of the Term (i.e., Boxer shall not be entitled to enter into a new bout and/or promotional agreement with any third party without first giving Promoter a five-business day right to enter into an agreement with Boxer upon the same material terms as contained in the third party offer (a written copy of which shall be provided to Promoter by Boxer), provided that Promoter shall not be required to match any terms which cannot be met as easily by one party as by another, such as the engagement of a particular person or a bout against a particular opponent or for a particular title or titles).  Boxer agrees that any bout and/or promotional agreement which Boxer purports to enter into without fully complying with the terms of this paragraph shall be automatically null and void, and in such event, Boxer agrees that without prejudice to any of Promoter' other legal rights and remedies against Boxer, Promoter shall be entitled to injunctive or other equitable relief to prevent or remedy Boxer's breach or non-compliance hereunder.

10. <u>Taxes</u>: Boxer shall be solely responsible for payment of all taxes relating to amounts payable to Boxer hereunder. Promoter shall deduct from any payment made to Boxer hereunder all amounts required by federal, state and/or local taxing authorities to be withheld by Promoter. In the event that any tax or other payment is imposed upon or charged to Promoter in connection with the amounts payable to Boxer hereunder, then Promoter shall be entitled to deduct such amount from the purse or any other monies payable to Boxer, or at Promoter' election and upon Promoter' request, Boxer shall immediately reimburse Promoter for any such tax or payment.

Page 9

11. <u>Representations:</u>

    (a) Boxer represents and warrants that Boxer is not subject to any agreements, obligations, options or other commitments which would conflict or interfere with Promoter' rights hereunder; and that there are no claims, disputes or litigation pending or threatened with respect to Boxer's promotional rights. Boxer represents and warrants that he has obtained, or will obtain prior to engaging in the first Bout hereunder, at his sole cost and expense, all clearances from any person or entity who may claim to have rights which would conflict or interfere with Promoter's rights hereunder.

    (b) Boxer represents and warrants that he is a United States person or that he has obtained, or will obtain, prior to engaging in the first Bout hereunder, at his sole cost and expense, the visa(s) and/or permit(s), if any, necessary for him to fight in the United States.

    (c) Boxer has and will fully, completely, accurately and truthfully complete and execute the medical examination questionnaires (or similar documents) required by Promoter's insurance carrier within one (1) day of Promoter's request for Boxer to complete and execute such questionnaires as required. Boxer represents that he does not have any mental or physical condition, sickness, disease or injury and is not taking any medication which may impair his ability to prepare for and/or give an honest exhibition of his skill in any Bout hereunder. Boxer agrees that he shall keep himself in "fighting shape" and that he will not allow his physical condition to deteriorate or his weight to fluctuate such that he would not be physically able to participate in any Bout offered to him hereunder, and that to the extent Boxer agrees to participate in a Bout at or below a particular weight that Boxer will make weight at the weigh-in for each Bout. Boxer further represents and warrants that he has not and will not during the term hereof (i) use any illegal substances or performance enhancing drugs (e.g., steroids); and (ii) has not attended a rehabilitation center or similar establishment for treatment for drug and/or alcohol dependency or drug and/or alcohol abuse at any time within the last eighteen (18) months.

    (d) Boxer agrees to promptly submit to such reasonable medical examinations and provide such information (including full disclosure of all past or present injuries, medical conditions or surgical procedures) as Promoter may request in order to establish Boxer's physical ability to participate in Bouts hereunder. All of Promoter's obligations hereunder are conditioned upon Promoter's review and approval, in its sole discretion, of the results of Boxer's medical exams and disclosures.

    (e) Boxer understands that Promoter may be required to report Boxer's purses to the Commission and/or Sanctioning Organization(s). If required to do so, Promoter shall report the amount set forth as Boxer's purses for the Bouts.



Page 10

(f) The parties agree to indemnify, defend and hold harmless each other and its officers, directors, employees, agents, representatives, affiliates, assigns and licensees from and against any and all claims, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) arising out of (i) any breach (or with respect to third party claims, alleged breach) of this Agreement, or any representation or warranty contained herein, or (ii) any act or omission giving rise to a claim against Promoter or any other party.

(g) Boxer agrees that in the event that the Event or Bout promoted hereunder is cancelled or postponed because of Boxer's use, injection, ingestion, application and/or implantation of a Banned Substance (including, but not limited to as a result of a positive test for a Banned Substance), Boxer agrees to reimburse Promoter for any and all costs and expenses incurred by Promoter as a result of such cancellation or postponement. Those costs and expenses include, but are not limited to, the costs of production, marketing, public relations, media events, and the travel costs of all parties involved in the event. Boxer shall remit payment to Promoter for such costs within three (3) days of Promoter's request for same. In the event that Boxer does not remit payment to Promoter within three (3) days of Promoter's request, then Boxer hereby authorizes Promoter to deduct such fees, costs and expenses from Boxer's purse for future bouts, whether promoted by Promoter or not.

(h) Boxer agrees that in the event that any Bout promoted hereunder is cancelled or postponed because Boxer violates a rule of an applicable Commission or sanctioning organization, or is arrested and convicted of any criminal act or because of some act or omission by Boxer (other than for a physical injury suffered after the execution of this agreement), Boxer agrees to reimburse Promoter for any and all costs and expenses incurred by Promoter as a result of such cancellation or postponement.

12. <u>Boxer's Representative</u>: Boxer understands and agrees that his/her and his/her manager(s), advisor(s), consultant(s) or representatives' cooperation, professionalism, reputation, compliance, representations and relationship with Promoter, and all related persons and entities, including, but not limited to, State Athletic Commissions, is essential to the successful promotion of Boxer's career. Therefore, Boxer agrees to disclose any and all managers, advisors, consultants and/or representatives to Promoter as of the date of signing of the Agreement. Further, Boxer agrees to provide Promoter with reasonable notice (and prior to any subsequent Bout) of any new person or entity that will act as Boxer's manager, advisor, consultant or any other type of representative not previously disclosed to Promoter. Boxer understands and agrees that this paragraph is a material provision of the Agreement and that Promoter has materially relied upon Boxer's representations and disclosure of his present managers, advisors, consultants and representatives in agreeing to offer Boxer this Agreement.



Page 11

N/A
N/A

13. <u>Governing Law</u>:  (a) This Agreement will be governed and construed in accordance with the laws of the State of Nevada applicable to agreements entered into and wholly performed therein. Any dispute, controversy or claim arising out of or relating to this Agreement, including the formation, interpretation, breach or termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS Commercial Arbitration Rules before a single arbitrator who shall be selected by the parties to the arbitration and who shall be a retired judge or justice. If the parties are unable to select an arbitrator, the arbitrator will be selected in accordance with the JAMS Rules. The place of arbitration will be Las Vegas, Nevada. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing Party in arbitration shall be entitled to its reasonable costs, including the costs of arbitration, and attorneys' fees.

(b) Boxer acknowledges and agrees that his services in connection with the Bouts are of a special, unique, unusual and extraordinary character giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury. Accordingly, Boxer agrees that Promoter shall be entitled to injunctive and other equitable relief, without the necessity for posting a bond, to prevent any breach or default by Boxer hereunder, which relief shall be in addition to and without prejudice to any other rights or remedies Promoter may have in such event. In the event of any breach or claimed breach hereof by Promoter, Boxer shall provide Promoter with notice of such claimed breach and an opportunity to cure the claimed breach Boxer shall provide such notice as soon as Boxer is aware of the claim. Promoter shall have thirty (30) days from notice to cure the claimed breach, unless the breach relates to an event scheduled for a date certain that is less than thirty (30) days from the date of notice, in which event Promoter shall have a reasonable time to cure, which, in any event, shall be not less than ten (10) business days. Provided Promoter has commenced a cure of the claimed breach within the applicable period set forth above, Promoter shall be allowed a reasonable time to complete the cure. Boxer's remedy in the event of an uncured breach by Promoter shall be limited to Boxer's actual, provable monetary damages proximately caused by Promoter's breach and in no event (i) shall Promoter be liable to Boxer for special or consequential damages, lost profits or punitive or exemplary damages; or (ii) shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief (other than declaratory relief) or to otherwise terminate or rescind this Agreement. Any action by Boxer hereunder shall be commenced, if at all, within one year of the claimed breach and Boxer hereby waives any otherwise applicable statutes of limitations that would provide any greater amount of time within which to bring an action. Neither Promoter nor Boxer shall bring any action hereunder without first

engaging in a good faith attempt to resolve the issues that are proposed to be the subject of the action and the parties hereby agree to cooperate with each other in such efforts to achieve a good faith resolution of the dispute.

(c) Nothing contained in this Agreement shall be construed so as to require the violation of any law or regulation, and wherever there is any conflict between any provision of this Agreement and any law or regulation, the applicable law or regulation shall prevail; provided, however, that in such event the provision so affected shall be curtailed only to the extent necessary to permit compliance with the minimum legal requirement, and no other provisions of this Agreement shall be affected thereby. Promoter shall have the right to assign, license or transfer any or all of the rights granted to or retained by it under this Agreement to, or to otherwise perform its services and obligations hereunder in conjunction with, any person, firm or corporation, including, without limitation, any promoter or co-promoter. Neither the benefits nor the duties of Boxer under this Agreement may be assigned or transferred for any reason.

14. <u>Confidentiality</u>: Boxer and Boxer's representatives and affiliates shall maintain strict confidentiality regarding Promoter and all of Promoter's contracts, agreements, business arrangements, plans, legal and business affairs, and professional relationships. Without limiting the generality of the foregoing, Boxer shall maintain strict confidentiality regarding the terms of this Agreement, and Boxer agrees that neither Boxer nor Boxer's representatives and/or affiliates shall use, disseminate, publish or disclose, or authorize or permit any third party to use, disseminate, publish or disclose, any information regarding the terms of this Agreement or any other agreement between Boxer and Promoter. The obligations set forth in this paragraph are of the essence of this Agreement and shall survive the termination of this Agreement, and any breach or violation hereof shall constitute a material breach of this Agreement.

15. <u>Formal Agreement</u>: Promoter and Boxer may enter into a more formal agreement incorporating the terms hereof and Promoter' customary standard terms and conditions, but until such more formal agreement is executed, this Agreement and such standard terms and conditions (which are incorporated herein by this reference) shall constitute the entire understanding of the parties hereto and shall constitute a legal and binding agreement between the parties. Boxer agrees that in no event shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief or to otherwise terminate or rescind this Agreement. No waiver by Promoter of any breach or non-performance by Boxer hereunder shall be deemed to be a waiver of any preceding or succeeding breach or non-performance. No modification or amendment of this Agreement shall be valid unless made by a writing signed by the party to be charged. All parties have participated in the negotiation of this Agreement and, thus, it is understood and

Page 13

agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. In the event that any language of this Agreement is found to be ambiguous, such ambiguity shall not be resolved by construing this Agreement in favor of or against any party, but rather construing the terms of this Agreement as a whole, according to their fair meaning, and each party shall have an opportunity to present evidence as to the actual intent of the parties with respect to any such ambiguous language.

**BOXER ACKNOWLEDGES THAT PROMOTER HAS RECOMMENDED THAT BOXER OBTAIN THE ADVICE OF HIS OWN, INDEPENDENT COUNSEL BEFORE ENTERING INTO THIS AGREEMENT, AND THAT HE HAS HAD THE OPPORTUNITY TO DO SO.**

**BOXER FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT HE IS UNDER NO OBLIGATION TO ACCEPT ANY OF THE TERMS OF THIS AGREEMENT, THAT THE TERMS HAVE BEEN NEGOTIATED BETWEEN PROMOTER AND BOXER AND ARE THE RESULT OF SUCH NEGOTIATION AND THAT BOXER HAS READ ALL PARTS OF THIS AGREEMENT AND UNDERSTANDS THE TERMS HEREOF AND ENTERS INTO THIS AGREEMENT FREELY AND NOT AS THE RESULT OF ANY COERCION OR DURESS.**

**BOXER HEREBY ACKNOWLEDGES THAT HE HAS RECEIVED, READ AND UNDERSTOOD THE CONTENTS OF THIS DOCUMENT AND/OR THIS DOCUMENT WAS TRANSLATED TO HIM.**

By its signature below, each party confirms its understanding of, and agreement to the foregoing.

PROMOTER:

GOLDEN BOY PROMOTIONS, LLC

By: _____

Name: Rolando Arellano

Title: Fighter Relations

Date: 3/22/2018

BOXER:

JOSEPH DIAZ JR.

By: _____

Name: Joseph Diaz Jr

Boxer

Date: 3/22/17

Page 14

MOSES HEREDIA

By: _____

Title: MANAGER

Date: 3/22/17

RALPH HEREDIA

By: _____

Title: MANAGER

Date: 3-22-17