1  James L. Greeley (SBN 218975)
       jgreeley@vgcllp.com
2  Diyari Vázquez (SBN 222461)
       dvazquez@vgcllp.com
3  Gina M. Simas (SBN 205367)
       gsimas@vgcllp.com
4  VGC, LLP
   1515 7th Street, No. 106
5  Santa Monica, California 90401
   Telephone:  (424) 272-9885
6
   Attorneys for Plaintiff
7  JOSEPH DIAZ, JR.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12

13  JOSEPH DIAZ, JR.,                  Case No. 5:20-cv-02332-JWH-KK

14              Plaintiff,             **PLAINTIFF'S OPPOSITION TO
                                       DEFENDANT RALPH HEREDIA'S
15         v.                          MOTION FOR JUDGMENT ON
                                       THE PLEADINGS**
16  RALPH HEREDIA, true name
    RAFAEL HEREDIA TARANGO, a/k/a      Date:        December 10, 2021
17  RAFAEL HEREDIA, a/k/a RAFAEL       Time:        9:00 a.m.
    BUSTAMANTE; JOHN DOE, ESQ.;        Courtroom:   2
18  and JANE DOES 1 through 20,        Judge:       Hon. John W. Holcomb
    inclusive,
19
                Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................. 4

LEGAL STANDARD ............................................................................... 7

ARGUMENT............................................................................................. 8

I.     HEREDIA'S MOTION FAILS ON THE MERITS ......................... 8

      A. DIAZ ADEQUATELY ALLEGES VIOLATION OF THE ALI ACT . 8

      B. DIAZ ADEQUATELY ALLEGES FRAUD BASED ON HEREDIA'S
          CONCEALMENT OF MATERIAL FACTS ...................................... 12

      C. DIAZ ADEQUATELY ALLEGES BREACH OF FIDUCIARY DUTY
           .............................................................................................. 14

      D. DIAZ ADEQUATELY ALLEGES AN ALLEGED IMPLIED-IN-FACT
          CONTRACT RELATING TO THE LEXUS ...................................... 15

      E. DIAZ ADEQUATELY ALLEGES CONVERSION OF SPECIFIC
          AMOUNTS OF MONEY AND PERSONAL PROPERTY ............... 17

      F. PLAINTIFF ADEQUATELY ALLEGES TORTIOUS INTERFERENCE
          WITH HIS BUSINESS RELATIONSHIP WITH GOLDEN BOY .... 20

      G. DIAZ ADEQUATELY ALLEGES QUANTUM MERUIT ............... 22

      H. DIAZ STATES A RIGHT TO AN ACCOUNTING ........................... 23

CONCLUSION......................................................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Andrews Farms v. Calcot, Ltd.,
  527 F. Supp. 2d 1239, 1252 (E.D. Cal. 2007) ........................................................ 13

Atencio v. TuneCore, Inc.,
  2017 WL 10059254, at *2 (C.D. Cal. Aug. 17, 2017) .................................... 22, 23

Baldwin v. Marina City Props., Inc.,
  79 Cal. App. 3d 393, 406 (1978) ............................................................................ 20

Blank v. Kirwan,
  39 Cal. 3d 311, 330 (1985) ..................................................................................... 21

Brea v. McGlashan,
  3 Cal. App. 2d 454, 460 (1934) .............................................................................. 23

Carnegie–Mellon Univ. v. Cohill,
  484 U.S. 343, 349-357 (1988) ................................................................................ 11

Cerra v. Blackstone,
  172 Cal. App. 3d 604, 609 (1985) .......................................................................... 19

Division of Labor Law Enforcement v. Transpacific Transp. Co.,
  69 Cal. App. 3d 268, 275 (1977) ............................................................................ 16

Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist
Congregational Church,
  887 F.2d 228, 230 (9th Cir. 1989) ..................................................................... 8, 18

Golden Boy Promotions LLC v. Haymon,
  2017 WL 460736, at *1 (C.D. Cal. Jan. 26, 2017) .......................................... 14, 15

Haggerty v. Warner,
  115 Cal. App. 2d 468, 475 (1953) .......................................................................... 23

Haigler v. Donnelly,
  18 Cal. 2d 674, 681 (1941) ..................................................................................... 18

Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,
  896 F.2d 1542, 1550 (9th Cir. 1990) ................................................................ 19

In re Century 21–Re/Max Real Estate Adver. Claims Litig.,
  882 F.Supp. 915, 921 (C.D. Cal. 1994) .............................................................. 8

In re De Laurentiis Ent't Group, Inc.,
  963 F.2d 1269 (9th Cir. 1992) .......................................................................... 22

Jaffe v. Carroll,
  35 Cal. App. 3d 53, 57 (1973) ......................................................................... 16

Keen Consulting Group v. Rugged Events Holdings, LLC,
  2019 WL 6646701, at *3 (C.D. Cal. July 11, 2019) .......................................... 23

Knutson v. Foster,
  25 Cal. App. 5th 1075, 1094-95 (2018) ............................................................ 14

Lazar v. Super. Ct.,
  12 Cal. 4th 631, 638 (1996) ............................................................................. 12

Lee v. City of Los Angeles,
  250 F.3d 668, 690 (9th Cir.2001) ...................................................................... 20

Lee v. Hanley,
  61 Cal. 4th 1225, 1240 (2015) .......................................................................... 18

Lovejoy v. AT&T Corp.,
   92 Cal. App. 4th 85, 95 (2001) ........................................................................ 12

Maglica v. Maglica,
  66 Cal. App. 4th 442, 449 (1998) ..................................................................... 22

McGann v. Ernst & Young,
  102 F.3d 390, 392 (9th Cir. 1996) ...................................................................... 7

McKell v. Wash. Mutual, Inc., 142 Cal.
  App. 4th 1457, 1489 (2006) .............................................................................. 16

Menjivar v. Trophy Props. IV DE, LLC,
  2006 WL 2884396, at *13 (N.D. Cal. Oct. 10, 2006) ........................................ 13

Nishimoto v. Federman–Bachrach & Assocs.,
  903 F.2d 709, 715 (9th Cir. 1990) ........................................................................ 11

NL Indus. v. Kaplan,
  792 F.2d 896, 898 (9th Cir. 1986) .......................................................................... 8

Oakdale Vill. Group v. Fong,
  43 Cal. App. 4th 539, 544 (1996) ......................................................................... 17

Stanley v. Richmond,
  35 Cal.App.4th 1070, 1077 (1995) ....................................................................... 14

Starr v. Baca,
  652 F.3d 1202, 1215-17 (9th Cir. 2011) ............................................................... 17

Stevens v. Super. Ct.,
  180 Cal. App. 3d 605, 608-09 (1986) .................................................................... 12

Teselle v. McLoughlin,
  173 Cal. App. 4th 156, 179 (2009) ....................................................................... 24

United States v. Southern California Edison Co.,
  300 F.Supp.2d 964, 973 (E.D. Cal. 2004) ............................................................ 20

United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,
  971 F.2d 244, 248 (9th Cir. 1992) ........................................................................ 20

Welco Elecs., Inc. v. Mora,
  223 Cal. App. 4th 202, 208 (2014) .................................................................. 17, 18

William Morris Endeavor Ent't, LLC v. Writers Guild of America,
  478 F. Supp. 3d 932, 9404 (C.D. Cal. 2020) ....................................................... 14

Wright v. Old Gringo Inc.,
  2018 WL 6568199, at *15-16 (S.D. Cal. Dec. 13, 2018) ..................................... 14

Youst v. Longo,
  43 Cal. 3d 64 (1987) ............................................................................................. 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

15 U.S.C. § 6301(5) ................................................................................. 9

15 U.S.C. § 6308(b)(1)(B) ......................................................................... 9

Cal. Civ. Code §§ 1572(3), 1709, 1710(3)) ............................................. 12

Fed. R. Civ. P. 12(c). .................................................................................. 8

Fed. R. Civ. P. 8(d)(2)-(3) ........................................................................ 23

## OTHER AUTHORITIES

1 Witkin, Summ. of Cal. Law, Contracts § 91, at 122 (9th ed. 1987) ...................... 22

Charles Alan Wright et al., 5C Federal Practice and Procedure § 1368 (3d ed.) ....... 8

1

2

3
**INTRODUCTION**

4
After filing three motions to dismiss, Defendant Ralph Heredia ("Defendant" or

5
"Heredia") now files a motion for judgment on the pleadings, which is simply a re-

6
hashed version of many of the same arguments previously made in his motions to

7
dismiss. This is hopefully the final time that Plaintiff Joseph Diaz, Jr. ("Plaintiff" or

8
"Diaz") is forced to request that this Court deny these arguments. To recap, on January

9
5, 2021, this Court denied Heredia's first motion to dismiss for failing to engage in any

10
conference of counsel prior to filing the motion. Heredia then filed a second motion to

11
dismiss. This time Heredia's counsel purported to participate in a conference to

12
technically satisfy the meet and confer requirement, but he failed to make any genuine

13
attempt to actually comply with the Local Rules. Heredia then withdrew his second

14
motion to dismiss, and this Court has since repeatedly admonished Heredia's counsel

15
for not following the Local Rules.

16
On July 6, 2021, Heredia filed a third motion to dismiss. The Parties entered a

17
Stipulation agreeing to take this third motion off calendar to allow Heredia to determine

18
whether he would permit Diaz to file a First Amended Complaint ("FAC"). In response

19
to this Stipulation, this Court directed the Parties to file a joint stipulation for an order

20
granting Diaz leave to amend his Complaint (the "Order"). As he has historically done

21
in his attempts to delay prosecution of the claims against him, Heredia waited until the

22
last possible day (after having had the stipulation for over 24 days) to return the

23
Stipulation for filing. Thereafter, on August 16, 2021, the Court ordered Diaz to file

24
his FAC, no later than August 23, 2021. Plaintiff did so on that same day. After yet

25
another extension, on September 17, 2021, Heredia finally answered the FAC. Eight

26
weeks later, Heredia now brings this motion for judgment on the pleadings ("Motion").

27
In so doing, Heredia continues his repeated and flagrant violations of this Court's

28
rules. This time, Heredia improperly filed the Exhibits in support of the Motion under

seal. The Caption on the Exhibits in support of the Motion states: "FILED UNDER

SEAL PURSUANT TO ORDER OF THE COURT DATED NOVEMBER 8, 2021."
(See Dkt. 83.) But Heredia altogether failed to file an Application to file any of these
Exhibits under seal (or, as is customary for Heredia, meet and confer with Diaz's
counsel to attempt to reach an agreement prior to filing the Exhibits which are largely
irrelevant to this Motion). Time and time again, Heredia's counsel ignores requisite
procedures, which, as Heredia surely intends, results in Diaz having to spend
unnecessary and additional time, money and resources litigating this action.

Putting aside the continued disregard for this Court's procedural rules, the
Motion is flawed in numerous ways and should be denied on the merits. First, after
removing this action to this Court on federal jurisdiction grounds, Heredia now takes
the position that his "*removal was in error*." Heredia now contends that "any contract-
based claims" raised by Diaz in relation to the Muhammad Boxing Reform Ali Act
[("Ali Act")] must be dismissed." This argument is conspicuously flawed given that
the Ali Act claim is not a "contract-based claim." To state the obvious, it is a statutory
claim. The Ali Act defines a "manager" as a person receiving compensation as a
boxer's representative, with no requirement that the manager be either licensed or
under contract. This is precisely what Diaz alleges occurred. The Ali Act unequivocally
applies, and, as such, there is federal question jurisdiction.

Similarly, Heredia's argument that the California State Athletic Commission
("Commission") has exclusive jurisdiction over manager contracts is without merit.
Heredia himself acknowledges that, on June 10, 2021, the Commission held an
arbitration concerning *the Contract between Plaintiff and Moses Heredia*—who is not
a party to this lawsuit (the "Arbitration"). Despite acknowledging that he was (1) not a
party to the 2017 Boxer Manager Contract (the "Contract") subject to the Arbitration
and (2) not a party to the Arbitration, Heredia nevertheless contends that Diaz is
attempting to improperly relitigate matters that were the subject of the Arbitration.
Nonsense. This Court has previously held that Heredia is not a party to the Contract
and that it did not have the right to compel Heredia to arbitration under that Contract.

2

(Dkt. 44.) Apparently, Heredia interprets this holding as a "get out of jail free card" because under his faulty logic no forum exists for him to be held accountable for the claims presently alleged by Diaz. Obviously, this is wrong. The only possible remedy for Diaz against Heredia—Diaz's illicit manager—is in court. This Court should reject Heredia's scheme to escape all liability and deny the Motion in its entirety.

Additionally, as detailed more thoroughly below, Diaz has alleged more than sufficient facts to support his claims against Heredia. If the Court decides to consider the merits of Heredia's motion, it should be denied.

Finally, Heredia requests that this Court take judicial notice of the "entire record" in the Arbitration.[1] Heredia makes this request, stating: "Heredia desires the Court to understand that many—if not all—of Diaz' claims herein have already been resolved pursuant to the Arbitration." (Mem. (Dkt. 82-1) at 5:5-7.) This statement demonstrates a fundamental misunderstanding of both the law and the facts. Introducing a record replete with disputed facts in support of a motion for judgment on the pleadings (which would then result in converting the Motion to a motion for summary judgment) should necessarily result in this Court denying the Motion. Further, encouraging this Court to better understand the Arbitration—an action between Moses Heredia and Diaz, wherein Heredia declared under penalty of perjury that he served as Diaz's manager and both the Arbitrator and his Decision definitively state that the present claims were not at issue in the Arbitration—serves only to solidify the inescapable conclusion that the Motion must be denied. Simply put, whether or not this Court grants judicial notice, the outcome remains the same: the Motion should be denied.

---

[1] Diaz addresses Heredia's request for judicial notice in "Plaintiff Joseph Diaz, Jr.'s Objections to Defendant's Request for Judicial Notice," which is concurrently filed herewith.

3

## FACTUAL AND PROCEDURAL BACKGROUND

Diaz is a world champion professional boxer.  (FAC (Dkt. 69) ¶ 1.) Heredia was his boxing manager, which is a defined role under the Ali Act and means Heredia owes a fiduciary duty to Diaz.  (Id. ¶¶ 2-3, 17, 30, 109-114.) Rather than fulfill his fiduciary and other obligations to Diaz, Heredia manipulated, exploited, and stole from Diaz. Heredia concealed from Diaz, among other things, that he is a convicted felon using the name "Ralph Heredia" as an alias and that he is not licensed by the Commission as a boxing manager. (Id. ¶¶ 4, 37, 42, 46-47, 70-71.) Heredia used his half-brother Moses, who is licensed by the Commission, to sign the Contract and get the necessary approval from the Commission, but Moses simply served as a "paper manager," while Heredia served as Diaz's *de facto* manager. (Id. ¶¶ 4, 37-38, 42, 46-47, 58, 70-74.) Heredia traded on Diaz's name and reputation to get his foot in the door with the well-known boxing promotion firm, Golden Boy Promotions, and to sign other fighters, all of whom he also signed with Golden Boy. (Id. ¶¶ 5, 43, 49, 52.) Heredia then repeatedly put his own interests over Diaz's interests, including by currying favor with Golden Boy rather than vigorously advocating for Diaz in negotiations, obtaining illicit benefits from Golden Boy at Diaz's expense, and failing to adequately advance Diaz's career. (Id. ¶¶ 5, 43, 49, 53, 55-58,66-67,70, 75-75, 94.)

Heredia did not just fail to protect Diaz's interests—as he was legally required to do—but he also actively *stole* from Diaz. Despite the Contract calling for an 18% manager's fee (which was contractually owed to Moses Heredia, not Defendant), Heredia stole an extra 2%. (Id. ¶¶ 58-60, 71, 116.) When Diaz confronted Heredia about the extra 2%, Heredia responded that this was the fee for "Diaz's lawyer" who Heredia had retained on Diaz's behalf to help with his affairs. (Id. ¶ 58.) But Diaz never agreed to any lawyer and alleges that the extra 2% was actually used to pay for *Heredia's* lawyer: Defendant John Doe, Esq. (Id. ¶ 59.) Diaz alleges that John Doe, Esq. was directly aware of and participated in the scheme to steal the extra 2% (id. ¶ 60) and accordingly names him as a defendant under the conversion, quantum meruit,

and accounting causes of action (see FAC ¶¶ 93-99, 115-124.) Heredia also stole from Diaz in violation of an implied contract between the parties relating to a 2016 Lexus RC350 (the "Lexus") that Heredia purportedly purchased for Diaz's benefit. (Id. ¶¶ 63-65, 74, 78.) Specifically, Heredia "loaned" the car to Diaz by letting Diaz use the car as his own until he could pay it off from his boxing proceeds (in addition to the manager's fee). (Id. ¶ 63-65.) Diaz held up his end of the bargain by paying Heredia $25,000.00 for the Lexus, which money Heredia accepted. (Id.) However, in September 2020, Heredia repossessed the vehicle and took it back for himself, keeping Diaz's payment plus his investment of an additional $4,000.00 in improvements to the Lexus and $300.00 of Diaz's cash that was in the vehicle. (Id. ¶¶ 63-65.)

Diaz initiated this lawsuit against Heredia on October 7, 2020 in San Bernardino County Superior Court. (Dkt. 3.) Importantly, ***Heredia removed the action to this Court*** on November 9, 2020 (Dkt. 1). Heredia filed his first motion to dismiss on December 9, 2020 (Dkt. 9), which this Court denied without prejudice on January 5, 2021 (Dkt. 22). Heredia then filed his second motion to dismiss on January 19, 2021 (Dkt. 23). On February 5, 2021, Heredia withdrew his second motion to dismiss and filed a motion to compel arbitration and/or stay the proceedings pending Arbitration (Dkt. 25). On March 10, 2021, the Court denied with prejudice Heredia's motion to compel arbitration due to his counsel's disregard of the Local Rules (Dkt. 33). On March 31, 2021, Heredia filed a motion for relief from that order (Dkt. 40). On May 19, 2021, this Court granted Heredia's motion for relief and denied Heredia's motion to compel on the merits (Dkt. 44). The Court found:

> The Court concludes that Heredia, a nonsignatory to the Management Contract, does not have the right to compel arbitration under that agreement Furthermore, assuming arguendo that Heredia is an employee of Heredia Boxing Management, that entity is not a party to the Management Contract either. The Management Contract is between "Moses

1        Heredia" and "Joseph Diaz Jr."—Moses Heredia is designated as

2        the "Manager" and Diaz is designated as the "Boxer." The

3        Management Contract does not contain any reference to "Ralph

4        Heredia" or "Heredia Boxing Management.

5   (Dkt. 44).

6        On June 10, 2021, the Commission held the Arbitration concerning the Contract

7   between Diaz and Moses Heredia. During the Arbitration, Heredia's counsel stated:

8   "Mr. Ralph Heredia … ***is not the licensed manager at issue here today."*** (Arb. Tr.

9   (Dkt. 83, Ex. 16) at 12:24-13:1.) Notwithstanding this clear admission that Heredia

10  was not the "manager at issue," Heredia's counsel now boldly contends that Diaz

11  "wishes to improperly relitigate these matters before this Court." (Mem. (Dkt. 82-1) at

12  2:12-13). In addition to Heredia's admission, the Arbitrator (just like this Court) made

13  clear that Heredia was ***not*** a party to the Contract. For example, when Diaz's counsel

14  raised arguments concerning Heredia, the Arbitrator plainly stated: "You're going to

15  deal with that in federal court. We're just dealing with the boxing."[2] (Arb. Tr. (Dkt. 83,

16  Ex. 1) at 156:14-22.) Thereafter, the Arbitrator issued the Decision, which further

17  demonstrates that Heredia's claims were not litigated. (*See, e.g.* Arb. Decision (Dkt.

18  83, Ex. 5) at p.4 fn. 1 ("the arbitrator makes no determination as to whether the 2012

19  agreement was also invalid due to Ralph Heredia signing the agreement"); and at 13:7-

20  12 ("[t]his dispute [over vehicle repossession] is a component of Boxer's lawsuit

21  against Ralph Heredia and does not involve Manager, who is not a named party in that

22  civil lawsuit"). Simply, Diaz's claims as to Heredia have not been "definitively

23  resolved," and any argument to the contrary has zero merit.

24        On July 6, 2021, Heredia filed a third motion to dismiss. (Dkt. 57.) On July 19,

25

26      [2] See Dkt. 83, Ex. 5 [*In the Matter of the Arb. of Contract Dispute Between Moses*

27  *Heredia, Manager, and Joseph Diaz, Jr., Boxer, Cal. State Athl. Comm'n*] at 1:20-25 (Andrew Foster, Executive Officer for the Commission was "appointed by the

28  Commission to arbitrate ***the contract dispute between Moses Heredia (Manager) and Joseph Diaz, Jr. (Boxer)***)" (emphasis added).

2021, this Court directed the Parties to file a joint stipulation for an order granting Diaz leave to amend his Complaint (the "Order") (Dkt. 61.) Pursuant to this Order, Heredia was required to withdraw his ***third*** motion to dismiss. Notably, the Court in its order states:

> The parties doubtless are aware that, in its prior orders and at the related hearings, ***the Court has expressed its frustration with the prosecution and trajectory of this action. Among other issues, the Court is concerned that this case is languishing. The Court expects the parties henceforth to proceed expeditiously.***

(Dkt. 61). After more than 13 months have passed since Diaz filed his Complaint, after Heredia removed this action to this Court, after Heredia filed three motions to dismiss, and after Diaz has done everything he can to expedite litigating the merits of his claims, Heredia now brings the Motion disingenuously arguing that "Diaz is improperly attempting to relitigate or collaterally attack matters that have been definitively resolved in the Arbitration" (Mem. (Dkt. 82-1) at 2:15-16)—an Arbitration in which Heredia was not a party and undisputedly did not resolve the claims at issue here. Diaz absolutely shares this Court's frustration with the trajectory of this action and desires to put an end to Heredia's and his counsel's gamesmanship.[3]

## LEGAL STANDARD

A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain. McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996). In considering a Rule 12(c) motion, the Court must view the facts presented in the pleadings and the

---

[3] Diaz will not waste this Court's time addressing the personal attacks contained in the lengthy footnote in Heredia's notice of motion. Suffice it to say, Heredia's portrayal is false. Should the Court wish to address these inflammatory allegations, Diaz will gladly do so at the hearing on the Motion.

7

inferences to be drawn from them in the light most favorable to the nonmoving party. <u>NL Indus. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986); <u>In re Century 21–Re/Max Real Estate Adver. Claims Litig.</u>, 882 F.Supp. 915, 921 (C.D. Cal. 1994). For purposes of the motion, the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial. Charles Alan Wright et al., 5C Federal Practice and Procedure § 1368 (3d ed.).

Judgment on the pleadings should only be granted when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. <u>Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989). If matters outside the pleadings are considered, the motion shall be treated as one for summary judgment. <u>Fed. R. Civ. P.</u> 12(c). In the instant action, the Motion was filed pursuant to Rule 12(c), but refers to numerous documents outside the pleadings. If the Court considers these documents, the Motion is to be treated as a motion for summary judgment.[4] Regardless of whether the Court considers these documents, the Motion can and should be denied.

## ARGUMENT

## I.    Heredia's Motion Fails on the Merits

### A.    Diaz Adequately Alleges Violation of the Ali Act

As this Court knows, on November 9, 2020, Heredia removed this action to this Court. (Dkt. 1.) Now, one year later, Heredia contends: "[U]pon further investigation, development of facts, and research, [Heredia] now believes Plaintiff has failed to state

---

[4] With this Opposition, Diaz concurrently filed Objections to Heredia's request for Judicial Notice, which address the merits of relying on any documents outside the pleadings. If this Court decides to convert this Motion to a motion for summary judgment, Diaz requests that the Court expressly preclude Heredia from filing a second motion for summary judgment. This Court's Standing Order makes clear that "[n]o party may file more than one motion pursuant to Rule 56 of the Federal Rules of Civil Procedure regardless of whether such motion is denominated as a motion for summary judgment or summary adjudication." Standing Order ¶ 12.

an offense under the Ali Act *and that removal was in error*." (Mem. (Dkt. 82-1) at 2:21-23) (emphasis added.) Not only is this newfound revelation wrong, but it demonstrates Heredia's ongoing pattern of gamesmanship and unending efforts to delay this action. Since the Complaint was filed over 13 months ago, Heredia has jumped through various procedural hoops in an effort to avoid addressing the merits of this litigation. Apparently understanding that he cannot succeed on the merits, Heredia resorts to these procedural machinations. This must stop.

Case in point is Heredia's new-found assertion that there is no federal question jurisdiction. The Ali Act's express purpose is to protect boxers from abusive and exploitative business practices by promoters and managers. (FAC. (Dkt. 69) ¶¶ 22-31.) To that end, the Ali Act, among other things, makes it expressly "unlawful" for "a manager" to "receive compensation or other benefits from a promoter, except for amounts received as consideration under the manager's contract with the boxer." 15 U.S.C. § 6308(b)(1)(B). This is precisely what Diaz alleges occurred in his FAC: Heredia (the manager) received benefits from Golden Boy (the promoter) that were not part of any consideration Heredia was owed under a manager's contract with Diaz. (Id. ¶¶ 111-113.) The benefits were tickets to the highly anticipated fight in Las Vegas worth thousands of dollars. (Id. ¶ 112.) Diaz alleges that these tickets were not received by Heredia as consideration under Diaz's manager agreement and that Heredia actually *used* Diaz to obtain this illicit benefit. (Id. ¶¶ 111-113.) It is difficult to imagine a more clear-cut violation of the Ali Act.

Nevertheless, Heredia now contends that he cannot be liable under the Ali Act because he is not a party to the Contract. (Mem. (Dkt. 82-1) at 2:1-5.) This is wrong. Under the Ali Act, the term "manager" is defined as "a person who receives compensation for service as an agent or representative of a boxer." 15 U.S.C. § 6301(5). Thus, by definition, there is no requirement that there be any written contract or that the manager be licensed. Rather, a manager is simply someone (other than a licensed attorney) who receives compensation as a boxer's representative or agent.

1  These facts are plainly alleged. (FAC. ¶¶ 2-4; 37-38; 70-71.)[5]

2      Next, Heredia wrongfully posits that because the Contract is under the exclusive

3  jurisdiction of the Commission, "Plaintiff's Contract-based claims do not even allege

4  a cause of action under the Ali Act." (Mem. (Dkt. 82-1) at 20:5-6). But the Ali Act

5  claim is a statute-based claim and, thus, it is *not* a "contract-based claim." That the

6  Contract mandates arbitration and that the Commission has exclusive jurisdiction over

7  manager contracts has absolutely no bearing on this statutory claim.

8      In short, Diaz properly alleges a violation of the Ali Act against Heredia. (FAC

9  (Dkt. 69) ¶¶ 99-114.) Even if Heredia were accurate that "the Complaint does not list

10 any 'benefits' received ***other than the allegation concerning tickets***," (Mem. (Dkt.

11 No. 82-1) at 22:4-5) (emphasis added), which he is not, one illicit benefit is a violation.

12 Moreover, there is simply no requirement that Diaz demonstrate at the pleading stage,

13 without the benefit of discovery (a benefit that has been denied to him by Heredia's

14 purposeful delays), that "he did not receive certain monies owed to him or that he was

15 unable to secure a particular bout." (Mem. (Dkt. 82-1) at 21:26-28.) Nor is there a

16 requirement that he "specify the amount of money, what specific benefits he would

17 have received, or that he would have been entitled to, or eligible to receive, such money

18 or benefits." (Id. at 22:11-12.) These are additional terms invented by Heredia without

19 legal support. That is because no court has ever found that a plaintiff must allege

20 damages under the Ali Act with such extreme specificity. In fact, Diaz's counsel is

21 unaware of a single case in which a boxer's Ali Act claim was dismissed for failure to

22 plead specific damages—and despite having multiple opportunities, Heredia cites

23 none. The statute requires "economic injury," which Diaz has plainly alleged (*i.e*., he

24 "would have earned *more money and/or benefits* of his own from Golden Boy …)

25 (FAC ¶ 113.) This Court should maintain jurisdiction over this action.

26  _____

27  [5] Notably, during the Arbitration, Heredia testified under penalty of perjury that

28 he served as Diaz's manager. (See Arb. Tr. (Dkt. 83, Ex. 16) at 165:8-11; see also
Heredia Decl. (Dkt. 83, Ex. 17) at 294-95, ¶¶ 4 & 13).

1    The purported evidence that Heredia includes with the Motion, only strengthens

2  this conclusion. In arguing that Diaz did not allege a violation of the Ali Act, Heredia

3  boldly states:

4              Plaintiff's attempt to distract by alleging an unclear, improperly-

5              pled fraudulent scheme involving a "paper manager" does not

6              transform Ralph Heredia into a "manager" nor does it show that

7              he received any direct or indirect benefit from the promoter,

8              Golden Boy. Heredia notes that while a court assumes the truth

9              of the factual allegations made in a complaint, it is not required

10             to tumble down the rabbit hole of Plaintiff's spun yarn

11             concluding that Moses Heredia was only a "paper manager."

12  Not only are the allegations in the FAC clear, as detailed above, but Heredia testified

13  that he was Diaz's manager. (Arb. Tr. (Dkt. 83, Ex. 16) at 165:8-11 (when questioned

14  under penalty of perjury whether he was Diaz's manager, Heredia testifies: "Yes.");

15  see also Heredia Decl. (Dkt. 83, Ex. 17) at 294-95, ¶¶ 4 & 13 (Heredia declaring under

16  penalty of perjury: "***Moses and I served as his managers*** on this contract; and "JoJo

17  was very happy with ***our*** management of his career and ***we*** began discussions on

18  continuing ***our*** managerial relationship during Christmas of 2016")) (emphasis added).)

19  Such clear admissions eradicate any assertion that Diaz is "spinning yarn." Diaz has

20  plainly and properly pled, and his Arbitration testimony corroborates, a claim for

21  violation of the Ali Act against Heredia.

22    Even if the Court finds that this claim fails, which it should not, the Court should

23  exercise its discretion to retain jurisdiction over the remaining state court claims. See

24  Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349-357 (1988) (stating that in

25  exercising its discretion, a court should consider "the principles of economy,

26  convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."

27  Nishimoto v. Federman–Bachrach & Assocs., 903 F.2d 709, 715 (9th Cir. 1990). This

28  case has been with this Court for more than one year. Fundamental fairness and

11

1   principles of economy dictate that this Court retain jurisdiction.

2   **B.    Diaz Adequately Alleges Fraud Based on Heredia's Concealment of**

3   **Material Facts**

4   The elements of fraud in California are well known. They are: "(a)

5   misrepresentation (false representation, concealment, or nondisclosure); (b)

6   knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d)

7   justifiable reliance; and (e) resulting damage." Lazar v. Super. Ct., 12 Cal. 4th 631, 638

8   (1996). There are multiple types of fraud. "Not every fraud arises from an affirmative

9   misstatement of material fact. The principle is fundamental that deceit may be negative

10  as well as affirmative; it may consist of suppression of that which is one's duty to

11  declare as well as of the declaration of that which is false.'" Lovejoy v. AT&T Corp.,

12  92 Cal. App. 4th 85, 95 (2001). "[I]t is . . . established by statute that intentional

13  concealment of a material fact is an alternative form of fraud and deceit equivalent to

14  direct affirmative misrepresentation." Stevens v. Super. Ct., 180 Cal. App. 3d 605, 608-

15  09 (1986) (citing Cal. Civ. Code §§ 1572(3), 1709, 1710(3)).  To state a claim for fraud

16  based on concealment, a plaintiff must allege: "(1) the defendant must have concealed

17  or suppressed a material fact, (2) the defendant must have been under a duty to disclose

18  the fact to the plaintiff, (3) the defendant must have intentionally concealed or

19  suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have

20  been unaware of the fact and would not have acted as he did if he had known of the

21  concealed or suppressed fact, and (5) as a result of the concealment or suppression of

22  the fact, the plaintiff must have sustained damage." Lovejoy, 92 Cal. App. 4th 85, 96.

23  The FAC satisfies all of these elements. It alleges multiple material facts that

24  Heredia concealed or suppressed from Diaz, including that he was not licensed by the

25  Commission as a boxing manager (perhaps the *most* material fact a boxing manager

26  could conceal from his client), that he had a criminal history including a felony

27  conviction, that he was taking benefits from Golden Boy at Diaz's expense, and that

28  he was stealing from Diaz, among other facts.  (FAC ¶¶ 4, 39, 44-46, 74.) It alleges

12

1  that: Heredia had a duty to disclose these facts to Diaz because he was his boxing
2  manager and a fiduciary (id. ¶¶ 2-3, 17, 30, 109-114); Heredia intentionally concealed
3  these facts with the intent to defraud Diaz (id. ¶¶ 74-75); Diaz was unaware of these
4  facts and would not have allowed Heredia to serve as his boxing manager, would not
5  have allowed him access to his business and financial affairs, and would not have
6  allowed him to steer his boxing career had he known these facts (id. ¶ 77); and Diaz
7  was damaged by Heredia's conduct. (Id. ¶¶ 78-79, 106.)[6]

8        Heredia's arguments to the contrary are unavailing. First, he reiterates his false
9  assertion that Diaz's participation in the Arbitration somehow precludes the fraud
10  claim against Heredia (notwithstanding that Heredia was not a party to the Arbitration
11  nor subject to the Commission's jurisdiction under the arbitration clause). (Mem. (Dkt.
12  82-1) at 7:17-22). As detailed above, this Court is the proper forum for Diaz to bring
13  claims against Heredia. Next, Heredia asserts that Diaz fails to allege the materiality
14  of the concealed facts, that Heredia had a duty to disclose the concealed facts, or that
15  Heredia intentionally concealed the facts with the intent to defraud. (Mem. (Dkt. 82-1)
16  at pp. 6-8.) But all of these elements are clearly alleged in the FAC at the paragraphs
17  cited above. Heredia also claims that Diaz fails to sufficiently allege his damages
18  suffered as a result of the fraud ignoring the fact that District Courts in California have
19  long held that while Rule 9(b) requires pleading the circumstances of fraud with
20  particularity, fraud damages themselves need not be pleaded with such specificity. See,
21  e.g., Menjivar v. Trophy Props. IV DE, LLC, 2006 WL 2884396, at *13 (N.D. Cal.
22  Oct. 10, 2006) ("While Rule 9(b) requires pleading the circumstances of fraud with
23  particularity, defendants cite no case law, and the Court finds none, requiring that fraud
24  damages be pled with more specificity than required under normal notice pleading");
25  Andrews Farms v. Calcot, Ltd., 527 F. Supp. 2d 1239, 1252 (E.D. Cal. 2007) (noting
26  the lack of "any authority that Rule 9(b) requires more particular pleading for the

27
28  [6] Diaz's fraud cause of action, like every cause of action in the FAC, incorporates by reference all the allegations in the FAC that precede it.  (FAC ¶ 72.)

13

element of damages"); <u>Wright v. Old Gringo Inc.</u>, 2018 WL 6568199, at *15-16 (S.D. Cal. Dec. 13, 2018) ("In federal court, Rule 9(b) requires the elements of fraud to be pleaded with particularity, which means the circumstances of the fraud. … Rule 9(b), however, does not require that fraud damages themselves be pleaded with specificity.") Nonetheless, Diaz pleads *both* the circumstances of the fraud *and* his damages with particularity. He alleges (1) the specific factual content that was concealed from him (*e.g*., Heredia's lack of licensure by the Commission, his felony conviction, and his intention to steal from Diaz) (FAC ¶ 74); (2) specific times this occurred (*e.g*., in February 2017 when Heredia intentionally did not sign the Contract submitted to the Commission for approval, but did sign the Golden Boy Agreement to formalize that relationship, and in September 2020 when Heredia repossessed the Lexus) (<u>id.</u> ¶¶ 44-46, 53, 64, 91); (3) out-of-pocket damages, including the additional 2% fee (on top of the 18% manager's fee) and the money he invested into the Lexus that Heredia stole from him (<u>id.</u> ¶¶ 53, 60-61); and (4) that Diaz would have earned *more* money and been *better* able to advance his career if he had competent and qualified representation. (<u>Id.</u> ¶¶ 105, 111-113.) Simply put, fraud is sufficiently pled.

## C.  Diaz Adequately Alleges Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by that breach." <u>William Morris Endeavor Ent't, LLC v. Writers Guild of America</u>, 478 F. Supp. 3d 932, 940 (C.D. Cal. 2020). "Managers have a fiduciary relationship with the boxers they manage …" <u>Golden Boy Promotions LLC v. Haymon</u>, 2017 WL 460736, at *1 (C.D. Cal. Jan. 26, 2017). No contractual relationship is necessary. <u>Stanley v. Richmond</u>, 35 Cal. App. 4th 1070, 1077 (1995). An representative's failure to disclose material terms to its principal is a classic breach of fiduciary duty. <u>See</u> <u>William Morris</u>, 478 F. Supp. 3d at 940 (citing <u>Knutson v. Foster</u>, 25 Cal. App. 5th 1075, 1094-95 (2018) (attorney agent's concealment of material facts from his athlete client, including conflicts of interest and terms relating to contract negotiations, constituted breach of

fiduciary duty)). Diaz alleges all of the necessary elements. He alleges that Heredia owed him a fiduciary duty as his boxing manager, which is an indisputable legal principle. <u>Haymon</u>, 2017 WL 460736, at *1. Diaz also alleges that Moses Heredia was only his "paper manager," while Heredia was his *true* and *de facto* manager (FAC ¶¶ 37-38, 42, 45-47, 58, 70-74.) A fact that was confirmed Heredia himself testified under penalty of perjury that he served as Diaz's manager. (<u>See</u> Arb. Tr. (Dkt. 83, Ex. 16) at 165:8-11; <u>see</u> <u>also</u> Heredia Decl. (Dkt. 83, Ex. 17) at 294-95, ¶¶ 4 & 13.) And Diaz alleges that Heredia breached his fiduciary duty in various ways and that Diaz was damaged as a result. (FAC ¶¶ 17, 73, 83, 85). No more is required.

Ignoring his own testimony, Heredia now asserts: "This claim for breach of fiduciary duty falls flat for reasons already litigated in the Arbitration." (<u>See</u> Mem. (Dkt. 82-1) at 10:18-19.) Again, this claim could not have been litigated in the Arbitration, because Heredia was not a party to the Arbitration. During the Arbitration, Heredia's counsel represented that Heredia was not the "manager at issue." To be certain, a claim for fiduciary duty as to Heredia has not been litigated. Any assertion otherwise is flat out wrong. Indeed, the FAC specifically alleges that Heredia had Moses sign the contract precisely to try to avoid legal scrutiny—it would be a perverse result if the Court allowed him to do exactly that.

### D.    Diaz Adequately Alleges an Alleged Implied-In-Fact Contract Relating to the Lexus

Heredia next argues that Diaz's breach of implied-in-fact contract claim should be dismissed because the parties' agreement relating to the Lexus was express, not implied. (Mem. (Dkt. 82-1) at 11:10-15.) Putting aside that this argument is disproven by the facts, it is also irrelevant as a matter of law. The manner in which Diaz labels his breach of contract claim has no bearing on the substance of the allegations. "It is an elementary principle of modern pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts

15

1  alleged rather than from the title of the pleadings." <u>Jaffe v. Carroll</u>, 35 Cal. App. 3d 53,

2  57 (1973). Whether the parties' contract was implied through their conduct or in part

3  verbally expressed does not affect Diaz's allegations regarding Heredia's breach of that

4  contract. It certainly is no basis to dismiss the claim—which Heredia even tacitly

5  acknowledges later in his brief. (Mem. (Dkt. 82-1) at 1:16-17.) ("Breach of contract,

6  express or implied, requires the *same elements* to be pleaded.") (citing <u>Division of

7  Labor Law Enforcement v. Transpacific Transp. Co.</u>, 69 Cal. App. 3d 268, 275 (1977).)

8       Diaz adequately pleads every element of a breach of contract claim. "A cause of

9  action for breach of contract requires pleading of a contract, plaintiff's performance or

10 excuse for failure to perform, defendant's breach, and damage to plaintiff resulting

11 therefrom." <u>McKell v. Wash. Mutual, Inc.</u>, 142 Cal. App. 4th 1457, 1489 (2006).  Diaz

12 alleges that (1) a contract existed between him and Heredia under which Heredia

13 "loaned" the Lexus to Diaz until Diaz could pay it off from his boxing proceeds. (FAC

14 ¶¶ 63-65, 74, 78); (2) Diaz performed by paying Heredia $25,000.00 for the vehicle

15 (<u>id.</u> & ¶¶ 63, 88); (3) Heredia breached the contract by having the vehicle repossessed

16 and taking it back for himself, in violation of the parties' agreement that Diaz could

17 use the vehicle as his own and then would own it after paying it off (<u>id.</u> ¶ 91); and (4)

18 the resulting damage to Diaz was his loss of the vehicle and approximately $29,000.00

19 that he had invested into the Lexus (<u>id.</u> ¶ 92.)

20      Heredia contends that Diaz does not allege with sufficient detail the "elemental

21 contract terms," including the "how often Plaintiff must make payments" and "the

22 amount of each payment terms of the repayment obligation." (Mem. (Dkt. 82-1) at

23 11:26-12:4.) This is not a requirement for a breach of contract claim (and Heredia

24 cannot point to authority in support of his argument). Heredia purchased the vehicle

25 for Diaz's benefit, "loaned" the vehicle to Diaz until he could pay it off, then accepted

26 Diaz's payment of $25,000.00. Any additional issues regarding Heredia's perceived

27 rights to the vehicle are factual issues that are not appropriate for resolution on a motion

28 for judgment on the pleadings. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215-17 (9th Cir.

16

2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").

Heredia also claims (without any basis) that his actions did not constitute a breach because he was within his legal right to repossess the vehicle. (Mem. (Dkt. 87-1) at 12:10-14.)[7] Heredia apparently would like the Court to believe that he is a licensed lender registered with the State of California to issue auto loans and repossess vehicles. Whether there is any truth to this contention will be examined in discovery. But Diaz clearly alleges that Heredia did *not* have the right to repossess the vehicle, that Diaz was *not* in default (indeed, there is no dispute that he paid Heredia $25,000.00 for the vehicle), and that Heredia's actions *did* constitute a breach of the parties' agreement. (FAC ¶¶ 63-65, 74, 78, 91.) Diaz's allegations are sufficient to state a claim for breach of contract under any label.

**E.    Diaz Adequately Alleges Conversion of Specific Amounts of Money and Personal Property**

"Conversion is the wrongful exercise of dominion over the property of another." Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 208 (2014). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Id. "Conversion is a strict liability tort." Id. To constitute conversion, "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Oakdale Vill. Group v. Fong, 43 Cal. App. 4th 539, 544 (1996). "Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or

---

[7] Heredia improperly relies on California Commercial Code section 9609. But this statute applies to a secured party who either goes through the judicial process or proceeds without breach of the peace. It is entirely inapplicable to this case.

1   bill be earmarked." <u>Welco Elecs.</u>, 223 Cal. App. 4th at 209 (citing <u>Haigler v. Donnelly</u>,

2   18 Cal. 2d 674, 681 (1941)). The theft of money is a classic conversion claim, as

3   Heredia's own cited authority recognizes. (Mem. (Dkt. 87-1) at 12:24-13:3) (citing <u>Lee</u>

4   <u>v. Hanley</u>, 61 Cal. 4th 1225, 1240 (2015)).

5        Heredia's contention that Diaz has not adequately alleged conversion can be

6   easily dispensed with the simple fact that Diaz alleges he had $300.00 of cash in the

7   Lexus that Heredia repossessed on September 8, 2020, that Heredia stole that money,

8   and that Diaz was damaged. That by itself is sufficient to demonstrate conversion.

9   (FAC ¶¶ 64-65 & 95b.) This claim was not addressed during the Arbitration. (Arb.

10  Decision (Dkt. 83, Ex. 5) at 13:7-12 ("[t]his dispute [over vehicle repossession] is a

11  component of Boxer's lawsuit against Ralph Heredia and does not involve Manager,

12  who is not a named party in that civil lawsuit")). The Court's analysis can end here.

13       What is more, Diaz alleges additional, specific sums of money and personal

14  property that he owned or had the right to possess that were converted by Heredia,

15  including: (i) the $29,000.00 that Diaz invested in the Lexus that was not returned to

16  him when the vehicle was repossessed; (ii) the extra 2% taken from Diaz's purse (on

17  top of the 18% manager's fee); and (iii) the tickets that were provided by Golden Boy

18  *to Diaz* for the purpose of his family and friends attending his fights that were taken by

19  Heredia. (<u>Id.</u> ¶¶ 64-65, 67, 71, 95.) Heredia's arguments raise numerous factual issues

20  that will be explored during discovery. Heredia himself states that the allegation that

21  Heredia converted tickets that were supposed to go to Diaz's family and friends is

22  "factually and legally incorrect." (Mem. (Dkt. 82-1) at 15:14). Heredia then proceeds

23  to argue "facts" that are entirely unsupported and plainly disputed by the FAC. (Mem.

24  (Dkt. 82-1) at 15:16-21). Such argument is improper for resolution of a motion for

25  judgment on the pleadings and demonstrates that the Motion should be denied given

26  such factual disputes. <u>Gen. Conference Corp.</u>, 887 F.2d at 230 (holding that judgment

27  on the pleadings should only be granted when there are no issues of material fact and

28  the moving party is entitled to judgment as a matter of law.)

1        Additionally, Heredia's argument regarding the Lexus is nonsensical (in
2   addition to being a factual argument)—if it is his position that he had the right to
3   possess the Lexus and could take it back at any time, he cannot justify keeping Diaz's
4   $29,000.00 invested into the vehicle. Since he accepted (and kept) the money, taking
5   the Lexus back for himself necessarily interfered with Diaz's right to possess it. See,
6   e.g., Cerra v. Blackstone, 172 Cal. App. 3d 604, 609 (1985) (recognizing that a plaintiff
7   has the right to possession of a vehicle for which he has paid money *even where legal*
8   *title remains with the seller*).

9        Finally, Heredia makes assertions regarding the corporate structure of Heredia
10  Boxing Management ("HBM")—also an unlicensed manager who illegally received
11  proceeds from Diaz's purse and not a party to the Contract—and Heredia's alleged
12  work arrangement with Moses Heredia. (Mem. (Dkt. 82-1) at 14:8-15.) Heredia
13  supports his factual arguments with testimony that was given by *Heredia* during the
14  Arbitration. (Id. at 14:18-15:4 (arguing that Heredia's testimony in the Arbitration
15  "conclusively demonstrates" that Heredia only worked through his licensed manager
16  brother, Moses Heredia).) In other words, Heredia relies on his own self-serving
17  testimony as evidentiary support. Heredia's disputed factual arguments come nowhere
18  close to meeting his requisite burden to prevail on a motion for judgment on the
19  pleadings. "For the purposes of the motion, the allegations of the non-moving party
20  must be accepted as true, while the allegations of the moving party which have been
21  denied are assumed to be false." Hal Roach Studios, Inc. v. Richard Feiner and Co.,
22  Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

23       Moreover, Heredia's reliance on his own Arbitration testimony to "conclusively
24  demonstrate" factual veracity is sorely misguided. Even if this Court were to grant
25  Heredia's request for judicial notice of the Arbitration Transcript, it would not do so
26  for purposes of the acceptance of the truth of this testimony. Courts may judicially
27  notice facts of public record in a judicial or administrative proceeding that "direct[ly]
28  relat[e] to the matters at issue," such as the existence of a motion or of representations

made therein. <u>United States v. Southern California Edison Co</u>., 300 F.Supp.2d 964, 973 (E.D. Cal. 2004) (quoting <u>United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992). Put another way, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 690 (9th Cir. 2001). To the extent Heredia seeks judicial notice of the veracity or authenticity of any arguments or conclusions of fact or law contained in documents, the request should be denied. <u>S. Cal. Edison Co</u>., 300 F. Supp. 2d at 975-76 (judicially noticing the existence of a document entitled "Forest Service Handbook" but not conclusions of fact or law within it). Heredia's reliance on his own testimony for the truth of the statements asserted is clearly improper.

Simply put, all of the factual arguments that Heredia raises can and will be addressed through discovery. They are, however, inappropriate on this Motion. And, if the Court were to actually include the Arbitration's "entire record," thereby converting the Motion to a motion for summary judgment, this record is replete with disputed facts.[8] (Dkt. 83.) In sum, whether the Court considers the Motion with or without inclusion of the Exhibits, it should be denied.

### F.    Diaz Adequately Alleges Tortious Interference with His Business Relationship with Golden Boy

The tort of interference with prospective economic advantage occurs if the defendant disrupts the business relationship of another by improper methods which fall outside the boundaries of fair competition. <u>Baldwin v. Marina City Props., Inc.</u>, 79 Cal. App. 3d 393, 406 (1978). To establish such interference, the plaintiff must show (1) an existing business relationship *or* the existence of a prospective business relationship

---

[8] Heredia seeks judicial notice of "the entire record" in the Arbitration: This vague and ambiguous request is addressed in Diaz's Objections to Heredia's Request for Judicial Notice, filed concurrently herewith.

1   containing the probability of future economic benefit to the plaintiff, (2) knowledge by

2   the defendant of the existing or prospective business relationship, (3) intentional acts

3   on the part of the defendant designed to disrupt the relationship, (4) actual disruption

4   of the relationship, and (5) damages to the plaintiff proximately caused by the acts of

5   the defendant. Id. at 407; Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985).

6          Heredia argues that Diaz fails to satisfy the first and third elements. (Mem. (Dkt.

7   57-1) at 22:6-23:20.) Heredia is wrong. As to the first element, Diaz clearly alleges an

8   existing business relationship between himself and boxing promoter Golden Boy.

9   (FAC ¶¶ 43, 74, 101, 103.) Heredia's attempt to frame Diaz's claim as one of

10  interference in a sporting contest like in Youst v. Longo, 43 Cal. 3d 64 (1987), while

11  perhaps appealing on the surface because Diaz participates in sporting contests, is not

12  persuasive. Unlike the plaintiff in Youst, who alleged that his horse was literally

13  interfered with during a horserace thereby preventing him from having a chance to win,

14  Diaz here alleges interference with a business relationship which is specifically

15  designed to provide him with the economic benefits of more money through his own

16  actions and the actions of his representatives, such as his boxing manager. (See FAC

17  ¶¶ 104-105.) There is nothing speculative about these benefits—they are set forth in

18  Diaz's promotional agreement with Golden Boy—and Heredia's opportunity to argue

19  that these benefits were not reasonably expected even absent his interference will come

20  later, not on a motion for judgment on the pleadings.

21         As to the third element (intentional acts), Diaz alleges more than "merely …

22  repetitive statements that defendant did not vigorously negotiate with Golden Boy" or

23  that "Mr. Heredia failed to adequately protect or advance Plaintiffs' interests." (Mem.

24  (Dkt. 82-1) at 17:22-24.) Diaz alleges at least two specific intentional wrongful acts:

25  i.e., (1) Heredia misrepresented on Diaz's promotional agreement with Golden Boy

26  that he was Diaz's "manager" along with his half-brother Moses and signed the

27  agreement under that false pretense (FAC ¶ 56, 102); and (2) Heredia represented to

28  Golden Boy that Diaz wanted tickets to a highly anticipated fight in Las Vegas (when

Diaz was not fighting on the card) and then complained to Golden Boy about the quality of the tickets, stating that *Diaz* was upset the tickets were not floor seats and felt that Golden Boy was not taking care of Diaz's "team" (id. ¶ 67.) There are both direct examples of intentional wrongful acts by Heredia that interfered with Diaz's relationship with Golden Boy.

### G.   Diaz Adequately Alleges Quantum Meruit

California law has long recognized that the "underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.'" Maglica v. Maglica, 66 Cal. App. 4th 442, 449 (1998) (citing 1 Witkin, Summ. of Cal. Law, Contracts § 91, at 122 (9th ed. 1987)). "To state a claim for quantum meruit, the plaintiff need only "prove that (1) he rendered services to the defendant's benefit and (2) the defendant would be unjustly enriched if the plaintiff was not compensated." Atencio v. TuneCore, Inc., 2017 WL 10059254, at *2 (C.D. Cal. Aug. 17, 2017). Diaz has done that. He alleges that he rendered boxing services to Heredia for his benefit and that Heredia was unjustly enriched by the extra 2% fee he and John Doe, Esq. took that was not allowed under *any* contract, as well as whatever portion of Diaz's 18% manager's fee Heredia took because Heredia was *not a party* to the Contract—his half-brother Moses was. (FAC ¶¶ 116b-c.)

Heredia's argument for dismissal of Diaz's quantum meruit claim is disingenuous. Ignoring this Court's ruling that Heredia is not a party to the Contract, Heredia cites In re De Laurentiis Ent't Group, Inc., 963 F.2d 1269 (9th Cir. 1992), for the proposition that a plaintiff cannot maintain a quantum meruit claim where there is a contract between the parties. (Mem. (Dkt. 57-1) at 16.) De Laurentiis, however, expressly recognized the long-established principle that plaintiffs are "entitled to pursue both contract claims and quantum meruit claims arising out of the same transaction" so long as they "seek[] only one recovery." 963 F.2d at 1272 n.3 (citing

22

<u>Haggerty v. Warner</u>, 115 Cal. App. 2d 468, 475 (1953)). Diaz seeks only one recovery in connection with the implied contract he alleges (whether in contract or in quantum meruit): the return of approximately $29,000.00. (FAC ¶¶ 116, 119.)

It is also well settled that a plaintiff may plead alternative theories of recovery in a complaint. Rule 8(d) specifically permits the pleading of alternative or even inconsistent claims and states that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." See Fed. R. Civ. P. 8(d)(2)-(3). Thus, courts in the Central District consistently reject challenges like the one levied by Heredia here—particularly where the defendant also disputes the nature of the contract alleged, like Heredia does. See, e.g., <u>Keen Consulting Group v. Rugged Events Holdings, LLC</u>, 2019 WL 6646701, at *3 (C.D. Cal. July 11, 2019) ("Here, Defendants deny the existence of any express contract yet argue that because Plaintiffs assert the existence of a contract, they cannot seek recovery under the theory of quantum meruit. However, Federal Rule of Civil Procedure 8(d) specifically permits the pleading of alternative and even inconsistent claims. … Moreover, this Court has not explicitly determined the existence of a valid express contract but rather only that the FAC alleges facts plausibly supporting such a claim. Accordingly, Defendants' Motion is DENIED as to the second cause of action."); <u>Atencio</u>, 2017 WL 10059254, at *2 (denying motion to dismiss quantum meruit claim while concluding that plaintiff "sufficiently alleged the existence of a contract and [defendant's] breach of that contract" because defendant disputed the terms of the contract and availability of a contractual remedy and "[a]t the pleading stage, the Court will not venture to adjudicate these issues").

## H.     Diaz States a Right to an Accounting

Heredia's Motion correctly states the standard for an accounting, but then ignores the allegations in Diaz's FAC that easily satisfy that standard. "A cause of action for accounting need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff." <u>Brea v. McGlashan</u>, 3 Cal. App. 2d 454, 460 (1934). A fiduciary relationship is not

1  even necessary to state a cause of action for accounting, but it is a prime example of

2  the type of relationship that qualifies for such relief.  <u>Teselle v. McLoughlin</u>, 173 Cal.

3  App. 4th 156, 179 (2009). Diaz expressly alleges that he was in a fiduciary

4  relationship with Heredia. (FAC ¶¶ 3, 17, 73, 83.) He alleges that a balance of money

5  is due to him, and the precise amount cannot be ascertained without an accounting.

6  (<u>Id.</u> ¶ 123.) That is all that is required to state an accounting cause of action.

**CONCLUSION**

8       For all the foregoing reasons, the Court should deny Heredia's motion for

9  judgment on the pleadings.

11  Dated:  November 19, 2021                **VGC, LLP**

13                                           By: ___/s/ Gina Simas_____

14                                           James L. Greeley
                                             Diyari Vázquez
15                                           Gina Simas
                                             Attorneys for Plaintiff
16                                           JOSEPH DIAZ, JR.

# CERTIFICATE OF SERVICE

I, Diyari Vázquez, hereby certify that on November 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

Dated: November 19, 2021                    By:   */s/ Diyari Vázquez*
                                                      Diyari Vázquez