James L. Greeley (SBN 218975)
  jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
  dvazquez@vgcllp.com
Gina Simas (SBN 205367)
  gsimas@vgcllp.com
**VGC, LLP**
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 272-9885

Attorneys for Plaintiff
JOSEPH DIAZ, JR.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> RALPH HEREDIA, true name RAFAEL HEREDIA TARANGO, a/k/a RAFAEL HEREDIA, a/k/a RAFAEL BUSTAMANTE; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 5:20-cv-02332-JWH-KK <br><br> HON. KENLY KIYA KATO <br><br> **[DISCOVERY MOTION]** <br><br> **DECLARATION OF DIYARI VAZQUEZ IN SUPPORT OF MOTION FOR PROTECTIVE ORDER; AND PLAINTIFF'S REQUEST FOR SANCTIONS IN THE AMOUNT OF $ $13,297.50** <br><br> Date: June 16, 2022 <br> Time: 10:00 a.m. <br> Courtroom: 3 or 4 <br> Judge: Hon. Kenly Kiya Kato <br><br> Discovery Cut-Off: July 8, 2022 <br> Pre-Trial Conference: November 18, 2022 <br> Trial: December 5, 2022 |

VAZQUEZ DECLARATION

I, Diyari Vázquez, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am the Head of Litigation at VGC, LLP, counsel of record for Plaintiff Joseph Diaz, Jr. I have personal knowledge of the following facts and, if called as a witness, I could and would testify competently with respect thereto.

2. I make this declaration in support of Diaz's Motion for Entry of a Protective Order ("Motion") and in support of Diaz's request for sanctions for having to file this Motion.

3. On January 24, 2022, Defendant Ralph Heredia ("Heredia") served his Requests for Production ("RPDs").

4. As the Court knows, Diaz is a well-known boxer and this case is being followed by the media—largely due to Defendants and their counsel feeding the media stories. Attached as **Exhibit A** is a true and correct copy of Google search results showing a number of news articles involving Defendants' counsel, Mr. Montalvo, making statements to the press about Diaz and this (and other) litigation related to Diaz. Attached as **Exhibit B** is a true and correct copy of screenshots of the "Press" section of The Federal Practice Group's website with blogs that relate to press statements made by Mr. Montalvo related to Diaz and this (and other) litigation related to Diaz.

5. Given that the documents requested by Defendant Heredia largely contain confidential information, and Defendants' and his counsel's propensity to improperly publicize Diaz's private and confidential information, Diaz requested a protective order be entered in this case before his responses were due.

6. To that end, on February 2, 2022, Diaz sent Defendants a draft protective order modeled after the Central District's model order. Attached as **Exhibit C** is a true and correct copy of Ms. Simas' email to Defendant's counsel attaching the proposed protective order. Defendant's counsel did not respond.

7. On February 4, 2022, my firm followed up with Defendants' counsel about the protective order. Attached as **Exhibit D** is a true and correct copy of Ms.

Simas' email to Defendant's counsel. Defendant's counsel did not respond.

8. On February 9, 2022, my firm followed up a third time with Defendants' counsel about the protective order. Attached as **Exhibit E** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

9. On February 23, 2022, my firm followed up for the fourth time with Defendants' counsel about the protective order. Attached as **Exhibit F** is a true and correct copy of Ms. Simas' email to Defendants' counsel. Defendants' counsel did not respond.

10. Having heard nothing from Defendants, on February 25, 2022, Diaz timely served his objections and responses to the RPDs stating that documents "will be produced after the Court has entered the Protective Order." In the cover email, my firm once again followed up on the protective order and wrote: "We await entry of the protective order to produce confidential documents. Please provide any edits to the protective order so that we can finalize, get it entered and produce the documents. To the extent there are documents that are not confidential, we will produce those under separate cover." Attached as **Exhibit G** is the February 25, 2022 cover email.

11. On March 9, 2022, my firm followed up for the sixth time with Defendants' counsel about the protective order. Attached as **Exhibit H** is a true and correct copy of Ms. Simas' email to Defendants' counsel. Defendants' counsel did not respond.

12. On March 14, 2022, my firm followed up for the seventh time with Defendants' counsel about the protective order and requested to meet and confer on the filing of a motion for a protective order. Attached as **Exhibit I** is a true and correct copy of Ms. Simas' email to Defendants' counsel.

13. On March 15, 2022, Defendants' counsel finally responded stating that they would provide a draft of the protective order on the next day. On March 16, 2022, Defendants provided edits to the protective order. Attached as **Exhibits J and K** are true and correct copies of Defendants' counsel's emails on May 15 and 16, 2022.

- 2 -

14. A few hours later, on March 16, 2022, my firm returned redlined revisions to the protective order ensuring that it conformed with the Central District's model protective order. Attached as **Exhibit L** is a true and correct copy of Ms. Simas' email to Defendants' counsel and the redlined protective order.

15. On March 18, 2022, my firm followed up with Defendants' counsel about the protective order. Attached as **Exhibit M** is a true and correct copy of Ms. Simas' email to Defendants' counsel. Defendants' counsel did not respond.

16. On March 22, 2022, my firm again followed up with Defendants' counsel about the protective order. Attached as **Exhibit N** is a true and correct copy of Ms. Simas' email to Defendants' counsel.

17. On March 22, 2022, Defendants' counsel responded that "[t]he sole objection we have is that the confidentiality should not run in perpetuity. Our position is that confidentiality expires when used in court and therefore becomes public." The next day, Ms. Simas responded: "We see no reason why any protected material should be disclosed to the public. We also fail to understand why you would want this protected material disclosed to the public." Ms. Simas included in her email the language that she proposed and that is included in the Central District's model protective order. Attached as **Exhibit O** is a true and correct copy of Ms. Simas' correspondence with Defendants' counsel on March 22 and March 23, 2022.

18. On March 28, 2022, my firm followed up with Defendants' counsel about the protective order. Attached as **Exhibit P** is a true and correct copy of Ms. Simas' email to Defendants' counsel. Defendants' counsel did not respond.

19. On April 4, 2022, my firm followed up yet again with Defendants' counsel about the protective order, requested to meet and confer about this and other issues, and stated that Diaz intended to file a motion for a protective order. In response, Defendants' counsel stated that he would be available on April 13, 2022 for a meet and confer call and would provide a substantive letter prior to that call. Attached as **Exhibit Q** is a true and correct copy of Ms. Simas' and Defendants' counsel correspondence

on April 4 and April 7, 2022.

20. On April 11, 2022, Defendants for the first time raised issues with Diaz's RPD responses, and the parties participated in a telephonic meet and confer on April 13, 2022. At that time, the parties agreed that Diaz would produce non-confidential documents and Defendants would provide the protective order two days after Diaz's production of non-confidential documents so that Diaz could produce confidential documents. Mr. Montalvo agreed during the call that this lawsuit involves confidential information for which a protective order is necessary.

21. On April 20, 2022, Diaz produced non-confidential documents and reminded Defendant "[o]nce we have finalized the protective order, we will produce any confidential documents…. Please let us know." Attached as **Exhibit R** is a true and correct copy of my email to Defendant's counsel. My firm never heard back from Defendants' counsel.

22. Instead, on April 29, 2022, Defendant served a 353-page Joint Stipulation, replete with fabrication, asking the Court to unnecessarily spend time and resources to resolve this dispute (and an absurd dispute regarding RFAs). Attached as **Exhibit S** is a true and correct copy of Defendants' counsel April 29 email.

23. In the Joint Stipulation, Defendant Heredia admits that he "realizes some of those documents or communications [requested in discovery] may concern Diaz' [sic] mental or physical health, or certain business arrangements, and therefore may be produced pursuant to a protective order." In the Joint Stipulation, Defendant Heredia asks the Court to order Diaz to take the same exact action that Diaz has offered over and over (i.e., produce "all confidential documents and information within three days after the parties agree to a protective order."). Attached as **Exhibit T** is a true and correct copy of the relevant portions of the Joint Stipulation.

24. In Mr. Montalvo's declaration served in support of the Joint Stipulation, Mr. Montalvo agrees that "some information … such as medical and certain financial information" should only be disclosed subject to a protective order. Attached as

- 4 -

**Exhibit U** is a true and correct copy of Mr. Montalvo's declaration.

25. In response to Defendant's surprise Joint Stipulation, on April 29, 2022, I emailed Defendant's counsel expressing my "complete surprise" to receive a Joint Stipulation. I explained, yet again, how the disputes could be easily resolved. I requested that Defendant withdraw the Joint Stipulation, and if Defendant Heredia was unwilling to reconsider after my plea, that he provide the Joint Stipulation in Word format. Attached as **Exhibit V** is a true and correct copy of my email to Defendant's counsel.

26. Defendants' counsel waited until May 2, 2022 to respond as follows: "Our refusal to agree is not lack of good faith, but an unwillingness to consider your positions compliant with your discovery obligations… The joint stipulation itself contains a proposed resolution." It did not (and, in any event, it would not be appropriate for Defendants; counsel to present a "proposed resolution" *for the first time* in a motion to compel). That same day, I again pleaded with Defendants' counsel to withdraw the Joint Stipulation given its blatant misrepresentations and Defendant Heredia's failure to meet and confer in good faith. Attached as **Exhibit W** is a true and correct copy of my email correspondence with Defendants' counsel on May 2, 2022. Defendants' counsel did not respond.

27. The Joint Stipulation was the first time that Defendant Heredia communicated to my firm that they took any issues with Diaz's non-confidential document production.

28. Despite my repeated pleas, Defendant Heredia and his counsel refused to withdraw the Joint Stipulation and forced me to spend **20.4 hours** opposing said Joint Stipulation that I timely returned on May 5, 2022. As of the date of filing this Motion, however, Defendant Heredia has not returned the Joint Stipulation for final review and filing.

29. On May 12, 2022, in a final attempt to prevent filing of this Motion, I once again requested that Defendants provide the signed Stipulated Protective Order that

they agreed was necessary in this case. Defendants did not respond until nearly 24 hours after Diaz requested that response and, ***for the first time***, Defendants represented that they would now agree to the Stipulated Protective Order if it was "a narrowly tailored protective order specifically protecting medical and health records. Bank statements and other financial records can have proper redaction of sensitive account numbers and other identifying information. The previously prepared protective order remains overbroad and we cannot agree to it." In response, Diaz reiterated that the proposed Stipulated Protective Order is modeled after this Court's Sample Protective Order and asked for any redlines that Defendants had to the protective order. Defendants did not respond. Attached as **Exhibit X** is a true and correct copy of my email.

30. Instead, Defendant Heredia provided Diaz with a revised Joint Stipulation still asking the Court to order Diaz to take the same exact action that Diaz has offered over and over (i.e., produce "all confidential documents and information within three days after the parties agree to a protective order.") Attached as **Exhibit Y** is a true and correct copy of Defendants' counsel's email.

31. Given that there is no legitimate reason to burden this Court with this Motion because Defendants agree that a protective order is necessary in this case, Defendants' egregious violation of Local Rule 7-3 by failing to meet and confer in good faith, and Defendants blatant misrepresentations, the Court should award sanctions against Defendants and their counsel, The Federal Practice Group, pursuant to L.R. 37-4, in the full amount of the attorneys' fees spent by Diaz in preparing this Motion. Benke v. Departure Agency, Inc., 2012 WL 12885102, at *8 (C.D. Cal. Oct. 9, 2012) ("The type of machinations engaged in by … counsel merit a substantial sanction, and the Court therefore sanctions … counsel in the full amount requested in the Opposition to both Motions. The parameters of discovery and the applicable legal standards thereto are largely the province of attorneys, not their clients. Consequently, an attorney's fees award is ordinarily imposed against counsel.").

32. I have been a member in good standing of The State Bar of California for nearly 20 years. I received my Juris Doctor from New York University School of Law in 2002. During my time at NYU Law, I was selected to spend a semester abroad at the University of Copenhagen. Prior to my time at NYU Law, I obtained a Bachelor of Science in Management with a major in Accounting and minor in Psychology from the A.B. Freeman School of Business at Tulane University, where I graduated *cum laude* in 1999.

33. My current hourly rate for this matter is $675.00 per hour. This rate is reasonable as compared to the prevailing rates in the community for similar work and given my experience level and background. In fact, the Los Angeles Superior Court for the State of California has approved my hourly rate as $750.00 per hour. Attached as **Exhibit Z** is a true and correct excerpt of relevant portions of the Los Angeles Superior Court's February 2022 order approving my hourly rate at $750.00.

34. When setting the hourly rate, the reasonable hourly rate is that prevailing in the community for similar work. Shaffer v. Superior Court (1995) 33 Cal. App. 4th 993, 1002. Hourly rates in Los Angeles are generous. Some courts use the "Laffey Matrix" to determine whether the hourly rate of attorney is appropriate. See Syers Properties Ill, Inc. v. Rankin, (2014) 226 Cal. App. 4th 691, 702 (2014); see Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856, at * 14 (C.D. Cal. July 21, 2008) (noting that "where use of the Laffey matrix has been disapproved, it has been because it produced a rate that the court determined was *too low*") (italics in original). Attached as **Exhibit AA** is a true and correct copy of the Laffey-Matrix.

35. According to the Laffey Matrix, attorneys with 20 plus years of experience have an hourly rate of $919 for 2021-2022. My hourly rate is much lower than the rates set forth in the Laffey Matrix, even though some courts applying the Laffey Matrix adjust the rates therein upwards for the higher cost of living in Los Angeles. See Fernandez, 2008 WL 8150856, at *15.

36. Here, Diaz was forced to oppose this Motion, despite Diaz's repeated pleas that Defendants sign the Stipulated Protective Order and his counsel refused all of our attempts to prevent burdening the Court and unnecessarily increased Diaz's attorneys' fees for having to file what we consider Motion that could have been easily prevented.

37. In total, to the date of preparing this declaration, VGC, LLP spent a total of **12.7 hours** in connection with preparing the Motion and its supporting papers, totaling **$8,572.50** in attorneys' fees.

38. These fees were incurred as follows:
- I spent 8.9 hours researching and drafting Diaz's Motion
- I spent 3.8 hours preparing this declaration (except paragraphs 31-40 of this declaration).

39. The estimated fees do not include Ms. Simas' or my time meeting and conferring with Defendants' counsel.

40. I anticipate that I will spend another **7 hours** to review the opposition and prepare Diaz's reply in support of the Motion. Diaz therefore requests that this Court award sanctions in the amount of **$13,297.50**. I will provide the Court with an updated declaration at the time of filing the reply (if necessary).

41. Attached as **Exhibit BB** is a true and correct copy of the Proposed Protective Order that Diaz requests that this Court enter.

42. Attached as **Exhibit CC** is a true and correct copy of redline revisions between this Court's Sample Stipulated Protective Order and the Proposed Protective Order.

1  I declare under penalty of perjury under the laws of the United States of America
2  that the foregoing is true and correct.
3  Executed May 16, 2022 in Santa Monica, California.

*/s/ Diyari Vázquez*
Diyari Vázquez

- 9 -

VAZQUEZ DECLARATION

# CERTIFICATE OF SERVICE

I, Diyari Vázquez, hereby certify that on May 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

Dated: May 16, 2022          By: */s/ Diyari Vázquez*
                                  Diyari Vázquez