James L. Greeley (SBN 218975)
  jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
  dvazquez@vgcllp.com
Gina Simas (SBN 205367)
  gsimas@vgcllp.com
**VGC, LLP**
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone:  (424) 272-9885

Attorneys for Plaintiff
JOSEPH DIAZ, JR.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RALPH HEREDIA, true name RAFAEL HEREDIA TARANGO, a/k/a RAFAEL HEREDIA, a/k/a RAFAEL BUSTAMANTE; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 5:20-cv-02332-JWH-KK<br><br><u>HON. KENLY KIYA KATO</u><br><br>**[DISCOVERY MOTION]**<br><br>**DECLARATION OF DIYARI VAZQUEZ IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL A FIRST RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND TO COMPEL FURTHER RESPONSES TO FIRST SETS OF REQUESTS FOR ADMISSIONS OR DEEM THEM ALL ADMITTED; AND PLAINTIFF'S REQUEST FOR SANCTIONS IN THE AMOUNT OF $**<br><br>Courtroom:   2<br>Judge:        Hon. John W. Holcomb |

I, Diyari Vázquez, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am the Head of Litigation at VGC, LLP, counsel of record for Plaintiff Joseph Diaz, Jr. I have personal knowledge of the following facts and, if called as a witness, I could and would testify competently with respect thereto.

2. I make this declaration pursuant to Local Rule 37-2.2, in opposition to Defendant Ralph Heredia's Motion to Compel a First Response to Requests for Production of Documents and to Compel Further Responses to Request for Admissions or Deem Them All Admitted ("Motion") and in support of Diaz's Request for Sanctions for having to oppose the Motion.

3. On January 28, 2022, Defendant served his First Set of Requests for Admissions ("RFAs") requesting that Diaz admit to the genuineness of 56 documents that Defendant did not attach to or specifically describe in the RFAs. Attached as **Exhibit A** is a true and correct copy of Defendant's RFAs.

4. In the RFAs, Defendant incomprehensibly defined "'Heredia Exhxxx,' where 'xxx' is a three digit number refers to Ralph Heredia's exhibits to his Motion for Judgment on the Pleadings filed in this action." Yet the exhibits to that motion are labeled 1 through 16. There are no exhibits labeled with a "three-digit number." And the exhibits do not contain Bates label numbers. Defendant's exhibits to the Motion for Judgment on the Pleadings were filed under seal on November 12, 20221 as **Docket No. 83 (ex parte)**.

5. In the RFAs, Defendant also confusingly defined "'Exhibit xx,' where 'xx' is a one- or two-digit number, as the case may be, refers to Joseph Diaz, Jr.'s exhibits submitted 'In the Matter of the Arbitration of Contract Dispute Between MOSES HEREDIA, Manager, and JOSEPH DIAZ, JR., Boxer.'" This Court has repeatedly ruled that the Arbitration is a "***separate contract arbitration proceeding***" and that citation to that record in this lawsuit is "***insufficient***." (Emphasis added). Attached as **Exhibit B** is a true and correct copy the relevant excerpts of this Court's

- 1 -

March 4, 2022 order (Dkt No. 107). In his RFAs that referred to "Exhibit xx," Diaz did not provide or describe to Diaz any document that has been produced *in this litigation*.

6. Diaz cannot admit to the genuineness of "exhibits" that do not exist in this litigation or that he cannot even locate. As a result, on March 1, 2022, Diaz responded to the RFAs stating that each "Request fails to attach any document and improperly requests Diaz to admit to the genuineness of a document unrelated to this action."

7. Diaz's one-day delay in serving his responses to the RFAs was due to a calendaring error.

8. On January 24, 2022, Defendant served his Requests for Production ("RPDs").

9. As the Court knows, Diaz is a well-known boxer and this case is being followed by the media—largely due to Defendants and their counsel feeding the media stories. Attached as **Exhibit C** is a true and correct copy of Google search results showing a number of news articles involving Defendant's counsel, Mr. Montalvo, making statements to the press about Diaz and this (and other) litigation related to Diaz. Attached as **Exhibit D** is a true and correct copy of screenshots of the "Press" section of The Federal Practice Group's website with blogs that relate to press statements made by Mr. Montalvo related to Diaz and this (and other) litigation related to Diaz.

10. Given the documents requested by Defendant largely contain confidential information, and Defendant's and his counsel's propensity to improperly publicize Diaz's private and confidential information and shamelessly utilize this and other litigation to gratify private spite, promote public scandal, and circulate libelous statements, Diaz requested a protective order be entered in this case before his responses were due.

11. To that end, on February 2, 2022, Diaz sent Defendant a draft protective order modeled after the Central District's model order. Attached as **Exhibit E** is a true and correct copy of Ms. Simas' email to Defendant's counsel attaching the proposed protective order. Defendant's counsel did not respond.

12. On February 4, 2022, my firm followed up with Defendant's counsel about the protective order. Attached as **Exhibit F** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

13. On February 9, 2022, my firm followed up a third time with Defendant's counsel about the protective order. Attached as **Exhibit G** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

14. On February 23, 2022, my firm followed up for the fourth time with Defendant's counsel about the protective order. Attached as **Exhibit H** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

15. Having heard nothing from Defendant, on February 25, 2022, Diaz timely served his objections and responses to the RPDs stating that documents "will be produced after the Court has entered the Protective Order." In the cover email, my firm once again followed up on the protective order and wrote: "We await entry of the protective order to produce confidential documents. Please provide any edits to the protective order so that we can finalize, get it entered and produce the documents. To the extent there are documents that are not confidential, we will produce those under separate cover." Attached as **Exhibit I** is the February 25, 2022 cover email.

16. Attached as **Exhibit J** are Diaz's responses to the RPDs served on February 25, 2022.

17. On March 9, 2022, my firm followed up for the sixth time with Defendant's counsel about the protective order. Attached as **Exhibit K** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

18. On March 14, 2022, my firm followed up for the seventh time with Defendant's counsel about the protective order and requested to meet and confer on the filing of a motion for a protective order. Attached as **Exhibit L** is a true and correct copy of Ms. Simas' email to Defendant's counsel.

19. On March 15, 2022, Defendant's counsel finally responded stating that they would provide a draft of the protective order on the next day. On March 16, 2022, Defendant provided edits to the protective order. Attached as **Exhibits M and N** are true and correct copies of Defendant's counsel's emails on May 15 and 16, 2022.

20. A few hours later, on March 16, 2022, my firm returned redlined revisions to the protective order ensuring that it conformed with the Central District's model protective order. Attached as **Exhibit O** is a true and correct copy of Ms. Simas' email to Defendant's counsel and the redlined protective order.

21. On March 18, 2022, my firm followed up with Defendant's counsel about the protective order. Attached as **Exhibit P** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

22. On March 22, 2022, my firm again followed up with Defendant's counsel about the protective order. Attached as **Exhibit Q** is a true and correct copy of Ms. Simas' email to Defendant's counsel.

23. On March 22, 2022, Defendant's counsel responded that "[t]he sole objection we have is that the confidentiality should not run in perpetuity. Our position is that confidentiality expires when used in court and therefore becomes public." The next day, Ms. Simas responded: "We see no reason why any protected material should be disclosed to the public. We also fail to understand why you would want this protected material disclosed to the public." Ms. Simas included in her email the language that she proposed and that is included in the Central District's model protective order. Attached as **Exhibit R** is a true and correct copy of Ms. Simas' correspondence with Defendant's counsel on March 22 and March 23, 2022.

24. On March 28, 2022, my firm followed up with Defendant's counsel about the protective order. Attached as **Exhibit S** is a true and correct copy of Ms. Simas' email to Defendant's counsel. Defendant's counsel did not respond.

25. On April 4, 2022, my firm followed up yet again with Defendant's counsel about the protective order, requested to meet and confer about this and other issues,

and stated that Diaz intended to file a motion for a protective order. In response, Defendant's counsel stated that he would be available on April 13, 2022 for a meet and confer call and would provide a substantive letter prior to that call. Attached as **Exhibit T** is a true and correct copy of Ms. Simas' and Defendant's counsel correspondence on April 4 and April 7, 2022.

26. On April 11, 2022, Defendant for the first time raised issues with Diaz's RPD and RFA responses, and the parties participated in a telephonic meet and confer on April 13, 2022. At that time, the parties agreed that Diaz would produce non-confidential documents and Defendant would provide the protective order two days after Diaz's production of non-confidential documents so that Diaz could produce confidential documents. Mr. Montalvo agreed during the call (as Defendant confirms in his portion of the Joint Stipulation and as Mr. Montalvo confirms in his declaration filed in support of the Motion) that this lawsuit involves confidential information for which a protective order is necessary.

27. During the April 13 meet and confer call, I stated that Diaz would supplement his responses to the RFAs but needed copies of the documents that Defendant referred to in the RFAs because Diaz cannot admit to the genuineness of documents that he cannot locate and/or that have not been produced in this litigation. I also suggested that Defendant create a folder and label each document by RFA number so that both parties could be on the same page as to the admissions that Defendant seeks and so that Defendant did not have to spend time rewriting the RFAs. Mr. Montalvo stated that they would discuss the proposal internally and get back to me. Instead, Mr. Montalvo confirms in his declaration "We did not agree to that on the call, but stated that we would consider it and let her know. We subsequently decided not to divide up the Bates-stamped documents in such a manner and by this Declaration, have so informed her." Leaving aside the fact that it is completely inappropriate and a violation of the Local Rules for Defendant's counsel to first inform me that they did not agree to my proposal or propose an alternative, to date, Defendant has refused to

- 5 -

point us to a single "Bates-stamped document" that corresponds to the RFAs.

28. On April 20, 2022, Diaz produced non-confidential documents and reminded Defendant "[o]nce we have finalized the protective order, we will produce any confidential documents. I do not believe I have heard back from you regarding my proposal that your office create a file with the documents referred to in the RFAs so that we can supplement the responses. Please let us know." Attached as **Exhibit U** is a true and correct copy of my email to Defendant's counsel. My firm never heard back from Defendant's counsel.

29. Instead, on April 29, 2022, Defendant served a 353-page Joint Stipulation, replete with fabrication, asking the Court to unnecessarily spend time and resources to resolve this dispute. Attached as **Exhibit V** is a true and correct copy of Defendant's counsel April 29 email. This is not the first time that Defendant has burdened this Court without meeting and conferring in good faith. This Court has repeatedly admonished Defendant's counsel for their repeated disregard for the Local Rules and their requirement to meet and confer in good faith. Attached as **Exhibit V-1** are true and correct copies of excerpts of three orders from this Court (Dkt. Nos. 22, 33, 44) admonishing Defendant's counsel for their blatant disregard for the Local Rules and "disingenuous" excuses. The Court ordered Messrs. Montalvo and Dhunga to submit a declaration "attest[ing], under penalty of perjury, that [they had] read this Court's Local Civil Rules in their entirety" (Dkt. No. 44)—which they did. But, despite reading the Local Rules, Defendant's counsel continue to disregard and violate them.

30. In response to Defendant's surprise Joint Stipulation, on April 29, 2022, I emailed Defendant's counsel expressing my "complete surprise" to receive a Joint Stipulation. I explained, yet again, how the disputes could be easily resolved. I requested that Defendant withdraw the Joint Stipulation, and if Defendant was unwilling to reconsider after my plea, that he provide the Joint Stipulation in Word format. Attached as **Exhibit W** is a true and correct copy of my email to Defendant's counsel.

31. Defendant's counsel waited until May 2, 2022 to respond as follows: "Our refusal to agree is not lack of good faith, but an unwillingness to consider your positions compliant with your discovery obligations… The joint stipulation itself contains a proposed resolution." It does not (and, in any event, it would not be appropriate for Defendant's counsel to present a "proposed resolution" *for the first time* in a motion to compel). That same day, I again pleaded with Defendant's counsel to withdraw the Joint Stipulation given its blatant misrepresentations and Defendant's failure to meet and confer in good faith. Attached as **Exhibit X** is a true and correct copy of my email correspondence with Defendant's counsel on May 2, 2022. Defendant's counsel did not respond.

32. The Joint Statement is the first time that Defendant communicated to my firm that they took any issues with Diaz's non-confidential document production. Nevertheless, Defendant's argument that the non-confidential production is not complete is without merit. This is not a document intensive case and is a case that arises from Defendant's financial malfeasance. The majority of the records, which are financial records, are confidential.

33. Given that there is no legitimate reason to burden this Court with this Motion, Defendant's egregious violation of Local Rule 37-1 by failing to meet and confer in good faith, and Defendant's blatant misrepresentations to the Court and my firm, the Court should award sanctions against Defendant and his counsel, The Federal Practice Group, pursuant to L.R. 37-4 and L.R. 83-7, in the full amount of the attorneys' fees spent by Diaz in opposing this motion. Benke v. Departure Agency, Inc., 2012 WL 12885102, at *8 (C.D. Cal. Oct. 9, 2012) ("The type of machinations engaged in by … counsel merit a substantial sanction, and the Court therefore sanctions … counsel in the full amount requested in the Opposition to both Motions. The parameters of discovery and the applicable legal standards thereto are largely the province of attorneys, not their clients. Consequently, an attorney's fees award is ordinarily imposed against counsel.").

34. I have been a member in good standing of The State Bar of California for nearly 20 years. I received my Juris Doctor from New York University School of Law in 2002. During my time at NYU Law, I was selected to spend a semester abroad at the University of Copenhagen. Prior to my time at NYU Law, I obtained a Bachelor of Science in Management with a major in Accounting and minor in Psychology from the A.B. Freeman School of Business at Tulane University, where I graduated *cum laude* in 1999.

35. My current hourly rate for this matter is $675.00 per hour. This rate is reasonable as compared to the prevailing rates in the community for similar work and given my experience level and background. In fact, the Los Angeles Superior Court for the State of California has approved my hourly rate as $750.00 per hour. Attached as **Exhibit Y** is a true and correct excerpt of relevant portions of the Los Angeles Superior Court's February 2022 order approving my hourly rate at $750.00.

36. When setting the hourly rate, the reasonable hourly rate is that prevailing in the community for similar work. Shaffer v. Superior Court (1995) 33 Cal. App. 4th 993, 1002. Hourly rates in Los Angeles are generous. Some courts use the "Laffey Matrix" to determine whether the hourly rate of attorney is appropriate. See Syers Properties III, Inc. v. Rankin, (2014) 226 Cal. App. 4th 691, 702 (2014); see Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856, at * 14 (C.D. Cal. July 21, 2008) (noting that "where use of the Laffey matrix has been disapproved, it has been because it produced a rate that the court determined was *too low*") (italics in original). Attached as **Exhibit Z** is a true and correct copy of the Laffey-Matrix.

37. According to the Laffey Matrix, attorneys with 20 plus years of experience have an hourly rate of $919 for 2021-2022. My hourly rate is much lower than the rates set forth in the Laffey Matrix, even though some courts applying the Laffey Matrix adjust the rates therein upwards for the higher cost of living in Los Angeles. See Fernandez, 2008 WL 8150856, at *15.

38. Here, Diaz was forced to oppose this Motion, despite my repeated pleas that Defendant withdraw the Motion because the resolution to the issues is very simple. Defendant and his counsel refused all of our attempts to prevent burdening the Court and unnecessarily increased Diaz's attorneys' fees for having to oppose what we consider a frivolous Motion designed to attempt to get an award of sanctions against Diaz.

39. In total, to the date of preparing this declaration, VGC, LLP spent a total of **20.4 hours** in connection with preparing the opposition to this Motion and its supporting papers, totaling **$13,770.00** in attorneys' fees.

40. These fees were incurred as follows:
   - I spent 1.5 hours reviewing Defendant's 353-page Joint Stipulation
   - I spent 15.1 hours researching and drafting Diaz's opposition
   - I spent 3.8 hours preparing this declaration (except paragraphs 33-42 of this declaration).

41. The estimated fees do not include Ms. Simas' or my time meeting and conferring with Defendant's counsel or our assistant's three hours of work on the Joint Stipulation.

42. I anticipate that I will spend another **5 hours** to review the final version of the Joint Stipulation and prepare Diaz's Supplemental Memo in opposition to the Motion. Diaz therefore request that this Court award sanctions in the amount of **$17,145.00**. I will provide the Court with an updated declaration at the time of filing the Supplemental Memo (if necessary).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 5, 2022 in Santa Monica, California.

*/s/ Diyari Vázquez*
Diyari Vázquez