1  James L. Greeley (SBN 218975)
2     jgreeley@vgcllp.com
   Diyari Vázquez (SBN 222461)
3     dvazquez@vgcllp.com
4  **VGC, LLP**
   1515 7th Street, No. 106
5  Santa Monica, California 90401
6  Telephone: (424) 272-9885
   *Attorneys for Plaintiff*
7  JOSEPH DIAZ, JR.

8
   Rajan O. Dhungana (SBN: 297794)
9  rdhungana@fedpractice.com
10 Eric S. Montalvo (*Pro Hac Vice*)
   emontalvo@fedpractice.com
11 **FEDERAL PRACTICE GROUP**
12 14481 Aspen Street
   Hesperia, CA 92344
13 Telephone: (310) 795-6905
14 *Attorneys for Defendants*
   RALPH HEREDIA AND HEREDIA BOXING MANAGEMENT
15

16           **UNITED STATES DISTRICT COURT**

17      **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

18

19 JOSEPH DIAZ, JR.,                    CASE NO. 5:20-cv-02332-JWH-KK

20           Plaintiff,                 HON. KENLY KIYA KATO

21      v.                              **[DISCOVERY MATTER]**

22                                      **LOCAL RULE 37-2.1 JOINT
   RALPH HEREDIA, true name            STIPULATION RE: PLAINTIFF'S
23 RAFAEL HEREDIA TARANGO,             MOTION FOR ENTRY OF
   a/k/a RAFAEL HEREDIA, a/k/a         PROTECTIVE ORDER; REQUEST
24 RAFAEL BUSTAMANTE; JOHN             FOR SANCTIONS IN THE AMOUNT
   DOE, ESQ.; and JANE DOES 1          OF $13,297.50**
25 through 20, inclusive,
26                                      Discovery Cut-Off: July 8, 2022
                                        Pre-Trial Conference: November 18, 2022
27           Defendants.                Trial: December 5, 2022

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.    Diaz's Introductory Statement ........................................................... 1

II.   Defendant's Introductory Statement ................................................. 4

III.  Issue in Dispute ................................................................................ 5

IV.   Diaz's Argument ............................................................................... 5

    A.   A Protective Order is Necessary to Safeguard Diaz's Confidential Information ............................................................................. 5

    B.   The Proposed Protective Order Modeled After this Court's Sample Stipulated Protective Order Is Reasonable and Does Not Prejudice Defendants ............................................................................. 8

    C.   The Court Should Sanction Defendants and their Counsel ..................... 8

V.    Defendants' Argument .................................................................... 10

    A.   There Should Be Very Little Confidential Information From Diaz ....... 10

        i.    Very Little Financial Information, Currently Withheld From Production by Diaz, Would Be Confidential Under the Protective Order ............................................................................. 12

    B.   Confidentiality Under The Protective Order Should Expire At Trial ... 15

    C.   Diaz' Request For Sanctions Should Be Denied .................................. 16

Pursuant to Local Rule 37-2.1, Plaintiff Joseph Diaz, Jr. ("Plaintiff" or "Diaz") and Defendant Ralph Heredia ("Defendant" or "Heredia") submit this Joint Stipulation regarding Diaz's Motion for Entry of a Protective Order.

## I.  DIAZ'S INTRODUCTORY STATEMENT

Diaz is a public figure. Throughout the history of this litigation, Defendants and their counsel have been feeding the press stories about this and other litigation involving Diaz in order to promote public scandal, circulate defamatory statements, and publicize Diaz's private and confidential information. (See Vázquez Decl. ¶¶ 4-5, Exs. A-B). Diaz therefore cannot trust Defendants to respect his confidentiality without a protective order. Indeed, on November 5, 2021, Diaz was forced to file an application to seal because Defendants inserted inflammatory and libelous statements into the Joint Rule 26(f) Report and refused to redact private and confidential medical and financial information about Diaz. This Court granted that motion. (See, e.g., Dkt. Nos. 78-80).

On January 24, 2022, Defendant Heredia served Diaz with Requests for Production of Documents ("RPDs"). (See Vázquez Decl. ¶ 3). The RPDs ask Diaz to produce documents that support his allegations for financial malfeasance against Defendants. Given that the documents requested largely contain confidential information, and Defendants' and their counsel's propensity to improperly publicize Diaz's confidential information and shamelessly utilize this and other litigation to gratify private spite, Diaz requested a protective order be entered before his responses were due. On February 2, 2022, Diaz sent Defendants a draft Stipulated Protective Order modeled after this Court's Sample Stipulated Protective Order. (Id. ¶ 6, Ex. C). Diaz then followed up three times on the status of the Stipulated Protective Order and was met with complete silence. (Id. ¶ 7-9, Exs. D-F). Having heard nothing from Defendants, on February 25, Diaz timely served his objections and responses to the RPDs stating that confidential documents "will be produced after the Court has entered the Protective Order." (Id. ¶ 10, Ex. J). Diaz followed up **more than 10 times** on the status of the Stipulated Protective Order. (Id. ¶¶ 7-19, Exs. D-Q). Left with no other

option, Diaz requested to meet and confer with Defendants about the filing of this motion. (Id. ¶ 19, Ex. Q). In response, on April 11, Defendant for the first time raised issues with Diaz's RPD responses, and the parties participated in a telephonic meet and confer on April 13, 2022. (Id. ¶ 20). At that time, the parties agreed that Diaz would produce non-confidential documents and Defendants would sign the Stipulated Protective Order two days after Diaz's production so that Diaz could produce confidential documents. (Id.).

On April 20, 2022, Diaz produced non-confidential documents and reminded Defendants "[o]nce we have finalized the protective order, we will produce any confidential documents. …." (Id. ¶ 21, Ex. R). Defendants did not respond and did not abide by their agreement. (Id.). And, rather than signing the Stipulated Protective Order, on April 29, 2022, Defendant Heredia sandbagged Diaz with a 353-page Joint Stipulation replete with fabrication asking the Court to unnecessarily spend time and resources to resolve this easily solvable dispute. (Id. ¶ 22, Ex. S). In that Joint Stipulation, Defendant Heredia admits that he "realizes some of those documents or communications [requested in discovery] may concern Diaz' [sic] mental or physical health, or certain business arrangements, and therefore may be produced pursuant to a protective order" and his counsel agrees that "some information … such as medical and certain financial information" should only be disclosed subject to a protective order.  (Id. ¶¶ 23-24, Exs. T-U). After repeatedly requesting that Defendants meet and confer in good faith and work to resolve the easily solvable dispute, Defendants refused. (Id. ¶¶ 25-26, Exs. V-W). Diaz then spent more than 20.4 hours opposing the Joint Stipulation which he timely returned on May 5, 2022. (Id. ¶ 28).

On May 12, 2022, in one final attempt to prevent the filing of this motion, Diaz again requested that Defendants return the executed Stipulated Protective Order and warned Defendants that failure to respond would result in Diaz having to spend the time and attorneys' fees to prepare this motion. (Id. ¶¶ 28-29, Ex. X). Defendants did not respond until nearly 24 hours after Diaz requested that response and, ***for the first***

*time*, Defendants represented that they would now agree to the Stipulated Protective Order if it was "a narrowly tailored protective order specifically protecting medical and health records. Bank statements and other financial records can have proper redaction of sensitive account numbers and other identifying information. The previously prepared protective order remains overbroad and we cannot agree to it." (Id.) In response, Diaz reiterated that the proposed Stipulated Protective Order is modeled after this Court's Sample Protective Order and asked for any redlines that Defendants had to the protective order. (Id.) Defendants did not respond. (Id.) Instead, Defendant Heredia provided Diaz with a revised Joint Stipulation asking the Court to order Diaz to take *the same exact action* that Diaz has offered over and over (i.e., produce "all confidential documents and information within three days after the parties agree to a protective order.") (Id. ¶ 30, Ex. Y).

There is simply no reason for Defendants to refuse to sign the Stipulated Protective Order modeled after this Court's Sample Stipulated Protective Order, especially when they admit it is appropriate in this case. The only responsive documents to the RPDs left for Diaz to produce are financial records and confidential agreements. Diaz has sought Defendants' cooperation regarding the drafting of a suitable Stipulated Protective Order *on multiple occasions* for a period of over three months to no avail. As a result, Diaz has now spent 12.7 hours having to prepare this motion. (Id. ¶ 37). Given Defendants' bad faith tactics and gamesmanship, Diaz respectfully requests that this Court award sanctions against Defendants and their counsel, Federal Practice Group, in the amount of $13,297.50 for forcing Diaz to file this motion which could have been easily prevented had Defendants followed through on the parties' agreement.

1  **II.    DEFENDANTS' INTRODUCTORY STATEMENT**

2       This litigation is a dispute brought by Plaintiff Diaz ("Diaz"), a professional

3  boxer, arising out of the deteriorated relationship with his former manager from 2012,

4  Defendant Ralph Heredia ("Heredia").   Heredia denies Diaz' allegations and has

5  demanded strict proof thereof.   Diaz has provided astonishingly little proof of his

6  voluminous claims despite having been served with discovery requests three and on-

7  half months ago.   Diaz' attempt to put into place a protective order prior to providing

8  meaningful discovery is part of his larger effort to delay admitting that this entire case

9  is a smokescreen for Diaz' own wrongdoing in breaching the contract with his current

10 manager, Moses Heredia.   That Diaz breached that agreement is not in dispute, and a

11 proceeding to enforce the arbitration award against Diaz is pending in California state

12 court because of Diaz' refusal to pay.   See Super. Ct. Los Angeles County Case No.

13 22STCP00395

14      Instead of responding to Heredia's discovery requests with his non-confidential

15 production and seeking protection of identified confidential documents, Diaz argued

16 baselessly that a protective order must be in place before even non-confidential

17 documents could be produced.   While Diaz claims, above, that he only stated that he

18 would withhold confidential documents, see supra at 1, that statement is belied by the

19 actual text of Diaz' response to Heredia's RFPs.   In it, Diaz stated, "Any documents

20 that Responding Party agrees to produce, as detailed in the responses below, will be

21 produced after the Court has entered the Protective Order."   Diaz RFP response at 1:23-

22 24. (See Exh. DD.)

23      As Diaz well knows, this is not the procedure contemplated by the rules, and

24 does not justify withholding virtually all (except eighty-five largely irrelevant pages)

25 documents, confidential or otherwise.   That counsel exchanged a certain number of

26 emails on the subject misses the larger point – Diaz' counsel was engaged in an

27 improper process.

28      Finally, on the subject of improper process, Diaz once already has tried and

4

failed to file a dispute over this protective order matter without complying with this Court's local rules governing discovery disputes.  [ECF 113].  For that earlier motion, Diaz did not send a meet-and-confer letter under Local Rule 37-1.  And Diaz did not meet-and-confer under Local Rule 37-1.  (There was a meet-and-confer between counsel on April 13, 2022, but that was driven by Heredia's meet-and-confer letter in connection with Heredia's pending Joint Stipulation.)  Out of an abundance of caution, Heredia filed opposition papers to Diaz' improper motion.  [ECF 114].  That same day, the Court struck Diaz' improper filing for failing to comply with the local rules regarding discovery disputes.  [ECF 115].

Diaz still has not properly brought this dispute before the Court.  Heredia has not received any meet-and-confer letter from Diaz, as required of the moving party by Local Rule 37-1.  Regardless, to avoid the appearance of waiver, Heredia will participate in this Joint Stipulation process as if it were brought properly, while lodging his objection to the improper procedural manner in which Diaz has brought this dispute before the Court.  Heredia notes that Local Rule 37-4 provides for sanctions to a party who fails to comply with the procedures governing discovery disputes such as this one.  As Diaz has now twice improperly brought this dispute before the Court, he urges the Court to sanction Diaz' counsel in conformity therewith, and also strike this Joint Stipulation because of Diaz' failure, yet again, to comply with the local ules.

### III.   ISSUE IN DISPUTE

The Court should enter the Proposed Protective Order attached as **Exhibit 1** which is modeled after the Court's Sample Stipulated Protective Order

### IV.   DIAZ'S ARGUMENT

#### A.   A Protective Order is Necessary to Safeguard Diaz's Confidential Information.

Rule 26(c)(l) states, in pertinent part, that the Court, upon a showing of good cause, may "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(l). To justify the entry

5

1   of a protective order, a party need only make a "threshold showing of good cause to

2   believe that discovery will involve confidential or protected information." <u>Henry v.</u>

3   <u>Ocwen Loan Servicing, LLC</u>, 2018 WL 1638255, at *2 (S.D. Cal. April 5, 2018) (citing

4   <u>Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.</u>, 121

5   F.R.D. 264, 268 (M.D.N.C. 1988)). This showing of good cause "may be [made] on a

6   generalized as opposed to a document-by-document basis." <u>Id.</u> Indeed, "[b]lanket

7   protective orders are routinely approved for use in civil cases and consistent with the

8   mandate that courts provide 'just, speedy, and inexpensive' resolution in every action

9   and proceeding." <u>Henry</u>, 2018 WL 1638255, at *2 (citing <u>Van v. Wal-Mart Stores, Inc.</u>,

10  2011 WL 62499, at *2 (N.D. Cal. Jan. 7, 2011)) ("Blanket protective orders serve the

11  interests of a 'just, speedy, and inexpensive' determination of cases by avoiding the

12  undue cost and delay that would ensue if courts had to make a good cause

13  determination on a document-by-document basis for all documents exchanged in

14  discovery that a party wished to protect."). "The Ninth Circuit implicitly acknowledged

15  that the use of blanket protective orders conserves judicial resources—and taxpayer

16  money—by eliminating the requirement that a party move for a protective order every

17  time that party produces documents they contend are confidential." <u>Henry</u>, 2018 WL

18  1638255, at *2 (citing <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1131

19  (9th Cir. 2003) (noting that use of a blanket protective order was "understandable for

20  the unfiled documents given the onerous burden document review entails")). Courts

21  "generally ***expect … cooperation among litigants***" in reaching agreement on a

22  stipulated protective order. <u>Henry</u>, 2018 WL 1638255, at *2 (emphasis in original).

23       This is a case that arises from Defendants' financial malfeasance. The majority

24  of the records are confidential financial records. <u>See</u>, <u>e.g.</u>, <u>F.D.I.C. v. Tarkanian</u>, 2012

25  WL 1327856 at *2 (S.D. Cal. April 17, 2012) (sealing statements containing financial

26  information); <u>Aevoe Corp. v. AE Tech. Co.</u>, 2013 WL 2302310, at *1-2 (D. Nev. May

27  24, 2013) (sealing documents that identify the sales information and business

28  strategies); <u>Satmodo, LLC v. Whenever Commc'n, LLC</u>, 2018 WL 1071707, at *3

(S.D. Cal. Feb. 27, 2018) (finding party "satisfied the threshold showing of good cause to believe that discovery will involve confidential information" because it pointed to "presently pending discovery requests from Defendant seeking financial … information."). Those records must be protected from disclosure, especially when the Court's files and documents exchanged in litigation "might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements..." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178–1179 (9th Cir. 2006). Unfortunately, given Defendants and their counsel's history of feeding the press stories about this and other litigation involving Diaz in order to promote public scandal, circulate defamatory statements about Diaz and his counsel, and publicize Diaz's private and confidential information, Diaz cannot trust Defendant to respect confidentiality without a protective order. (Vázquez Decl. ¶¶ 4-5, Exs. A-B); See SolarCity Corp. v. Doria, 2017 WL 6551239, at * 17 (S.D. Cal. Dec. 21, 2017) (finding responding party's refusal to produce confidential information absent a protective order was "substantially justified"); Benke v. Departure Agency, Inc., 2012 WL 12885102, at *8 (C.D. Cal. Oct. 9, 2012) ("counsel properly insisted on the entry of Protective Order before providing confidential information").

Given the sensitive and confidential nature of the documents that Defendants seek, the Court is within its authority to enter a protective order that ensures that such information will only be used in this lawsuit and will be properly destroyed or returned to Diaz when the lawsuit is concluded. See Bittaker v. Woodford, 331 F.3d 715, 726 (9th Cir. 2003) ("The power of courts, state as well as federal, to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well-accepted."). Indeed, as the Ninth Circuit acknowledges: "Courts could not function effectively in cases involving sensitive information…if they lacked the power to limit the use parties could make of sensitive information obtained from the opposing party by invoking the court's authority." Id.; see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 101 F.R.D. 34, 41 (C.D. Cal.

1   1984). Diaz respectfully requests that the Court use its inherent power to impose what

2   is by any definition a reasonable set of protections for the treatment of confidential

3   information produced by the parties in this lawsuit. (See Vázquez Decl., Ex. BB).

4   **B.     The Proposed Protective Order Modeled After this Court's Sample**

5   **Stipulated Protective Order Is Reasonable and Does Not Prejudice**

6   **Defendants.**

7   Diaz's Proposed Protective Order will not prejudice Defendants' ability to use

8   the documents produced in this litigation for legitimate purposes. As the proposed

9   order makes explicit, any documents produced by the parties that are designated

10  "Confidential" may be used by the other party in this litigation. (Vázquez Decl., Ex.

11  BB § 7.2). The documents may also be used by any of the parties' experts and

12  consultants, and deposed witnesses. (Id.). The parties may only invoke the

13  "Confidential" designation in good faith and the party receiving documents has the

14  right to challenge the confidentiality designations assigned to documents. (Id. at § 6).

15  Defendants' unwillingness to cooperate with Diaz on this issue is particularly

16  problematic given Defendants and their counsel agree that a protective order is

17  appropriate in this case. (Vázquez Decl. ¶¶ 23-30, Exs. T-Y). And Diaz is especially

18  cautious about disclosing his private and confidential information given Defendants'

19  and their counsel's history of feeding the press stories about this and other litigation

20  involving Diaz in order to promote public scandal and circulate defamatory statements.

21  (Id. ¶¶ 4-5, Exs. A-B).

22  **C.     The Court Should Sanction Defendants and their Counsel.**

23  Rule 37 (a)(5)(A) provides that sanctions "must" be awarded if a discovery

24  motion is granted unless the Court finds the opposing party's objection was

25  "substantially justified." Defendants agree that a protective order is necessary in this

26  case. (Vázquez Decl. ¶¶ 23-24, 30, Exs. T-U, Y). Yet Defendants have refused to sign

27  the Stipulate Protective Order (or even provide redlined edits to resolve this dispute).

28  Instead, Defendant Heredia provided Diaz with a Joint Stipulation asking the Court to

order Diaz to take ***the same exact action*** that Diaz has offered over and over again (i.e., produce "all confidential documents and information within three days after the parties agree to a protective order." (Id. ¶ 30, Ex. Y).

Defendants have not provided any explanation why they have delayed over three months in signing of the Stipulated Protective Order drafted pursuant to this Court's Sample Stipulated Protective Order. And Defendants have failed to explain why—after agreeing during the parties' meet and confer regarding Diaz's filing of this Motion that they would sign the Stipulated Protective Order after Diaz produced non-confidential documents—Defendants reneged on that agreement and instead served Diaz with a Joint Stipulation.

Defense counsel's conduct is what the Central District labels "reprehensible." Benke, 2012 WL 12885102, at *8 ("Benke's counsel engaged in a course of misleading conduct with opposing counsel regarding whether and under what terms Benke's counsel would sign a Protective Order, when it is apparent … that Benke's counsel never had any intention of entering into a Protective Order"). The Court should award sanctions against Defendant and his counsel, The Federal Practice Group, pursuant to L.R. 37-4. (Vázquez Decl. ¶¶ 30-40); Benke, 2012 WL 12885102, at *8 ("The type of machinations engaged in by … counsel merit a substantial sanction, and the Court therefore sanctions … counsel in the full amount requested... The parameters of discovery and the applicable legal standards thereto are largely the province of attorneys, not their clients. Consequently, an attorney's fees award is ordinarily imposed against counsel.")

Diaz has unnecessarily incurred attorney's fees and costs by having to prepare and file this Motion resulting from Defendants' and their counsel's "machinations." Defendants' willful and inexcusable disregard of their discovery obligations and this Court's time and resources deserves the imposition of sanctions, as authorized in Rule 37(a)(5).

///

1    **V.    DEFENDANTS' ARGUMENT**
2          **A. There Should Be Very Little Confidential Information From Diaz**

3          On January 24, 2022, Heredia propounded 112 Requests for Production to
4    Diaz.  On February 25, 2022, Diaz responded with objections, but no documents.
5    Diaz' response included the statement that "Any documents that Responding Party
6    agrees to produce, as detailed in the responses below, will be produced after the
7    Court has entered the Protective Order." Diaz RFP response at 1:23-24. (See Exh.
8    DD.)  Diaz refused to produce any documents whatsoever, even non-confidential
9    documents, pending the entry of a protective order.  That is an "unacceptable excuse
10   for failing to act."  Fed. R. Civ. P. 37(d)(2).  Unless Diaz is claiming that the
11   entirety of his non-confidential production is eighty-five pages of documents, his
12   insistence on entry of a protective order must be seen for the pretext that it is – a
13   ploy to evade accountability for his failure to respond to Heredia's discovery
14   requests.

15         During an April 13, 2022 meet and confer between counsel over Diaz'
16   document non-production and related discovery matters, which occurred after
17   Heredia sent a proper meet-and-confer letter to Diaz, see Exh. EE, Heredia's
18   counsel, Mr. Montalvo, stated that upon receipt of the non-confidential documents,
19   Heredia would be able to see what is withheld as confidential and would then be
20   amenable to signing a protective order for documents *appropriately* withheld as
21   confidential.  Montalvo Decl. ¶8. (emphasis added).

22         Undersigned counsel did, of course, agree that certain health records and
23   Personally-Identifiable Information should be protected as confidential, even in his
24   April 11, 2022 meet-and-confer letter to Diaz, where he stated: "Good cause likely
25   exists to protect any of the treatment notes from Diaz' medical records that have not
26   already been made public, and any PII of a party. However, Diaz has failed to
27   provide specifics about why any other categories of documents will need
28   protection."  See Exh. EE at 5.

As Diaz had not produced *any* documents at that point, Heredia's counsel wanted to see the entirety of Diaz' non-confidential document production to try to discern what would be left as confidential prior to agreeing to any protective order. Montalvo Decl. ¶6.  Otherwise, Heredia would have to object to each document produced by Diaz under Section 6 of the proposed protective order if Heredia did not believe it was appropriately designated as confidential.  This would include the entire meet-and-confer process per Local Rule 37-1, and doing this for each challenged confidentiality designation would be a lengthy process that would strain both parties' resources and would be an inefficient use of the Court's valuable time. Thus, undersigned counsel's request that he see Diaz' non-confidential document production (which was late at that point in any event) prior to finalizing the stipulated protective order was in aid of refining the stipulated protective order.

Diaz' counsel agreed to produce Diaz' non-confidential documents.  However, well after that April 13, 2022 meet-and-confer conversation between counsel, Diaz eventually provided what he claimed was his entire production of non-confidential documents: (a) the 2012 boxer-manager contract among Heredia, Moses Heredia, and Diaz; (b) the 2017 release of the 2012 boxer-manager contract; (c) a notice to Moses Heredia of an approved 2017 boxer-manager contract; (d) a screenshot from the California State Athletic Commission showing Moses Heredia as Diaz' registered manager under the 2017 boxer-manager contract; (e) the 2017 boxer-manager contract between Moses Heredia and Diaz with notarized signatures; (f) four news articles about Heredia; (g) a court order denying a § 2255 appealability order of Heredia's conviction; (h) a petition for a writ of certiorari to the United States Supreme Court arising out of the denial of the § 2255 appealability order; (i) a letter from VGC to "Dedicated Recovery Services" apparently regarding the repossession of the Lexus; and (j) Heredia Boxing Management's Statement of Information on file with the California Secretary of State. See Exh. FF.

This "production" was not organized and labeled to correspond to the categories

11

of Heredia's RFPs, as required by Fed. R. Civ. P. 34(b)(2)(E)(i).  It is not clear to what requests Diaz' eighty-five pages purport to respond, and the rules do not require Heredia to guess.  Regardless, Diaz' paltry non-confidential document production, obviously incomplete, would have left anything else to be produced by Diaz to be deemed presumptively confidential and covered by a protective order, even if it were not actually deserving of confidential treatment.  As discussed below, this outcome would not be appropriate, as the majority of Diaz' document production presumably does not contain information entitled to confidential treatment, particularly since Diaz has already contested many of the same underlying issues in the arbitration that was decided against him.

> ### i. Very Little Financial Information, Currently Withheld From Production by Diaz, Would Be Confidential Under the Protective Order

Heredia's reasonable position remains that, after seeing the entirety of Diaz' non-confidential document production, he would be in a position to better understand what would be left as confidential under any protective order in this case, and then if the non-confidential production appears substantially complete, Heredia "would agree only to a protective order that protects a party's health records, and the PII of any party, prior to trial."  See Exh. EE at 6.

Heredia's concern in wanting to see a complete non-confidential production prior to agreeing to a protective order is legitimate, because other than Diaz' health records and any Personally-Identifiable Information, there should not be a substantial tranche of confidential documents or information left to be produced.

Diaz argues that, in Heredia's Request for Production's asking for "[a]ll documents or communications supporting" each substantive paragraph of Diaz' Complaint, the "documents requested largely contain confidential information," see supra at 1, because "[t]he majority of the records are confidential financial records," see supra at 6, and therefore, "Diaz requested a protective order be entered before

1   his responses were due."  <u>See</u> <u>supra</u> at 1.  Diaz' position does not stand up to even

2   casual scrutiny.

3       It is well-established that the fruits of pretrial discovery are, in the absence of

4   a court order to the contrary, presumptively public. Rule 26(c) authorizes a district

5   court to override this presumption where 'good cause' is shown.  <u>AGA

6   Shareholders, LLC v. CSK Auto, Inc.</u>, No. CV-07-62-PHX-DGC, 2007 WL

7   4225450, at *1 (D. Ariz. Nov. 28, 2007) (quoting <u>San Jose Mercury News, Inc. v.

8   U.S. Dist. Court—N. Dist. (San Jose)</u>, 187 F.3d 1096, 1103 (9th Cir. 1999)).  For

9   good cause to exist under Fed. R. Civ. P. 26(c), "the party seeking protection bears

10  the burden of showing specific prejudice or harm will result if no protective order is

11  granted." <u>Phillips v. G.M. Corp.</u>, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

12      There is no good cause to put the majority of Diaz' financial records under a

13  protective order because they cannot fairly be deemed confidential, nor would there

14  be any prejudice or harm to Diaz if they were disclosed absent a protective order

15  because they are already public or known to Heredia as the counter-party.

16  Nonetheless, Heredia is entitled to know what Diaz has.  That is the point of

17  discovery.

18      When compared against the allegations Diaz made in his Complaint, there is a

19  disconnect between what Diaz may claim is confidential versus what would

20  genuinely be confidential under any protective order.  By way of example:

21      The draft protective order attached by Diaz' counsel to this Joint Stipulation

22  contains a provision stating that confidentiality does not apply to "any information

23  known to the Receiving Party prior to the Disclosure…." <u>See</u> Exhibit 1 at 4:8-9.

24  Diaz' Complaint alleges, *inter alia*, that "…by virtue of his role as Diaz's manager,

25  [Ralph] Heredia has full access to Diaz's finances…" [ECF 67-1, 18:27-28].

26  Accordingly, what financial records of Diaz' are confidential?  All of Diaz'

27  financial records were, by Diaz' own pleading, already known to Heredia prior to

28  any disclosure of them through this litigation's discovery process, and therefore are

13

not confidential.  Yet Diaz has not produced records that, under his own proposed protective order, would not be confidential.  This highlights Heredia's concerns that Diaz seeks to use the protective order improperly.  Diaz already has used the specter of the protective order negotiation to justify evading his discovery obligations.  This Joint Stipulation must be viewed through that lens.

Further, Diaz alleged in his Complaint that he made specific financial payments to Heredia.  Heredia is unaware of any theory by which Diaz may withhold as confidential proof of payment of a sum certain that he himself disclosed in his Complaint.  To wit: "After one particular bout, Diaz paid Heredia $25,000.00 toward the vehicle. Heredia accepted this money. Diaz also paid $4,000.00 to have the vehicle (which was originally painted white) wrapped in matte black." [ECF 67-1, 19:23-26].  No proof of these alleged expenditures has been provided to Heredia; instead, Diaz is withholding financial records proving these alleged payments – which he himself disclosed in his Complaint – as confidential, pending the entry of a protective order.  That makes no sense.  Fed. R. Civ. P. 5.2 (governing redaction of certain documents, including financial account numbers).

Finally, almost all of the allegations Diaz has made in his Complaint are the same as he raised in the June 2021 arbitration, the decision of which is public. (See Montalvo Decl. ¶10.)  Any information disclosed in the arbitrator's decision, therefore, is not confidential per Diaz' proposed protective order because it is "information that is in the public domain at the time of Disclosure to a Receiving Party."  See Exhibit 1 at 4:5-6.

Further, the evidentiary record of the arbitration, including numerous of Diaz' financial records, is already known to Heredia another way, too; it was provided by Heredia to Diaz in discovery in this very litigation, and therefore it is not confidential per Diaz' proposed protective order because it is "information known to the Receiving Party prior to the Disclosure."  See Exhibit 1 at 4:8-9.  Again,

however, this does not relieve Diaz of his obligation to disclose it.  Heredia is entitled to know what Diaz believes proves his allegations.

Accordingly, Diaz' withholding of numerous records as confidential is not justifiable.  Upon Diaz' production of the entirety of his non-confidential document production, Heredia's counsel would be in a position to better understand what would be left as confidential under any protective order in this case, and undersigned counsel was engaged in just that process when Diaz filed his stricken motion and this Joint Stipulation.  Once Diaz' non-confidential production appears substantially complete, Heredia's counsel would sign a stipulated protective order covering a party's health records and Personally-Identifiable Information that is appropriately limited as to duration.

**B. Confidentiality Under The Protective Order Should Expire At Trial**

The Court's sample stipulated protective order, at Section 4, contains two suggestions for the duration of confidentiality.  The first alternative is that confidentiality of documents or information presumptively expires once a case proceeds to trial, but a party may move to keep information confidential even afterwards, upon a showing of compelling reasons.  The second alternative is that confidentiality of documents or in information remains confidential until the designating party or a court otherwise directs.

Heredia's position, communicated to Diaz' counsel, is that the first alternative is appropriate in this matter, as once the information is used at trial, it should be deemed to have entered the public domain.  Conceptually, Heredia may consider stipulating at the appropriate time to continued protection for certain especially-sensitive health records related to Diaz, but financial records and the vast majority of the otherwise confidential documents should become public when used at trial. Most of these confidential documents likely would be used by Diaz himself to attempt to prove his case.  He should not be able to make damning allegations

against Heredia in the Complaint, and then hide any purported proof, or lack thereof, behind a curtain of confidentiality at trial.

The parties simply disagree as to the term of confidentiality under any protective order, and Heredia's position is the more reasonable and supportable.

## C. Diaz' Request For Sanctions Should Be Denied

Diaz' request for sanctions against Heredia's counsel is misguided. Diaz argues that Heredia has refused to sign a protective order despite Diaz offering the same relief requested by Heredia in the related joint stipulation. See supra at 8. That is incorrect.

As detailed herein, the rules require Diaz to produce all non-confidential documents independent of any protections for confidential documents. In an attempt to resolve this dispute as part of the Heredia-driven meet-and-confer process underlying the Joint Stipulation that Heredia recently filed [ECF 117], Heredia's counsel advised Diaz' counsel that they would further consider the scope of a stipulated protective order once Diaz produced non-confidential documents. (See Montalvo Decl. ¶8.) Heredia was not required to take this position – rather, he offered it in an attempt to agree on the proper scope of a stipulated protective order. While Diaz said he would make that complete production, he clearly failed to do so. Diaz' 85-page production of non-confidential documents is woefully deficient, and therefore a condition precedent to Heredia's agreeing to sign the protective order has yet to occur, solely as a result of Diaz' counsel's own conduct.

Heredia's objections to Diaz' request to sign the protective order are, therefore, "substantially justified," Fed. R. Civ. P. 37 (a)(5)(A)(ii), and sanctions are not appropriate under any circumstance.

Heredia reiterates his above request that the Court sanction Diaz' counsel for their failure to comply with the local rules, twice, in connection with their attempt to bring this dispute before the Court, and further requests that the Court strike this Joint Stipulation for Diaz' failure to comply with the local rules.

16

1

*Respectfully submitted,*

2

3    Dated:  June 1, 2022            **VGC, LLP**

4

5                                    By:_____*/s/ Diyari Vázquez*_____

6                                         James L. Greeley
                                          Diyari Vázquez
7                                         Gina Simas
                                          Attorneys for Plaintiff
8                                         JOSEPH DIAZ, JR.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Dated:  June 1, 2022            **FEDERAL PRACTICE GROUP**

2

3                    By: _____ */s/ Rajan O. Dhungana*___

4                      Eric S. Montalvo
                      Rajan O. Dhungana

5                       Attorneys for Defendants

6                       *Ralph Heredia and Heredia Boxing*
                      *Management*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTESTATION</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(i), this signatory attests that the other signatories listed, on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

By: <u>  /s/ Diyari Vázquez  </u>
Diyari Vázquez

**CERTIFICATE OF SERVICE**

I, Diyari Vázquez, hereby certify that on June 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

Dated: June 1, 2022                    By: _/s/ Diyari Vázquez_
                                           Diyari Vázquez