STATE OF CALIFORNIA—STATE AND CONSUMER SERVICES AGENCY                                                    EDMUND G. BROWN JR., *Governor*



**STATE OF CALIFORNIA**

**dca**

DEPARTMENT OF CONSUMER AFFAIRS

**CALIFORNIA STATE ATHLETIC COMMISSION**
2005 EVERGREEN ST., STE. #2010
SACRAMENTO, CA 95815
WWW.DCA.CA.GOV/CSAC
(916) 263-2195 FAX (916) 263-2197



CALIFORNIA STATE ATHLETIC COMMISSION
BOXER – MANAGER CONTRACT
<u>**PLEASE READ ENTIRE CONTRACT BEFORE SIGNING**</u>

THIS CONTRACT MADE THIS _4th_ DAY OF _September_, AT _Upland_, CALIFORNIA, BY

AND BETWEEN _Rafael Heredia / Moses Heredia_ LM# ____ OF _Laguna Niguel_ (HEREAFTER "MANAGER" (LEGAL NAME)

AND _Joseph Diaz Jr._ LB# ____ OF _South El Monte_ (HEREAFTER "BOXER" (LEGAL NAME)

In consideration of mutual promises contained herein, the above parties agree to and with each other and with the California State Athletic Commission (hereinafter "commission"), in order to induce its acceptance hereof as follows:

**A.  BOXER AGREES:**
1. Pursuant to Rule 222, no contract may exceed five (5) years. Boxer understands that he or she may negotiate the term of this contract with Manager *before* signing this contract. Subject to the approval of this contract by Commission, to render services from ___9/4/2012___ to ___9/3/2017___ solely and exclusively for Manager in such boxing contest, exhibition, or training exercises as Manager shall from time to time direct, whether in California or elsewhere.
2. To pay Manager _2o%_ percent (shall *not* exceed 33 1/3 percent – Rule 221) of any sum of money Boxer earns for any services described in Paragraph A.1. rendered by Boxer pursuant to this contract. Boxer understands that he may negotiate the actual percentage figure with Manager *before* signing this contract. Said _2o%_ percent shall be determined incurred by Boxer in the performance of Boxer's duties hereunder.
3. To fulfill faithfully any contract entered into Boxer's behalf by Manager for rendition of the services described above during the term _MH_ of this agreement.
4. That Manager may render services to others during the term of this agreement.
5. To attend all training, exercising, and other necessary work as Manager shall require, and to proceed and travel by any means of conveyance when required to do so by Manager for the performance of his or her duties under this contract. Manager reserves the right to select trainers. *Manager waives the right to select trainers, fighter will have final right to select trainers.*
6. That Boxer will not, during the term of this agreement, take or engage in any boxing contests, exhibitions or training exercises without first having obtained the written permission of Manager to do so.

**B.  MANAGER AGREES:**
1. To guarantee Boxer that the Boxer's share of money earned pursuant to this contract shall not be less than _N/A_ per year during the term of this contract or Manager will pay Boxer the difference between the amount actually earned and _N/A_
2. To use Manager's best efforts to secure remunerative boxing contests and at all time to act in the best interest of Boxer.
3. To make no contract for a boxing contest where Manager has a direct or indirect financial or contractual interest in Boxer's opponent.
4. To render a full, true, accurate and itemized accounting to Boxer and to the Commission if the commission so requests. Said accounting shall include, with respect to each other contest, exhibition or match: (a) the amount of money received by Manager pertaining to the contest, exhibition, or match; (b) the amount of money actually paid to boxer, (c) the amount of money owed to Manager by Boxer, provided, however, that no sum of money shall be claimed under this subsection which cannot be substantiated by a receipt signed by the Boxer within thirty (30) days after Boxer sends a written demand of an accounting, by certified mail to Manager. Boxer shall send a copy of any demand made to Manager to the Commission by regular mail.
5. To keep Manager's records available to and open for inspection by Boxer and/or the Commission upon demand.

**C.  BOXER AND MANAGER FURTHER AGREE:**
1. That all contests or exhibitions of boxing and conducted under this contract in the State of California shall in all respects be in conformity with the laws of the State of California and rules and regulations now or hereafter adopted by the Commission.
2. This contract may be declared null and void if at any time during the term the Manager, after notice from the Commission pursuant to the provisions of Rule 221, is not duly licensed by the Commission.
3. To make the required contributions to the Boxer's pension plan pursuant to Rule 401.
4. All controversies arising between the parties hereto, including but not limited to controversies concerning the validity and/or enforceability of this contract, shall be submitted for arbitration in the following manner:
    Within two (2) weeks after the origin of such dispute and of a desire and willingness to refer such dispute to arbitration, whereupon the Commission of the existence of such dispute and of such dispute and of a desire and willingness to refer such dispute to arbitration, whereupon the Commission shall by itself, or through another duly appointed by it, conduct a hearing at a time and place reasonably convenient to all interested parties and witnesses; notification of the time and place of such hearing shall be given to all interested persons at their last known places of address. The parties hereto agree in the event of submission of any such controversy to arbitration, that the decision of such arbitrator shall be final and binding upon the parties hereto and each of them to be bound thereby.

1

M-2012 -0012
DIAZ 0001

**C.   (CONTINUED)**

5.   The arbitrator may terminate this contract if Manager fails to obtain a good faith offer of a boxing match, exhibition or contest from a responsible person, firm or corporation for at least four (4) consecutive months, during all of which time Boxer shall have been ready, willing, able and available to accept and perform such services.

6.   Manager and Boxer both certify and promise to each other and to the Commission, to induce its approval hereof that no other person or party in any way or in any degree shares or participates in the ring earnings of the Boxer or in the Manager's or Boxers portion of such earnings, that the Boxer and Manager have no other agreements with each other concerning compensation to the Boxer's career, and that no oral or written agreement exists concerning such sharing or participation.

7.   Manager and Boxer both certify and promise to each other and to the Commission, to induce its approval hereof, that no oral or written agreement exists between them other than this contract, that the Boxer has no other agreement with any other person concerning his or her boxing activities, and that no change in or addition to this contract is valid or will be enforced unless it is made a part of this contract in writing and approved by a Commission representative.

8.   This agreement is not valid until and unless both parties appear at the same time before the Commission or a Commission representative for the approval and acceptance of this agreement by the California State Athletic Commission.

9.   This agreement may only be modified by the Manager and the Boxer in writing.  Any such modification shall be added to this contract and approved by the Commission in writing before it is effective.

10.  This agreement may be terminated by the Manager and the Boxer executing a Release of Contract form provided by the Commission. This agreement may not be terminated until such a Release of Contract is executed by the Manager and Boxer and is submitted to and approved by the Commission.

The parties hereto have read and signed this contract and agreement in each other's presence and in the presence of the Commission Representative who has orally reviewed the terms of this contract with the Boxer on this ___4th___ day of ___September___.

**THIS CONTRACT IS NOT VALID UNTIL THE DATE ON WHICH IT HAS BEEN SIGNED AS APPROVED BY THE COMMISSION'S EXECUTIVE OFFICER OR DESIGNEE.**
**IF THE PARTIES HAVE ANY OTHER AGREEMENTS CONCERNING THE BOXER'S COMPENSATION OR CAREER THAN THOSE SET FORTH ON THIS CONTRACT, THEY MAY NOT BE ENFORCED BY THE COMMISSION.**

WITNESSED BY COMMISSION REPRESENTATIVE

BOXER

MANAGER

CO-MANAGER (IF ANY)

CO-MANAGER (IF ANY)

ACCEPTED AND APPROVED BY EXECUTIVE OFFICER OR DESIGNEE          DATE

I hereby acknowledge that the provisions of this contract reviewed with me and by a Commission Representative.

BOXER          9/4/12          DATE

M-2012-0042002



STATE OF CALIFORNIA

**dca**

DEPARTMENT OF CONSUMER AFFAIRS

*California Athletic Commission*

FEB 24 2017

BUSINESS, CONSUMER SERVICES, AND HOUSING AGENCY • GOVERNOR EDMUND G. BROWN JR.
**CALIFORNIA STATE ATHLETIC COMMISSION**
2005 Evergreen Street, Suite 2010 | Sacramento, CA 95815
P (916) 263-2195  F (916) 263-2197
csac@dca.ca.gov  |  www.dca.ca.gov/csac



## BOXER/MANAGER and BOXER/PROMOTER
# RELEASE OF CONTRACT

Dated _____2/23/17_____

*We, the undersigned, hereby mutually release each other from any further liability or obligation by virtue of that certain contract entered into and filed with the State Athletic Commission of California on or about the __23__ day of __February__ 20 __17__ for a period of __5__ years.*

*We hereby agree that said contract is to be considered canceled and void and of no effect; this release to be effective from the __23__ day of __February__, 20 __17__.*

*NOTE: This release must be signed in the presence of an Athletic Commission Inspector or employee or it must be executed in the presence of a Notary Public and his/her seal affixed hereto. In either case, it will only be effective when all parties to the contract have signed this release, and it has been filed with the Athletic Commission.*

| | | | |
|---|---|---|---|
| **BOXER** | JOSEPH DIAZ<br>Printed Name | Signature | 2/23/17<br>Date |
| PROMOTER | MANAGER VACHA Heredia<br>Printed Name | Signature | 2-23-17<br>Date |
| **MANAGER** | Moses Heredia<br>Printed Name | Signature | 2/23/17<br>Date |
| **CSAC** | LARRY ERVIN<br>Inspector/Representative Printed Name | Signature | 2/23/17<br>Date |

STATE OF CALIFORNIA...........................}
                                    } §
County of _____}

On this _____ of _____, 20____, before me came
_____ and _____ to me known and known to me to be the individuals described in, and who executed the foregoing instrument and they duly acknowledge to me that they executed the same.

Sworn to before me this _____ day of _____, 20_____,

_____
Notary Public

M-2012-0012

Contract Release
Rev.2014
DIAZ 0003



**STATE OF CALIFORNIA**

**dca**

DEPARTMENT OF CONSUMER AFFAIRS

BUSINESS, CONSUMER SERVICES, AND HOUSING AGENCY  •  GOVERNOR EDMUND G. BROWN JR.
**CALIFORNIA STATE ATHLETIC COMMISSION**
2005 Evergreen Street, Suite 2010 | Sacramento, CA 95815
P (916) 263-2195  F (916) 263-2197
csac@dca.ca.gov | www.dca.ca.gov/csac



BOXER/MANAGER and BOXER/PROMOTER                    M-1012-0012

# RELEASE OF CONTRACT

Dated     3/22/17

*We, the undersigned, hereby mutually release each other from any further liability or obligation by virtue of that certain contract entered into and filed with the State Athletic Commission of California on or about the 22 day of MARCH, 20 17 for a period of 5 years.*

*We hereby agree that said contract is to be considered canceled and void and of no effect; this release to be effective from the 22 day of MARCH, 20 17.*

*NOTE: This release must be signed in the presence of an Athletic Commission Inspector or employee or it must be executed in the presence of a Notary Public and his/her seal affixed hereto. In either case, it will only be effective when all parties to the contract have signed this release, and it has been filed with the Athletic Commission.*

| JOSEPH Pedroza DIAZ | | 3/22/17 |
|---|---|---|
| BOXER          Printed Name | Signature | Date |
| Rolando Arellano Golden Boy Promotion | | 3/22/17 |
| PROMOTER      Printed Name | Signature | Date |
| Moises T Heredia | | 3/22/17 |
| MANAGER       Printed Name | Signature | Date |
| Larry Ervin | | 3/22/17 |
| CSAC          Inspector/Representative Printed Name | Signature | Date |

STATE OF CALIFORNIA..........................}
                                                              } §
County of    Los Angeles                    }

On this    22ND    of    MARCH   , 20 17, before me came
Joseph Diaz, Rolando Arellano and Moses Heredia Larry Ervin    to me known and known to me to be the individuals described in, and who executed the foregoing instrument and they duly acknowledge to me that they executed the same.

SHAUNA NATASHA DAVIS
Commission # 2112001
Notary Public - California
Los Angeles County
My Comm. Expires May 17, 2019

Sworn to before me this   22   day
of    MARCH   , 20 17.

_____
Notary Public

Contract Release
Rev.2014

M-1012-0012                DIAZ 0004



DEPARTMENT OF CONSUMER AFFAIRS
BUSINESS, CONSUMER SERVICES, AND HOUSING AGENCY • GOVERNOR EDMUND G. BROWN JR.
**CALIFORNIA STATE ATHLETIC COMMISSION**
2005 Evergreen Street, Suite 2010 | Sacramento, CA 95815
Phone: (916) 263-2195 | Fax: (916) 263-2197
Website: www.dca.ca.gov/csac | Email: csac@dca.ca.gov



February 24, 2017


Moses Heredia
9 Brownsbury Rd
Laguna Niguel, CA 92677

## RE:  NOTICE OF APPROVED CONTRACT

Dear Mr. Heredia:

The California State Athletic Commission has approved the attached Manager-Fighter Contract(s) summarized below.

| Contract #:  M-2017-0006 | | | |
|---|---|---|---|
| **Manager:** | Moses Heredia | **Management Share:** | 18% |
| **Co- Manager:** | N/A | **Start Date:** | 02/23/2017 |
| **Athlete Name:** | **Joseph Diaz Jr.** | **Expiration Date:** | 02/22/2022 |

If you have any other questions or concerns regarding this contract, please contact me at the Commission office main line at (916) 263-2195 or via email at csac@dca.ca.gov.

Sincerely,

*Heather Jackson*

Heather Jackson
Staff Services Analyst
California State Athletic Commission

Enclosure(s):  Approved Contract

DIAZ 0005



# Manager Contract Information



**Request for Arbitration**

| | |
|---|---|
| Contract ID Number: | M-2017-0006 |
| Athlete Federal ID: | CA037384 |
| Athlete Full Name: | Joseph Diaz Jr. ✓ |
| Manager Full Name: | Moses Heredia   10535 |
| Co-Manager1 FullName: | |
| Co-Manager2 Full Name: | |
| Management DBA: | |
| Approved By: | Sophia Cornejo |
| Inspector/CSAC Witness: | Larry Ervin |

| | |
|---|---|
| Date Assigned Out: | 2/13/2017 |
| Assigned Inspector: | Larry Ervin (per Mrelyea) |
| Contract Status: | **APPROVED** |
| Contract Start Date: | 2/23/2017 |
| Contract End Date: | 2/22/2022 |
| Manager amount: | 18.00% |
| Co-Manager 1%: | |
| Co-Manager 2%: | |
| Boxer Amount Guarantee (Per Year): | 2 fights/year |

**NOTES:**

**Attachments:**

DIAZ 0006



STATE OF CALIFORNIA

# dca

DEPARTMENT OF CONSUMER AFFAIRS

BUSINESS, CONSUMER SERVICES, AND HOUSING AGENCY • GOVERNOR EDMUND G. BROWN JR.

**CALIFORNIA STATE ATHLETIC COMMISSION**
2005 Evergreen Street, Suite 2010 | Sacramento, CA 95815
P (916) 263-2195  F (916) 263-2197
csac@dca.ca.gov | www.dca.ca.gov/csac

FEB 24 2017

# BOXER - MANAGER CONTRACT

*PLEASE READ ENTIRE CONTRACT BEFORE SIGNING*

THIS CONTRACT MADE THIS **23** DAY OF **February**, AT **La Verne**, CALIFORNIA, BY AND

BETWEEN **MOSES HEREDIA** LM# **10535** OF **Laguna Niguel** (HEREAFTER "MANAGER" (LEGAL NAME)

AND **JOSEPH DIAZ JR.** FED ID# **CA037384** OF **Glendora, CA** (HEREAFTER "ATHLETE" (LEGAL NAME).

In consideration of mutual promises contained herein, the above parties agree to and with each other and with the California State Athletic Commission (hereinafter "Commission"), in order to induce its acceptance hereof as follows:

## A.  BOXER AGREES:

1.  Pursuant to Rule 222, no contract may exceed five (5) years.  Boxer understands that he or she may negotiate the term of this contract with Manager *before* signing this contract.  Subject to the approval of this contract by Commission, to render services from **2/23/17** to **2/22 22** solely and exclusively for Manager in such boxing contest, exhibition, or training exercises as Manager shall from time to time direct, whether in California or elsewhere.
2.  To pay Manager **18 %** percent (shall *not* exceed 33 1/3 percent – Rule 221) of any sum of money Boxer earns for any services described in Paragraph A.1. rendered by Boxer pursuant to this contract.  Boxer understands that he may negotiate the actual percentage figure with Manager *before* signing this contract.  Said **18 %** percent shall be determined incurred by Boxer in the performance of Boxer's duties hereunder.
3.  To fulfill faithfully any contract entered into Boxer's behalf by Manager for rendition of the services described above during the term of this agreement. **Manager waives rights to select trainer, fighter will have final rights**
4.  That Manager may render services to others during the term of this agreement. **To select trainer.**
5.  To attend all training, exercising, and other necessary work as Manager shall require, and to proceed and travel by any means of conveyance when required to do so by Manager for the performance of his or her duties under this contract. Manager conveys the right to select trainers.
6.  That Boxer will not, during the term of this agreement, take or engage in any boxing contests, exhibitions or training exercises without first having obtained the written permission of Manager to do so.

## B.  MANAGER AGREES:

1.  To guarantee Boxer that the Boxer's share of money earned pursuant to this contract shall not be less than **2 fights per yr** *per year* during the term of this contract or Manager will pay Boxer the difference between the amount actually earned and **2 fights**
2.  To use Manager's best efforts to secure remunerative boxing contests and at all time to act in the best interest of Boxer.
3.  To make no contract for a boxing contest where Manager has a direct or indirect financial or contractual interest in Boxer's opponent.
4.  To render a full, true, accurate and itemized accounting to Boxer and to the Commission if the Commission so requests. Said accounting shall include, with respect to each other contest, exhibition or match: (a) the amount of money received by Manager pertaining to the contest, exhibition, or match; (b) the amount of money actually paid to boxer, (c) the amount of money owed to Manager by Boxer, provided, however, that no sum of money shall be claimed under this subsection which cannot be substantiated by a receipt signed by the Boxer within thirty (30) days after Boxer sends a written demand of an accounting, by certified mail to Manager. Boxer shall send a copy of any demand made to Manager to the Commission by regular mail.
5.  To keep Manager's records available to and open for inspection by Boxer and/or the Commission upon demand.

## C.  BOXER AND MANAGER FURTHER AGREE:

1.  That all contests or exhibitions of boxing and conducted under this contract in the State of California shall in all respects be in conformity with the laws of the State of California and rules and regulations now or hereafter adopted by the Commission.
2.  This contract may be declared null and void if at any time during the term the Manager, after notice from the Commission pursuant to the provisions of Rule 221, is not duly licensed by the Commission.
3.  To make the required contributions to the Boxer's pension plan pursuant to Rule 401.
4.  All controversies arising between the parties hereto, including but not limited to controversies concerning the validity and/or enforceability of this contract, shall be submitted for arbitration in the following manner:
    Within two (2) weeks after the origin of such dispute and of a desire and willingness to refer such dispute to arbitration, whereupon the Commission of the existence of such dispute and of such dispute and of a desire and willingness to refer such dispute to arbitration, whereupon the Commission shall by itself, or through another duly appointed by it, conduct a hearing at a time and place reasonably convenient to all interested parties and witnesses; notification of the time and place of such hearing shall be given to all interested persons at their last known places of address.  The parties hereto agree in the event of submission of any such controversy to arbitration, that the decision of such arbitrator shall be final and binding upon the parties hereto and each of them to be bound thereby.

Contract ID: **M-2017-0006**

DIAZ 0007

**C. (CONTINUED)**

5. The arbitrator may terminate this contract if Manager fails to obtain a good faith offer of a boxing match, exhibition or contest from a responsible person, firm or corporation for at least four (4) consecutive months, during all of which time Boxer shall have been ready, willing, able and available to accept and perform such services.

6. Manager and Boxer both certify and promise to each other and to the Commission, to induce its approval hereof that no other person or party in any way or in any degree shares or participates in the ring earnings of the Boxer or in the Manager's or Boxers portion of such earnings, that the Boxer and Manager have no other agreements with each other concerning compensation to the Boxer's career, and that no oral or written agreement exists concerning such sharing or participation.

7. Manager and Boxer both certify and promise to each other and to the Commission, to induce its approval hereof, that no oral or written agreement exists between them other than this contract, that the Boxer has no other agreement with any other person concerning his or her boxing activities, and that no change in or addition to this contract is valid or will be enforced unless it is made a part of this contract in writing and approved by a Commission representative.

8. This agreement is not valid until and unless both parties appear at the same time before the Commission or a Commission representative for the approval and acceptance of this agreement by the California State Athletic Commission.

9. This agreement may only be modified by the Manager and the Boxer in writing. Any such modification shall be added to this contract and approved by the Commission in writing before it is effective.

10. This agreement may be terminated by the Manager and the Boxer executing a Release of Contract form provided by the Commission. This agreement may not be terminated until such a Release of Contract is executed by the Manager and Boxer and is submitted to and approved by the Commission.

The parties hereto have read and signed this contract and agreement in each other's presence and in the presence of the Commission Representative who has orally reviewed the terms of this contract with the Boxer

on this _23_ day of _February 2017_ .

**THIS CONTRACT IS NOT VALID UNTIL THE DATE ON WHICH IT HAS BEEN SIGNED AS APPROVED BY THE COMMISSION'S EXECUTIVE OFFICER OR DESIGNEE.**

**IF THE PARTIES HAVE ANY OTHER AGREEMENTS CONCERNING THE BOXER'S COMPENSATION OR CAREER THAN THOSE SET FORTH ON THIS CONTRACT, THEY MAY NOT BE ENFORCED BY THE COMMISSION.**

Commission Representative Signature

Print Name: _Larry Elam_

Manager's Signature

Print Name: **Moses Heredia**

Boxer's Signature

Print Name: **Joseph Diaz Jr.**

Co-Manager's Signature *(if applicable)*

Print Name: _____

Co-Manager's Signature *(if applicable)*

Print Name: _____

Accepted and Approved by Executive Officer or Designee

Date _2/24/17_

*I hereby acknowledge that the provisions of this contract reviewed with me and by a Commission Representative.*

Boxer's Signature

Print Name: **Joseph Diaz Jr.**

Date _2/23/17_

Contract ID: **M-2017-0006**

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                        )
County of ___LOS ANGELES___               )

On ___MARCH 22, 2017___ before me, ___SHAUNA DAVIS, NOTARY PUBLIC___,
       *Date*                              *Here Insert Name and Title of the Officer*

personally appeared ___JOSEPH PEDROZA DIAZ, ROLANDO ARELLANO, MOSES HEREDIA___
                                    *Name(s) of Signer(s)*
___AND LARRY ERVIN___,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

SHAUNA NATASHA DAVIS
Commission # 2112001
Notary Public - California
Los Angeles County
My Comm. Expires May 17, 2019

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
            *Signature of Notary Public*

*Place Notary Seal Above*

──────────────── **OPTIONAL** ────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____  Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual      ☐ Attorney in Fact | ☐ Individual      ☐ Attorney in Fact |
| ☐ Trustee      ☐ Guardian or Conservator | ☐ Trustee      ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

DIAZ 0009

# Los Angeles Times

ADVERTISEMENT



# Three Are Indicted in Henley Case



**By MARK PLATTE**

OCT. 13, 1993 12 AM PT

**TIMES STAFF WRITER**

A federal grand jury in Los Angeles indicted three men Tuesday on charges of trying to extort at least $100,000 from Ram cornerback Darryl Henley with death threats.

The four-count indictment formally charges Rafael (Ralph) Bustamante, 28, of Rancho Cucamonga, James Saenz, 31, of Covina, and Alejandro Cuevas, 30, of West Covina with conspiracy to extort money from Henley.

A fourth man, Moises Heredia, 18, Bustamante's half brother, had been arrested with the others in connection with the alleged plot, but was not indicted.

Bustamante has said that Henley owed him $350,000 in connection with a drug deal.

**SUBSCRIBERS ARE READING**

CALIFORNIA

Will L.A. flatten a legendary Boyle Heights tortilla factory?

CALIFORNIA

A killer shadows an L.A. homeless camp. 'Some people work for the devil'

TELEVISION

Breaking down the stunning conclusion of 'Mare of Easttown'

WORLD & NATION

Las Vegas is betting on the gamblers and tourists returning. Will lost jobs come back?

DODGERS

Hernández: A slump or something else? Mookie Betts hasn't been himself this season

DIAZ 0010

ADVERTISEMENT

The indictment does not explain the nature of the $350,000 debt, but an affidavit by a Drug Enforcement Administration agent claimed that Bustamante financed a cocaine deal that went sour when authorities intercepted a Henley-recruited courier at Atlanta's Hartsfield International Airport and the drugs were seized.

The affidavit claimed that a subsequent investigation revealed that Henley was "the source of the cocaine" that was being carried in a suitcase by Tracy Donaho, then a Ram cheerleader.

Attorneys for Henley and Donaho have said neither was involved in the cocaine shipment, and no criminal charges have been filed against either.

Tuesday's indictment charges that Bustamante and Cuevas confronted Henley at gunpoint on Sept. 8 at the Rams' training facility in Anaheim and demanded that he pay Bustamante what he allegedly owed. Bustamante reportedly jumped over a security fence at the park and took Henley's 1992 Lexus.

Rams' Henley Is Indicted on Drug Charges - Los Angeles Times                                    6/1/21, 9:23 PM

ADVERTISEMENT



# Rams' Henley Is Indicted on Drug Charges

By MARK PLATTE
DEC. 3, 1993 12 AM PT
TIMES STAFF WRITER

LOS ANGELES — A federal grand jury indicted Rams cornerback Darryl Henley and former team cheerleader Tracy Donaho on Thursday on charges of cocaine possession and conspiring to operate an illicit drug network that involved cross-country narcotics shipments.

The indictment identifies Henley, Donaho and three others as participants in a conspiracy to transfer two shipments of cocaine last summer from Henley's home in Brea to drop-off points in Atlanta and Memphis, using the 20-year-old Donaho as a courier.

A warrant for Henley's arrest was issued Thursday, and Carl E. Douglas, his attorney, said the professional football player would surrender to authorities before a 2 p.m. arraignment today in U.S. District Court in Santa Ana. Douglas said that he had still not seen the indictment late Thursday and could not comment on the case.

SUBSCRIBERS ARE READING

CALIFORNIA
Will L.A. flatten a legendary Boyle Heights tortilla factory?

CALIFORNIA
A killer shadows an L.A. homeless camp. 'Some people work for the devil'

TELEVISION
Breaking down the stunning conclusion of 'Mare of Easttown'

WORLD & NATION
Las Vegas is betting on the gamblers and tourists returning. Will lost jobs come back?

DODGERS
Hernández: A slump or something else? Mookie Betts hasn't been himself this season

DIAZ 0012

Donaho was also expected to surrender and appear at today's scheduled arraignment. Her attorney did not return several calls for comment.

ADVERTISEMENT

ADVERTISEMENT

Besides Henley and Donaho, the federal grand jury also indicted Rafael (Ralph) Bustamante, 28, identified as the supplier of "multi-kilogram quantities of cocaine" to Henley.

The other two charged were Willie Haghey McGowan, 30, of Duarte, accused of packaging the drugs in suitcases for Donaho to carry on her cross-country flights, and Gary West, 30, of Memphis, accused of meeting Donaho in Tennessee and picking up about nine pounds of cocaine.

A federal judge issued a warrant for McGowan's arrest Thursday. West is in a Memphis jail on an unrelated charge, and Bustamante had already been arrested on related extortion allegations.

In October, Bustamante and two other individuals were indicted on charges of extortion. The indictment said they threatened to kill Henley if he did not pay $360,000 that Bustamante claimed he was owed for a cocaine delivery.

The grand jury re-indicted Bustamante,

DIAZ 0013

Alejandro Figueroa Cuevas and James Timothy
Saenz on those extortion charges Thursday, so
that all defendants could be tried together.
Their trial is scheduled to begin Tuesday.

Court records indicate that Bustamante, Cuevas
and a friend of Henley's known as Eric
Manning confronted Henley at gunpoint in
September at the Rams' practice facility in
Anaheim and demanded payment for a cocaine
shipment.

Henley later reported to police that the men
stole his white 1992 Lexus 400 SE, as well as a
Glock 9-millimeter semiautomatic handgun
Henley kept in the car, after the confrontation.
Some hours later, Manning was shot to death
outside his Covina apartment, and 9-millimeter
shell casings were found near his body. Neither
Bustamante, Cuevas nor Henley has been
connected to the slaying.

In Thursday's indictment, Henley and Donaho
were both charged with one count of conspiracy
and one count of intent to distribute cocaine.
They face possible life sentences and $8 million
in fines if convicted on both counts. The
extortion charges against the other three carry
maximum prison terms of 20 years and fines as
high as $250,000.

ADVERTISEMENT

"The indictment alleges that this was a
sophisticated drug trafficking ring that

extended from Southern California to . . .
Tennessee and Georgia," Assistant U.S. Atty.
Deidre Z. Eliot said. "Darryl Henley allegedly
played an integral role."

Henley was the Rams starting cornerback this
year until he left the team in October, after the
disclosure that he was the target of a criminal
investigation. Through statements issued by his
former attorneys, Henley has maintained his
innocence.

Team officials declined comment in a prepared
statement Thursday. An NFL spokesman said
the league had been notified, but would have
nothing to say about Henley's indictment.

Several of Henley's teammates expressed
surprise about the charges.

ADVERTISEMENT

"I can't imagine it," said Willie (Flipper)
Anderson, who has known Henley since they
played football together at UCLA. "Being the
athletes we are, and making the money we do,
it's hard to see anybody getting involved in
something like that. It's a shame."

Federal authorities began investigating Henley
in July, after Donaho attracted the attention of
federal narcotics investigators by paying cash
for a one-way ticket from Ontario International
Airport to Atlanta on a pre-dawn flight. Such a
purchase is a tip-off that a passenger may be

DIAZ 0015

carrying drugs, officials say.

Drug Enforcement Administration agents were waiting to question Donaho when she landed at Atlanta's Hartsfield International Airport. She disavowed ownership of a suitcase she had checked with the airline and was permitted to leave the airport. DEA agents got a search warrant to examine the contents of the suitcase and found 12 kilograms, or 26.4 pounds, of cocaine inside.

Later that day, Donaho returned to claim the bag and was arrested. Henley, who maintains a home in Atlanta, was with her at the time, but was not arrested because his possible connections were unknown.

ADVERTISEMENT

Federal charges against Donaho were dropped four days after her arrest, but authorities retained the right to file charges against her.

According to court documents, Donaho told federal agents that Henley had approached her earlier in the year with an offer to make money by transporting cash in suitcases for McGowan. The indictment alleges that Henley asked Donaho to meet McGowan at Henley's home in Brea on July 2 and carry a suitcase on a flight from Burbank to Memphis.

In Memphis, West allegedly met Donaho and drove her to an apartment in the city, where she

DIAZ 0016

deposited the suitcase containing four kilos of
cocaine. West gave Donaho air fare back to
California and picked up the suitcase at the
apartment the next day, authorities said.

The indictment alleges that Henley paid
Donaho $1,000 for delivering the suitcase.

ADVERTISEMENT

The Atlanta shipment was handled in roughly
the same manner, according to the indictment.
Henley allegedly asked Donaho to carry a
suitcase on July 15 on a flight from Ontario to
Atlanta. The indictment alleges that
Bustamante and Manning delivered 12
kilograms of cocaine to Henley's Brea home
and that McGowan instructed her, through
Manning, to check the suitcase through the
airport baggage handlers rather than carrying it
aboard the flight.

After news of the criminal investigation
surfaced in early October, Henley left the team.
The Rams requested and received a roster
exemption, signing free-agent cornerback
Wymon Henderson to replace Henley. Henley,
who is earning $275,000 in the option year of
his contract, has been paid during the leave.

Rams safety Michael Stewart said the loss of
Henley "is almost like losing a brother."

"You lose a brother and naturally it's going to
have an impact on you," he said.

ADVERTISEMENT

≡ Sections

## Los Angeles Times



# 3 Men Plead Not Guilty in Case Involving Rams Player

By DAVAN MAHARAJ

OCT. 19, 1993 12 AM PT

TIMES STAFF WRITER

SANTA ANA — Three men implicated in a drug ring that allegedly involved Los Angeles Rams cornerback Darryl Henley pleaded not guilty Monday to conspiring to extort at least $100,000 from the football player.

Entering not guilty pleas were Rafael (Ralph) Bustamante, 28, of Rancho Cucamonga; James Saenz, 31, of Covina, and Alejandro Cuevas, 30, of West Covina. U.S. Magistrate Ronald Rose set trial for Dec. 7.

The three men were arrested after a federal grand jury in Los Angeles returned a four-count indictment last week. A fourth man, Moises Heredia, 18, who is Bustamante's half-brother, also was arrested, but charges against him were later dropped.

Bustamante has said that Henley owed him $350,000 in connection with a drug deal.

**SUBSCRIBERS ARE READING**

CALIFORNIA

Will L.A. flatten a legendary Boyle Heights tortilla factory?

CALIFORNIA

A killer shadows an L.A. homeless camp. 'Some people work for the devil'

TELEVISION

Breaking down the stunning conclusion of 'Mare of Easttown'

WORLD & NATION

Las Vegas is betting on the gamblers and tourists returning. Will lost jobs come back?

DODGERS

Hernández: A slump or something else? Mookie Betts hasn't been himself this season

DIAZ 0018

3 Men Plead Not Guilty in Case Involving Rams Player - Los Angeles Times                                    4/1/21, 9:20 PM

ADVERTISEMENT                                                    ADVERTISEMENT



Henley has not been charged with any wrongdoing. Federal agents have said in court papers that Henley was a key player in a drug distribution ring.

An affidavit filed by the Drug Enforcement Administration indicates that Bustamante financed a 12-kilogram cocaine deal that went sour when authorities intercepted a courier, reportedly recruited by Henley, at Atlanta's Hartsfield International Airport and the drugs were seized.

Henley was the source of the cocaine that was being carried in a suitcase by then-Rams cheerleader Tracy Donaho, court documents state.

The indictment charges that Bustamante and Cuevas confronted Henley at gunpoint on Sept. 8 at Rams Park, the team's training facility in Anaheim, and demanded that he pay Bustamante what he owed him. Bustamante reportedly jumped over a security fence and took Henley's 1992 Lexus. Bustamante and Cuevas had set a deadline of Sept. 25 for the money to be delivered or else Henley would be killed, the indictment states.

A week later, Bustamante and Cuevas appeared at Henley's father's house and demanded that the money be repaid, according to the

DIAZ 0019

indictment.

Fearing for his family's safety, Henley
cooperated with authorities, who arrested the
four men by luring several of them to a
rendezvous with promises of a payment on the
claimed $350,000 debt.

## Davan Maharaj

As editor of the Los Angeles Times Media
Group, Davan Maharaj oversaw the largest
daily newsgathering organization in the West.
He was let go during an organizational
restructuring in August 2017 along with other
senior leaders. His responsiblities included the
flagship Los Angeles Times, the nation's fifth-
largest newspaper; latimes.com, the nation's
second-largest newspaper website; Times
Community News, which consists of six
suburban daily and weekly newspapers and
websites; and the Spanish-language Hoy and
Fin de Semana newspapers and websites.
Maharaj was named editor in December 2011.
He had been managing editor since May 2008,
with oversight of the news departments. He
was responsible for shaping coverage,
deploying people and overseeing personnel
decisions with the editor. Maharaj has worked
as a reporter for The Times in Orange County,
Los Angeles and East Africa. His six-part series
"Living on Pennies," in collaboration with
Times photographer Francine Orr, won the
2005 Ernie Pyle Award for Human Interest
Writing and inspired readers to donate tens of
thousands of dollars to aid agencies working in
Africa. Closer to home, Maharaj's investigative
report about a Leisure World attorney who
inherited millions of dollars in stock, land and
other "gifts" from his clients led to changes in

DIAZ 0020

California probate law. Maharaj has been an
assistant foreign editor and, in Business, served
as a deputy editor before assuming leadership
of the department last year. During Maharaj's
tenure, the Business section revamped its
coverage to give greater emphasis to consumer
issues. It also redesigned its Sunday section to
focus on personal finances. A native of
Trinidad, Maharaj holds a political science
degree from the University of Tennessee and a
master's degree in law from Yale University.

DIAZ 0021

Co-Defendant in Henley Case Denied Bail - Court: Judge says man charged with supplying cocaine is a danger to today's game, remain uncertain   Los Angeles Times   6/1/21, 9:29 PM

ADVERTISEMENT

≡ Sections

# Los Angeles Times

 🔍

# Co-Defendant in Henley Case Denied Bail : Court: Judge says man charged with supplying cocaine is a danger to the community and a flight risk. Ram player's travel plans, including to today's game, remain uncertain.

By MARK PLATTE AND MIKE REILLEY
AUG. 25, 1994 12 AM PT
TIMES STAFF WRITERS

SANTA ANA — A co-defendant in the drug trial of Los Angeles Rams cornerback Darryl Henley was denied a chance to make bail Wednesday when a federal judge ruled he was too much of a flight risk.

Rafael (Ralph) Bustamante, charged in a federal indictment with supplying "multikilogram quantities of cocaine" to Henley, petitioned the court to be released on bail from the Metropolitan Detention Center until the trial starts in January.

Bustamante was also indicted on extortion charges and accused of threatening to kill Henley if the football player did not pay

**SUBSCRIBERS ARE READING**

CALIFORNIA

Will L.A. flatten a legendary Boyle Heights tortilla factory?

CALIFORNIA

A killer shadows an L.A. homeless camp. 'Some people work for the devil'

TELEVISION

Breaking down the stunning conclusion of 'Mare of Easttown'

WORLD & NATION

Las Vegas is betting on the gamblers and tourists returning. Will lost jobs come back?

DODGERS

Hernández: A slump or something else? Mookie Betts hasn't been himself this season

DIAZ 0022

$360,000 that Bustamante said he was owed for a cocaine delivery.

U.S. District Judge Gary L. Taylor ruled that Bustamante could not be freed on bail because he was a danger to the community and likely to flee.

ADVERTISEMENT



ADVERTISEMENT

CHRISTIE'S
INTERNATIONAL REAL ESTATE

LEARN MORE

FASANO FIFTH AVENUE

Anthony P. Brooklier, Bustamante's attorney, argued in part that other defendants in the case have been freed on bail and that his client deserved the same chance. Brooklier did not mention Henley by name.

Federal prosecutors said Bustamante had previous convictions for drug possession and for carrying a concealed weapon and should be denied bail.

Meanwhile, it was still unclear Wednesday night whether Henley would travel with the team to San Diego today for an exhibition game.

On Tuesday, Taylor ruled that if Henley wanted to travel outside the Central District of California--a restriction of his bail--he would have to post $1-million bond. Henley's attorneys were seeking a promise from the Rams to provide the bail amount.

If Henley or the Rams cannot come up with the

DIAZ 0023

Case 5:20-cv-02332-JWH-KK   Document 118-36   Filed 06/01/22   Page 24 of 85   Page ID
#:3906

money, Henley will remain free on his original
bail amount of $200,000 but will not be
permitted to travel with the team to road
games.

Rams Coach Chuck Knox said after practice
Wednesday that Henley will accompany the
team to today's game, but will not play because
of a mild hamstring pull.

Asked if the Rams had agreed to cover Henley's
bail, Knox said: "I'm not involved in that. I just
know that he has been cleared by the league to
practice and has been cleared now to travel."

Henley, who watched practice from the
sidelines with ice on his leg, said he should
return to practice by Sunday. He said he was
unsure what would happen today.

ADVERTISEMENT

"Before I go down there, it's going to be worked
out," he said. "I'm not going to go down there if
it's not right. I was told not to even worry about
it. It's just another chapter closed in the events
of Mr. Henley."

DIAZ 0024

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACR 93-00130-JVS | Date | August 1, 2016 |

| | |
|---|---|
| Title | United States of America v . Raphael Bustamante |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Ivette Gomez | Not Present |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(In Chambers)** **Order Denying Section 2255 Petition Denial of Certificate of Appealability**

Petitioner Raphael Bustamante, true name Ralph Heredia Tarango ("Heredia"), applied to the Court for relief under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel when he entered into a binding plea agreement providing for a 144-month sentence. (Docket No. 1037.) The Government has filed an opposition (Docket No. 1039), and Heredia has filed a reply (Docket No. 1042). In his reply, Heredia also seeks relief by way of a writ of *coram nobis*. (Reply, pp. 5-6.) The Court addresses both theories below.

For the reasons set forth below, the Court denies all relief, and also denies the issuance of a certificate of appealability ("COA").

I.  Background.

After a lengthy trial in 1995, Heredia and others were convicted of two drug offenses, conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute in violation to 21 U.S.C. § 841(a)(1). (Docket No. 481.) He was subsequently sentenced to 20 years in prison. (Docket No. 755.)

On appeal, the Ninth Circuit affirmed the conviction, but remanded for a further evidentiary hearing on defendants' motion for a new trial predicated on jury tampering. (Docket No. 956.) However, before that could occur, Heredia and the

DIAZ 0025

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACR 93-00130-JVS                          Date   August 1, 2016

Title   United States of America v . Raphael Bustamante

Government entered into a binding plea agreement pursuant to Rule 11(e)(1)(C) of the Federal Rules of Civil Procedure.  (Docket No. 984.)  Heredia pled to a charge of violating Section 846, the sole charge in the Third Supplemental Information.  The agreed sentence was 144 months with a 4-year term of supervised release.  (Plea Agreement, ¶ 10.)  He was sentenced to the agreed term on February 15, 2002.  (Docket No. 993.)

Heredia has completed his sentence as well as his term of supervised release. (Petition, p. 6.)

Heredia holds a green card as a resident legal alien.  (Petition, p. 6.)  On a return trip to the United States from Mexico in 2012, he was stopped and a review of his criminal record resulted in the initiation of deportation proceedings.  (See id., Ex. D.)

Heredia's trial counsel asserts that he was unaware of the immigration consequences of the agreed sentence in the Plea Agreement, and that had he been aware, he would have negotiated a sentence of 26 1/2 months.  (Petition, p. 3.)  If such a sentence had been imposed, Heredia would be able to a vail himself of Section 212(c) of the Immigration and Nationality Act to avoid deportation.  (Id.; Brooklier Decl., ¶ 5.)

By way of relief, Heredia asks that he be resentenced to a term of 26 1/2 months, and that the Judgment be effective *nunc pro tunc* as of March 28, 1995, the date the verdict was returned.[1]  (Petition, p. 3.)

II.   Section 2255.

Section 2255 provides in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

---

[1]The date of the sentencing is critical to the availability of relief under Section 212(c).  See Matter of Abdelghany, 26 I. & N. Dec. 254 (2014).

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACR 93-00130-JVS | Date | August 1, 2016 |

| | |
|---|---|
| Title | United States of America v . Raphael Bustamante |

subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(28 U.S.C. § 2255(a); emphasis supplied). There are several reasons why relief under Section 2255 must be denied.

First, Heredia is not in custody. He has completed all aspects of his sentence. The availability of relief ceases when his sentence is served. United States v. Thiele, 314 F.3d 399, 400-01 (9th Cir. 2002).

Second, the Government points out that the petition is barred by the one-year statute of limitations in Section 2255(f). In his reply, Heredia does not address the point, and offers no explanation for the delay once he became aware of the immigration consequences of the Plea Agreement in 20013.

Most telling, however, is the fact that Heredia concedes that he is not entitled to relief under Section 2255, a position he must take to advance his clam for a writ of *coram nobis*. (Reply, p. 5.)

No relief is available under Section 2255.

## III. Writ of *Coram Nobis.*

_____In his petition, Heredia did not advance a claim for a writ of *coram nobis*, and raises the claim for the first time in his reply. The approach is procedurally improper,[2] but the Government anticipated and fully briefed the claim in its oppostion. (Opposition, pp. 6-9.) Thus, the Court considers the claim.

The writ is a "highly unusual remedy, available only to correct grave injustices in a narrow range of cases." United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007). The parties are in agreement on the law.

_____

[2]Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir. 2004); Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003).

DIAZ 0027

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACR 93-00130-JVS | Date | August 1, 2016 |
|---|---|---|---|

| Title | United States of America v . Raphael Bustamante |
|---|---|

The writ is a availble where no relief under Section 2255 or 28 U.S.C. § 2241 would be available to a person who has completed his sentence. Chaidez v. United States, 133 S. Ct. 1103, 1106 n.1 (2013).

The requirements for the writ are four-fold: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989) (internal quotation marks deleted); accord Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).

The first point is established because Heredia is not entitled to relief under Section 2255.

On the second point, Heredia asserts that he was not aware of counsel's inadequate assistance until 2012 when he was stopped by immigration officials. (Reply, p. 5.) However, that does not explain the three year delay in seeking relief. Indeed, the petition comes more that two years after the Department of Homeland Security initiated proceedings in June 2013. (See Petition, Ex. D.) Taking the one-year statute for discovery in Section 2255(f)(4) as reasonable benchmark for diligence, Heredia was not diligent in pursuing relief. However, the Government has not shown prejudice which would appear to be necessary to establish laches. United States v. Kwan, 407 F.3d 1005, 1012-13 (9th Cir. 2005).

On the third point, the potential adverse immigration consequences are sufficiently concrete to satisfy the Article III case-or-controversy requirement.

On the final point, the Court cannot say that there has been an error of a fundamental nature sufficient to invalidate the conviction. The Sixth Amendment guarantees the effective assistance of counsel at trial. Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish ineffective assistance by his trial counsel, a petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Id. at 688–93; see also Knowles v. Mirzayance , 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009) ("Strickland requires a defendant to establish deficient performance and prejudice"); Yarborough v. Gentry, 540

DIAZ 0028

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACR 93-00130-JVS | Date | August 1, 2016 |
|---|---|---|---|

| Title | United States of America v . Raphael Bustamante |
|---|---|

U.S. 1, 5 (2003) (per curiam) (the Sixth Amendment right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense"). Because both prongs of the Strickland test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. See Strickland, 466 U.S. at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other"); Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir.) (no need to address prejudice when petitioner cannot establish deficient performance), cert. denied, 525 U.S. 839 (1998).

Assuming that Heredia's trial counsel fell below the standard when he failed to negotiate for a sentence that might have provided Heredia relief from deportation, there is no prejudice here. The length of the sentence which Heredia had actually served by the time of resentencing was in excess of the five-year limitation for relief under Section 212(c). See Matter of Abdelghany, 26 I. & N. Dec. 254. Heredia makes no response to the Government's contention that the actual time served, not the nominal sentence, would control. (Opposition, pp. 8-9.) Moreover, it is sheer speculation whether the Government would have agreed to a 26 1/2 month sentence or whether the Court would have accepted it. To the extent this Court is invited to resentence, it is apparent that a sentence of 26 1/2 months would not reflect the seriousness of the crime or promote respect for the law, and thus would not be an appropriate sentence under the Sentencing Reform Act. 18 U.S.C. § 3553(a)(2)(A). Moreover, a sentence of 26 1/12 months for a crime involving 12 kilograms of cocaine would not be reasonable. United States v. Booker, 543 U.S. 220, 261-62 (2005)

Heredia is not entitled to the issuance of a writ of *coram nobis*.

IV.    Conclusion.

The petition is denied with prejudice.

V.    Denial of Certificate of Appealability.

The Court finds that Heredia has failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). Here, the Court

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACR 93-00130-JVS | Date | August 1, 2016 |
|---|---|---|---|

| Title | United States of America v . Raphael Bustamante |
|---|---|

dismisses the petition on the merits.  Thus, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Here, the Court finds that reasonable jurists would not find the Court's decision debatable or wrong.

Accordingly, the Court denies Heredia a COA.

|  | : | 00 |
|---|---|---|
| Initials of Preparer | kjt | |

DIAZ 0030

No. ___

IN THE

# Supreme Court of the United States

RAFAEL BUSTAMANTE,

*Petitioner*,

v.

UNITED STATES OF AMERICA

*Respondent*.

**On Petition for a Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit**

**PETITION FOR A WRIT OF CERTIORARI**

ERIC S. MONTALVO*
ASTRID LOCKWOOD
THE FEDERAL PRACTICE GROUP
1750 K Street, NW, Suite 900
Washington, DC 20006
(202) 862-4360
emontalvo@fedpractice.com

*Counsel for Petitioner*

*Counsel of Record

i

## QUESTIONS PRESENTED

I.     A question that has divided the circuits, whether the Sixth Amendment's guarantee of effective assistance of counsel requires a criminal defense attorney to advise a noncitizen longtime lawful permanent resident defendant that an actual professional conflict of interest exists and whether the failure to disclose the actual self-interest conflict which adversely affected counsel's performance through a purposeful omission of facts in a 28 U.S.C. § 2255 petition that would have revealed counsel affirmatively misled the defendant regarding the effect of his plea on deportation inducing a guilty plea is presumptively prejudicial requiring his plea to be set aside?

II.    Whether under *Cuyler v. Sullivan* the court erred in failing to investigate an actual self-interest conflict of interest which existed concerning defense counsel which adversely affected counsel's performance through a purposeful omission of material facts in a previous 28 U.S.C. § 2255 petition which would have revealed counsel affirmatively misled Mr. Bustamante regarding the effect of his plea on deportation?

DIAZ 0032

ii

III.   Whether in the context of deportable offense, under *Strickland, Lockhart, Padilla,* and *Lee,* counsel's conduct fell below an objective standard of reasonableness when counsel affirmatively misled a noncitizen longtime lawful permanent resident with extended familial and business ties to the United States client by affirmatively advising his plea would have no impact upon his immigration status and not result in deportation, where there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial based on the fact that the noncitizen longtime lawful permanent resident had contested his guilt during the first proceeding and subsequently entered into a plea agreement relying on the advice of counsel requires a plea to be set aside?

IV.   Whether in the context of deportable offense, under *Strickland, Padilla,* and *Lee,* counsel's conduct fell below an objective standard of reasonableness when counsel failed to negotiate an INA § 212(c) eligible plea after the case was set aside by the court of appeals due to jury tampering, and failed to file a timely § 2255 for relief requiring the plea to be set aside due to the ineffective assistance of counsel known to defendant's counsel?

iii

V.    Whether the court erred under *Padilla* and its progeny through its determination that no prejudice was suffered by noncitizen longtime lawful permanent resident defendant being subject to deportation proceedings as a result of criminal defense counsel's failure to achieve reasonable competence or seek out consultation on the impact of a defendant's pleas on his immigration status when considering established California law prior to the negotiated plea for a noncitizen longtime lawful permanent resident which created objective standards of counsel advice in relation to the immigration consequences of a noncitizen longtime lawful permanent resident defendant's plea requiring the disclosure of collateral consequences including deportation, *People v. Soriano*, 194 Cal. App. 3d 1470 (1987) and *United States v. Kwan*, 942 F.2d 556 (9th Cir. 1991), requiring the plea to be set aside?

DIAZ 0034

iv

## PARTIES TO THE PROCEEDING

Petitioner, the sole plaintiff-appellant in the courts below, is Rafael Bustamante, true name Rafael Heredia Tarango.

Respondent, the appellee in the courts below, is the United States.

DIAZ 0035

v

## CORPORATE DISCLOSURE STATEMENT

There are no parents or subsidiaries whose disclosure is required under Rule 29.6.

vi

## TABLE OF CONTENTS

Page(s)

QUESTIONS PRESENTED.......................................I

PARTIES TO THE PROCEEDING ......................... IV

CORPORATE DISCLOSURE STATEMENT............V

APPENDICES....................................................... VIII

TABLE OF AUTHORITIES  ................................... IX

PETITION FOR WRIT OF CERTIORARI ................ 1

OPINIONS AND ORDERS BELOW.......................... 1

JURISDICTION........................................................... 1

CONSTIUTIONAL PROVISIONS INVOLVED........ 1

INTRODUCTION ...................................................... 2

STATEMENT OF THE CASE.................................... 6

REASONS FOR GRANTING THE WRIT ............... 11

   I.    **The Court should grant the petition to
resolve a deep and mature circuit
conflict** .................................................11

   II.   **The Court should grant the petition and
reverse because it would not have been
irrational for Mr. Bustamante to have
decided to obtain new counsel to
represent him with the plea agreement
and the subsequent appeals, had he been
properly either put on notice by his
counsel of his alleged *self-interest based
conflict* or had the lower courts
investigated the alleged *self-interest
based conflict* of Mr. Bustamante's
counsel**...................................................15

vii

**III.    The Court should grant the petition and
reverse because it would not have been
irrational for Mr. Bustamante to reject
the plea agreement had he been properly
advised of the deportation
consequences**…………………………...............…18

**IV.    The questions presented are of national
importance and require prompt
resolution, and this case is an ideal
vehicle for resolving the
question**………………………...........................…22

CONCLUSION…………………………...........................…23

DIAZ 0038

viii

# APPENDICES

Appendix A:

Mandate for the United States Court of Appeals for the Ninth Circuit, No. 16-56254, dated March 27, 2018 ..................................................................... .1a

Appendix B:

Memorandum for the United States Court of Appeals for the Ninth Circuit, No. 16-56254, dated November 20, 2017 ............................................. 2a

Appendix C:

Order for the U.S. District Court for the Central District of California, No. SACR 93-00130-JVS, dated August 1, 2016……...…....4a

Appendix D:

Order on Rehearing for the United States Court of Appeals for the Ninth Circuit, No. 8:93-cr-00130-JVS-1, dated March 19, 2018 ............................. 12a

Appendix E:

Constitutional Provisions and Statutes……13a

ix

## TABLE OF AUTHORITIES

### Cases

*Beets v. Collins,*
   986 F.2d 1478 (5th Cir. 1993)....................12, 13

*Campbell v. Rice,*
   408 F.3d 1166 (9th Cir. 2005)...........…............. 14

*Chester v. Comm'r of Pa. Dep't of Corr.,*
   589 Fed.Appx. 94 (3rd Cir. 2015)....…............…..14

*Cuyler v. Sullivan,*
   466 U.S. 335 (1980) ...…......…... 5, 11, 12, 13, 14, 22

*DeBartolo v. United* States,
   790 F.3d 775 (7th Cir. 2015) .........…..............19, 21

*Holloway v. Arkansas,*
   435 U.S. 475 (1978) ....................................…...15, 17

*Hill v. Lockhard,*
   474 U.S. 52  (1985) ...........................................18

*Lee v. United States,*
   582 U.S. ___;
   137 S. Ct. 1958 (2017) ..................4, 11, 17, 18, 21

*LoCascio v. United States,*
   395 F.3d. 51 (2 Cir. 2005) ..................…..........…14

*Mickens v. Taylor,*
   535 U.S. 162 (2002)...…..............5, 11, 12, 13, 16, 22

DIAZ 0040

x

*People v. Baily,*
　*12 Cal. Rptr. 2d 339 (Ct. App. 1992)*..............…16

*Roe v. Flores-Ortega,*
　528 U.S. 470 (2000)………………………….....21

*Rubin v. Gee,*
　292 F.3d 396 (4th Cir. 2002) ……………………..14

*Soraich v. Montana,*
　264 F. Appx 654, 656 (9th Cir. 2008) …………….16

*Strickland v. Washington,*
　466 U.S. 688 (1984) …………………………...... 14

*United States v. Flood,*
　713 F.3D 1281 (10TH CIR. 2013) …………………. 14

*United States v. Hale,*
　76 M.J. 713 (2017)………………………………..13

*United States v. Lafuente,*
　426 F.3d 894 (7th Cir. 2005)………………………..14

*United States v. Orocio,*
　645 F. 3d. 63 (3rd Cir. 2011)………………......…..20

*United States v. Segarra-Rivera,*
　473 F.3d 381 (1st Cir. 2007)…………...……......…14

*Wood v. Georgia,*
　450 U.S. 261 (1981)…………………………………15

DIAZ 0041

xi

**Statutes**

8 U.S.C. § 1101(a)(43)(B)…...….……………………………2, 3

8 U.S.C. § 1227(a)(2)(A)(iii)…..………………………2, 3

8 U.S.C. § 1229b(a) ………………………………….19

8 U.S.C. § 2254(d)(1) ………………………………….13

21 U.S.C. § 841(a)(1)…...…..……………………………2

21 U.S.C. § 846……………………………………………2

**Other Authorities**

U.S. Const. amend. VI………………………...…..1

1

## PETITION FOR WRIT OF CERTIORARI

Petitioner Rafael Bustamante respectfully petitions this Court for a writ of certiorari to review the judgment of the United State Court of Appeals for the Ninth Circuit.

## OPINIONS AND ORDERS BELOW

The opinion of the court of appeals was not reported, but is reproduced at page 1a of the appendix to this petition ("App."). Petitioner appealed to the Ninth Circuit upon a final judgment rendered by the United States District Court for the Central District of California, which was not published.

## JURISDICTION

The Ninth Circuit issued the memorandum sought to be reviewed on November 20, 2017; on March 27, 2018, the U.S. District Court for Central California, Santa Ana put the judgment into effect. On March 19, 2018, the Ninth Circuit denied Bustamante's petition for panel rehearing. This Court has jurisdiction under 28 U.S.C. § 1254.

## CONSTITUTIONAL PROVISIONS INVOLVED

The United States Constitution, Amendment VI, provides in pertinent part that:

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

2

## INTRODUCTION

Rafael Bustamante, true name, Rafael Heredia Tarango, moved from Mexico to the United States with his family in 1973. He was educated here, and has lived here legally ever since.  For more than 40 years, Mr. Bustamante has lived in California, owning and operating multiple successful businesses. Regrettably, Mr. Bustamante became entangled in a conspiracy to distribute cocaine.  On September 28, 1993, Mr. Bustamante, along with three co-defendants, was charged with violating 21 U.S.C. § 846 (Conspiracy to Possess and Distribute 12 Kilograms of Cocaine) and 21 U.S.C. § 841 (a)(1) (Possession of 12 Kilograms of Cocaine with Intent to Distribute). EOR 27[1]. Conviction of this charge is an "aggravated felony" that results in mandatory and permanent deportation. 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii).

Mr. Bustamante pled not guilty to the charges and proceeded to trial. After a month-long trial, the jury found Appellant and his co-defendants guilty on both counts on March 28, 1995. EOR 20. Mr. Bustamante and his co-defendants filed a motion for a new trial based upon evidence of jury tampering and bribery by one of the co-defendants. EOR 20. The district court denied the motion for a new trial. EOR 20.

Mr. Bustamante was represented by Anthony Brooklier through trial, appeal, remand, a guilty plea, and the motion for new trial. In Mr. Brooklier's discussions with Mr. Bustamante, Mr. Bustamante

---

[1] "EOR" refers to the Excerpt of the Record, VOL I of I (Pgs. 1-216), filed in the 9th Circuit Court of Appeals.

DIAZ 0044

3

repeatedly raised the questions of his immigration status, indicating it was his main concern in deciding how to proceed. EOR 132. On December 13, 1996, the district court sentenced Mr. Bustamante to 240 months' imprisonment. EOR 20.

Mr. Bustamante appealed, and the court remanded the case to the district court to review the denial of the new trial motion based on jury misconduct. *Id.* Upon remand, Mr. Bustamante's counsel and the government reached a guilty plea agreement in lieu of litigating the motion for a new trial. *Id.* During Mr. Bustamante's plea hearing, his attorney made it clear time and time again, that accepting the plea was in his client's best interest and had "strongly urged him to take the plea from the beginning." EOR 100.

Pursuant to the plea agreement, on February 12, 2002, the government vacated Mr. Bustamante's original conviction and he plead guilty to a violation of 21 U.S.C. § 846, conspiracy to possess and distribute 500 grams of cocaine. EOR 46. Mr. Bustamante was sentenced to 144 months' imprisonment, with credit for time served, and a four-year term of supervised release. EOR 67.

Mr. Brooklier assured Mr. Bustamante that the plea would not subject him to deportation, but that advice was improper and contrary to existing law. Conviction of this charge is an "aggravated felony" that results in mandatory and permanent deportation. 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii). On August 13, 2012, upon returning from a business trip to London, Mr. Bustamante was stopped at Los Angeles

DIAZ 0045

4

International Airport by Customs and Border Patrol.
EOR 133, 127. In determining whether to grant him
admission to the United States or not, Customs and
Border Patrol reviewed Mr. Bustamante's record and
his guilty plea and time served was discovered. As a
result, Mr. Bustamante's Lawful Permanent
Resident Card was taken, and the Department of
Homeland Security issued Appellant a Notice to
Appear, placing him in removal proceedings on June
22, 2013.

On October 1, 2015, Mr. Bustamante's
attorney filed a "Notice of Motion and Motion to
Vacate Plea, Or Alternatively, Motion for
Resentencing *Nuc Pro Tunc.*" EOR 9. The basis for
the motion was ineffective assistance of counsel—his
attorney argued that he was ineffective in advising
Mr. Bustamante on the consequences of the guilty
plea and sentence on his immigration status. The
district court held that Mr. Brooklier " . . . was
unaware of the immigration consequences of the
agreed sentence in the Plea Agreement". *See*
Appendix C. The district court reasoned that it could
assume that counsel's performance "fell below the
standard when he failed to negotiate for a sentence
that might have provided [Appellant] relief from
deportation." *Id.*

Mr. Bustamante then filed an appeal with the
9th Circuit Court of Appeals. EOR 1. The 9th Circuit
ruled that Mr. Bustamante did not show that his
counsel's performance was deficient or prejudicial.
That ruling is in direct conflict with California
precedent and the principles of this Court's recent
ruling in *Lee v. United States*, 137 S. Ct. 1958 (2017).

DIAZ 0046

5

Since *Mickens v. Taylor,* 535 U.S. 162 (2002), federal circuit courts of appeals have disagreed over the applicability of *Cuyler v. Sullivan*, 446 U.S. 335 (1980) to conflict cases not involving concurrent representation.  The disagreement comes down to a question of how broadly courts should apply the *Cuyler* holding as interpreted in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Cuyler v. Sullivan* the Court held that prejudice is presumed when counsel is burdened by a *self-interest based conflict.*  In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. The Fifth and Eight Circuits have declined to apply *Cuyler* to other types of conflicts even before *Mickens*.  The Sixth and Eleventh Circuits have cited the *Mickens* dicta in their refusals to grant habeas relief to petitioners. Since *Mickens*, the First, Second, Third, Fourth, Seventh, Ninth and Tenth Circuits have applied *Cuyler*—or a slightly modified version of it—to conflict cases involving concurrent representation of conflicted clients.

Regardless of which circuit  pairing or group is correct, certiorari is warranted. The absence of a Supreme Court precedent alone is reason to grant the petition in this case. Because only this Court can resolve the mature circuit conflict with respect to the recurring issue presented, the petition for certiorari should be granted.

DIAZ 0047

6

## STATEMENT OF THE CASE

### A. <u>Mr. Rafael Bustamante</u>

Appellant, Rafael Bustamante was born in Mexico on May 29, 1965. EOR 132. Mr. Bustamante immigrated to the United States with his family from Mexico in 1973, when he was just eight years old. Mr. Bustamante became a legal permanent resident on April 13, 1977. He was educated here, and has lived here legally ever since. For more than 40 years, Mr. Bustamante has lived in California, owning and operating multiple successful businesses. EOR 75. Mr. Bustamante's father is a U.S. citizen, living in New Mexico, who naturalized after Mr. Bustamante was an adult. Mr. Bustamante also has three siblings, one a U.S. citizen, and two legal permanent residents. Mr. Bustamante's mother passed away, but was a legal permanent resident at the time of her death. While Mr. Bustamante never married, he does have a 35-year-old U.S. citizen daughter with downs syndrome, who he supports financially and who lives with her maternal grandparents in New Mexico. Mr. Bustamante has no family or connections to Mexico.

### B. <u>Mr. Bustamante's Legal Representation</u>

Anthony Brooklier, a respected criminal defense attorney who successfully represented many high-profile clients represented Mr. Bustamante through trial, appeal, remand, a guilty plea, and the motion for new trial based on ineffective assistance of counsel. EOR 18. On November 16, 2016, Mr. Brooklier died by suicide.

7

## 1. <u>The Plea Agreement</u>

In discussing the repercussions of pleading guilty, Mr. Bustamante was concerned about the impact the guilty plea and sentence would have on his ability to stay in the United States, obtain United States citizenship, and travel internationally. EOR 132. He raised these concerns to Mr. Brooklier, and Mr. Brooklier assured him that he did not need to worry and that Mr. Bustamante would be able to remain with his family in the United States after he served his time. *Id*. Mr. Brooklier also advised Mr. Bustamante that the guilty plea would have no adverse impact on his ability to travel or conduct business abroad. *Id*. Mr. Brooklier assured Mr. Bustamante time and time again the guilty plea was in his best interest. *Id*.

Mr. Bustamante's understanding from discussions with Mr. Brooklier was that the guilty plea would not impact his status as a lawful permanent resident or ability to travel internationally. *Id*. Mr. Brooklier also did not discuss with Mr. Bustamante any alternative charges or sentences that could have been available to him, such as an Immigration and Nationality Act § 212(c) waiver. *Id*. Mr. Bustamante raised these significant concerns about the guilty plea's impact on his immigration status to Mr. Brooklier knowing that if these concerns could not be addressed or were at risk, he was willing to take a chance and go to trial. *Id*.

Mr. Bustamante relied on Mr. Brooklier's representations that he should not worry about the impact of the guilty plea on his immigration status.

8

EOR 134. Mr. Brooklier never advised him that he
would face mandatory and permanent removal from
the United States as a result of his guilty plea. EOR
134. Had Mr. Bustamante known that he would be
removed form the United States as a result of his
guilty plea, he would not have agreed to the plea
agreement. *Id*. Similarly, had Mr. Bustamante
known that a §212(c) waiver and other sentencing or
plea options were available for negotiation that could
prevent deportation, he would not have agreed to the
plea agreement he entered. *Id*. Mr. Bustamante
served his time in custody and was eventually
released on supervised release. EOR 6, 19.

## 2.  **Immigration Proceedings**

On August 13, 2012, upon returning from a
business trip to London, Mr. Bustamante was
stopped at Los Angeles International Airport by
Customs and Border Patrol. EOR 133, 127. In
determining whether to grant him admission to the
United States or not, Customs and Border Patrol
reviewed Mr. Bustamante's record and his guilty
plea and time served was discovered.  As a result,
Mr. Bustamante's Lawful Permanent Resident Card
was taken, and the Department of Homeland
Security issued him a Notice to Appear, placing Mr.
Bustamante in removal proceedings on June 22,
2013.  EOR  127.  Mr.  Bustamante's  removal
proceeding is currently pending and he is scheduled
for a master calendar hearing on September 19,
2018. EOR 133-34.

When Mr. Bustamante told Mr. Brooklier
about the removal proceedings based on his guilty
plea,  contrary  to  his  previous  assertions,  Mr.

9

Brooklier expressed his lack of understanding of immigration laws. EOR 134. At the time, Mr. Bustamante knew he had been improperly advised regarding the impact of his guilty plea on his immigration status. *Id.* Mr. Brooklier assured Mr. Bustamante he could resolve the problem by filing a claim with the court. *Id.*

### 3. Post-Conviction Motions

On October 1, 2015, Mr. Brooklier filed a "Notice of Motion and Motion to Vacate Plea, Or Alternatively, Motion for Resentencing *Nuc Pro Tunc*." EOR 9. The basis for the motion was ineffective assistance of counsel—Mr. Brooklier argued he was ineffective in advising Mr. Bustamante on the consequences of the guilty plea and sentence on his immigration status. EOR 11-12. In his petition, Mr. Brooklier contended he should have requested a sentence that could have provided Mr. Bustamante eligibility to a waiver under § 212(c) of the INA to avoid deportation. EOR 13. The INA § 212(c) waiver program ended in 1996 and allowed lawful permanent residents with aggravated felonies to apply for a waiver to prevent removal. *Id.* This relief was rescinded on April 24, 1996. Mr. Brooklier contended that had he asked the court to sentence Appellant to 26 1/2 months with a back date of March 28, 1995 when the jury verdict was reached, he would be eligible for 212(c) relief. *Id.* Mr. Brooklier attached to the motion a signed declaration attesting to his negligence in representing Mr. Bustamante, admitting he failed to pursue alternative sentencing options that could prevent Mr. Bustamante's deportation. EOR 18.

10

The government responded, construing the motion as a claim for ineffective assistance of counsel and arguing Mr. Bustamante was not entitled to 28 U.S.C. § 2255 relief because he was not in custody. The government also construed Mr. Brooklier's filing as a petition for writ of error *coram nobis*, arguing the petition must fail due to the lack of a fundamental error warranting extraordinary relief. Mr. Brooklier filed a reply brief, specifically arguing for writ of error *coram nobis* relief. EOR 20.

The district court denied Mr. Bustamante's petition, finding Mr. Bustamante was not entitled to § 2255 relief or the issuance of a writ of error *coram nobis*. EOR 7-8. The district court recognized that Mr. Brooklier asserted "he was unaware of the immigration consequences of the agreed sentence in the Plea Agreement" (EOR 4); however, the district court held there was no error of a fundamental nature to invalidate the conviction. EOR 7. The court reasoned that even assuming counsel's performance "fell below the standard when he failed to negotiate for a sentence that might have provided [Appellant] relief from deportation, there is no prejudice here." *Id.* Even though Mr. Bustamante pled guilty to a crime involving only 500 grams of cocaine, the court reasoned "a sentence of 26 ½ months for a crime involving 12 kilograms of cocaine would not be reasonable." *Id.* The Court further held "the length of the sentence which [Appellant] had actually served by the time of resentencing was in excess of the five-year limitation for relief under section 212(c) . . . [Appellant] makes no response to the Government's contention that the actual time served, not the nominal sentence, would control." *Id.* Even though the district court found Mr. Bustamante satisfied the

11

first three elements required for writ of *error coram* relief, the court denied Mr. Bustamante's petition on the basis that Mr. Bustamante failed to prove an error of the most fundamental character. *Id*. The district court raised no concerns that Mr. Brooklier raised the issue of his own ineffectiveness.

Mr. Bustamante then filed an appeal with the 9th Circuit Court of Appeals. EOR 1. The 9th Circuit ruled that Mr. Bustamante did not show that his counsel's performance was deficient or prejudicial. That ruling is in direct conflict with California precedent and the principles of this Court's recent ruling in *Lee v. United States*, 137 S. Ct. 1958 (2017).

### REASONS FOR GRANTING THE WRIT

**I.    The Court should grant the petition to resolve a deep and mature circuit conflict**

Since *Mickens v. Taylor,* 535 U.S. 162 (2002), federal circuit courts of appeals have disagreed over the applicability of *Cuyler v. Sullivan*, 446 U.S. 335 (1980) to conflict cases not involving concurrent representation.  The disagreement comes down to how courts should treat *actual self-interest based conflict* that adversely affects counsel's performance and whether any adverse affect of counsel's performance should be presumed prejudicial. *Strickland* states that:

> In *Cuyler v. Sullivan*…the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty,

12

perhaps the most basic of counsel's
duties.  Moreover, it is difficult to
measure the precise effect on the
defense of representation corrupted by
conflicting interests. Given the
obligation of counsel to avoid conflicts of
interest and the ability of trial courts to
make early inquiry in certain situations
likely to give rise to conflicts, it is
reasonable for the criminal justice
system to maintain a fairly rigid rule of
presumed prejudice for conflicts of
interests. Even so, the rule is not quite
the *per se* rule of prejudice that exits for
the Sixth Amendment claims mentioned
above.  Prejudice is presumed only if the
defendant demonstrates that counsel
"actively represented conflicting
interests" and that "an actual conflict of
interests adversely affected his lawyer's
performance." *Strickland v.
Washington*, 466 U.S. 668, 692
(1984).quoting *Cuyler*, 446 U.S. at 348)
(internal citation omitted).

The Fifth and Eight Circuits have declined to
apply *Cuyler* to other types of conflicts even before
*Mickens*.  In *Beets v. Collins*, the Fifth Circuit
explained that conflicts between counsel's own
interest and a client's are "virtually limitless" and
"range from wholly benign to devastating." 65 F.3d
at 1271 (1995).  The *Beets* court found that only in
concurrent representation cases do we know that
counsel must have breached the fundamental duty
of loyalty.  Where counsel actively represents
multiple clients in the same matter with opposing

13

interests, the "source and consequences of the
ethical problems are straightforward: 'counsel
represents two clients with competing interests and
is torn between two duties.  Counsel can properly
turn in no direction. He must fail one or do nothing
and fail both.' " *United States v. Hale*, 76 M.J. 713
(2017) (quoting *Beets*, 986 F.2d 1478, 1492 (5th Cir.
1993) (Higginbotham, J., concurring)).

The Sixth and Eleventh Circuits have cited
the *Mickens* dicta in their refusals to grant habeas
relief to petitioners. *Id.*  The precedential value of
these cases is uncertain. These cases were decisions
in habeas petitions in which the petitioner had to
show that his conviction was "contrary to, or an
unreasonable application of, clearly established
Federal law, as determined by the Supreme Court."
*See* 28 U.S.C. § 2254(d)(1). "Even if a court thought
that *Cuyler should* be applied to conflict cases
generally, it must be admitted that there is no
Supreme Court decision holding that prejudice must
be presumed where the attorney's asserted conflict
of interest does not arise from concurrent multiple
representations." *United States v. Hale*, 76 M.J. 713
(2017).

Since *Mickens*, the First, Second, Third,
Fourth, Seventh, Ninth and Tenth Circuits have
applied *Cuyler*—or a slightly modified version of it—
to conflict cases involving concurrent representation
of conflicted clients. Courts in these circuits
continue to adhere to a more purposive
understanding of *Cuyler's* holding as endorsed by
*Strickland*: "that conflicts represent breaches to the
basic duty of loyalty owed a defendant, and that
because it is difficult to measure the effect of

14

conflicts on counsel's representation, a presumption
of prejudice is reasonable where a conflict adversely
affects counsel's performance." *Strickland*, 466 U.S.
at 693. *See, e.g., United States v. Segarra-Rivera*,
473 F.3d 381 (1st Cir. 2007) (addressing conflict
between attorney's personal interest and client's
interests); *LoCascio v. United States*, 395 F.3d. 51
(2nd Cir. 2005) (addressing conflict between
attorney's personal interest and client's interests);
*Chester v. Comm'r of Pa. Dep't of Corr.*, 589
Fed.Appx. 94 (3rd Cir. 2015) (*per curiam*)
(addressing conflict between attorney's personal
interest and client's interests); *Rubin v. Gee*, 292
F.3d 396 (4th Cir. 2002) (addressing conflict between
attorney's personal interest and client's interests);
*United States v. Lafuente*, 426 F.3d 894 (7th Cir.
2005) (addressing successive representation of
potentially conflicted clients); *Campbell v. Rice*, 408
F.3d 1166 (9th Cir. 2005) (addressing conflict
between attorney's personal interest and client's
interests); and *United States v. Flood*, 713 F.3d 1281
(10th Cir. 2013) (applying *Cuyler* to third-party fee
arrangement). The absence of a Supreme Court
precedent alone is reason to grant the petition in
this case. The First, Second, Third, Fourth, Seventh,
Ninth and Tenth Circuits' decisions, support Mr.
Bustamante.

DIAZ 0056

15

**II. The Court should grant the petition and reverse because it would not have been irrational for Mr. Bustamante to have decided to obtain new counsel to represent him with the plea agreement and the subsequent appeals, had he been properly either put on notice by his counsel of his alleged *self-interest based conflict* or had the lower courts investigated the alleged *self-interest based conflict* of Mr. Bustamante's counsel**

The Circuits taking the majority position explain at great length the numerous reasons why it would have been objectively rational for Mr. Bustamante to reject continuing with Mr. Brooklier as his counsel, had he been informed by Mr. Brooklier of his alleged actual professional conflict of interest or had the lower courts investigated the alleged actual professional conflict of Mr. Brooklier.

The Sixth Amendment right to counsel includes the "correlative right to representation that is free from conflicts of interests." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Upon notification that an actual or potential conflict of interest exists, a trial court has the obligation "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). If the trial court fails to undertake either of these duties, the defendant's Sixth Amendment rights are violated. *Id.* at 484. Even if a defendant's Sixth Amendment rights have been violated in this manner, though, the defendant

DIAZ 0057

16

cannot obtain relief unless he can demonstrate that his attorney's performance was "adversely affected" by the conflict of interest. *Mickens v. Taylor*, 535 U.S. 162, 174 (2002). The *Holloway* Court deferred to the judgement of counsel regarding the existence of a disabling conflict, recognizing that a defense attorney is in the best position to determine when a conflict exists, that he has an ethical obligation to advise the court of any problem, and that his declarations to the court are "virtually made under oath." *Id.* at 485-486.

An inherent conflict exists when appointed trial counsel in a criminal case is also appointed to act as counsel on appeal. *People v. Bailey*, 9 Cal. App. 4th 1252, 1254, 12 Cal. Rptr. 2d 339 (1992), modified (Sept. 29, 1992). The American Bar Association's Model Rules of Professional Conduct, rule 1.7(b) provides: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client or to a third person, or by the lawyer's own interests." In *Bailey*, the court ruled that impact of the conflict of interest is "[c]ounsel is in the untenable position of urging his own incompetency . . . " *People v. Bailey*, 9 Cal. App. at 1254–55 (internal citations omitted); *see also Soraich v. Montana*, 264 F. Appx 654, 656 (9th Cir. 2008) ("An inherent conflict of interest arises when counsel alleges his own ineffectiveness, and this conflict could easily cloud a lawyer's objective examination of his own professional conduct."). A presumption must be made, that the conflict between Mr. Brooklier's own interests and that of Mr. Bustamante's interests, undermined the adversarial process. The presumption would be

DIAZ 0058

17

justified because joint representation of conflicting interests is inherently suspect, because counsel's conflicting obligations to not only Mr. Bustamante's interests, but his own interest "effectively seal his lips on crucial matters" and make it difficult to measure the precise harm arising from counsel's errors. *Holloway*, at 489-490.

Mr. Brooklier represented Mr. Bustamante through trial, appeal, remand, a guilty plea, and the motion for new trial based on ineffective assistance of counsel that formed the basis of this appeal. EOR 18. The record demonstrates Mr. Brooklier in urging his own incompetency was incapable of exercising independent professional judgment of his own professional conduct. He knew the requirements of an ineffective assistance of counsel claim, chose to raise the claims against himself, and purposefully crafted his affidavit in an attempt to limit his responsibility.

This Court has stated that for the right of counsel to be meaningful, it requires more than the mere presence of licensed attorney; it also requires the right to have aid that will "provide just results." *See Strickland*, 446 U.S. at 685. The purpose of Sixth Amendment is to assure a fair trial based on competent representation. In this country, defendants have a Sixth Amendment right to counsel that is not tainted by conflict of interest—otherwise, injustice results. Injustice occurred here for Mr. Bustamante as counsel was ineffective, and he was prejudiced as a result.

18

**III.**   **The Court should grant the petition
and   reverse because it would not
have been irrational for Mr.
Bustamante to reject the plea
agreement had he been properly
advised of the deportation
consequences**

The 9th Circuit erred in ruling that Mr.
Bustamante was not prejudiced by the institution of
deportation proceedings. In *Lee v. United States*, this
Court held that a defendant can show prejudice by
demonstrating: a "reasonable probability that, but
for counsel's errors, he would not have pleaded guilty
and would have insisted on going to trial." *Lee v.
United States*, 137 S. Ct. 1958, (2017) (quoting *Hill v.
Lockhard*, 474 U.S. 52, 59 (1985).

In *Lee*, this Court ruled that courts should look
to "contemporaneous evidence" to substantiate a
defendant's decision making on whether he would
have accepted or rejected the plea. The *Lee* defendant
was convicted in 1985 for an aggravated felony that
subjected him to mandatory deportation. Deportation
was a determinative issue for him—all of the *Lee*
defendant's family was in the United States, and the
*Lee* defendant owned two businesses in the United
States. The *Lee* court ruled that Lee demonstrated a
reasonable probability that, but for counsel's errors,
he would have not have plead guilty and would have
insisted on going to trial.

In this case, but for Mr. Brooklier's errors,
Mr. Bustamante would not have entered the guilty
plea, and he would have insisted on going to trial.
There is no dispute that defense counsel misled his

DIAZ 0060

19

client about the immigration consequences of accepting the plea agreement. The district court held that Mr. Booklier " . . . was unaware of the immigration consequences of the agreed sentence in the Plea Agreement". *See* Appendix C. The district court reasoned that it could assume that counsel's performance "fell below the standard when he failed to negotiate for a sentence that might have provided [Appellant] relief from deportation." *Id*. The reasons are numerous as to why it would have been objectively rational for Mr. Bustamante to reject the proffered plea deal had he known that accepting it would have resulted in his permanent deportation.

First, Mr. Bustamante could have attempted to negotiate for an outcome that would not have carried automatic deportation sanctions. Mr. Bustamante also could have bargained for a plea to a non-aggravated felony drug or other offense. A lawful permanent resident like Mr. Bustamante (permanent resident for at least five years who has resided in the U.S. continuously for seven years) can apply for cancellation of removal proceedings before an immigration court, but only if he has not been convicted of an aggravate felony. 8 U.S.C. § 1229b(a). In sum, there were ample opportunities for Mr. Bustamante and his attorney to negotiate for a plea agreement that would not have resulted automatically in Mr. Bustamante's deportation.

Second, Mr. Bustamante could have simply taken his chances at trial. It is notable for the Court to take into account, that when Mr. Bustamante was first faced with this very question, he chose to take his chance with a trial.  For "the alien defendant most concerned with remaining in the United States,

DIAZ 0061

20

especially a legal permanent resident, it is not at all
unreasonable to go to trial and risk a ... sentence
and guaranteed removal, but with the chance of
acquittal and the right to remain in the United
States." *United States v. Orocio*, 645 F. 3d. 630, 643-
46 (3rd Cir. 2011). "[A] criminal defendant cannot be
denied the right to a trial, and forced to plead guilty,
because he has no sturdy legal leg to stand on but
thinks he has a chance that the jury will acquit him
even if it thinks he's guilty." *DeBartolo v. United
States.* 790 F.3d 775, 779 (7th Cir. 2015). The
contemporaneous evidence of this case substantiates
that Mr. Bustamante's decision would have been to
reject the plea had he known the result would have
been deportation. Like the *Lee* defendant, Mr.
Bustamante has strong ties the United States. Like
the *Lee* defendant, all of Mr. Bustamante's family is
in the Untied States. Mr. Bustamante's father and
siblings are in the United States, and most
significantly, so is his daughter, who has downs
syndrome, and requires Mr. Bustamante's support.

Third, Mr. Bustamante could have gone to
trial hoping that, at the conclusion of his sentence,
"the disarray in the enforcement of U.S. immigration
law" and the "constant calls for reform of the laws
themselves and of the methods of enforcing them"
would result in a change in federal policy such that
he would not be deported. *Id.* at 780.

Finally, it would not have been irrational for
Mr. Bustamante to reject a plea and go to trial if the
objective evidence showed that serving a lengthy
sentence in the United States would keep him in
close physical proximity to his family and friends,
especially his daughter who suffers from downs

21

syndrome. *See ibid.* (DeBartolo "might even have preferred a lengthy prison term in the United States to a shorter prison term that would have lead more quickly to deportation, because the lengthy prison term would at least keep him in the same country as his family, facilitating frequent visits by family members, which is important to prisoners.")

These rationales for rejecting the offered plea are not after-the-fact justifications based on Mr. Bustamante's subjective mindset.  They are all rational reasons for changing course based on the objective circumstances—circumstances that were mirrored in the many cases cited above.  Moreover, Mr. Bustamante's position to withdraw a plea has the ameliorative effect of not placing trial-court judges in the difficult position of deciding how meritorious a defendant's defense is as part of the prejudice analysis. When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, "we do not ask whether, had he gone to trial, the result of that trial would have been different" than the result of the plea bargain.  That is because, while we ordinarily "apply a strong presumption of reliability to judicial proceedings," "we cannot accord" any such presumption "to judicial proceedings that never took place." *Lee v. United States,* 137 S. Ct. 1958 (2017) (*quoting Roe v. Flores-Ortega*, 528 U.S. 470, 482-483 (2000)). The question before this Court is "what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decision-making." *Id.*  The petition should be granted, and this Court should adopt the analysis of the *Lee* court.

22

### IV.  The questions presented are of national importance and require prompt resolution, and this case is an ideal vehicle for resolving the questions

The numerous conflicting circuit decisions show that the issues presented are recurring and creating unnecessary district- and circuit-court litigation. The Court should grant the petition and resolve that conflict now.

First, the circuit split is deep and mature. Since *Mickens v. Taylor,* 535 U.S. 162 (2002), federal circuit courts of appeals have disagreed over the applicability of *Cuyler v. Sullivan,* 446 U.S. 335 (1980) to conflict cases not involving concurrent representation. The Fifth and Eight Circuits have declined to apply *Cuyler* to other types of conflicts even before *Mickens.* The Sixth and Eleventh Circuits have cited the *Mickens* dicta in their refusals to grant habeas relief to petitioners. The First, Second, Third, Fourth, Seventh, Ninth and Tenth Circuits have applied *Cuyler*—or a slightly modified version of it—to conflict cases involving concurrent representation of conflicted clients. It is highly unlikely that subsequent circuit decisions or en banc proceedings will resolve this conflict, or provide useful additional analysis.

Second, further delay in resolving the conflict harms the government, defendants, and the justice system.  If the Fifth, Sixth, Eight and Eleventh Circuits are correct, then seven other circuits have adopted the wrong rule and are needlessly undermining the immigration system by allowing noncitizens defendants to withdraw guilty pleas.  If

23

the seven circuits in the majority are correct, then noncitizens in the Fifth, Sixth, Eight and Eleventh Circuits are being unconstitutionally denied an opportunity to withdraw their pleas. Either way, the justice system is producing widely divergent results for similarly situated defendants.

Finally, this Court's intervention now is required to vindicate the Sixth Amendment's guaranty of effective assistance of counsel. This Court's review is justified if there is even a possibility lower courts are unconstitutionally denying plea withdrawals and, as a result, causing lawful permanent residents to be forever banished from the United States.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

ERIC S. MONTALVO*
ASTRID LOCKWOOD
THE FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
T: (202) 862-4360
F: (888) 899-6053
docketclerk@fedpractice.com
alockwood@fedpractice.com

*Counsel for Petitioner*

*Counsel of Record

# APPENDICES

DIAZ 0066

1a

## APPENDIX A

### IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————

No. 16-56254

———————

UNITED STATES OF AMERICA,

Plaintiff- Appellee

Versus

RAFAEL BUSTAMANTE, AKA Ralph Bustamante,

Defendant-Appellant

———————

### MANDATE

———————

(March 27, 2018)

The judgment of this Court, entered November 20, 2017, takes effect this date.

This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF THE COURT
By: Jessica F. Flores
Poblano
Deputy Circuit Rule 27-7

2a

APPENDIX B

NOT FOR PUBLICATION

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————

No. 16-56254

———————

UNITED STATES OF AMERICA,

Plaintiff- Appellee

Versus

RAFAEL BUSTAMANTE, AKA Ralph Bustamante,

Defendant-Appellant

———————————————

**MEMORANDUM[1]**

———————————————

(November 20, 2017)

Appeal from the United States District Court
For the Central District of California
James v. Selna, District Judge, Presiding

Submitted November 15, 2017[2]

Before: CANBY, TROTT, and GRABER,
Circuit Judges.

      Former federal prisoner Rafael Bustamante
appeals from the district court's order denying his

———————————

[1] This deposition is not appropriate for publication and is not
precedent except as provided by Ninth Circuit Rule 36-3.
[2] The panel unanimously concludes this case is suitable for
decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

3a

petition for a writ of error coram nobis. We have
jurisdiction under § 28 U.S.C. 1291. We review the
denial of a coram nobis petition de novo, *see United
States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007),
and we affirm.

Bustamante contends that he is entitled to
corma nobis relief because counsel was ineffective for
failing to secure a sentence that would have made
him eligible for relief from deportation under former
Immigration Nationality Act § 212(c). The record
does not support Bustamante's claim that counsel
could have negotiated a disposition that would have
qualified him for § 212 relief.

Bustamante also argues, for the first time on
appeal, that his attorney affirmatively mislead him
regarding the immigration consequences of pleading
guilty. Even if this claim is properly before this court,
*see Beets v. County of Los Angeles*, 669 F.3d 1038,
1043 (9th Cir. 2012), the record shows that
Bustamante was advised, and understood, that the
conviction could subject him to deportation. Contrary
to Bustamante's contention, the record is sufficiently
developed to make this determination, and his
alternative request that the court remand for further
proceedings is, accordingly, denied.

Because Bustamante has not showed that his
counsel's performance was neither deficient nor
prejudicial, he has not established an error "of the
most fundamental character" entitling him to a writ
of error coram nobis. *See Riedl*, 496 F.3d at 1005-06.

**AFFIRMED.**

4a

APPENDIX C

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

———————

Case No. SACR 93-00130-JVS

———————

UNITED STATES OF AMERICA

Versus

RAPHAEL BUSTAMANTE

———————

**ORDER DENYING SECTION 2255 PETITION DENIAL OF CERTIFICATE OF APPEALABILITY**

———————

(August 1, 2016)

Present: The Honorable James V. Selna
Deputy Clerk: Ivette Gomez
Court Reporter: Not Present

Proceedings: (In Chambers)

Petitioner Raphael Bustamante, true name Ralph Heredia Tarango ("Heredia"), applied to the Court for relief under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel when he entered into a binding plea agreement providing for a 144-month sentence. (Docket No. 1037.) The Government has filed an opposition (Docket No. 1039), and Heredia has filed a reply (Docket No. 1042). In his reply, Heredia also seeks

DIAZ 0070

5a

relief by the way of a write of *coram nobis*. (Reply,
pp. 5-6.) The court addresses both theories below.

For the reasons set forth below, the Court
denies all relief, and also denies the issuance of a
certificate of appealability ("COA").

I.      Background

After a lengthy trial in 1995, Heredia and
others were convicted of two drug offenses,
conspiracy to possess cocaine with intent to
distribute in violation to 21 U.S.C. § 841(a)(1).
(Docket No. 481.) He was subsequently sentenced to
20 years in prison. (Docket No. 755.)

On appeal, the Ninth Circuit affirmed the
conviction, but remanded for a further evidentiary
hearing on defendants' motion for a new trial
predicated on jury tampering. (Docket No. 956.)
However, before that could occur, Heredia and the
Government entered into a binding plea agreement
pursuant to Rule 11(e)(1)(C) of the Federal Rules of
Civil Procedure. (Docket No. 984.) Heredia pled to a
charge of violating Section 846, the sole charge in the
Third Supplemental Information. The agreed
sentence was 144 months with a 4-year term of
supervised release. (Plea Agreement, ¶ 10.) He was
sentenced to the agreed term on February 10, 2002.
(Docket No. 993.)

Heredia has completed his sentence as well as
his term of supervised release. (Petition, p. 6.)

Heredia holds a green card as a resident legal
alien. (Petition, p. 6.) On a return trip to the United
States from Mexico in 2012, he was stopped and a

DIAZ 0071

6a

review of his criminal record resulted in the
initiation of deportation proceedings. (See id., Ex. D.)

Heredia's trial counsel asserts that he was
unaware of the immigration consequences of the
agreed sentence in the Plea Agreement, and that had
he been aware, he would have negotiated a sentence
of 26 1/2 months. (Petition, p.3.) If such a sentence
has been imposed, Heredia would be able to avail
himself of Section 212(c) of the Immigration and
Nationality Act to avoid deportation. (Id.; Brooklier
Decl., ¶ 5.)

By way of relief, Heredia asks that he be
resentenced to a term of 26 1/2 months, and that the
Judgment be effective *nunc pro tunc* as of March 28,
1995, the date the verdict was returned.[3]

II.      Section 2255

Section 2255 provides in part:

A prisoner in custody under sentence of court
established by Act of Congress claiming the
right to be released upon the ground that the
sentence was imposed in violation of the
Constitution or laws of the United States, or
that the court was without jurisdiction to
impose such sentence, or that the sentence
was in excess of the maximum authorized by
law, or is otherwise subject to collateral
attack, may move the court which imposed the

---

[3] The date of the sentencing is critical to the availability of relief
under Section 212(c). *See Matter of Abelghany*, 26 I. & N. Dec.
254 (2014).

DIAZ 0072

7a

sentence to vacate, set aside or correct the sentence.

(28 U.S.C. § 2255(a); emphasis supplied). There are several reasons why relief under Section 2255 must be denied.

First, Heredia is not in custody. He has completed all aspects of his sentence. The availability of relief ceases when his sentence is served. <u>United States v. Thiele</u>, 314 F.3d 399, 400-01 (9th Cir. 2002).

Second, the Government points out that the petition is bared by the one-year statute of limitations in Section 2255(f). In his reply, Heredia does not address the point, and offers no explanation for the delay once he became aware of the immigration consequences of the Plea Agreement in 20013.

Most telling, however, is the fact that Hereida concedes that he is not entitled to relief under Section 2255, a position he must take to advance his clam for a writ of *coram norbis*. (Reply, p. 5.)

No relief is available under Section 2255.

III.   <u>Writ of *Coram Nobis*</u>

In his petition, Heredia did not advance a claim for writ of *coram nobis*, and raises the claim for the first time in his reply. The approach is procedurally improper, but the Government anticipated and fully briefed the claim in its opposition. (Opposition, pp 6-9.) Thus, the Court considers the claim.

The writ is a "highly unusual remedy, available only to correct grave injustices in a narrow

DIAZ 0073

8a

range of cases." United States v. Riedl, 496 F.3d
1003, 1005 (9th Cir. 2007). The parties are in
agreement on the law.

The writ is a availble where no relief under
Section 2255 or 28 U.S.C. § 2241 would be available
to a person who has completed his sentence. *Chaidez
v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013).

The requirements for the writ are four-fold:
"(1) a more usual remedy is not available; (2) valid
reasons exist for not attacking the conviction earlier;
(3) adverse consequences exist from the conviction
sufficient to satisfy the case or controversy
requirement of Article III; and (4) the error is one of
the most fundamental character." United States v.
Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989)
(internal quotations marks deleted); accord
Hirabayashi v. United States, 828 F.2d 591, 604 (9th
Cir. 1987).

The first point is established because Hereida
is not entitled to relief under Section 2255.

On the second point, Heredia asserts that he
was not aware of counsel's inadequate assistance
until 2012 when he was stopped by immigration
officials. (Reply p.5.) However, that does not explain
the three year delay in seeking relief. Indeed, the
petition comes more that two years after the
Department of Homeland Security initiated
proceedings in June 2013. (See Petition, Ex. D.)
Taking the one-year statute for discovery in Section
2255(f)(4) as reasonable benchmark for diligence,
Heredia was not diligent in pursuing relief. However,
the Government has not shown prejudice which
would appear to be necessary to establish laches.

9a

United States v. Kwan, 407 F.3d 1005, 1012-13 (9th Cir. 2005).

On the third point, the potential adverse immigration consequences are sufficiently concrete to satisfy the Article III case-or-controversy requirement.

On the final point, the Court cannot say that there has been an error of a fundamental nature sufficient to invalidate the conviction. The Sixth Amendment guarantees the effective assistance of counsel at trial. Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish ineffective assistance by his trial counsel, a petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Id. at 688-93; see also Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009) ("Strickland requires a defendant to establish deficient performance and prejudice"); Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (the Sixth Amendment right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense"). Because both prongs of the Strickland test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance of counsel claim be denied. See Strickland, 446 U.S. at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other"); Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir.) (no need to address prejudice when

10a

petitioner cannot establish deficient performance), cert. denied, 525 U.S. 839 (1998).

Assuming that Heredia's trial counsel fell below the standard when he failed to negotiate for a sentence that might have provided Heredia relief from deportation, there is no prejudice here. The length of the sentence which Heredia had actually served by the time of resentencing was in excess of the five-year limitation for relief under Section 212(c). See Matter of Abdelghany, 26 I. & N. Dec. 254. Heredia makes no response to the Government's contention that the actual time served, not the nominal sentence would control. (Opposition, pp. 8-9.) Moreover, it is sheer speculation whether the Government would have agreed to a 26 1/2 month sentence or whether the Court would have accepted it. To the extent this Court is invited to resentence, it is apparent that a sentence of 26 1/2 months would not reflect the seriousness of the crime or promote respect for the law, and thus would not be an appropriate sentence under the Sentencing Reform Act. 18 U.S.C. § 3553(a)(2)(A). Moreover, a sentence of 26 1/2 months for a crime involving 12 kilograms of cocaine would not be reasonable. United States v. Brooker, 543 U.S. 220, 261-62 (2005).

Heredia is not entitled to the issuance of a writ of *coram nobis*.

IV.    Conclusion.

The petition is denied with prejudice.

V.    Denial of Certificate of Appealability.

The Court finds that Heredia has failed to make a substantial showing of the denial of a

11a

constitutional right, as required by 28 U.S.C. § 2253(c)(2). Here, the Court dismisses the petition on the merits. Thus, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, the Court finds that reasonable jurists would not find the Court's decision debatable or wrong.

Accordingly, the Court denies Heredia a COA.

12a

APPENDIX D

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————

No. 16-56254

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

Versus

RAFAEL BUSTAMANTE, a.k.a Ralph Bustamante,

Defendant-Appellant

———————

**ORDER**

———————

(March 19, 2018)

Before:    CANBY, TROTT, and GRABER,
           Circuit Judges.

Bustamante's petition for panel rehearing (Docket Entry No. 28) is denied.

13a

APPENDIX E

CONSTITUTIONAL PROVISIONS AND
STATUTES

**THE UNITED STATES CONSTITUON,
AMENDMENT VI**

In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial, by an
impartial jury of the state and district wherein the
crime shall have been committed, which district shall
have been previously ascertained by law, and to be
informed of the nature and cause of the accusation;
to be confronted with the witnesses against him; to
have compulsory process for obtaining witnesses in
his favor, and to have the assistance of counsel for
his defense.

**MODEL RULES, ABA 1.7**
*Client-Lawyer Relationship*
Rule 1.7 Conflict of Interest: Current Clients

(a) Except as provided in paragraph (b), a lawyer
shall not represent a client if the representation
involves a concurrent conflict of interest. A
concurrent conflict of interest exists if:

> (1) the representation of one client will be
> directly adverse to another client; or

> (2) there is significant risk that the
> representation of one or more clients will be
> materially limited by the lawyer's
> responsibilities to another client, a former
> client or a third person or by a personal
> interest of the lawyer.

DIAZ 0079

14a

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

### 8 U.S.C. § 1101(a)(43)(B)

(43) The term "aggravated felony" means—

(B) illegal trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)[.]

### 8 U.S.C. §1227(a)(2)(A)(iii)

(a) Any alien (including an aliencrewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

(2)(A)(iii) Aggravated felony
Any alien who is convicted of an aggravated felony at any time after admission is deportable.

DIAZ 0080

15a

## 8 U.S.C. § 1229b(a)

(a) CANCELLATION OF REMOVAL FOR CERTAIN PERMANENT RESIDENTS The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

## 8 U.S.C. § 2254(d)(1)

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

**In The**
**Supreme Court of the United States**

NO._____

**RAFAEL BUSTAMANTE,** *also known as* **RAFAEL HEREDIA TARANGO,**
*Petitioner,*

v.

**THE UNITED STATES**
*Respondent.*

**CERTIFICATE OF COMPLIANCE**

This Petition for Writ of Certiorari with appendix has been prepared using: Microsoft Word 2010; New Century Schoolbook; 12 Point Type Space.

As required by Supreme Court Rule 33.1(h), I certify that the Petition for Writ of Certiorari contains 5,305 words, excluding the parts of the Petition that are exempted by Supreme Court Rule 33.1(d).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2018

_____
Eric S. Montalvo
The Federal Practice Group
1750 K Street, NW, Suite 900
Washington, DC 20006
(202) 862-4360

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June 2018, I served the foregoing Petition for Writ of Certiorari by e-mail and three copies via first-class mail on the following:

| By E-Mail | By First-Class Mail |
|---|---|
| Charlene Goodwin<br>Supervisor, Case Management<br>Office of the Solicitor General<br>SupremeCtBriefs@USDOJ.gov | Jeffrey B. Wall, Acting Solicitor General<br>Solicitor General of the United States, Room 5616<br>Department of Justice<br>950 Pennsylvania Ave., N. W.<br>Washington, DC 20530-0001 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2018

_____
Eric S. Montalvo
The Federal Practice Group
1750 K Street, NW, Suite 900
Washington, DC 20006
(202) 862-4360



NEW YORK | LOS ANGELES | SAN FRANCISCO

ALEXANDER R. SAFYAN | ASAFYAN@VGCLLP.COM | T: 424-256-8296

September 11, 2020

**VIA EMAIL**

Dedicated Recovery Services
Email: dedicatedrecovery@msn.com
Attn: Scott

       **Re:   Representation of Joseph Diaz, Jr.**

Dear Scott:

I am sending this letter of representation per your request.  Our law firm represents Joseph Diaz, Jr., and we are authorized to receive all required notices regarding the repossession of Mr. Diaz's vehicle on his behalf.  Please send such notices to me electronically at asafyan@vgcllp.com.

Very truly yours,

Alex R. Safyan
Litigation Partner
VGC, LLP

# State of California
## Secretary of State

**S**

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME**

2. **CALIFORNIA CORPORATE NUMBER**

This Space for Filing Use Only

**No Change Statement**  (Not applicable if agent address of record is a P.O. Box address.  See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following**  (Do not abbreviate the name of the city.  Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

**Names and Complete Addresses of the Following Officers**  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| 8. SECRETARY | | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers**  (The corporation must have at least one director.  Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | | | |

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |
|---|---|---|---|

DIA-Z-0085