Rajan O. Dhungana (SBN: 297794)
rdhungana@fedpractice.com
Eric S. Montalvo (*Pro Hac Vice*)
emontalvo@fedpractice.com
**FEDERAL PRACTICE GROUP**
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905
*Attorneys for Defendants,*
RALPH HEREDIA AND
HEREDIA BOXING MANAGEMENT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> RALPH HEREDIA; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO. 5:20-cv-02332-JWH-KK <br><br> **DEFENDANT HEREDIA'S OPPOSITION TO PLAINTIFF DIAZ' FIRST *EX PARTE* APPLICATION FOR AN ORDER CONTINUING THE DISCOVERY CUT-OFF DEADLINE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **[OPPOSED]** <br><br> Discovery Cut-Off Date: July 8, 2022 <br> Pre-Trial Conference Date: November 18, 2022 <br> Trial Date: December 5, 2022 |

## TABLE OF CONTENTS

INTRODUCTION ...................................................**Error! Bookmark not defined.**

LEGAL STANDARD ........................................................................................3

ARGUMENT....................................................................................................4

    A. None of Diaz' Four Arguments In Support of His Second Application Is Persuasive Because Diaz' Current Crisis Is Solely of His Own Making.. ..............5

        i.  Diaz Was Not Diligent In Seeking To Depose Heredia or HBM. ...................6

        ii.  Diaz' Lack Of Diligence Precludes His Ability to Depose Defendants. ........9

        iii. Diaz' Rehash of His Arguments in His Ex Parte Second Application From Last Week Are No More Compelling the Second Time. ......................................9

        iv.  Diaz' Claimed Need For More Time To Conduct Discovery After Mediation Is Solely the Result of His Lack of Diligence in the Discovery Process. .......................................................................................................................10

        v.  Diaz' neglect is not excusable.. ......................................................................11

    B. Diaz' Underlying Request is Meritless...............................................................11

CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488, 489 (C.D. Cal. 1995) ................................................................................................................ 2, 3, 4, 5, 11

*In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) ...................... 4, 6

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) .............. 5

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). ......................... 5

*Mansour v. Costco Wholesale Corporation*, 2021 WL 6104822 (C.D. Cal. 2021) 7, 8

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 113 S. Ct. 1489, 1496, 123 L. Ed. 2d 74 (1993) ............................................................... 11

**Rules**

Fed. R. Civ. P. 16(b)(4) ............................................................................................... 5
Fed. R. Civ. P. 1 .......................................................................................................... 5
L.R. 1-1 ....................................................................................................................... 5

Defendant Ralph Heredia, by and through undersigned counsel, hereby timely files his opposition to plaintiff Joseph Diaz, Jr.'s First [*sic*] *Ex Parte* Application for an Order Continuing the Discovery Cut-Off Deadline [ECF 128] ("Second Application"), and in support thereof, respectfully states as follows. Heredia also submits his proposed order.

## I.    INTRODUCTION

Diaz comes again to the Court seeking unwarranted and burdensome ex parte relief as a result of his own failure to prosecute his case in a timely manner. While his narrative strives mightily to present otherwise, the circumstances in which Diaz finds himself are (still) entirely of his own making and could have been avoided had he exercised proper diligence. Diaz' choice to delay the activity of which he now complains cannot be laid at defendants' feet, no matter how much he feigns surprise at defendants' communications, or how much he attempts illogically to tie entry of a protective order to the timing of his deposition notice, or how much he seeks to present his discontent with Heredia's document production as something sinister (another claim he failed to present timely), or how imaginatively he asserts that the issues discussed in mediation will lead to the need for more discovery.

Stripped of Diaz' inflammatory, inaccurate, and illogical rhetoric, his Second Application stems from the same failure as his First Application [ECF 124] – his own failure to abide by the Court's amended Scheduling Order. [ECF 112] Diaz' litany of extant discovery disputes are either the consequence of his own choices, or imaginary, or not anchored in reality.

Diaz' narrative relies on factual misstatements, irrelevancies, and illogic. Some of them bear addressing.

First, it was no mystery to Diaz' counsel that defendants' counsel did not desire to extend discovery, and their attempts to paint defendants' counsels' communications as a surprise are without basis. Diaz seems to argue that any objection or refusal to stipulate that is not specifically couched in a "good cause"

1

framework is wholly unelucidative as to defendants' position. This is an invalid assertion. Diaz' counsel have been placed on notice of defendants' position through multiple means, most of which Diaz attached to his Second Application. See, e.g., ECF 128-4 ¶ 7 ("HBM sees no need to extend discovery to resolve this issue that could have been avoided.").

Further, the July 5 conference among counsel was not in compliance with any meet and confer obligation on Diaz' part. That meeting was held pursuant to Heredia's counsel's request to attempt in good faith to resolve the then-yet-to-be-filed Rule 72 motion. [ECF127] Presumably Diaz' counsel knew prior to the July 5 phone call that they wished to discuss an extension of discovery but declined to give defendants' counsel advance notice.

Diaz points to his email from the previous week inviting defendants' counsel to consider an extension. A meeting pursuant to that comment did not take place because Diaz' counsel declined to make themselves available for a meet and confer on Heredia's Rule 72 motion, at which they could also have asked to discuss their desire to extend discovery. But that did not happen. VGC said they couldn't meet, as explained in detail in Heredia's opposition to Diaz' First Application. [ECF 124]

Diaz' rhetorical convolutions are unavailing.

Heredia has complied with every Court order and rule, despite Diaz' invective attempting to portray the opposite. Diaz failed to observe deadlines, and now he wants to vault ahead of other deserving litigants as a result. Such abuse of ex parte applications "is detrimental to the administration of justice." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F.Supp. 488, 489 (C.D. Cal. 1995). Further, "these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system." Id. at 490. Diaz' excuse for waiting rings hollow when one considers that Diaz' decision has now imposed an even greater "unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel…." id. at 491, of the type Diaz

claims his delay was designed to avoid. That logic does not withstand scrutiny.

Diaz' Second Application, like his First Application, includes a section of "subjective [and] conclusory" assertions written in inflammatory terms to convey the impression that Heredia has ignored the Court's discovery orders and is abusing the discovery process. Mission Power at 491. That section is precisely what Mission Power warns against: the "pernicious" tendency of an advocate to "draw conclusions that appear to be supported by voluminous exhibits, but are not borne out when the evidence is reviewed with more deliberation and more careful rebuttal than is possible in hasty hearings on ex parte motions." Id.

Moreover, Diaz' Second Application is procedurally defective in that he has not lodged a proposed order to modify the Court's amended scheduling order [ECF 112], which is the relief he seeks, and is required by Local Rule 7-20. Instead, he has attached only a proposed order granting his *ex parte* application. Accordingly, his Second Application should be denied.

As set forth more fully below, Diaz' Second Application is unsupportable. The Court should deny it, and award Heredia his attorneys' fees and costs in opposing this Second Application.

## II.   LEGAL STANDARD

"[F]iling an ex parte motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F.Supp. 488, 492 (C.D. Cal. 1995).[1] There is no fire here, and any "emergency" is entirely of Diaz' own making.

To justify ex parte relief, the moving party must show that their "cause will be

---

[1] Heredia is aware that *ex parte* applications unduly impact the Court and its staff. "The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and all will be lost unless immediate action is taken. Other litigants are relegated to secondary priority. Even hearings or trials – where a courtroom full of deserving users of the court are waiting – are often interrupted or delayed." Mission Power at 491-2.

3

irreparably prejudiced if the underlying motion is heard according to regular noticed motions procedures.  Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as the result of excusable neglect." Id. at 492.  The factors are thus conjunctive, not disjunctive.

"To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying motion, because if it is meritless, failure to hear it cannot be prejudicial.  A sliding scale is used to measure the threat of prejudice.  If the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success." Id.

"To show that the moving party is without fault, or guilty of only excusable neglect, requires more than a showing that the other party is the sole wrongdoer.  It is the creation of crisis – the necessity for bypassing regular motion procedures – that requires explanation." Id.  "The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period.  As Judge Rymer warned, 'Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have…'" Id. (citing In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (Bankr. C.D. Cal. 1989)).

### III.   ARGUMENT

Diaz is seeking to modify the Court's amended scheduling order [ECF 112], on an emergency, *ex parte* basis.  Heredia does not consent – he is ready to move to the merits of this matter and vindicate himself, and does not want any further delays of his day in court.

The Mission Power prongs essentially blend together in addressing Diaz' Second Application.[2]  The appropriate test for the first prong – the merits of the

---

[2] This is the second *ex parte* application that Diaz has filed in a week, the first being filed on a Friday before a three-day holiday weekend.  Both are equally meritless, and are inappropriate strains on Court resources.  Heredia encourages the Court to

underlying motion – is substantially similar to Mission Power's diligence prong:

> The merits of Diaz' underlying request are governed by Rule 16(b) of the Federal Rules of Civil Procedure, which provides that a scheduling order shall be modified "only for good cause." Fed. R. Civ. P. 16(b)(4).
>
> > Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment.... Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.
>
> Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (internal quotations and citations omitted).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).

The touchstone of Diaz' Second Application under both prongs of Mission Power is, therefore, whether he was diligent in seeking the relief requested.  In the interest of brevity, Heredia will address Diaz' lack of diligence without separating his arguments by Mission Power prong because Diaz' arguments fail equally under both prongs due to his lack of diligence.

**A. None of Diaz' Four Arguments In Support of His Second Application Is Persuasive Because Diaz' Current Crisis Is Solely of His Own Making.**

The deadlines set by the scheduling order do not exist in a vacuum.  Obviously, the Federal Rules of Civil Procedure and the Local Rules for the Central District of California govern this proceeding.  Fed. R. Civ. P. 1; L.R. 1-1.  The Court has

---

deny them both and to sanction Diaz for his repeated abuse of the *ex parte* application process.

effectively reminded all counsel of their applicability. <u>See</u>, <u>e.g.</u>, ECF 44-46, 54. As such, Diaz' counsel is obliged to know and observe the deadlines necessarily associated with a July 8 discovery cut-off date. It is well established that "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have…." <u>In re Intermagnetics Am., Inc.</u>, 101 B.R. 191, 193 (C.D. Cal. 1989).

Nothing in Diaz' Second Application fairly explains why Diaz' failure to comply with the scheduling order is Heredia's fault. Indeed, Diaz could easily have prevented his most recent "emergency" months ago had he been diligent seeking to obtain in discovery earlier in the discovery period.

Inexplicably, Diaz did not start the process to explore with Heredia continuing the July 8 discovery cut-off date until June 28, and the parties were not able to even discuss the matter until July 5. (<u>See</u> Montalvo Declaration at ¶¶ 5, 9-11, attached as Exhibit A.) While Diaz strives to lay his failure to act at Heredia's feet, his excuses are unavailing. Diaz is charged with being aware of pertinent deadlines in the case and how they relate to the rules.

Diaz' crisis is wholly self-made, and the Court should deny his Second Application for the reasons set forth below.

### i. Diaz Was Not Diligent In Seeking To Depose Heredia or HBM.

Diaz yet again abuses the extraordinary *ex parte* process, this time to complain that he will be "irreparably prejudiced if the discovery cut-off is not continued because he will be precluded from taking the key depositions of Ralph Heredia and the PMK of Heredia Boxing Management." [ECF 128 8:14-16] It is solely Diaz' own lack of diligence that is causing his current crisis and that lack of diligence is fatal to his Second Application.

Diaz unilaterally noticed Heredia's and HBM's depositions on July 28, 2022 for depositions to be held on July 7 and July 8, respectively, with July 8 being discovery cut-off. On July 1, 2022, Heredia and HBM objected to the nine- and ten-

days-out deposition notices, which were imposed without the barest courtesy of asking about counsels' or Defendants' availability, meaningful because, as it turns out, both counsel for the Defendants were unavailable on those days.

Diaz' claimed prejudice – that he could not have noticed the depositions any earlier because it was not clear that Heredia would not produce "key documents" absent a motion to compel – is disingenuous and a crisis of his own making. Further, his reasoning on this point is circular – it assumes the very thing he is arguing.

As more fully detailed in Heredia's opposition to Diaz' First Application filed last Friday, Diaz' counsel have known since April 13, 2022 or earlier that Heredia stated that he had no more documents to produce. [ECF 124-3 ("I am following up with respect to our meet and confer call on April 13, 2022. During that call, you represented that Mr. Heredia does not have any responsive documents to the Requests enumerated below [the Requests complained about in the Motion to Compel].")]

Diaz' claim that he waited over two months to decide to seek relief from the Court, until it was "clear" that Heredia would not produce more documents [ECF 128 8:20], is the antithesis of diligence and is not a creditable assertion.

As shown above, Diaz' own counsel knew as of April 13, 2022 that Heredia had no more documents to produce. It should have been "clear" to Diaz' counsel at that time that no further documents would be forthcoming from Heredia. Diaz' two-month delay in seeking relief, when the discovery cut-off deadline – known to all parties – was looming, is a textbook example of a lack of diligence.

Diaz' reliance on this Court's November 17, 2021 opinion in Mansour v. Costco Wholesale Corporation, 2021 WL 6104822 (C.D. Cal 2021) is misplaced at best. In that case, deadlines for discovery cutoff, hearing motions *in limine* (including Daubert motions), the final pretrial conference, and the commencement of the jury trial were continued 90 days for reasons substantially different from the moving party's lack of diligence:

"the outcome of the pending motions [such as Costco's motion for

7

> summary judgment and the Mansour's motion to amend their Complaint] 'will have a significant impact on the case, including whether the case against Costco will be disposed of in its entirety, whether additional defendants will be joined in this matter, and, if so, whether this matter will be remanded to state court.'"

Id. at *2.

Further, the non-moving party did not object to the moving party's request for a 90-day continuance.  Id. at *2. ("In his correspondence with Coscto's counsel, Saunders says that the Mansours 'are agreeable to extend the deadline[s] … by 90 days.' The Court agrees with Costco's argument and the Mansours do not object." (internal footnote omitted)).

Nothing in Costco provides support to Diaz' arguments.  Indeed, by all accounts from that opinion, the plaintiff was diligent in their efforts to prosecute and defend the case.  Diaz' posture could not be more different.  Diaz waited months to seek relief, without valid reason.  Diaz' lack of diligence makes Costco inapposite and is fatal to his request for *ex parte* relief.

Moreover, Diaz' claim that he could not notice defendants' depositions until the protective order had been entered is unpersuasive.  There is nothing tying entry of the protective order to defendants' depositions.  While the protective order governs confidential production for all parties, it is Diaz who claims that most or all of his documents are confidential, not defendants.

Further, not once did Diaz' counsel ask defendants' counsel if they could schedule depositions subject to the need to maintain confidentiality.  They never identified it as a bar.  As set forth extensively in Heredia's opposition to Diaz' First Application, Diaz simply noticed the depositions unilaterally anyway.  If lack of a protective order were the real issue, the deposition notices never would have issued, at least not without Diaz' counsel asking for some sort of accommodation to allow them to occur pending entry of the protective order.

Again, as with the First Application, Diaz has now taken the very action he claims he was prevented from taking. Again, of course, he acted untimely for reasons entirely attributable to Diaz. As a result, he has now importuned the Court a second time to step in and rectify the circumstances of his own making.

### ii. Diaz' Lack of Diligence Precludes His Ability to Depose Defendants.

Diaz' second argument in support of his Second Application is that "the Parties are awaiting entry of a Protective Order" [ECF 128 9:28] and that, "[g]iven that this case involves highly sensitive and confidential information, the Parties cannot move forward with depositions without the Protective Order in place." [ECF 128 10:6-7] Diaz' argument is, again, rooted in his own lack of diligence that is fatal to his Second Application.

As separately discussed above, Diaz unilaterally noticed depositions of the Defendants, on 9- and 10-days' notice, for the penultimate and final days of the discovery period. Counsel for the Defendants objected because neither was available on those dates. Diaz had *months* to bring his motion to compel, and failed to do so until nearly the last minute.

That the protective order has not yet been issued is solely Diaz' fault, because if he were diligent and brought his motion to compel months earlier, the protective order certainly would have been issued in time for Diaz to properly notice the Defendants' depositions in consultation with their counsel. Diaz' lack of diligence is the root cause of his current crisis, not Heredia or the Court, and that is fatal to his Second Application.

### iii. Diaz' Rehash of His Arguments in His *Ex* Parte Second Application From Last Week Are No More Compelling the Second Time.

Diaz' third argument in support of his Second Application is that he needs *ex parte* relief "to allow his Motion to Compel filed on June 29, 2022, to be heard." [ECF 128 10:12-13] This is a rehash of the arguments he made in support of his *ex parte* application from last week [ECF 124]. For the reasons provided in Heredia's

opposition to that *ex parte* application [ECF 125], Diaz' stated crisis is again rooted in his own lack of diligence. For the sake of brevity, Heredia will not restate his opposition in detail, but instead relies on his arguments raised in his opposition filed on Saturday, July 2, 2022 [ECF 125].

### iv. Diaz' Claimed Need For More Time To Conduct Discovery After Mediation Is Solely the Result of His Lack of Diligence in the Discovery Process.

Diaz' fourth and final argument in support of his Second Application is that he needs *ex parte* relief "in the event that mediation is unsuccessful, Diaz asserts more time to complete discovery or to hear discovery motions, is required so that Diaz is not irreparably prejudiced in its ability to perform discovery into issues that may arise at mediation." [ECF 128 11:7-10] Once again, Diaz' lack of diligence to engage in discovery by timely bringing a motion to compel, or to work with counsel for the Defendants to notice depositions in a timely manner, is solely a crisis of his own making and fatal to his Second Application.

As argued above, Diaz could have brought his motion to compel **months** earlier. Inexplicably, he chose not to. Had he done so he would have had months to work with opposing counsel to schedule and take the Defendants' depositions. Notably, Defendants have produced all discovery – over 1300 pages worth – in their possession, custody, or control, and Diaz has had it all since March 2022. There should be no surprises at mediation.

Finally, Diaz' spectre of needing time to engage in more discovery into issues that "may arise" at mediation is speculative. In his fourth argument, Diaz fails to present any actual controversy, much less an urgent one requiring the extraordinary remedy of *ex parte* relief. Defendants have made their positions amply known to Diaz, and are confident that the July 19th mediation will be productive. Among other things, many of the things about which Diaz claims in this case were already heard and adjudicated in the arbitration between plaintiff and his manager, Moses Heredia.

The parties undoubtedly will draw on those proceedings to assist in potential resolution of this matter at the July 19th mediation.

### v. Diaz' neglect is not excusable.

Overall, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392, 113 S. Ct. 1489, 1496, 123 L. Ed. 2d 74 (1993), that is not Diaz' claimed excuse, nor could it be. Diaz' other actions in the prosecution of his case show that he was aware of the rules governing discovery motions practice. He has brought discovery motions previously, having filed motions to compel and joint stipulations earlier in this case. Likewise, he references bringing the dispute before the Magistrate. [ECF 124-3]

In sum, Diaz' Second Application compels the conclusion that he did not use "the entire discovery period efficiently." Mission Power at 493. He could have, "with due diligence, sought to obtain the discovery earlier in the discovery period." Id.

"Ex parte requests are not intended to save the day for parties who failed to present requests when they should have…" Id. (citation omitted). Diaz failed to present his request when he should have. Heredia respectfully urges the Court to deny Diaz' Second Application.

### B. Diaz' Underlying Request is Meritless

Diaz' lack of diligence is sufficient to warrant denying his Second Application under either Mission Power prong. Thus, it is not necessary to reach the irreparable prejudice analysis of the first prong in the context of Diaz' request to continue discovery cut-off deadlines. Mindful of the urgent nature of an *ex parte* application and the attendant strain on the Court's resources, however, Heredia will briefly address the irreparable prejudice aspect of the first prong in the context of Diaz' Second Application. In short, no irreparable prejudice requires Diaz to be afforded the relief he requests.

While Heredia submits that Diaz' Second Application is meritless, any prejudice in denying Diaz' Second Application, or in not continuing discovery deadlines, would not be severe. It certainly would not be irreparable. The end result of such a denial would be that discovery closes as previously ordered. However, Diaz may yet examine Heredia and a PMK for HBM on the stand, under oath, at trial and pose any leftover questions to each at that time. The tomatoes are not going to spoil. The yacht is not about to leave the jurisdiction. Immediate action need not be taken. Diaz will just have to wait a bit longer to pose the same questions, yet again, to Heredia or HBM.

## IV.   CONCLUSION

There is no fire. Heredia respectfully urges the Court to deny Diaz' ex parte application for an order continuing the discovery cut-off deadline and award Heredia his attorneys' fees and costs in opposing this Second Application.

Dated: July 8, 2022                     Respectfully submitted,

/s/ *Rajan O. Dhungana*
Rajan O. Dhungana (SBN: 297794)
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905
rdhungana@fedpractice.com

/s/ *Eric S. Montalvo*
Eric S. Montalvo (*Pro Hac Vice*)
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053
emontalvo@fedpractice.com

*Attorneys for Defendants*
Ralph Heredia and Heredia Boxing Management

# CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022 at 3:36 p.m., I filed the foregoing Defendant Heredia's Opposition to Plaintiff Diaz' First Ex Parte Application for an Order Continuing the Discovery Cut-Off Deadline with the Clerk of the Court and sent a copy of such filing via the CM/ECF system.

  Furthermore, I sent a copy via email to the following:

James L. Greeley (SBN 218975)
 jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
 dvazquez@vgcllp.com
Gina M. Simas (SBN 205367)
 gsimas@vgcllp.com
VGC, LLP
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 256-8296

*Attorneys for Plaintiff*
Joseph Diaz, Jr.

Dated: July 8, 2022

                Respectfully submitted,

                */s/ Rajan O. Dhungana*
                Rajan O. Dhungana (SBN: 297794)
                FEDERAL PRACTICE GROUP
                14481 Aspen Street
                Hesperia, CA 92344
                Telephone: (310) 795-6905
                rdhungana@fedpractice.com

                *Attorney for Defendants*
                Ralph Heredia and
                Heredia Boxing Management