Rajan O. Dhungana (SBN: 297794)
rdhungana@fedpractice.com
Eric S. Montalvo (*Pro Hac Vice*)
emontalvo@fedpractice.com
**FEDERAL PRACTICE GROUP**
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905
*Attorneys for Defendant,*
RALPH HEREDIA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> RALPH HEREDIA; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO. 5:20-cv-02332-JWH-KK <br><br> **DEFENDANT HEREDIA'S REPLY IN SUPPORT OF HIS MOTION FOR REVIEW OF, AND OBJECTIONS TO, PORTIONS OF THE MAGISTRATE'S JUNE 22, 2022 ORDER** <br><br> Date: August 5, 2022 <br> Time: 9:00am <br><br> Courtroom: 9D <br><br> Discovery Cut-Off Date: July 8, 2022 <br> Pre-Trial Conference Date: November 18, 2022 <br> Trial Date: December 5, 2022 |

## I.  INTRODUCTION

Heredia would like to cut through all the distracting noise in Diaz' opposition and focus on the facts of the matters at hand.

First, however, as argued more fully below but raised here as well due to urgency, ***Heredia respectfully urges the Court to stay the sanctions immediately***, as the deadline to pay the sanctions is July 22 – well before the hearing date in this matter.

## II.  ARGUMENT

### A. New Information Has Even More Fully Justified Heredia's Refusal to Sign a Protective Order as a Condition of Diaz Producing Non-Confidential Document Discovery.

Heredia's concerns about Diaz' lack of proper document production, first raised to the Court in Heredia's Joint Stipulation [ECF 117-1, 22:4-13, for example] continues, and further justifies Heredia's reluctance, expressed to Diaz and reiterated in the Joint Stipulation yet disregarded by the Magistrate Judge, to sign a protective order until Diaz' non-confidential production was complete.

Heredia explained this reluctance in his Rule 72(a) Motion and Objections:

> "Heredia's counsel wanted to see the entirety of Diaz' non-confidential document production to try to discern what would be left as confidential prior to agreeing to any protective order.  Montalvo Decl. ¶6.  Otherwise, Heredia would have to object to each document produced by Diaz under Section 6 of the proposed protective order if Heredia did not believe it was appropriately designated as confidential.  This would include the entire meet-and-confer process per Local Rule 37-1."

ECF 118-1, 13:1-7.

Heredia's reticence was validated as remarkably prescient.  On April 20, 2022, Diaz produced eighty-five pages of non-confidential documents in a disorganized document dump.  That production is essentially unusable because Diaz did not identify his documents to each RFP, contrary to Rule 34.

On July 6, 2022, Diaz produced 196 additional pages, all marked "confidential."  It, too, was a disorganized document dump, not identified to any RFP.  It, too, is essentially unusable.

Diaz' indiscriminate "confidential" designations appear not to be in good faith.  The high probability that Diaz would do so is precisely why Heredia would not stipulate to the protective order until its scope could be agreed.  By contrast, Diaz refused to negotiate the protective order's scope in good faith – his wholesale confidentiality designations now reveal why.

Diaz knows that these confidential designations are unwarranted, which further calls into question Diaz' good faith in so designating.  The protective order requires that "[n]othing will be designated 'confidential' without a good faith belief that it has been maintained in a confidential, non-public manner…" [ECF 118-37, 3:7-8].  Of the 196 "confidential" pages from his July 6, 2022 production, Diaz had already produced 159 of them without the "confidential" designation in the arbitration between Moses Heredia (Ralph's brother, Diaz' manager) and Diaz.  Diaz knew the documents were not confidential, yet designated them anyway.

Even without the nonconfidential production in the arbitration, Diaz has designated as confidential documents that he himself has not maintained as confidential.  For example, Diaz marked "confidential" a text that Diaz sent to Ralph Heredia in which Diaz informed Heredia of Diaz' signing with rival MTK.  The text was not maintained in a confidential, non-public manner – it was sent to Heredia without restriction – and there is no privilege or other ground to mark this communication confidential, yet Diaz did so anyway.  This, despite the fact that it

is a text that Diaz sent to Heredia, was lawfully in Heredia's possession, and was produced in the arbitration, as well, without confidential legend. Diaz would have Heredia and the Court believe that it was not confidential back then, but it is now?

Further, Diaz' claim that his non-confidential production was complete (see, e.g., ECF 133, 8:20-22) on April 20 treats the truth as economical. Heredia assessed what evidence Diaz would need to support his claims assuming they were valid, and of that, what might fairly be deemed confidential. Heredia anticipated, given the paucity of Diaz' April 20 non-confidential production, that Diaz intended to designate even nonconfidential documents "confidential," setting the stage for a fight over those designations. In an attempt to avoid that fight, Heredia attempted to negotiate a more refined confidentiality scope in the proposed protective order. Rather than negotiate that scope, Diaz moved for entry of the order.

Diaz' July 6 production, with its 196 pages of "confidential" documents, shows that Heredia's concerns were well-placed and that Heredia was justified in refusing to stipulate to the proposed scope. For example, Diaz alleged that "Heredia received tickets provided by Golden Boy to Diaz's fights that were supposed to be for Diaz's family and friends," ECF 69 ¶ 116(c), and that such tickets were "worth thousands of dollars." Id. ¶ 112. Yet Diaz' production includes no evidence of the tickets' price. Moreover, the price of tickets to a public boxing match cannot be said by any stretch of the imagination to be "confidential." Any evidence of ticket price should have been part of Diaz' non-confidential production. It was not. As it stands, it was not even part of Diaz so-called "confidential" production. It simply does not exist.

Heredia respectfully contends that he provided legitimate reasons for not responding to each substantively identical request by Diaz to stipulate to the protective order, and further submits that his reasoning – wanting to see the entirety of non-confidential production first to avoid as many disputes over

confidentiality as possible – was well-grounded and legitimate. Diaz' recent so-called "confidential" document production even more convincingly proves Heredia's concerns valid.

### B. The Magistrate Judge's Order Requiring Diaz to Produce Documents But Denying Heredia's Motion to Compel Was Clearly Erroneous and Contrary to Law.

Diaz' Opposition fails to change Heredia's position. The Magistrate Judge's order stated, "Plaintiff shall serve responsive documents as agreed to in his responses to the Requests for Production within fourteen (14) days of the date of this Order."

To understand the scope of that part of the Magistrate Judge's order, one must look at Diaz' responses to each of Heredia's 112 Requests for Production. Diaz' responses to each stated, in full:

> "Responding Party objects to this Request to the extent it seeks information that is protected by the attorney-client privilege, work product doctrine and/or other applicable privilege or right to privacy. Subject to and without waiving the foregoing general and specific objections, Responding Party will produce non-privileged documents in its possession, custody, or control that are responsive to this Request as Responding Party understands it."

See, e.g., ECF 117-1, 21:22-25, 22:1-2.

By this response, Diaz acknowledged his duty to produce nonconfidential documents and a privilege log. However, he did neither. Instead, during protective order negotiations, he stated that he would embargo any response until a protective order was in place. See, e.g., Diaz' RFP response at Page 1:23-24 ("Any documents that Responding Party agrees to produce, as detailed in the responses below, will be produced after the Court has entered the Protective

1  Order."). It was only when Heredia started the motion to compel process that Diaz
2  produced any documents at all, and then it was only eighty-five pages.
3      Diaz' Opposition misstates the Magistrate Judge's order compelling Diaz'
4  production: "[t]he Magistrate Judge ordered Diaz to produce the confidential
5  documents within fourteen days of entry of the protective order" [ECF 133, 9:2-3]
6  That is not an accurate interpretation of the order. The actual text of the Magistrate
7  Judge's order on this point instructed Diaz to "serve responsive documents as
8  agreed to in his responses to the Requests for Production within fourteen (14) days
9  of the date of *this* Order." Id. (emphasis added). In the quoted sentence, "this"
10 functions as a determiner, identifying the "Order" referred to as itself, ECF 122.
11     Thus, rather than the contorted reading Diaz proposed, the plain language of
12 the Magistrate Judge's order required Diaz to produce: (1) documents that he
13 committed to produce in each of his responses to Heredia's RFPs; and (2) a subset
14 of those documents, any that are legitimately confidential, must also be produced
15 upon issuance of the protective order. That Diaz was ordered to produce
16 responsive documents within fourteen days of "this Order," not fourteen days from
17 issuance of the to-be-separately-issued protective order, puts paid to Diaz'
18 interpretation of the Magistrate Judge's order limiting production to confidential
19 documents.
20     Diaz has also failed to identify his documents to each RFP as Rule 34
21 requires. Neither has he produced a privilege log, despite acknowledging his duty
22 to do so in his initial responses.
23     Although the Magistrate's Order granted the relief Heredia sought in his
24 motion, the next sentence confusingly states, "In addition, Defendant's Motion to
25 Compel further responses to the Requests for Production of Documents is
26 DENIED without prejudice." Since the relief sought in Heredia's motion was
27 granted, Heredia submits that the motion itself should be deemed granted. To be
28

5
HEREDIA'S REPLY ISO MOTION FOR REVIEW OF MAGISTRATE'S
JUNE 22, 2022 ORDER

clear, Heredia does not ask this Court to substitute its judgment for the Magistrate Judge's.  Rather, Heredia asks that the disposition of the motion be changed to reflect the relief granted.  Without reiterating the arguments in Heredia's motion, this change then compels the conclusion that the sanctions were inappropriately levied and they should thus be vacated.

### C. A Stay of The Award of Sanctions Is Appropriate

Heredia requests that the sanctions be stayed pending resolution of this motion.  The Court has "broad discretion to stay proceedings as incident to its power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 683 (1997) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)).

As relevant here, among the factors courts consider in weighing a stay are any harm suffered by the nonmoving party if the stay is granted, and any hardship suffered by the moving party if a stay is denied.  Nakai v. Charter Comm'ns, Inc., 2020 WL 1908949, at *3 (C.D. Cal. April 15, 2020) (citing Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005); Duran v. Ocwen Mortg. Servicing, Inc., No. 17-cv-00905-GW-(KKx), 2017 WL 10526138, at *2 (C.D. Cal. Aug. 21, 2017) (citing CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

Diaz' argument against a temporary stay is unavailing.  He conflates the entry of a temporary stay with the finality of a ruling on the merits of the underlying action.  Diaz argues that he will be "substantially harmed and prejudiced should the Court override the Magistrate Judge's award of reasonable sanctions against Heredia and enter a stay of imposition." [ECF 133, 20:4-6]. First, the correct standard is whether Diaz will be harmed while a temporary stay is granted, not whether he will be harmed if the sanctions are overturned.  Diaz advances no arguments that he will be harmed if the temporary stay is granted. Second, Diaz will has identified no harm whatsoever that he will suffer if the sanctions are overturned.  Indeed, it is difficult to imagine any convincing

argument that Diaz would be harmed by non-payment of something to which he was not entitled. In this instance, Diaz' entitlement to the sanctions is the very issue. Staying payment of the sanctions promotes transactional efficiency as well, insofar as the two firms will have fewer bookkeeping entries to log and then correct if Heredia's motion is granted.

Conversely, Heredia submits that his Rule 72(a) Motion and Objections is well-taken and likely to succeed, hence he would suffer hardship in having to pay sanctions that may later be overturned. In addition to the inefficiencies described above, there is the simple matter that paying and then retrieving any amount increases the administrative and financial burden on Heredia.

## III. CONCLUSION

Heredia respectfully urges the reviewing Court to: (1) sustain his objections to the Magistrate Judge's June 22, 2022 order and conclude that the Magistrate Judge's June 22, 2022 order was, in identified part, clearly erroneous or contrary to law; (2) reverse the order of sanctions against him; (3) reverse the denial of Heredia's motion to compel production; and (4) either strike Diaz' joint stipulation concerning the protective order or sanction Diaz for the improper process by which it was brought before the Court.

Dated:  July 21, 2022             Respectfully submitted,

/s/ *Rajan O. Dhungana*
Rajan O. Dhungana (SBN: 297794)
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905
rdhungana@fedpractice.com

/s/ *Eric S. Montalvo*
Eric S. Montalvo (*Pro Hac Vice*)
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053
emontalvo@fedpractice.com

*Attorneys for Defendant*

Ralph Heredia

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2022, I filed the foregoing Reply In Support of Defendant Heredia's Notice of Motion And Motion For Review of, and Objections To, Portions of the Magistrate's June 22, 2022 Order with the Clerk of the Court and sent a copy of such filing via the CM/ECF system.

Furthermore, I sent a copy via email to the following:
James L. Greeley (SBN 218975)
　jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
　dvazquez@vgcllp.com
Gina M. Simas (SBN 205367)
　gsimas@vgcllp.com
VGC, LLP
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 256-8296

*Attorneys for Plaintiff*
Joseph Diaz, Jr.


Dated: July 21, 2022

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ *Rajan O. Dhungana*
　　　　　　　　　　　　　　　　　　Rajan O. Dhungana (SBN: 297794)
　　　　　　　　　　　　　　　　　　FEDERAL PRACTICE GROUP
　　　　　　　　　　　　　　　　　　14481 Aspen Street
　　　　　　　　　　　　　　　　　　Hesperia, CA 92344
　　　　　　　　　　　　　　　　　　Telephone: (310) 795-6905
　　　　　　　　　　　　　　　　　　rdhungana@fedpractice.com

　　　　　　　　　　　　　　　　　　*Attorney for Defendant*
　　　　　　　　　　　　　　　　　　Ralph Heredia