1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11   JOSEPH DIAZ, JR.,                    Case No. 5:20-cv-02332-JWH-KKx

12            Plaintiff,                  **ORDER REGARDING MOTIONS**
                                          **FOR JUDGMENT ON THE**
13        v.                              **PLEADINGS [ECF Nos. 82 & 88]**

14   RALPH HEREDIA, true name
         RAFAEL HEREDIA TARANGO,
15       a/k/a RAFAEL HEREDIA, a/k/a
         RAFAEL BUSTAMANTE;
16   JOHN DOE, ESQ.;
     HEREDIA BOXING
17       MANAGEMENT, LLC; and
     JANE DOES 2 through 20,
18
              Defendants.
19

20
21
22
23
24
25
26
27
28

As it has previously expressed, the Court is frustrated and disappointed that this case has not been litigated with the professionalism that the Court expects.[1]  In addition to failing to comply with this Court's Local Rules, counsel have engaged in inappropriate personal attacks on one another.[2]  Counsel have also included irrelevant information in what the Court can only surmise are attempts to smear their adversaries.[3]  Such behavior is unbecoming of counsel, and it fails to serve the interests of counsel's respective clients.  The Court directs all counsel to review L.R. 83-3.1.2 and admonishes them that they are obligated to adhere to the standards of professional conduct.

Presently before the Court are two motions:

- the motion of Defendant Ralph Heredia for judgment on the pleadings;[4] and

- the motion of Defendant Heredia Boxing Management ("HBM"), also for judgment on the pleadings.[5]

The Court finds those matters appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15. *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[6] the Court orders that both

---

[1]      *See, e.g.*, Order Granting, in Part, and Denying, in Part, Joint Stipulation Re:  Def.'s Mot. to Dismiss [ECF No. 61] 2:6-10.

[2]      *See, e.g.*, Def. Ralph Heredia's Mot. for J. on the Pleadings (the "Heredia Motion") [ECF No. 82] 2-3 n.1.

[3]      *See, e.g.*, Exs. in Supp. of the Motion (the "Heredia Exhibits") [ECF No. 83], Exs. 1-4 (attaching irrelevant media reports about Diaz and his personal struggles); First Am. Compl. (the "Amended Complaint") [ECF No. 69] ¶ 46 (including irrelevant details about Heredia's alleged criminal past).

[4]      Heredia Motion.

[5]      Def. Heredia Boxing Management's Mot. for J. on the Pleadings (the "HBM Motion") [ECF No. 88].

[6]      The Court considered the documents of record in this action, including the following:  (1) the Amended Complaint; (2) the Heredia Motion (including its attachments); (3)  the Heredia Exhibits; (4) Pl.'s Opp'n to the Heredia Motion (the "Heredia Opposition") [ECF No. 86]; (5) Pl.'s Objs. to Req. for Judicial Notice (the "Objections") [ECF No. 87]; (6) Def.'s Reply in Supp. of the Heredia Motion (the "Heredia Reply") [ECF No. 89]; (7) the HBM Motion

motions are **GRANTED-IN-PART** and **DENIED-IN-PART**, for the reasons set forth herein.

## I.  BACKGROUND

**A.    Procedural History**

Plaintiff Joseph Diaz, Jr. commenced this action in state court in October 2020.[7]  The next month, Heredia removed the case to this Court.[8]  Heredia filed his instant Heredia Motion in November 2021,[9] and it is fully briefed.  That same month, HBM filed its instant HBM Motion.  Diaz filed papers opposing that Motion, and HBM declined to reply.

**B.    Factual Allegations**[10]

Diaz is an Olympic boxer and a former world champion.[11]  In 2012, Diaz signed a management agreement (the "2012 Agreement") with Heredia and Heredia's brother, Moses.[12]  Moses was licensed by the California State Athletic Commission (the "CSAC"), while Heredia was not.  The 2012 Agreement contains at least three provisions that call its validity into question.  First, it states in capital, bold letters:  "THIS CONTRACT IS NOT VALID UNTIL THE DATE ON WHICH IT HAS BEEN SIGNED AND APPROVED BY

---

(including its attachments); and (8) Pl.'s Opp'n to the HBM Motion (the "HBM Opposition") [ECF No. 91].

[7]    *See* Notice of Removal [ECF No. 1].

[8]    *Id.*

[9]    Unless otherwise noted, all dates are in 2021.

[10]    The following summary is based upon the allegations in Diaz's Amended Complaint.  For the purposes of the instant motions, the Court assumes Diaz's allegations to be true.  *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (on motion to dismiss for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party").

[11]    Amended Complaint ¶ 1.

[12]    *Id.* at ¶ 36.  The Court uses Moses Heredia's first name to distinguish him from his brother, Defendant Ralph Heredia.  The Court intends no disrespect to Moses Heredia.

-3-

THE COMMISSION'S EXECUTIVE OFFICER OR DESIGNEE."[13]  Second, the 2012 Agreement notes that it is not valid unless and until both parties appear before the CSAC at the same time for its approval.[14]  Third, the 2012 Agreement provides that it may be declared null and void if the manager is not duly licensed by the CSAC.[15]  Despite those provisions, Heredia represented to Diaz that the 2012 Agreement was valid and enforceable.[16]  Years later, during a 2021 arbitration involving Diaz and Moses, the CSAC declared that the 2012 Agreement "was invalid on its face."[17]  But, until that arbitration, Diaz did not know that the Agreement was invalid, and, therefore, he honored its terms.[18]  Accordingly, Heredia collected 20% of Diaz's fight purses.[19]

In early 2017, with the 2012 Agreement set to expire soon, Heredia told Diaz that they needed to sign a second agreement.[20]  Heredia assured Diaz that their relationship would not change.[21]  In February 2017, Diaz signed a boxer-management agreement with Moses (the "2017 Agreement").[22]  While Diaz believed that his relationship with Heredia would not change, Heredia was not a party to the 2017 Agreement.[23]  After Moses and Diaz signed the 2017 Agreement, Diaz's relationship with Heredia remained the same; *i.e.*, Diaz believed that Heredia was his manager, and Diaz acted accordingly.[24]

---

[13]  *Id.* at ¶ 38.
[14]  *Id.*
[15]  *Id.*
[16]  *Id.* at ¶ 39.
[17]  *Id.* at ¶ 40.
[18]  *Id.* at ¶ 41.
[19]  *Id.*
[20]  *Id.* at ¶ 43.
[21]  *Id.*
[22]  *Id.* at ¶ 44.
[23]  *Id.*
[24]  *Id.*

-4-

1    At the same time that Moses and Diaz executed the 2017 Agreement,

2    Heredia, Moses, and Diaz signed another document—a Release of Contract (the

3    "Release").  Through the Release, the parties "mutually release[d] each other

4    from any *further* liability or obligation [under the 2012 Agreement]."[25]

5    Diaz avers in his Amended Complaint that Moses was never more than a

6    "paper manager."[26]  To support that assertion, Diaz points to, among other

7    things, his separate promotional agreement with non-party Golden Boy

8    Promotions, LLC, which **both** Heredia brothers signed as Diaz's "Manager."[27]

9    Diaz alleges that Heredia consistently put Heredia's own interests above

10   those of Diaz and that Heredia failed to represent Diaz adequately.[28]  Beyond the

11   complaints that Heredia failed in his duties as a manager, Diaz also asserts that

12   Heredia stole from Diaz.[29]  To support that accusation, Diaz provides three

13   examples:

14   - The 2017 Agreement called for an 18% management fee, but Heredia

15     extracted a 20% fee.  Heredia claimed that the extra 2% was for "Diaz's

16     lawyer," whom Heredia had supposedly retained on Diaz's behalf.[30]  Diaz

17

18   _____

19   [25]    *Id.* at ¶ 45 (emphasis and second alteration in Amended Complaint).  Diaz
     avers that the word "further" indicates that the Release "applied on a going-
20   forward basis and did not release prior claims[,]" but Diaz's  interpretation is
     open to dispute.

21   [26]    *Id.* at ¶ 47.  Heredia presents evidence rebuking that assertion.  *See, e.g.*,
     Heredia Exhibits, Ex. 5 10:9-16.  Heredia requests judicial notice of what he
22   purports to be filings from the arbitration between Diaz and Moses.  Heredia
     Motion 3:8-13.  The Court cannot consider that evidence because it is not
23   authenticated.  *See* Fed. R. Evid. 901(a).  Accordingly, the request for judicial
     notice is **DENIED**.  Heredia also requests that the Court aggregate Diaz's
24   Opposition with his Objections, which would put Diaz over the Court's 25-page
     limit.  *See* Reply 3:10-4:6.  Heredia ignores the fact that an objection is different
25   than an opposition.  Accordingly, that request is also **DENIED**.

26   [27]    *Id.* at ¶ 56.

     [28]    *See, e.g., id.* at ¶¶ 48-60.

27   [29]    *Id.* at ¶ 53.

28   [30]    *Id.* ¶ 58.  In his Amended Complaint, Diaz is not clear on whether he paid
     his fees to Moses, Heredia, or HBM.  Diaz implies that he paid Heredia, but he

never hired that lawyer—identified in the Amended Complaint as Defendant "John Doe, Esq."—and Diaz accuses Heredia and "John Doe, Esq." of stealing the extra 2%.[31]

- In 2019, Heredia purchased a 2016 Lexus automobile purportedly for Diaz's benefit, and Heredia agreed to make an "auto loan" to Diaz until Diaz could pay it off.[32]  Diaz paid Heredia $25,000 toward the vehicle's purchase price and paid an additional $4,000 to have the vehicle wrapped in matte black.[33]  In September 2020, however, Heredia had the vehicle repossessed.[34]  Heredia did not warn Diaz that repossession was forthcoming, nor did Heredia alert Diaz that Heredia required additional payments toward the vehicle.[35]  Diaz left $300 in cash in the Lexus when it was repossessed; Heredia never returned that cash to Diaz.[36]

- Heredia appropriated tickets provided by Golden Boy for Diaz's fights.[37]  Those tickets were intended for Diaz's friends and family, but Heredia took the best seats for himself and "gave only a few, much worse, seats to Diaz's family and friends."[38]

Beyond outright theft, Diaz also accuses Heredia of leveraging Diaz's relationship with Golden Boy to benefit Heredia at Diaz's expense.[39]  For example, Heredia represented to Golden Boy that Diaz wanted tickets to the

---

does not say so explicitly.  It is therefore unclear how ***Heredia*** "stole" the extra 2%.  *See id.* at ¶ 62.

[31]     *Id.* at ¶¶ 59 & 60.

[32]     *Id.* at ¶ 63.

[33]     *Id.*

[34]     *Id.* at ¶ 64.

[35]     *Id.*

[36]     *Id.*

[37]     *Id.* at ¶ 66.

[38]     *Id.*

[39]     *Id.* at ¶ 67.

1     high-profile bout between Saul "Canelo" Alvarez and Gennadiy Golovkin.[40]

2     Heredia took those tickets for himself, however, and then complained to Golden

3     Boy about the quality of the seats.

4          Diaz now asserts the following eight claims for relief against Defendants

5     Heredia, "John Doe, Esq.," and HBM:

6     •   fraud;

7     •   breach of fiduciary duty;

8     •   breach of implied-in-fact contract;

9     •   conversion;

10    •   tortious interference with prospective economic advantage;

11    •   violation of the Muhammad Ali Boxing Reform Act (the "Ali Act");

12    •   *quantum meruit*; and

13    •   an accounting.

14                  **II.  LEGAL STANDARD**

15 **A.     Rule 12(c)—Judgment on the Pleadings**

16          The Federal Rules of Civil Procedure provide that a party may move for

17    judgment on the pleadings after the pleadings are closed, but before trial.  *See*

18    Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate "when there is

19    no issue of material fact in dispute, and the moving party is entitled to judgment

20    as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

21    Accordingly, a motion under Rule 12(c) tests the legal sufficiency of the

22    complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cafasso, U.S.* ex rel.

23    *v. General Dynamics C4 Systems, Inc.* 637 F.3d 1047, 1063 n.4 (9th Cir. 2011).

24    The analysis is "substantially identical" to that for a motion to dismiss under

25    Rule 12(b)(6):  the court must determine whether, crediting the factual

26    allegations as true, the moving party is entitled to judgment as a matter of law.

27

28

---

[40]   *Id.*  It is unclear whether Heredia purchased those tickets or whether he received them as a gift from Golden Boy.

1    *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  The principal

2    difference between the two motions is the timing of the filing.  *See Dworkin v.*

3    *Hustler Magazine*, 687 F.2d 1188, 1192 (9th Cir. 1989).  Under both standards, a

4    complaint "must contain sufficient factual matter, accepted as true, to state a

5    claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  In other

6    words, the complaint must contain "well-pleaded facts" from which the Court

7    can "infer more than the mere possibility of misconduct."  *Id.* at 679.

8    **B.     Rule 9(b)—Fraud**

9         Allegations of fraud require more detail.  "In alleging fraud or mistake, a

10   party must state with particularity the circumstances constituting fraud or

11   mistake."  Fed. R. Civ. P. 9(b).  Under that standard, the complaint "must

12   identify the who, what, when, where and how of the misconduct charged, as well

13   as what is false or misleading about the purportedly fraudulent statement, and

14   why it is false."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)

15   (quoting *Cafasso*, 637 F.3d at 1055).

16   **C.     Rule 15(a)—Leave to Amend**

17         Pursuant to Rule 15(a), a district court "should freely give leave when

18   justice so requires."  The purpose underlying the amendment policy is to

19   "facilitate decision on the merits, rather than on the pleadings or

20   technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Leave to

21   amend should be granted unless the Court determines "that the pleading could

22   not possibly be cured by the allegation of other facts."  *Id.* (quoting *Doe v. United*

23   *States*, 8 F.3d 494, 497 (9th Cir. 1995)).  Nevertheless, a district court has

24   "particularly broad" discretion to deny leave to amend when the plaintiff has

25   previously amended its pleading.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

26   1133 (9th Cir. 2013).

27

28

### III.  DISCUSSION

**A.    The Heredia Motion**

Much of the content that Diaz includes in the introduction to his Heredia Opposition is inappropriate or irrelevant.  First, Diaz complains that Heredia filed his Motion after previously filing three motions to dismiss.[41]  That jab is irrelevant:  none of the previous motions was decided on the merits, and Heredia violated no Federal or Local Rules by filing the Heredia Motion.  Second, Diaz complains that Heredia violated the Court's Local Rules, but he fails to cite which Local Rule Heredia allegedly violated.[42]  Third, Diaz purports to quote Heredia, but Diaz fails to provide a citation for that quotation.[43]

**1.    Fraud**

Diaz alleges that Heredia committed fraud by intentionally concealing material facts from Diaz.[44]  Among the material facts that Diaz avers that Heredia concealed are:  (1) that Heredia was not licensed to manage fighters in California; (2) that Heredia had a criminal background; (3) that the 2012 Agreement was invalid; and (4) that Heredia had Moses sign the 2017 Agreement to evade scrutiny from the CSAC.[45]  Heredia argues that Diaz "does not allege a *prima facie* case of fraud under California law."[46]

"The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996).  A

---

[41]     Heredia Opposition 1:2.

[42]     *Id.* at 1:26-2:7.

[43]     *Id.* at 2:11.

[44]     *See* Amended Complaint ¶¶ 72-80.

[45]     *Id.* at ¶ 74.

[46]     Heredia Motion 5:17-18.

1  plaintiff alleging fraud must "identify the who, what, when, where and how of
2  the misconduct charged, as well as what is false or misleading about the
3  purportedly fraudulent statement, and why it is false." *Salameh*, 726 F.3d at
4  1133 (quoting *Cafasso*, 637 F.3d at 1055); *see also* Fed. R. Civ. P. 9(b).

5       "Not every fraud arises from an affirmative misstatement of material
6  fact." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 95 (2001), *as modified on*
7  *denial of reh'g* (Oct. 5, 2001).  In California, it is "established by statute that
8  intentional concealment of a material fact is an alternative form of fraud and
9  deceit equivalent to direct affirmative misrepresentation." *Stevens v. Superior*
10 *Ct.*, 180 Cal. App. 3d 605, 608 (1986) (citing Cal. Civ. Code §§ 1572, 1709, &
11 1710).  The elements of a claim for fraud and deceit based upon concealment are
12 as follows:

13          (1) the defendant must have concealed or suppressed a material fact,
14          (2) the defendant must have been under a duty to disclose the fact to
15          the plaintiff, (3) the defendant must have intentionally concealed or
16          suppressed the fact with the intent to defraud the plaintiff, (4) the
17          plaintiff must have been unaware of the fact and would not have
18          acted as he did if he had known of the concealed or suppressed fact,
19          and (5) as a result of the concealment or suppression of the fact, the
20          plaintiff must have sustained damage.

21 *Lovejoy*, 92 Cal. App. 4th at 96 (internal quotation omitted).

22       Heredia argues that Diaz fails to plead fraud based upon concealment
23 adequately because Diaz "does not allege when these alleged misrepresentations
24 or nondisclosures occurred, where they occurred, and to whom they
25 occurred."[47]  In addition, Heredia contends that Diaz fails to "allege any
26 justifiable reliance or that any said reliance caused Diaz to take a detrimental
27
28 ———————————
   [47]    *Id.* at 7:1-3.

1   course of action."[48]  For the purposes of this Order, the Court will address the

2   most important allegation of fraud based upon concealment in the Amended

3   Complaint:  that Heredia concealed that he was not a licensed manager.

4          In his Heredia Opposition, Diaz neglects to respond to Heredia's

5   arguments that the Amended Complaint does not allege the "where," and Diaz

6   fails to allege justifiable reliance.  Moreover, Diaz's argument that he pleaded

7   "out-of-pocket damages, including the additional 2% fee (on top of the 18%

8   manager's fee) and the money he invested into the Lexus that Heredia stole

9   from him"[49] does not make sense because Diaz does not articulate how those

10   damages relate to Heredia's failure to conceal that he was not a licensed

11   manager.

12          Because Diaz fails to address—or inadequately addresses—those

13   arguments, the Court treats them as conceded.  *See Hartranft v. Encore Cap.*

14   *Grp., Inc.*, 2021 WL 2473951, at *10 (S.D. Cal. June 16, 2021) ("where a non-

15   moving party fails to address an argument raised by the moving party in the

16   opposition brief, the Court may consider any arguments unaddressed by the

17   non-moving party as waived").  Accordingly, the Court concludes that Diaz fails

18   to state a claim for fraud based upon concealment.  Diaz also fails to respond to

19   Heredia's argument that Diaz does not plead fraudulent inducement with the

20   necessary particularity.  The Court similarly treats that argument as conceded.

21   *See id.*

22          While Diaz has not stated a claim for fraud, the Court cannot conclude

23   that amendment would be futile.  Diaz's fraud claim is therefore **DISMISSED**

24   **with leave to amend.**

25

26

27   [48]   *Id.* at 7:3-4.

28   [49]   Heredia Opposition 14:12-14.

1

2.       **Breach of Fiduciary Duty**

2        Diaz asserts his second claim for relief against Heredia for breach of

3   fiduciary duty.  That claim relies on Diaz's contention that "Heredia was Diaz's

4   true boxing manager at all relevant times . . . ."[50]

5        To state a claim for breach of fiduciary duty, a plaintiff must allege "the

6   existence of a fiduciary relationship, its breach, and damage proximately caused

7   by that breach."  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

8   68 Cal. App. 4th 445, 483 (1998), *as modified on denial of reh'g* (Jan. 6, 1999)

9   (citation omitted).  "Managers have a fiduciary relationship with the boxers they

10  manage[.]"  *Golden Boy Promotions LLC v. Haymon*, 2017 WL 460736, at *1

11  (C.D. Cal. Jan. 26, 2017), *judgment entered sub nom. Golden Boy Prods., LLC v.*

12  *Haymon*, 2017 WL 451942 (C.D. Cal. Feb. 1, 2017).[51]  Here, Diaz's claim for

13  breach of fiduciary duty fails for three reasons.

14       First, Diaz does not establish that Heredia owed Diaz a fiduciary duty

15  under the 2017 Agreement.  Heredia was not a party to the 2017 Agreement.

16  Diaz cites no authority, and the Court knows of none, that suggests that Heredia

17  owed Diaz a fiduciary duty under the terms of a contract that Heredia never

18  signed.[52]

19       Second, Diaz's allegations that Heredia failed to disclose material terms

20  and failed to provide material information are not pleaded with the requisite

21  _____

22  [50]     Amended Complaint ¶ 83.

23  [51]     Diaz asserts that "[n]o contractual relationship is necessary" to establish
    a fiduciary duty between boxer and manager.  *See* Heredia Opposition 14:23-24.
    To support that assertion, Diaz cites *Stanley v. Richmond*, 35 Cal. App. 4th 1070,
24  1077 (1995).  Diaz's reliance on *Stanley* does not make sense.  *Stanley* is a legal
    malpractice case, and, on the page that Diaz cites, the court discusses the case's
25  history.

26  [52]     Diaz tries to rely on the arbitration record to establish that a fiduciary duty
    existed.  *See* Heredia Opposition 15:5-9.  That reliance is confounding, since
27  Diaz opposed Heredia's request for judicial notice and did not submit any
    evidence of his own.  For the reasons discussed above, the Court denied the
28  request for judicial notice and will not consider evidence that has not been
    authenticated.

particularity. "[F]ailure to disclose material terms" and "failure to provide material information" can constitute breaches of fiduciary duty. *William Morris Endeavor Ent., LLC v. Writers Guild of Am.*, 478 F. Supp. 3d 932, 940 (C.D. Cal. 2020). Heredia asserts, however, that "to the extent that [Diaz's] allegations are based on claims of fraud, they have not been pled with the required particularity."[53] Diaz does not address that argument, so the Court treats it as conceded. *See Hartranft*, 2021 WL 2473951, at *10.

Third, Diaz's attempt to allege breach of fiduciary duty outside the scope of the 2017 Agreement fails. When making that allegation, Diaz relies solely on Heredia's alleged failure to disclose.[54] As the Court discusses above, Diaz has not pleaded failure to disclose in accordance with Rule 9(b)'s particularity requirement. Accordingly, Diaz's claim for breach of fiduciary duty is **DISMISSED with leave to amend**.

### 3. Implied-in-Fact Contract

Diaz asserts his third claim for relief against Heredia for breach of implied-in-fact contract. That claim concerns the Lexus. Heredia contends that the factual allegations in the Amended Complaint amount to a claim for breach of express contract and that Diaz "mislabeled this cause of action[.]"[55] Diaz disagrees, contending that Heredia's "argument is disproven by the facts [*i.e.* Diaz alleges breach of implied-in-fact contract], and is irrelevant as a matter of law."[56] To support his contention that the label is irrelevant as a matter of law, Diaz cites *Jaffe v. Carroll*, 35 Cal. App. 3d 53, 57 (1973). The *Jaffe* court held that "the facts alleged" and not "the title of the pleadings" determine the "nature and character of the pleading." *Id.*

---

[53]     Heredia Motion 10:15-16.
[54]     Heredia Opposition 14:24-25.
[55]     Heredia Motion 11:13-15.
[56]     Heredia Opposition 15:23-24.

The Court is not persuaded.  *Jaffe* was decided approximately 35 years before *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), which emphasizes Rule 8(a)(2)'s requirement that a plaintiff "provide the 'grounds' of his 'entitle[ment] to relief[.]'"  *Id.* at 545 (quoting Fed. R. Civ. P. 8(a)(2)) (first alteration in *Twombly*).[57]  Thus, to the extent that Diaz does provide the grounds for his entitlement to relief, he does so by stating ***explicitly*** that his claim is for breach of implied-in-fact contract.

"[A]n implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words."  *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998), *as modified on denial of reh'g* (Sept. 28, 1998).  If an agreement "is shown by the direct words of the parties, spoken or written, the contract is said to be an express one."  *Marvin v. Marvin*, 18 Cal. 3d 660, 686 (1976).  If, by contrast, "such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one."  *Id.*

Here, Diaz alleges that "Heredia agreed to 'loan' the vehicle to Diaz until Diaz could pay it off, which he would do from his boxing proceeds (in addition to the contractual manager's fee)."[58]  Therefore, Diaz alleges a breach of ***express*** contract.  Because Diaz alleges breach of express contract, he cannot simultaneously allege breach of implied-in-fact contract for the same agreement.  *See Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.").  Accordingly, the Amended Complaint does not provide the grounds for Diaz's entitlement to relief.  *See Twombly*, 550

---

[57]    The Court also notes the irony of Diaz quoting a case from 1973 to lay out the requirements of "modern pleading."  Heredia Opposition 15:25-16:2.

[58]    Amended Complaint ¶ 88.

U.S. at 545.  Accordingly, Diaz's claim for breach of implied-in-fact contract is **DISMISSED with leave to amend.**

### 4.    Conversion

#### a.    Prohibition of Partial Dismissals

As an initial matter, the Court cannot grant the ***partial*** dismissal of a claim that is under attack by a Rule 12(c) motion.  That is, if Diaz states a claim for conversion based upon ***any*** theory that is supported by the facts alleged, then Diaz's ***entire*** conversion claim survives the instant motion.  *See Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 995 (E.D. Cal. 2021) ("courts in the Ninth Circuit have denied motions for judgment on the pleadings when sought on only part of a cause of action"); *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (observing that courts in the Ninth Circuit have "refused to entertain motions for judgment on the pleadings that seek to dispose of only a part of an individual claim or defense").  As discussed in more detail below, the Court concludes that ***some*** of Diaz's allegations regarding conversion are sufficient to state a claim for relief.  Accordingly, the Motion is **DENIED** with respect to conversion.

#### b.    Analysis

Diaz's conversion claim concerns his allegations that "Defendants intentionally and substantially interfered with Diaz's right[s]" to the possession of certain property, including Diaz's money and the boxing tickets provided for Diaz's benefit by Golden Boy.[59]  Heredia argues that Diaz fails to allege sufficient facts to support that claim for relief.[60]

"Conversion is the wrongful exercise of dominion over the property of another."  *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)

---

[59]    *Id.* at ¶ 94.

[60]    Heredia Motion 12:20.

(citations and quotation omitted).  A plaintiff seeking relief for conversion must allege: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages[.]"  *Id.*  "Conversion is a strict liability tort."  *Id.*  A plaintiff alleging conversion need not allege "a manual taking of the property[.]"  *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996), *as modified on denial of reh'g* (Apr. 10, 1996).  Instead, the plaintiff must allege "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use."  *Id.*

### i.     Conversion under the 2012 Agreement

Heredia avers that there can be no conversion under the 2012 Agreement for two reasons.[61]  First, "the Arbitration decision determined that on February 23, 2017, the parties signed a valid, Commission recognized release ('Release') of all claims arising under the 2012 contract."[62]  That argument fails because, as discussed above, the Court denies Heredia's request for judicial notice of the arbitration record.

Second, Heredia argues that California "imposes a three-year statute of limitations for conversion" and that Diaz's conversion claim with respect to the 2012 Agreement is foreclosed.[63]  *See* Cal. Civ. Proc. Code § 338.  Heredia states that the 2012 Agreement was terminated in February 2017.[64]  Diaz filed his original Complaint in October 2020,[65] more than three years after the 2012 Agreement was supposedly terminated.  Diaz does not address the statute of limitations argument, effectively conceding it.

---

[61]     *Id.* at 13:5-6.

[62]     *Id.* at 13:7-9.

[63]     *Id.* at 13:12 & 13:17.

[64]     *Id.* at 13:13.  *See also* Amended Complaint ¶ 44 (alleging that the 2017 Agreement was signed around February 23, 2017).

[65]     *See* Complaint [ECF No. 3].

### ii.     Conversion of the Lexus

Heredia argues that Diaz pleads conversion of the Lexus insufficiently because Diaz fails to allege that he had a right to the Lexus when Heredia repossessed it.[66]  Heredia is wrong.  Diaz alleges that he and Heredia made an agreement to finance the purchase of the Lexus.  Diaz further avers that he never missed a payment.  Accordingly, Diaz adequately alleges his right to possess the car.  *See Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) (refusal to return a car to a person who is entitled to possess it is conversion, regardless of title).  Moreover, Diaz pleads that Heredia failed to return the $29,000 that Diaz had invested into the Lexus after Heredia repossessed the car *or* the $300 in cash that Diaz had kept in the car.  So, Diaz also alleges the conversion of $29,300.

### iii.     Conversion of 2% of Fight Purses

Regarding the extra 2% that Heredia allegedly took from Diaz's purse in violation of the 2017 Agreement, Heredia makes an argument that is unworthy of serious consideration:  Heredia avers that ***his own alleged testimony*** from the arbitration proceeding "conclusively demonstrates" that he worked for his brother Moses.[67]

While the Court agrees with Heredia that Diaz has not sufficiently alleged that Heredia was a party to the 2017 Agreement,[68] Diaz *does* allege that ***Heredia***, and not Moses, took the extra 2% from Diaz's purse.[69]

### iv.     Tickets Provided by Golden Boy

With respect to the allegation that Heredia converted tickets from Golden Boy that were supposed to go to Diaz and Diaz's friends and family, Heredia

---

[66]     Heredia Motion 13:18-28
[67]     *Id.* at 14:18-19.
[68]     *See id.* at 14:2-15.
[69]     Amended Complaint ¶¶ 58-60.

-17-

makes a fact-based argument based entirely upon evidence that is not before the Court. Of course, the Court cannot consider evidence that is not properly before it, particularly on a Rule 12(c) motion.

As discussed above, because some of Diaz's conversion-based theories survive Rule 12(c) scrutiny, the Court **DENIES** the Heredia Motion with respect to that claim for relief.

### 5. Tortious Interference with Prospective Economic Advantage

Diaz seeks damages against Heredia for tortious interference with prospective economic advantage. That claim centers around the allegation that Heredia disrupted the relationship between Diaz and Golden Boy.[70] In California, the elements of the tort of intentional interference with prospective economic advantage are as follows:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (internal quotation and citation omitted). In addition, a plaintiff seeking damages for that tort "must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* 11 Cal. 4th 376, 377 (1995)). A plaintiff need not, however, "plead and prove that the defendant engaged in wrongful acts *with the specific intent* of interfering with the plaintiff's business expectancy." *Id.* at 1154 (emphasis in original).

---

[70]     *Id.* at ¶¶ 100-107.

To satisfy the first element, a plaintiff must allege that "it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) (emphasis in original). Heredia argues that Diaz does not plead the first element, because Diaz fails to "establish the probability of future economic benefits."[71] The Court agrees. Nothing in the Amended Complaint alleges adequately that that it is ***probable*** that Diaz lost an economic advantage that he would have realized but for Heredia's interference.[72]

While the Court is skeptical that Diaz will be able to allege adequately the requirements of the first element, it is not convinced that amendment would be futile. Accordingly, Diaz's claim for tortious interference with prospective economic advantage is **DISMISSED with leave to amend**.

### 6. The Ali Act

Diaz contends that Heredia violated the Ali Act by receiving benefits from Golden Boy, ignoring the firewall that the Ali Act created between managers and promoters.[73] Heredia argues that he could not have violated the Ali Act in such a way because he was not Diaz's manager.

Under the Ali Act, a manager is "a person who receives compensation for service as an agent or representative of a boxer." 15 U.S.C. § 6301(5). Heredia argues that Diaz's claim under the Ali Act fails because Diaz "did not allege the existence of any management contract, written or otherwise, between [Diaz] and Heredia."[74] But, in neither his Motion nor his Reply does Heredia address

---

[71]   Heredia Motion 16:20-21.

[72]   In his opposition, Diaz argues that "Heredia's opportunity to argue that these benefits were not reasonably expected even absent his interference will come later, not on a motion for judgment on the pleadings." Heredia Opposition 21:18-20. In making that argument, Diaz ignores that ***he does not allege adequately*** the requirements of the first element.

[73]   Amended Complaint ¶¶ 110 & 111.

[74]   Heredia Motion 19:11-14.

1  whether he is a manager under the Ali Act's definition.  Diaz, meanwhile, avers
2  explicitly that Heredia received compensation for service as Diaz's agent or
3  representative.[75]  Thus, Diaz alleges that Heredia was his manager under the Ali
4  Act's definition.

5  Heredia contends that Diaz's claim fails because the "Contract"[76] is
6  "under the *exclusive* jurisdiction of the [CSAC]."[77]  Surprisingly, in making that
7  argument, Heredia cites ***zero*** authorities related to the Ali Act.  Heredia
8  seemingly wants the Court to accept without evidence that Congress passed a
9  law with the intention of making it unenforceable.

10  Finally, Heredia argues that Diaz does not allege a violation of the Ali
11  Act.[78]  Under the Ali Act, it is unlawful for a manager "to have a direct or
12  indirect financial interest in the promotion of a boxer" or "to be employed by or
13  receive compensation or other benefits from a promoter, except for amounts
14  received as consideration under the manager's contract with the boxer."  15
15  U.S.C. § 6308(b)(1)(B).  The Ali Act, moreover, provides a private right of
16  action for "[a]ny boxer ***who suffers economic injury as a result of a violation***" of
17  the Act.  15 U.S.C. § 6309(d) (emphasis added).

18  Heredia concedes that Diaz alleges that Heredia received benefits from
19  Golden Boy:  the tickets that Diaz alleges were intended for him and his family.[79]
20  Heredia asks the Court to ignore that allegation because the tickets were
21  "purchased on the open market."[80]  Thus, Heredia again asks the Court to
22  consider evidence that is not properly before it—something that the Court

---

[75]  *See, e.g.*, Amended Complaint ¶¶ 70 & 71.
[76]  Heredia Motion 19:18.  It is not clear whether Heredia refers to the 2012 Agreement or the 2017 Agreement.
[77]  *Id.* at 19:18-19 (emphasis in original).
[78]  *Id.* at 20:4.
[79]  *Id.* at 22:4-6.
[80]  *Id.* at 22:8.

cannot do.  Heredia also argues that Diaz does not allege that Heredia's usurpation of the tickets constitutes an economic injury.[81]  That argument lacks merit.  By alleging that Heredia usurped tickets—items of value—that were meant for Diaz and his family, Diaz undoubtedly alleges economic injury.  Accordingly, the Heredia Motion is **DENIED** with respect to the Ali Act.

### 7. *Quantum Meruit*

Diaz's claim for *quantum meruit* centers upon allegations that Defendants "received certain benefits from Diaz to which they were not entitled."[82]  "Quantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *E.J. Franks Constr., Inc. v. Sahota*, 226 Cal. App. 4th 1123, 1127 (2014) (quotation omitted).  A plaintiff seeking to recover in *quantum meruit* "need not prove the existence of a contract." *Id.* The plaintiff must, however, demonstrate that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Id.* (quotation omitted).  "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment.  If one has received a benefit which one may not justly retain, one should restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money." *Maglica*, 66 Cal. App. 4th at 449 (quotations omitted) (modification in original).  Thus, a plaintiff need allege only two elements to state a claim for *quantum meruit*:  "(1) he rendered services to the defendant's benefit and (2) the defendant would be unjustly enriched if the plaintiff was not compensated." *Atencio v. TuneCore, Inc.*, 2017 WL 10059254, at *2 (C.D. Cal. Aug. 17, 2017) (citations and quotation omitted).

---

[81]     *Id.* at 21:20-28.

[82]     Amended Complaint ¶ 116.

Diaz adequately alleges a claim for *quantum meruit*.  First, Diaz alleges that he paid Heredia $25,000 for the Lexus; he put $4,000 worth of improvements into the car; and he left $300 in the car—and that Heredia nevertheless repossessed the car without returning to Diaz any money.[83] Second, Diaz alleges that Heredia and "John Doe, Esq." took an extra 2% of Diaz's fight purse without Diaz's consent for services that Diaz never received.[84]  Third, Diaz alleges that Heredia took the tickets from Golden Boy that were meant for Diaz and his family—tickets that were presumably intended for Diaz because of the services that Diaz provided for Golden Boy.[85] Accordingly, the Heredia Motion is **DENIED** with respect to *quantum meruit*.

### 8.   Accounting

Diaz alleges that he "is unable to determine the exact amount of money owed by Defendants to Diaz as a result of their conduct as alleged in this Complaint without an accounting."[86]  A request for an accounting is "equitable in nature."  *Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 401 (2014) (quotation omitted).  "It may be brought to compel the defendant to account to the plaintiff for money or property[:]  (1) where a fiduciary relationship exists between the parties[;] or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Id.*  A plaintiff requesting an accounting "need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff."  *Id.* at 919 (quoting *Brea v. McGlashan*, 3 Cal. App. 2d 454 (1934)).

---

[83]   *Id.*

[84]   *Id.*

[85]   *Id.*

[86]   *Id.* at ¶ 122.

Heredia argues that Diaz targeted the wrong individual in seeking an accounting—that Moses "would be the person in a position to give an accounting, not non-party, non-fiduciary Ralph Heredia."[87]  But, only two paragraphs earlier, Heredia acknowledges that a plaintiff can request accounting where no fiduciary relationship exists.[88]  Diaz alleges that there is a relationship that requires an accounting and that some balance is due to him.[89]  Heredia does not dispute that Diaz makes such allegations in his Amended Complaint.  Accordingly, the Heredia Motion is **DENIED** with respect to Diaz's request for an accounting.

**B.    The HBM Motion**

In its Motion, HBM seeks the dismissal of all claims that Diaz asserts against it:  conversion, quantum meruit, and an accounting.[90]  The Court addresses each claim for relief in turn.

**1.    Conversion**

HBM argues that no monies were converted under the 2017 Agreement.[91]  That argument fails for the same reason it fails with respect to the Heredia Motion.  The Court concludes that Diaz alleges conversion against HBM for the same reason it concludes that Diaz alleges conversion adequately against Heredia.

**2.    *Quantum Meruit***

After providing the same rule statement that Heredia provided in the Heredia Motion, HBM makes its argument that the Court should dismiss the

---

87    Heredia Motion 24:12-13.
88    *Id.* at 23:28-24:2.
89    Amended Complaint ¶¶ 120-124.
90    HBM Motion 1:2-7.
91    HBM Motion 4:18.

claim against it for *quantum meruit* in only four sentences.[92]  HBM contends that Diaz's claim for *quantum meruit* fails because the 2017 Agreement was a valid contract and HBM is not a party to it.[93]  HBM does not articulate how that argument is relevant.  HBM then asserts that Diaz "has not alleged that he has not been compensated a 'reasonable value' for his 'services rendered.'"[94]  Diaz rightly counters that the Amended Complaint alleges that Diaz "rendered boxing services to Heredia for his benefit and that HBM was unjustly enriched by the extra 2% fee it took that was not allowed under *any* contract . . . ."[95]  The HBM Motion is **DENIED** with respect to *quantum meruit*.

### 3.     Accounting

HBM makes the same arguments that Heredia makes with respect to Diaz's request for an accounting.[96]  HBM's arguments fail for the same reasons.  The HBM Motion is **DENIED** with respect to an accounting.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     The Heredia Motion and the HBM Motion are **GRANTED in part** in that Diaz's claims for relief for fraud, breach of fiduciary duty, breach of implied-in-fact contract, and tortious interference with prospective economic advantage are **DISMISSED with leave to amend**.

---

[92]     *Id.* at 7:14-19.

[93]     *Id.*

[94]     *Id.*

[95]     HBM Opposition 8:25-26 (emphasis in original).  Diaz's second argument is inexplicable.  He argues that he is entitled to *quantum meruit* against HBM because it received a portion of the 18% management fee under the 2017 Agreement, despite not being a party to the Agreement.  *Id.* at 8:27-28.  This is confounding.  Moses was free to distribute the money he earned pursuant to the Agreement as he saw fit.

[96]     HBM Motion 7:21-8:15.

-24-

1     2.      The Heredia Motion and the HBM Motion are **DENIED in part**
2 with respect to Diaz's claims for relief for conversion, under the Ali Act, for
3 *quantum meruit*, and for an accounting.

4     3.      Diaz is **DIRECTED** to file an amended pleading, if at all, no later
5 than September 2, 2022. If Diaz chooses to file an amended pleading, then he is
6 also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to
7 First Amended Complaint that provides the Court with a redline version that
8 shows the amendments. If Diaz fails to file his amended pleading by
9 September 2, 2022, then the Court will **DISMISS with prejudice** Diaz's claims
10 for relief for fraud, breach of fiduciary duty, breach of implied-in-fact contract,
11 and tortious interference with prospective economic advantage.

12     4.      Defendants are **DIRECTED** to file their respective responses to
13 Diaz's operative pleading by September 23, 2022.

14     **IT IS SO ORDERED.**

15

16 Dated:_____August 15, 2022_____

17                   John W. Holcomb
                  UNITED STATES DISTRICT JUDGE

-25-