Rajan O. Dhungana (SBN: 297794)
rdhungana@fedpractice.com
FEDERAL PRACTICE GROUP
14481 Aspen Street
Hesperia, CA 92344
Telephone: (310) 795-6905

Eric S. Montalvo (admitted *Pro Hac Vice*)
emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Fax: (888) 899-6083

*Attorneys for Defendant / Counterclaim Plaintiff*

Heredia Boxing Management

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## (EASTERN DIVISION)

| Joseph Diaz, Jr., | Case No. 5:20-cv-02332-JWH-KK |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT HEREDIA BOXING** |
| RALPH HEREDIA; JOHN DOE, ESQ.; | **MANAGEMENT'S ANSWER TO** |
| and JANE DOES 1 through 20, | **THE SECOND AMENDED** |
| inclusive, | **COMPLAINT AND** |
| | **COUNTERCLAIM** |
| Defendants. | |

## DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED COMPLAINT AND
COUNTERCLAIMS-

Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure and this Court's August 15, 2022 Order (ECF 138), Defendant Heredia Boxing Management ("HBM" or "Defendant"), by counsel, timely answers and otherwise responds to the Second Amended Complaint, asserts its counterclaim against Plaintiff Joseph P. Diaz Jr. ("Diaz"), and states as follows:

## First Defense

The Second Amended Complaint fails to state a claim upon which relief can be granted.

## Second Defense

## INTRODUCTION

1.   Paragraph 1 contains no allegations to which a response by HBM is required. To the extent a response is required, Defendant denies them.

2.   The allegations of Paragraph 2 refer to defendants other than HBM and therefore no response by HBM is required. To the extent a response by HBM is required, HBM denies them.

3.   Paragraph 3 contains no allegations to which a response by HBM is required. To the extent a response is required, Defendant denies them.

4.   The allegations of Paragraph 4 refer to defendants other than HBM and therefore no response by HBM is required. To the extent a response by HBM is required, HBM denies them.

5.     The allegations of Paragraph 5 refer to defendants other than HBM and therefore no response by HBM is required. To the extent a response by HBM is required, HBM denies them.

6.     The allegations of Paragraph 6 refer to defendants other than HBM and therefore no response by HBM is required. To the extent a response by HBM is required, HBM denies them.

7.     Paragraph 7 contains no allegations to which a response by HBM is required. To the extent a response is required, Defendant denies them.

8.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

9.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

10.     Defendant admits the allegations in this paragraph.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of sentences 1 and 3 of this

paragraph and therefore denies them. The allegations of sentence 2 of this paragraph consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations.

13. The allegations of this paragraph consist of legal conclusions to which no response is required. To the extent a response is required as to any relationship of any defendant other than HBM to any other defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further to the extent a response is required, HBM denies them.

## JURISDICTION AND VENUE

14. Paragraph 14 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

15. Paragraph 15 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

16. Paragraph 16 contains a legal conclusion to which no response is required. Defendant admits that it does business in the Court's judicial district.

# FACTUAL ALLEGATIONS

17.   Paragraph 17 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

18.   Paragraph 18 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

19.   Paragraph 19 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

20.   Paragraph 20 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

21.   Paragraph 21 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

22.   Paragraph 22 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

23.   Paragraph 23 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

24.   Paragraph 24 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

25.   Paragraph 25 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

26. Paragraph 26 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

27. Paragraph 27 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

28. Paragraph 28 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

29. Paragraph 29 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

30. Paragraph 30 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

31. Paragraph 31 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

32. Paragraph 32 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

33. Paragraph 33 contains no allegations to which a response is required. To the extent a response is required, Defendant denies them.

34. Paragraph 34 states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies them.

35. Paragraph 35 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies them.

36.   HBM admits that Ralph Heredia has been an officer of HBM. The remaining allegations of Paragraph 36 refer to defendants other than HBM and therefore no response by HBM is required. To the extent a response by HBM is required, HBM denies them.

37.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

38.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

39.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

40.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

41.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

42. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

43. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

44. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

45. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

46. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

47. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

48. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

49. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

50. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

51. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

52. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

53. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

54.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

55.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

56.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant further states that the graphic material within this paragraph, to the extent it is an accurate copy of a genuine document, speaks for itself.

57.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

58.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant further states that the graphic material within this paragraph, to the extent it is an accurate copy of a genuine document, speaks for itself.

59.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

60.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

61.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

62.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

63.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

64.     Defendant admits the allegation in sentence 1 that it is a California corporation, and denies the remaining allegations of sentence 1. The allegation in sentence 2 is admitted. Defendant admits that the address listed in HBM's public filings with the California Secretary of State is the same as the address listed in Global Processing Systems, Inc.'s public

filings with the California Secretary of State, for which Moses Heredia is listed as an officer and director. The allegations of sentence 4 are admitted. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of sentence 5 and therefore denies them. HBM denies the inference in sentence 6 that it received payments for acting as Diaz' manager. To the extent a response is required to the allegations in sentence 6, they are denied. HBM admits that it received checks issued by Golden Boy Promotions for the boxing manager fees earned by Diaz' duly-licensed boxing manager as recognized by the California State Athletic Commission and as confirmed in arbitration, Moses Heredia, pursuant to Moses Heredia's lawful directive. The allegations in sentences 8, 9, and 10 are denied.

65.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

66.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations this paragraph and therefore denies them.

67.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

68.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

69.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

70.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

71.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

72.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

73.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Fraud**

**(Against Heredia)**

74.   Defendant repeats and incorporates by reference its responses to all previous paragraphs in response to this paragraph.

75.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

76.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

76a.   Subparagraph 76a sets forth legal a conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

76b.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76c.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76d.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76e.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76f.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76g.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76h.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

76i.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

77.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

78.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

79.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

80.   Paragraph 80 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

81. Paragraph 81 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

82. Paragraph 82 sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Heredia)

83. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

84. This paragraph sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

85. This paragraph sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant

is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

86. This paragraph sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

87. This paragraph sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

88. This paragraph sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## **THIRD CAUSE OF ACTION**

### **Breach of Implied-in-Fact Contract**

### **(Against Heredia)**

89. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

90.  Sentences 1 and 2 of Paragraph 90 set forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

91.  Paragraph 91 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

92.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

93.  Sentence 1 of Paragraph 93 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

94.  Paragraph 94 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant

is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## FOURTH CAUSE OF ACTION

### Conversion

### (Against All Defendants)

95. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

96. Paragraph 96 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

97. To the extent the allegations of Paragraph 97, including subparagraphs, relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them. Defendant denies the allegations of Paragraph 97 that relate to it.

97a. Subparagraph 97a sets forth legal conclusions to which no response is required. To the extent the allegations of this subparagraph relate to

entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them. To the extent a response may be required, Defendant denies the allegations of this subparagraph that relate to it.

97b.   Subparagraph 97b sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

97c.   Subparagraph 97c sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies any allegation specifically referencing it, and as to allegations referencing others, is without knowledge or information sufficient to form a belief as to the truth of those other allegations, and therefore denies them.

97d.   Subparagraph 97d sets forth a legal conclusion to which no response is required. To the extent a response may be required, however,

Defendant denies any allegation specifically referencing it, and as to allegations referencing others, is without knowledge or information sufficient to form a belief as to the truth of those other allegations, and therefore denies them.

97e.  Subparagraph 97e sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

98.  To the extent the allegations of Paragraph 98 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 98 sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

99.  To the extent the allegations of Paragraph 99 relate to entities other than Defendant, they do not require a response from Defendant. To the

extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 99 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

100. To the extent the allegations of Paragraph 100 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 100 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

101. Paragraph 101 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph.

# **FIFTH CAUSE OF ACTION**

## **Tortious Interference with Prospective Economic Advantage**

## **(Against Heredia)**

102. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

103. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

104. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

105. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

106. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

107. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

108.   Paragraph 108 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

109.   Paragraph 109 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## SIXTH CAUSE OF ACTION

### Violation of the Muhammad Ali Boxing Reform Act

### (Against All Defendants)

110.   Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

111.   Paragraph 111 contains no allegations to which a response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

112.   Paragraph 112 contains no allegations to which a response is required. To the extent a response may be required, however, Defendant is

without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

113.   Sentences 1 and 2 of Paragraph 113 set forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of these first two sentences of this paragraph and therefore denies them. As to the remaining sentences of the paragraph, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

114.   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

115.   Paragraph 115 sets forth legal conclusions to which no response is required. To the extent a response may be required, however, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

116.   Paragraph 116 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant

is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

## SEVENTH CAUSE OF ACTION

### Quantum Meruit

### (Against All Defendants)

117. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

118. To the extent the allegations of Paragraph 118, including subparagraphs, relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant denies the allegations of Paragraph 118 that relate to it.

118a. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

118b. To the extent the allegations of Subparagraph 118b relate to entities other than Defendant, it does not require a response from Defendant. To the extent a response is required to those allegations relating to

other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant denies the allegations of Subparagraph 118b that relate to it.

118c.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this subparagraph and therefore denies them.

119.  To the extent the allegations of Paragraph 119 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant denies the allegations of this paragraph that relate to it.

120.  To the extent the allegations of Paragraph 120 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 120 sets forth legal

conclusions to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

121. To the extent the allegations of Paragraph 121, including subparagraphs, relate to individuals other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 121 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

## EIGHTH CAUSE OF ACTION

### Accounting

### (Against All Defendants)

122. Defendant repeats and incorporates by reference its response to all previous paragraphs in response to this paragraph.

123. To the extent the allegations of Paragraph 123 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other

entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Further, Paragraph 123 sets forth a legal conclusion to which no response is required. To the extent a response may be required, however, Defendant denies the allegations of this paragraph that relate to it.

124. To the extent the allegations of Paragraph 124 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. As to Defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

125. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

126. To the extent the allegations of Paragraph 126 relate to entities other than Defendant, they do not require a response from Defendant. To the extent a response is required to those allegations relating to other

entities, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them. Defendant denies the remaining allegations of this paragraph.

127.   Any allegations not specifically admitted are denied.

**ADDITIONAL DEFENSES**

128.   Plaintiff's claims are barred, in whole or in part, by his failure to join a necessary party.

129.   Plaintiff's claims are barred, in whole or in part, by his own prior wrongful, negligent, or illegal acts or omissions directed at Defendant.

130.   Plaintiff's own negligent acts and omissions solely caused the injuries and damages of which he complains, and thus he cannot recover damages against Defendant.

131.   Plaintiff's claims are barred, in whole or in part, by the defense of unclean hands.

132.   Plaintiff's claims are barred, in whole or in part, by the fact that the actions alleged to have been taken by Defendant were not the proximate cause of any injury to Plaintiff.

133.   Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

134.   Plaintiffs' claims are barred by a binding decision by an arbitrator.

135.   Defendant specifically reserves the right to assert all other defenses, not currently known, which he may learn through discovery.

## COUNTERCLAIMS

136.   Counterclaim Plaintiff Heredia Boxing Management ("HBM") hereby alleges against Counterclaim Defendant Joseph P. Diaz Jr. ("Diaz") Diaz as follows:

## NATURE OF THE ACTION

137.   This is an action sounding in abuse of process, defamation, and request for an accounting. Now that discovery in this matter has closed, it has become apparent that, contrary to Diaz's allegations, Diaz owes HBM money. Diaz knew or should have known this, as his document production confirms that a balance is owned to HBM. HBM loaned Diaz money that Diaz has not yet fully paid back. Instead, Diaz has maliciously prosecuted this action against HBM, knowing it to be false and only for purposes of harassment. In light of Diaz's discovery, which establishes that no member or representative took advantage of Diaz, nor failed to pay Diaz sums he was purportedly owed, it is obvious from Diaz's own documents that his statements to the media to the contrary are defamatory against Ralph and Moses Heredia. As HBM exists solely

as a corporate entity in support of the Heredias' efforts to provide

management and other services to professional boxers, and the Heredias

are the sole operators of HBM, the defamatory statements made by Diaz

regarding the Heredias also damaged the business reputation of HBM,

decreased business opportunities for HBM, and resulted in lost earnings

and profits.

## JURISDICTION AND VENUE

138.  Diaz has asserted that jurisdiction is proper in this Court because Diaz's

Muhammad Ali Boxing Reform Act claim arises under federal law, 15

U.S.C. § 6301, *et seq.,* and that the Court has jurisdiction over that claim

pursuant to 28 U.S.C. § 1331. Diaz's additional claims are brought

pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a)

Stipulating solely for the purposes of HBM's counterclaims that Diaz's

Muhammad Ali Boxing Reform Act claim is jurisdictionally proper,

HBM's counterclaims are brought pursuant to the Court's supplemental

jurisdiction, 28 U.S.C. § 1367(a) as so related to claims in the action

within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.

139.  Diaz is subject to the Court's personal jurisdiction because the

counterclaims arise out of the same actions or occurrences that are the

subject of his claims, and because he consented to personal jurisdiction in this Court by prosecuting his complaint in this Court.

140. Venue for the counterclaims is proper in this District because Diaz resides in this District and HBM is headquartered in this District.

## PARTIES

141. According to his Second Amended Complaint, plaintiff and counterclaim defendant Joseph Diaz, Jr. ("Diaz") is an individual residing in San Bernardino County, California.

142. Defendant and counterclaim plaintiff Heredia Boxing Management ("HBM") is a California corporation headquartered in La Verne, California.

## FACTUAL ALLEGATIONS

143. Heredia and Diaz's relationship spans almost a decade of fiercely loyal and dedicated management that culminated in a World Championship. During the duration of the relationship the Heredias were extraordinarily successful in managing both Diaz's professional career and containing his increasingly poor judgment and choices which was the primary focus of Ralph Heredia efforts to contain.   These demons unfortunately encompass various lawful and unlawful personal choices that interfered in every realm of his life, personal and professional.

Heredia, recognizing Diaz's potential as a person and a fighter, committed every resource he could muster to assist Diaz so that he could convert his talent into personal and professional success. Diaz would typically reach out to Heredia by text message, notifying Heredia that he needed money. [Exhibit 1]. (Heredia's allegations that refer to, e.g., "significant" amounts of money, "six-figure advances," or "poor personal choices" are non-specifically framed in observance of this Court's November 2021 Order (ECF 80) granting Diaz's request to file certain information under seal. While Heredia contemplates moving to unseal that information since Diaz has put his conduct squarely at issue herein by his choices inside and outside this litigation through the media, Heredia has observed the Order. Heredia's underlying evidence, all of which is also in Diaz's possession, is specific and relevant to his claim.

Per your conversation you said you're on board and you were happy with what me and you planned out?

Aug 25, 2019, 12:23 PM

I know I just get frustrated RALPH extremely. Like I'm a poor ass. I can't even buy nice stuff for the fights or even go to the movies without stressing smh. It's the worst fucking feeeling in the world. Especially when I'm trying to be positive I just get slammed when I look at my debt are when I get notifications

Then my dad don't give me no space at all so I get frustrated

I'm going crazy cause of it.

That's why I'm like that cause I'm broke.

I'm broker than a homeless person





144.   In 2017, Diaz embarked on a journey of self-destruction and its first stop

was his departure from his parents' residence – a place that provided

structure and supervision in parallel with Heredia's watchful eye. Within

a year of leaving his parents' residence, Diaz's demons established a foothold and the darkness of those demons revealed themselves.

145. During 2018, Diaz's poor personal choices resulted in his fully paid-for Mercedes being repossessed on three separate occasions – the last time resulting in the costs of recovery so significant that he was financially unable to recover it. Heredia, after the first repossession, had great concern and made inquiry. At this time Diaz confessed that he had been obtaining loans funded by "Cash Cow" and "Title Loan." These loans carried with them repayment interest rates on the order of 35%. Heredia counseled Diaz against these loans and provided financial assistance to get the car back into Diaz's possession in the hopes that Diaz would get himself back on track. This ended with the final repossession. Heredia then persuaded Diaz to stop utilizing these sorts of lenders and Heredia would attempt to work out his financial concerns sans interest.

146. Instead of being appreciative and working with the financial advisor Heredia helped retain for Diaz, Diaz's vices became even more entrenched, and Diaz was without money again within weeks of receiving his purse for a World Title Challenge against Gary Russell. Heredia sought counseling and provided financial assistance to Diaz with his bills to mitigate Diaz's poor judgments and provide a path for

1  him to focus on his boxing career—efforts that were largely successful

2  while Heredia was at the helm.  This contrasts with the public demise of

3  Diaz's conduct and professional competence since his break with the

4

5  Heredias.

6

7

8

9

10

11

12



**From:** Joseph Diaz <jojotheboxer@gmail.com>
**Sent:** Thursday, October 25, 2018 8:03 AM
**To:** Ralph Heredia
**Subject:** .

Morning Ralph,  please email me the manager contract. Misplaced my copy, thank you. Have a great day.

Sent from my iPhone

On Oct 11, 2018, at 11:26 AM, Ralph Heredia <rheredia@gprocessing.com> wrote:

Jojo,

Is being very urgent that we meet. And you refuse to have a meeting with your father and myself.  You
need to look at reality and get out of the web.
Once we meet we can structure a plan..
And  you have to hold yourself accountable for your actions. You continue putting yourself in this
terrible position. And is not ▇▇▇▇▇▇ You need to be real with yourself. I'm not better than you and
I'm not judging you. Just calling it the way it is. Real talk!
For years all we have been doing is putting a Band-Aid.
Without structure and strategy it will never work . You will continue being in serious debt.
Real talk!!!

Get Outlook for iOS

**From:** Joseph Diaz <jojotheboxer@gmail.com>
**Sent:** Thursday, October 11, 2018 11:06:50 AM
**To:** Ralph Heredia
**Subject:** Urgent.

Ralph can you do me a favor please. I'm trying to get a loan but haven't heard back yet and my rent,
electricity, phone, and insurance are due. Can you loan me the money for I can pay those you can put it
in lynnay's account if you don't trust me so she can pay them for me. My electricity just shut off and my
rent is due today before they put me on eviction notice. If I don't pay it today it'll go up 600 dollars

This is what I need today to be good for this month. I'll pay u in full after my next fight if you can do that
please, thank you.

1

**Heredia Exh334**

Rent 2199
Electricity 300
Car insurance 888 (cause of my dui)
Phone bill 350

Total 3737
The loan I'll be getting will help me for the month of November. So I'll be good next month.

On Oct 8, 2018, at 8:59 AM, Ralph Heredia <rheredia@gprocessing.com> wrote:

> Wow!
>
> I've been helping you out for years. And all it has done was put a Band-Aid on the problem.
> Your dad knows that and your mother knows it your girl knows it. But if you want to believe deep in your heart that everybody's wrong.
>
> Ok. I will text your dad with the next flight.
>
> I don't know how much money you have left with your financial advisor. But like I told you in Vegas I'm glad you have save some money with your advisor.
>
>
> Get Outlook for iOS
> _____
> **From:** Joseph Diaz <jojotheboxer@gmail.com>
> **Sent:** Monday, October 8, 2018 8:39:13 AM
> **To:** Ralph Heredia
> **Subject:** Re: Travel Reservation to WASHINGTON REAGAN, DC on May 15 for RAFAEL HEREDIA
>
> You know what Ralph, I see what your doing and how your going about things. I understand but just know I'm not happy with this. I'll find money elsewhere then if you want to act like that and not help me out. It's a business for you and imma start treating it like a business from here on out. Thanks Ralph. Text my pops when you have a fight scheduled I'll be ready.
>
> Sent from my iPhone
>
> On Oct 8, 2018, at 4:01 AM, Ralph Heredia <rheredia@gprocessing.com> wrote:
>
>> Jojo,
>>
>> You known you have a ███ problem for long time! And unfortunately you have not been able to stop. I believe you do want to change but unfortunately you can't. You told me you're done with this shit I'm going to the ███ sign the papers. Always the same story.. You told me you went to ███ signed the papers there on your girls car. You also told me and promised me you're going ███ ███ I asked you for the papers never got them.
>> You tell me some bullshit story that you didn't know something but you're looking to it.

2

**Heredia Exh335**

DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED
COMPLAINT AND COUNTERCLAIMS- 41

Bottom line you told me you signed them and they were on your girls car.

And as far ████████████ I'm pretty sure you haven't made it either

There's so much to address.

I told you on my patio I will not continue supporting your habits.

You need to be honest with yourself.  I can't help you nobody can. Unless you want to help yourself.  And make serious lifestyle changes in your life. But again if you can't see that.  Unfortunately nothing will ever change.

Bottom line your father knows your financial problems. And you know he does.

What will be best is for your father and your girl to be present.  And so you can make the necessary changes in your life. Because you cannot do it alone.

And for the meantime please call your financial advisor and tell him you need to pull more money out.

You can call me on a conference call with your financial advisor. And I will tell him you will  put the money back on your next flight.

I'm pretty sure he will do it shit he did in Las Vegas!

Get Outlook for iOS

From: Joseph Diaz <jojotheboxer@gmail.com>
Sent: Sunday, October 7, 2018 6:13:18 PM
To: Ralph Heredia
Subject: Re: Travel Reservation to WASHINGTON REAGAN, DC on May 15 for RAFAEL HEREDIA

I won't hide anything from you Ralph if you just give me a shot. And we do this between us

3

**Heredia Exh336**

DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED
COMPLAINT AND COUNTERCLAIMS- 42

Sent from my iPhone

On Oct 7, 2018, at 4:20 PM, Ralph Heredia
<rheredia@gprocessing.com> wrote:

Jojo,

Is very important that you get to the root of the problem.
Your dad knows your business already.
He is your dad and he wants his son to do better that's all he wants.
 Your dad has requested a meeting with all of us  He even suggested your mother and your girlfriend.
   Your dad believes the issues are out of control and must be address for your best interest.

Get Outlook for iOS

From: Joseph Diaz <jojotheboxer@gmail.com>
Sent: Sunday, October 7, 2018 2:23:36 PM
To: Ralph Heredia
Subject: Re: Travel Reservation to WASHINGTON REAGAN, DC on May 15 for RAFAEL HEREDIA

Can we meet up sometime next week for I can barrow some money and we can talk? I'd prefer just me and you talk since I'm the one just borrowing the money I don't want my dad knowing my financial problems. We can talk about everything as well. Let me know thanks

Sent from my iPhone



1

**Heredia Exh337**

DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED
COMPLAINT AND COUNTERCLAIMS- 43

## **Arbitration Award Against Diaz**

147.   Andrew Foster, Executive Officer for the California State Athletic
Commission ("Commission") conducted an arbitration which
encompassed most of Diaz's present and false allegations pursuant to the
language of a boxer-manager contract and the Professional Boxing Rules
of California, which mandate arbitration between boxer and manager, see
Cal. Code Regs. tit. 4, § 221 ("All disputes between the parties to the
contract, including the validity of the contract [which in this case
includes, *inter alia*, the alleged dispute over the percentage received by
Moses, HBM, and Ralph], shall be arbitrated pursuant to the provisions
of the contract.").

148.   On February 23, 2017, Diaz and Mr. Moses Heredia signed a Boxer-
Manager Contract.  Mr. Larry Ervin from the Commission oversaw the
signing of the contract in accordance with the applicable Rules
promulgated by the Commission. Cal. Code Regs. tit. 4, § 222. The
Commission approved the Boxer-Manager Contract the very next day on
February 24, 2017.

149.   Under this Boxer-Manager Contract, Diaz fought nine bouts from
February 23, 2017 through June 10, 2021. Through the keen management
provided, Diaz flourished and on January 30, 2020, Diaz became the

International Boxing Federation (IBF) super featherweight world champion by defeating Tevin Farmer.

150. After Diaz became a world champion, MTK Global Sports Management, LLC ("MTK") (also doing business as "Global Promotion Management LTD"), an unlicensed rival promotion and boxing management company, reached out to Diaz and offered him an advance of $100,000.00 on his next purse.

151. The controversy underpinning the instant matter arose on or about August 12, 2020, when Diaz announced that he had ended his successful years long relationship with the Heredias by sending Heredia a text and then publicly announcing that he had signed an "agreement" with MTK. Diaz then stopped communicating with Heredia.

152. Diaz's departure and subsequent actions resulted in numerous breaches of the Boxer-Manager Contract. On or about August 20, 2020, Mr. Moses Heredia timely filed a request to arbitrate the contract issues before the Commission. Andrew Foster, the Commission's Executive Officer, conducted an arbitration hearing on June 10, 2021. Mr. Foster found the contract valid, and that Diaz had breached it. On July 9, 2021, he ordered an award in favor of Mr. Moses Heredia, directing that Diaz pay Mr. Moses Heredia $162,000.00, constituting the appropriate

management fee Mr. Moses Heredia would have earned from Mr. Diaz's two bouts in which he participated after breaching his boxer-manager contract. The Commission also explicitly found that the Heredias did a good job for Diaz, and that Diaz's various and false allegations including that Diaz had no idea about Mr. Moses Heredia's role in the relationship, were without merit.

**Diaz Breaches the Boxer-Manager Contract by Signing with MTK, Then is Led by His Counsel in Lying Out of Court and In Court So As To Negate the Heredias' Response**

153. As set forth above, after winning the world championship from Tevin Farmer in January 2020, Diaz was approached by MTK to become one of their boxers.

154. Upon information and belief, MTK retained VGC, LLC as counsel on Diaz's behalf to represent him in the anticipated breakup with the Heredias. MTK maintained a notorious relationship for "stealing" away fighters from existing managers in Europe sans consequences.

155. Upon information and belief, MTK sought to expand their roster of fighters for the first time by pursuing U.S.-based fighters, and Diaz was one of the first U.S. boxers that was signed.

156.   Further upon information and belief, MTK targeted Diaz not only because he was a World Champion, but also because they knew that his money management and other problems made him vulnerable to their treacherous entreaties.

157.   MTK was formed and run by Daniel Kinahan, an Irish national and suspected crime boss. According to the United States Department of the Treasury, Daniel Kinahan is a reputed narco-terrorist, and is presently on the run from international authorities relating to, *inter alia*, money laundering, murder, and drug distribution.







158.  Upon information and belief, VGC and Diaz implemented a strategy

whereby Diaz could breach his contract with Moses Heredia and

conterminously wage asymmetrical "warfare" against the Heredias'

reputation in the boxing community through blatant falsehoods

promulgated in this frivolous lawsuit and continuous assaults in the press. Note that Diaz is complaining about the distraction of the instant lawsuit that he is a Plaintiff in, has filed three versions of his complaint, and through his own words admits that he owes money to Heredia approximately seven months after his departure from the Heredia Team https://theathletic.com/2436658/2021/03/09/joseph-diaz-jr-lost-his-title-and-his-car-now-hes-fighting-to-get-it-all-back/

159. Diaz's declaration under oath, submitted in support of the arbitration proceedings, accuses Ralph and Moses Heredia of stealing. Notably, however, his allegations are all couched in language reflecting that his statements are made under the advice and direction of counsel ("my attorneys have informed me…;" "my attorneys have also informed me…;" "prior to engaging my attorneys, I did not understand the legal and practical significance…"). It has become apparent that Diaz was instructed to make these accusations not because they were true but because they supported the concocted legal strategy, one designed to extort, demoralize, and disparage the Heredias into submission and to walk away from the Boxer-Management Contract and provide Diaz cover so that he could avoid the consequences of his blatant breach (i.e., his contract with MTK) and not have to pay back his debts – a modern day

welch scam of titanic proportions. The plan was ambitious; however, its fundamental flaw is that it was premised upon lies.

160. To understand how insidious the scheme evidenced in this litigation is, it requires an understanding of the interplay between the facts of the case and the unique culture of the world of boxing. The boxing industry is heavily reliant on reputation and performance. Boxers, managers, and promoters each play a distinct role within the industry, and each party's ability to trust and respect the others is essential to a successful boxing enterprise. A manager "stealing" money from their fighter is a professional "death sentence," and understandably so: no fighter wants to work with a manager they believe will take advantage of them. This sentiment is consistent with the public policy protecting fighters from predatory managers, as reflected in both state and federal regulations governing boxing.

161. Through this lens, it becomes clear that Diaz's allegations regarding the Heredias, which he knew to be false, were made for the sole purpose of harming Heredia's reputation and preventing him from securing other fighters in the industry. This effort has been successful in part resulting in millions of dollars in damages in contracts over the past year. For example, Bob Arum, the number one power broker in the boxing industry

parroted the lies pushed forward by the fighter and his counsel, VGC, having no idea regarding the facts of the case.   Arum himself is accountable for these defamatory statements.   His mistakes are that he believed Diaz and was unwilling to figure out the truth - the harm still occurred.

> "The guy (Ralph) Heredia is a convicted felon and cheated the fighter and filed legal papers about Kinahan being involved with the fighter, JoJo Diaz. Nonsense," says Top Rank chairman Bob Arum, who promotes champions from the MTK stable such as Fury and Taylor.
>
> MTK is also no stranger to controversy as Kinahan has been named by the Irish high court as the leader of a drug cartel. He's denied the allegations and has never been charged.
>
> Diaz is no longer a champion, but he still

Access all of The Athletic for just ~~$7.99~~ $1/month.    [Subscribe]

◀    ●    ■

162.   At the time Diaz breached his Boxer-Manager Contract, followed shortly thereafter by his defamatory statements, Mr. Moses Heredia was in negotiations with several potential international Olympians, world champions, and amateur boxers that were free agents with no contract with any manager. Diaz's defamatory statements have tarnished the Heredias' reputations to the point that the international boxing world

and boxing media discourage anyone in the boxing industry from doing business with the Heredias. The trust and reputation that took fourteen years to build was defiled by Diaz's false and feckless statements as well as his unlawful contract with MTK. Moreover, it has heavily damaged several potential and current relationships, causing the Heredias emotional stress and financial hardship.

### Statements from the Arbitration Transcripts Show Diaz's Knowing Mendacity

163. During the arbitration action for Diaz's breach of the Management Contract, the Commission heard and considered Diaz's various allegations and found them to be without merit. On the contrary – the Commission found that the Heredias did a fantastic job for Diaz.

164. The head of the Commission held that the Heredias served Diaz well, found that Diaz was aware of Ralph Heredia's role in the management relationship, ruled that the 2017 Management Contract was valid, and noted that Diaz had admitted to owing Heredia money – not the other way around.

165. Indeed, one of the arguments made by Diaz's counsel during the arbitration was that Diaz owed so much money to Heredia that it could be viewed as Heredia having "leverage" over him, despite the fact that

he was not the licensed manager. The Commission rejected this argument.

166. It was clear in the arbitration record that the zero-interest advances from Heredia helped Diaz to survive while trying to manage his issues.  The following statements made under oath during the arbitration highlight these facts, and reinforce the arbitration conclusions:

> MR. FOSTER:· I think -- I think that Mr. Heredia has done a good job managing Mr. Diaz up to this point. I think that.
>
> …
>
> MR. FOSTER:· They had a good run and like I've said before, I thought Mr. Heredia did a good job for Mr. Diaz. Mr. Diaz doesn't want to work with him anymore.
>
> …
>
> MR. FOSTER:· You're right.· Look, I already have my -- I think the -- I already said this on the record. I think the Heredias did a good job for Mr. Diaz.
>
> …
>
> DIAZ: Well, I needed some money because I wasn't making as much -- that's why I was always on Ralph's ass and always telling him that I wanted to get paid more.
>
> …
>
> DIAZ:· I did my own accounting.· I wrote all this down.
>
> QUESTION:  But ultimately the way you were going to pay for this was to take it out of your next purse; is that correct?  DIAZ:  That's correct.

QUESTION:  And the 30 percent was to negotiate through your future fights to take care of these debts that you 22· wanted to resolve or investments if they were that.

DIAZ:  Yes.

QUESTION: And was that a typical course of dealing over your relationship with him when you were in a money crunch you would come to Ralph to ask him for money?

DIAZ:  Yeah.· Because he told me not to go anywhere else.· He said he would take care of it for me.

QUESTION: And did he take care of you?

DIAZ:  Yeah, he took care of me.· He gave me those loans and I had to pay him back.· Yeah, he did.

…

MR. FOSTER:· Mr. Greeley, I mean, by Mr. Diaz's own admission they've loaned him some money over the years, I mean he -- they got that.

…

MR. GARDNER:· I'm curious about the fact is that both parties to this contract represented to the  commission that no other individuals were -- had a hand IN the management and yet both parties knew and both parties were fine with it until this relationship soured.

…

MR. GREELY: Diaz owed Ralph quite a bit of money…

## **The Arbitration Decision Favored The Heredias**

167.  The Commission issued the following findings on July 9, 2021:

- The Contract entered into by Boxer and Manager on February 23, 2017, is a valid and enforceable contract.

- "The Contract Is Not Invalidated Because of Ralph Heredia's Relationship with Boxer." Boxer also asks the Commission to void the Contract because of Ralph Heredia's involvement in Boxer's career. The reality is that if Ralph Heredia's role in the management of Boxer's career warranted disclosure to the Commission, both parties failed to make that disclosure because both parties were well aware of that role. Furthermore, if as Boxer claims, he has always considered Ralph Heredia to be his true manager, it is disconcerting that Boxer would be willing to submit for Commission approval a Boxer Manager Contract that concealed information or contained misleading information about the true parties. Boxer cannot now use Ralph Heredia's participation in Manager's activities to his advantage when he undoubtedly shared in the parties' mutual obligation to provide truthful representations to Commission. 3 See Civil Code § 3517 ("No one can take advantage of his own wrong."); Moriarty v. Carlson (1960) 184 Cal.App.2d 51, 55; Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal.App.4th 620, 638; Kendall-Jackson Winery, Ltd. V. Superior Court (1999) 76 Cal.App.4th 970, 979.

168.  The Heredias were singularly responsible for Diaz's successful rise to a world championship level fighter notwithstanding his long history of serious misconduct in many areas. They were patient and tireless in redirecting his unlawful and immoral actions back toward a focus on succeeding as a championship-level boxer. Diaz's own decisions

frequently resulted in him having no money to pay bills or various other living expenses.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   169.   On September 9, 2019, Diaz sent an email entitled "JoJo Diaz Loan

23          Proposal" to Ralph Heredia in advance of an upcoming fight scheduled

24          and performed in Mexicali, Mexico for September 21 against Jesus

25          Cuadro. In the email, Diaz offered to increase the management fee owed

26          to Moses to 30%, in exchange for a six-figure advance payment to Diaz

27
28

so he could pay off debts owed to others, unpaid taxes to the IRS, rent,

phone bills, and material purchases such as a new Rolex and Porsche.

Diaz also acknowledged and reconfirmed in this email that he owed a

significant amount in previous loans made by Heredia, and that he would

pay back those loans with this new money. Additionally, Diaz wanted to

have in the high five figures in his bank account for "spending money."

From: Joseph Diaz <jojotheboxer@gmail.com>
Sent: Monday, September 9, 2019 1:58 PM
To: Ralph Heredia
Subject: Jojo Diaz loan Proposal

Good morning. I just wanted to share that it has been a pleasure working
with you guys for my whole career as a boxer. I know you've seen how
much I have developed and I'm extremely confident that I'll be a star in
boxing. I would like to propose and offer to help me be happy and be at my
best mentally for we can all benefit with my career even more. I've done
some calculations and seen that you guys have made a lot of money
throughout my career. While I'm stuck in a jam Currently due to some
mistakes in the past. I'm proposing an offer to help me get out of it and get
me back on track and make me feel like the star I should be. This offer is a
fair offer for both parties considering the money that will be generated in
my career from here on out. I know in the past that I've been open with
my personal life etc cause of the wrongs But is like it to be discreet from
here on out you'll see the change and everyone will be happy. I really hope
we can continue our journey together in my boxing career. Everything is a
business at the end of the day I'm aware of that. I just need someone show
the love and help me out this whole so we can all benefit.

Joseph Diaz Jr loan Proposal

Proposal 1- 4 fights at 30 percent starting with the tevin farmer fight.

Proposal number 2- pay off full loan after tevin fight with an additional
████ interest



att cell phone bill (two new phones)
chase account
LALO
mike
Fernando
Ramon
Lorraine
Rolex
Porsche car between
one main financial loan.
3 months in advance rent
IRS
Ralph Loan (paying off with ▮▮▮ fight check)
in my bank account

Total ▮▮▮ with Ralph loan currently

▮▮▮ with loan (with high side of Porsche)

I hope we can get this done as I feel This proposal is fair and Can be done
and it's beneficial for both parties. Looking forward to your response



◄ Phone
◄ 92
JD
Joseph >
👍

Sep 9, 2019, 12:29 PM

Imma also send you
everything I owe what I need
for car and money in the bank
proposal so that way You can
think with Moses the best
percentage to come up with or
I can pay in full with a interest
amount. I want it to benefit
you guys as well Ralph. We
gotta work together. I don't
want you to just give to me I
know you're a business man
so I can make a little money
off it as well so you can have a
hard on lol. I want y'all feel
comfortable with giving me
the money I ask for so that
way we won't have any prom
lens or anything and I can just
live my personal life and do
what I do whiteout being
pooor

iMessage

This request was not the first time, nor the last time Diaz asked for money in exchange for a percentage of his future purses but is an example of how Diaz would dig himself into a financially precarious position and come to the Heredias looking to be bailed out. Heredia had previously tried to convince Diaz to work out his personal problems and utilize the services of his financial provider as discussed *supra*, to no avail.

170. Diaz brought up the September 9 "Loan Proposal" again, despite earning monies from a fight in Mexicali, on September 21, 2019. The Heredias told him that Moses was working tirelessly to try and get him a world title opportunity against Tevin Farmer and insisted that he not sell any percentages on his future to the Heredias or to anyone else.

171. When Diaz mentioned that he would not be able to train for the Farmer bout properly without a car to get around, Heredia told him that they would try to come up with a solution regarding a car, but that Diaz needed to be realistic on whether he could afford a new Porsche and the high insurance rates that come with it.[1]  Additionally, Heredia was

---

[1] In addition to the above-average premium costs associated with insuring a luxury sport vehicle, such as a Porsche, Diaz's driving record, including behavior the description of which is currently under seal but will be brought forth fully at trial, significantly increased the costs of his insurance premiums.

incentivized to resolve the car issue because he had become Diaz's

"chauffer service" and "Uber coordinator."



172.   In October 2019, Diaz approached the Heredias and indicated that he would "agree" to get a used car instead of a new car and something much less expensive than a Porsche. Diaz then requested that Heredia pay for the car outright, and Diaz pay back the money for the car, and all other previous debts he owed, from the proceeds of the Tevin Farmer fight – to include Heredia retaining title to the vehicle given Diaz's financial irresponsibility and increasing indebtedness.

173. On October 18, 2019, Heredia relented and purchased a used 2016 Lexus RC350 for Diaz's use, at a cost of $41,185.24. As discussed, Ralph Heredia remained a lienholder on the title of the vehicle to protect his interests.  The other issue of concern was the extraordinary vehicle insurance burden Diaz was confronting given his publicly known driving history.  The insurance debt was also to be covered by Heredia and was. Heredia paid the insurance in a lump sum through February 2020 and then began to make monthly payments as described below.

174. On January 30, 2020, Diaz defeated Tevin Farmer and became the International Boxing Federation World Super Featherweight Champion. On the night of the Farmer title bout, Diaz gave Heredia a list of people that he had to pay back loans to and asked if he could pay them back from the proceeds of his fight earnings. Days after the Farmer bout, Ralph Heredia began receiving texts and calls from various other people that were *not* on Diaz's list of obligations, all claiming that Diaz had borrowed money from them and promised to pay them after the Farmer fight. Diaz told Ralph Heredia that he will pay back some of the people and make other people wait.

175. For example, Ralph Heredia received a call from a Mark St. Pierre. Mr. St. Pierre said that he was introduced to Diaz by Scott Tetrault, an

employee at Golden Boy, and loaned him $6,500 with Diaz's promise to pay him after the Farmer bout. Mr. St. Pierre was very upset, and others associated with Golden Boy had advanced Diaz money before the Farmer fight and it was becoming a problem because he failed to repay these debts. When Heredia confronted Diaz about paying back Mr. St. Pierre, Diaz became angry and said he did not want to pay Mr. St. Pierre.

176. Heredia sent $2,000.00 to Mr. St. Pierre to mitigate the situation. Golden Boy subsequently deducted $22,000.00 from Diaz's purse for advances they made to him. Notably, neither Diaz nor anyone at Golden Boy had told Heredia about the advances, preferring instead to undermine the Heredias' tireless efforts to focus Diaz on his boxing career and help mitigate his destabilizing personal conduct.

177. In February 2020, after the Heredias returned from Miami, Heredia scheduled a meeting with Diaz to go over all of the accounting for the various and extensive debts Diaz owed to them. Diaz agreed with Heredia's assessment, and understood all the accounting, but pleaded with Heredia to leave a part of his debt, specifically $25,000.00, outstanding until his next bout because he still owed other people money. Diaz also stated that he wanted to pay off his IRS liens and other bank notes.

178. As discussed, Diaz agreed that the title of the Lexus would be left in Ralph Heredia's name until after his next bout, when he would pay the remaining balance on the car in full. Diaz also asked Heredia to wire Mike Powers a loan repayment for $12,500.00.

179. Within ten days after the Farmer bout, Diaz was once again without money which he partied away.  Diaz undertook another round of begging for more money from Heredia. Diaz admitted that he essentially threw away the entirety of his earnings from the Farmer bout in less than two weeks.  Unbeknownst to Heredia, Diaz informed Heredia after the Farmer fight that immediately prior to the fight, Diaz had begun negotiations with Mike Powers for a six-figure advance on his next bout in exchange for points. Diaz sent Heredia a text from Mr. Powers regarding the advance. Diaz had borrowed money from Mr. Powers in the past (including $12,500.00 before the Farmer bout), and contrary to Heredia's admonition that Diaz needed to get his personal and professional house in order, Diaz continued to sell points on his next fights in exchange for immediate cash.



180. Around the same time as this agreement was reached, Diaz was repeatedly posting on social media various offers to bet large amounts of money on boxing matches; the Heredias became concerned once more that Diaz's bad choices were further depressing his financial situation.

Diaz then asked if the Heredias could match Mr. Powers' offered advance in exchange for higher management fees and interest.

181. After the Farmer fight Heredia stressed to Diaz that he was now a World Champion and should not be mortgaging his future earnings to other people, particularly if he was still pursuing the same set of poor personal choices.  This was in response to Diaz threatening to get additional funds from other persons because he had gambled all of his purse within two weeks of winning the world title.

182. In an effort to help this young man overcome the greatest threat to his success – himself – Heredia finally agreed to provide Diaz a $10,000.00 per month advance, which would become payable after his next fight, with no interest. In exchange Heredia imposed strict conduct terms upon Diaz as a condition of providing him with even more cash. The terms included that Diaz would keep his weight under 145 pounds, submit to regular testing, and attend specified meetings. On February 21, 2020, Heredia gave Diaz $4,000.00, with a promise of a further $6,000.00 to follow on March 1, 2020, which was made.  Heredia also fronted $55,000.00 for Diaz to qualify for housing and a repayment of $49,000.00 from Diaz shortly thereafter, leaving $6,000.00 for Diaz to use in accordance with this agreement.

183.   The Heredias knew that Diaz often ballooned in weight when he was partying and wanted to make sure he would stay healthy and mentally undiminished for future fights. The terms imposed upon Diaz as conditions of the advances were not only to protect the Heredias' investment, but to facilitate Diaz's ability to continue performing as a championship-level boxer. This deal was short lived however when Diaz failed one of his required tests administered by his father, after Diaz's participation in a hometown parade celebrating his victory in early March 2020.  The father, understanding the agreement that had been entered into between his son and Heredia, immediately forwarded the test results to Heredia via text. As soon as Heredia learned of the failed test, the advanced loan terms were modified to a subsistence level of funding only which is reflected in the accounting sheet.



184. Heredia continued providing Diaz with monthly support up until the time Diaz breached his management agreement with HBM and signed on with MTK.

185. The Heredias endeavored, without gratitude or acknowledgement, to assist Diaz in the management of his life challenges.  After the Tevon Farmer fight, while the Heredias were providing Diaz additional funding

to manage his living expenses, Diaz was drawn away by the prospect of a new cash source – MTK.  The MTK signing bonus was $100,000.00 upfront. Apparently, Diaz could not resist the temptation of quick cash. In a short period of time, Diaz abandoned a long-lived personal/professional relationship, one which had invested considerable time and resources into Diaz to set him up for success, in exchange for the immediate gratification of receiving money which he spent almost immediately.  At the same time Diaz undertook to falsely accuse the Heredias of "stealing" monies that were due to him from his fight proceeds.

186.   Familiarity with the world of professional boxing finances renders this claim structurally impossible. Diaz himself assigns the proceeds from any contest.[2] Diaz has known from the outset that any accusations that Heredia stole money from him are patently false, yet he has persisted in spreading this false narrative both publicly and privately wherever he goes, with the cruel intent to harm the Heredias for not simply walking away from the investment they made in him.

---

[2] This is well-illustrated by Moses Heredia's case against Diaz in the Superior Court of California, County of Los Angeles, Case No. 22STCP00395, filed for enforcement of the amounts owed by Diaz to HBM pursuant to the outcome of the arbitration. Diaz was ordered to pay $162,000.00; while he paid $90,000.00 of this amount, he failed to pay the remaining $72,000.00, despite receiving a $1.8 million purse in a recent fight.

187.   Diaz has "gotten away" with this scheme up to this point because the Heredias believed, mistakenly, that Diaz would remember all that the Heredias had done to help grow and support him throughout the years and at some point, abandon this misguided path, realize he was in the wrong, and state so publicly.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7:37
◀ Phone

Delete All        JD        Cancel

Joseph ›

Aug 23, 2019, 12:35 AM

Just got home! Me and my
dad played a little blackjack.
Lost haha, thanks again for a
great time RALPH and giving
me some money, appreciate
you! Have a good night Luis
did an excellent job! Enjoy this
victory. Also thank you for
understanding where I'm
coming from after my fight. To
be rich, cause I'm destined to
be rich. Really means a lot
that I trust me and know
where I'm going to be by
doing this. I'm going to
upgrade my whole look to
even be more of a star. New
car, nice clothes, money in the
bank and also new teeth. All
these things will just make me
even more of a star I promise
you. Have a good night. Oh
and I promised Mary to start
teaching me some Spanish
and I'll work her out after my
fight so that way I can be
focused and occupied as well!
We onto something RALPH I



188.   It has become clear, however, that this expectation will never come to

pass. Accordingly, as conclusively shown in the litigation discovery

process, Diaz's claims have been a fabrication from the beginning,

designed to devastate the Heredias financially and professionally.

Throughout this litigation, Diaz dodged depositions and failed to

produce any evidence supporting his allegations (as will be further

demonstrated below); with the benefit of hindsight, it becomes clear that

his conduct was part of a desperate attempt to protect "the bad lie."

### **Additional False Allegations Made Against the Heredias by Diaz**

189. An additional thrust of Diaz's plan to humiliate and discredit the

Heredias was to damage their relationship with Golden Boy Promotions

("GBP"), who served as the promoter for Diaz's fights. Diaz caused his

counsel to send a letter to GBP containing the following statements:

- "We write this letter to address the irresolvable conflict that exists
  between Golden Boy Promotions ("GBP") and Diaz as a result of
  GBP's inability to perform its contractual obligations to Diaz and its
  continuous disregard of Diaz's interests.
- "GBP then catered to the Heredias (who funneled all their clients to
  GBP) and helped them take advantage of Diaz. This included
  providing illicit benefits to the Heredias—such as tickets to a high-
  demand fight between Canelo Álvarez and Gennadiy Golovkin in Las
  Vegas, Nevada."

190. These claims were further efforts to harass and intimidate anyone who

did business with the Heredias, intended to further isolate them within the

boxing world.

191. A fact long known to Diaz and his counsel -- the "infamous" tickets

referenced in the second allegation were validly purchased and paid for:



This is yet another example of the abusive conduct Diaz and VGC have engaged in to further their defamatory campaign against the Heredias.

192. After working through an entire year of discovery, these falsehoods are rendered blatantly obvious, and their use to abuse the process manifest. This lawsuit has been advanced from the start based on pure greed. The undisputed facts are that the Heredias invested tens of thousands of dollars in Diaz's career; it is *Diaz* who owes money to the Heredia; and it is *Diaz* who has tried to steal those monies through his public statements and the abuse of process.

193. Diaz's complaint has maintained that Heredia owes him money by virtue of "stealing" a percentage of his purse (which was resolved during arbitration), or taking personal property; however, discovery exchanged

in July 2022 as part of this litigation conclusively establishes that Diaz, in fact, *owes* money to Heredia. Upon information and belief, based upon the discovery that has been made available to date, Diaz currently owes Heredia not less $48,841.95 for the multiple loans Heredia generously advanced him during the course of their relationship.

194. Upon information and belief, the scheme devised by Diaz and VGC was designed to ruin the reputation of Heredias in the boxing community by fabricating allegations that Heredia had "stolen" money and property from Diaz, thereby damaging the Heredias' reputation in the boxing community, impacting recruiting, branding, and negotiations with promoters and sponsors. This scheme was not limited to litigation. Diaz employed further, more public means of pursuing the reputational demise of the Heredias.

195. The revelations from the litigation document production establish media statements made by Diaz falsely impute to Heredia the commission of some criminal offense involving moral turpitude, to wit: that Heredia stole money from him are either deliberately misleading or patently untrue, and Diaz should have known (and did, in fact, know) that by virtue of the documents he possessed. Diaz has knowingly and intentionally made false and defamatory statements about Heredia to

media outlets, which were then published on-line and available world-wide. The statements have included:

- December 27, 2020: Social media -- "Watch who you are dealing with cause a lot of people aren't what they make themselves out to me" [sic]; and

- February 13, 2021: Interview -- "a lot of people that want to take a part of my exposure and talent and make some money off of me because they feel like they can.  I mean these guys are all greedy mother fuckers' man and its [sic] bullshit"; and

- July 9, 2021: Interview – "for a manager to come in here and try to rob me and take my money is fucking wrong"; and

- November 5, 2021: social media -- "Life [sic] been good after I got rid of shit managers and got advisors & my own lawyers to protect me. To all the young fighters that aren't knowledgeable make sure you have your own lawyer before signing to any management or promotional company for your best interest."

196.   The documents exchanged in discovery during the course of this litigation further prove that Diaz brought and has been prosecuting his complaint in bad faith and has engaged in abuse of process. To date, Diaz has failed to produce any accounting whatsoever in support of his claim that Heredia owes him any money, even a single penny. Nothing

Diaz has produced in discovery *rebuts* the position that it is in fact Diaz who owes money to Heredia.

197. The allegations surrounding the "taking of the vehicle are also false. After another incident involving Diaz's driving behavior, and Diaz's announcement that he was no longer going to work with the Heredias, Heredia informed Diaz that he needed to pay his bills moving forward. Predictably, Diaz did not, including his car insurance. After numerous attempts by both Heredia and the insurance company to resolve this with Diaz to no avail, Heredia had to repossess the car to protect his interests in the vehicle and any liability given that Diaz continued to operate the vehicle on a suspended license and in other ways not compliant with the terms on which Heredia purchased the vehicle . Heredia even approached Ben Lira, Diaz's trainer, to discuss the return of the vehicle as long as full payment was made to resolve that issue. These discussions occurred prior to the filing of this action. Diaz informed Lira that he rejected any such offer and had "other plans" for Heredia. We now know what plans he referred to.

MINNICK INS SVCS
4622 PLUMOSA DR
YORBA LINDA, CA 92886

*DRIVE*Insurance

JOSEPH P DIAZ JR

Joseph P Diaz JR
Valued customer since 2019

**Policy Number:** ███████
Underwritten by:
Progressive West Ins Co
Date of Mailing: August 31, 2020
Policy Period: Apr 24, 2020 - Oct 24, 2020
Page 1 of 2

**MINNICK INS SVCS**
**1-714-777-4107**
**Online Service**
**DriveInsurance.com**
**Customer Service**
**1-800-300-3693**

## Cancellation Notice

Unfortunately, we didn't receive your payment and, as a result, your policy will be canceled at 12:01 a.m. on September 11, 2020.

Please know that this means you will no longer have insurance coverage.

We value you as a customer and want to continue being your insurance provider. To avoid cancellation, please send us your payment by check or money order so that it is received or postmarked by 12:01 a.m. on September 11, 2020. This way, there will be no lapse in your coverage.

If you've already sent your payment, thank you. Your next regular payment will be due on September 24, 2020.

You can also pay online or over the phone using a credit card or authorizing a withdrawal from your bank account. We'll credit your payment right away so your insurance coverage will continue.

We sincerely appreciate your attention to this matter and thank you for your business.

| | |
|---|---|
| Remaining balance | $1,210.26 |
| Payments remaining | 1 |
| Minimum amount due | $609.15 |
| Due date | September 11, 2020 |

**Please see the reverse side.**   Continued on back

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Policy Number:** ███████
Joseph P Diaz JR

## Payment Coupon

| | |
|---|---|
| Minimum amount due | $609.15 |
| Due date | September 11, 2020 |
| Amount enclosed | $ |

To maintain continuous coverage, your payment must be received or postmarked by 12:01 a.m. on September 11, 2020.

**For immediate payment,** please go to DriveInsurance.com or call 1-800-300-3693.

**If you pay by check,** please allow five to seven days for your payment to reach us. Write your policy number on the check and make it payable to Progressive West Ins Co.

DRIVE INSURANCE
PO BOX 894107
LOS ANGELES CA 90189-4107

Do not write below this section of coupon.
V2-01VTT          Form 6268 (07/08)

As a result, upon information and belief, Diaz knowingly filed a meritless action against Heredia to damage Moses and Ralph Heredia's reputation within the boxing and managerial industry.

198.  Consequently, Heredia has been forced, to date, to incur tens of thousands of dollars in legal fees to defend himself against Diaz's meritless lawsuit and has suffered unrecoverable damage to his reputation within the boxing industry; he, and by association his brother Moses, who serves as the licensed manager, have been thwarted in

attempts to sign promising young talent, despite a record of success in bringing Diaz from Olympic hopeful to world champion.

199.   Upon information and belief, the reticence of other boxers to sign with the Heredias is directly linked to the reputational harm the Heredias have suffered as a result of Diaz's public statements that the Heredias "stole" money from him.

### Attempted Extortion of Heredia by Diaz

200.   When it became clear that Heredia would not kowtow to the malicious and false public campaign or the abuse of process, Diaz resorted to extortion.  On or about April 12, 2022 Mr. Greely issued a threat to counsel and Heredia and on or about May 3, 2022 Heredia was sent a photograph of woman accompanied by a text message that stated:

**Pro boxer Joseph Diaz accused of attempted coercion, enticement of minor in lawsuit**
Apr 12, 2022

**Brett Okamoto ESPN Staff Writer**

"These frivolous allegations on behalf of an anonymous source have been brought by the attorney for Joseph Diaz's former manager, Ralph Heredia, **who Mr. Diaz is suing in federal court for stealing his money and violating his trust**," Diaz's attorney, James Greeley of VGC LLP, told ESPN. "Mr. Heredia and his counsel appear to be making a desperate attempt to gain leverage in that lawsuit by fabricating claims by a 'Jane Doe' as part of an ongoing effort to defame Mr. Diaz and derail his career. **They will be made**

**to answer for their actions.** It should go without saying that Mr. Diaz staunchly denies these claims."

https://www.espn.com/boxing/story/_/id/33726915/pro-boxer-joseph-diaz-accused-attempted-coercion-enticement-minor-civil-lawsuit



201.  Upon information and belief, this message was sent by Diaz.  Heredia understood that Diaz was threatening to tell Heredia's wife and his brother that Heredia had engaged in some undetermined inappropriate activity which could purportedly further damage his reputation, a

situation Heredia could ill-afford to be in, thanks to Diaz's smear campaign.

202. This threat was a direct act of attempted extortion, committed with the intent to pressure Heredia to stop defending this legal action brought by Diaz. Heredia, knowing the falsity of this threat, remains undeterred in his determination to ensure that the world knows one simple truth – that Heredia's only mistake was to commit himself emotionally and financially to the success of Diaz, who has proved himself to be a disrespectful, ungrateful, and blatant liar focused on his selfish needs and greed.

## FIRST CAUSE OF ACTION

### Abuse of Process

203. HBM incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

204. Diaz undertook a specific legal procedure, i.e., he sued HBM in this matter, Case No. 5:20-cv-02332-JWH-KK;

205. Diaz intentionally used this legal procedure for an improper purpose that the procedure was not designed to achieve, to wit: Diaz instituted a proceeding alleging that the Heredias and HBM owed him money, when in fact the inverse was true. Upon information and belief, the true

1   purpose of these allegations was to create a narrative that could be
2   employed to ruin the reputation of HBM as a business associated with the
3
4   boxing industry;
5
6
7
8
9
10
11   
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

206. HBM was harmed by Diaz's use of this legal proceeding, reputationally and financially. Diaz's lawsuit damaged HBM's reputation within the boxing industry, damaging relationships with active clients and quashing the prospect of future clients. Additionally, HBM has been forced, to date, to spend hundreds of thousands of dollars in legal fees to defend itself against Diaz's meritless lawsuit, in addition to the unrecoverable damage to the company's reputation within the boxing industry; Moses and Ralph Heredia, the owners, operators, and public face of HBM, have been unable to sign star up-and-coming boxers, despite a record of success in bringing Diaz from Olympic hopeful to world champion; and

207. Diaz's conduct was a substantial factor in causing HBM harm.

## SECOND CAUSE OF ACTION

## Defamation/Business Disparagement

208. HBM incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

209. HBM claims that Diaz harmed it as a business entity by making the following statements:

    a. December 27, 2020: Social media -- "Watch who you are dealing with cause a lot of people aren't what they make themselves out to me"[sic]; and

b.  February 13, 2021: Interview -- "a lot of people that want to take a part of my exposure and talent and make some money off of me because they feel like they can.  I mean these guys are all greedy mother fuckers' man and its [sic] bullshit"; and

c.  July 9, 2021: Interview – "for a manager to come in here and try to rob me and take my money is fucking wrong"; and

d.  November 5, 2021: Social media -- "Life [sic] been good after I got rid of shit managers and got advisors & my own lawyers to protect me. To all the young fighters that aren't knowledgeable make sure you have your own lawyer before signing to any **management or promotional company** for your best interest." [emphasis added].

210.  Diaz made each of the above statements to a person or persons other than representatives of HBM;

211.  This other person or these other persons reasonably understood that the statements were about HBM, or individuals associated with the operation of HBM, to wit: the Heredias;

212.  These people reasonably understood the statement(s) to mean that HBM, or its individual operators, to wit: the Heredias, cannot be trusted to work with as managers within the boxing industry; and

213. Diaz failed to use reasonable care to determine the truth or falsity of the statements.

214. Diaz's wrongful conduct was a substantial factor in causing: (1) harm to HBM's property, business, trade, profession, or occupation, including the loss of earnings and profits, both actual and expected; (2) expenses that HBM had to pay as a result of the defamatory statements; (3) harm to HBM's industry reputation; and/or (4) decreased traffic of clients to the business.

## THIRD CAUSE OF ACTION

### Accounting

215. HBM incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

216. As alleged herein, a confidential relationship existed between HBM and Diaz and their accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.

217. HBM is unable to determine the exact amount of money owed to it by Diaz as a result of Diaz' conduct as alleged herein without an accounting; however, upon information and belief, the amount owed is a sum not less than $39,168.40, based upon the current known sums:

- $31,093.40 in expenses paid by HBM on Diaz's behalf in connection with the Farmer fight; and

- $8,075.00 in expenses paid by HBM on Diaz's behalf in connection with the Cuadro fight.

218.   HBM has expended various sums on Diaz's behalf, whether in the form of loans or direct expenditures, with the understanding and expectation of restitution or repayment, which never occurred. There has never been a proper accounting or examination of these loans or expenditures, the amounts paid by HBM to Diaz (or on behalf of Diaz) pursuant to them, nor the amounts repaid by Diaz to HBM.

219.   Accordingly, HBM requests an accounting of all unsettled accounts between HBM and Diaz.

### **PRAYER FOR RELIEF**

WHEREFORE, counterclaim plaintiff Heredia Boxing Management prays for judgment and an award against counterclaim defendant Diaz as follows:

1.  For compensatory damages in an amount to be determined at trial;

2.  For an accounting;

3.  For pre- and post-judgment interest at the maximum rate allowed by law;

4.  For recovery of reasonable attorneys' fees;

5.  For the costs of the suit; and

6. For such other and further relief as the Court deems just and proper.

Jury trial is demanded.

Dated: September 23, 2022          Respectfully submitted,


                                  /s/ *Rajan O. Dhungana*
                                  Rajan O. Dhungana (SBN: 297794)
                                  FEDERAL PRACTICE GROUP
                                  14481 Aspen Street
                                  Hesperia, CA 92344
                                  Telephone: (310) 795-6905
                                  rdhungana@fedpractice.com


                                  /s/ *Eric S. Montalvo*
                                  Eric S. Montalvo (*Pro Hac Vice*)
                                  FEDERAL PRACTICE GROUP
                                  1750 K Street, N.W., Suite 900
                                  Washington, D.C. 20006
                                  Telephone: (202) 862-4360
                                  Fax: (888) 899-6053
                                  emontalvo@fedpractice.com


                                  *Attorneys for Defendant / Counterclaim*
                                  *Plaintiff* Heredia Boxing Management

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2022, I filed the foregoing Defendant Heredia Boxing Management's Answer to the Second Amended Complaint and Counterclaim with the Clerk of the Court and sent a copy of such filing via the CM/ECF system.

Furthermore, I sent a copy via email to the following:

James L. Greeley (SBN 218975)
 jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
 dvazquez@vgcllp.com
Gina M. Simas (SBN 205367)
 gsimas@vgcllp.com
Andrew D. White (SBN 222628)
 awhite @vgcllp.com
VGC, LLP
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 256-8296

*Attorneys for Plaintiff / Counterclaim Defendant*
Joseph Diaz, Jr.


Dated: September 23, 2022

Respectfully submitted,


/s/ *Eric S. Montalvo*
Eric S. Montalvo (Admitted *Pro Hac Vice*)
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360

DEFENDANT HEREDIA BOXING MANAGEMENT'S ANSWER TO THE SECOND AMENDED
COMPLAINT AND COUNTERCLAIMS– – CERTIFICATE OF SERVICE