James L. Greeley (SBN 218975)
  jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
  dvazquez@vgcllp.com
Andrew D. White (SBN 222628)
  awhite@vgcllp.com
**VGC, LLP**
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 272-9885
*Attorneys for Plaintiff,* JOSEPH DIAZ, JR.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| JOSEPH DIAZ, JR.,<br><br>        Plaintiff,<br><br>    v.<br><br>RALPH HEREDIA, true name RAFAEL HEREDIA TARANGO, a/k/a RAFAEL HEREDIA, a/k/a RAFAEL BUSTAMANTE; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive,<br><br>        Defendants. | CASE NO. 5:20-cv-02332-JWH-KK<br><br>**NOTICE OF MOTION AND COMBINED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULE 12(b)(6) AND SPECIAL MOTION TO STRIKE DEFENDANTS' COUNTERCLAIMS AS STRATEGIC LAWSUITS AGAINST PUBLIC PARTICIPATION PURSUANT TO CODE OF CIVIL PROCEDURE §425.16**<br><br>[Submitted concurrently herewith: [Proposed] Order; Declaration of Andrew D. White]<br><br>Date:          December 16, 2022<br>Time:          9:00 a.m.<br>Courtroom:  9D<br>Judge:        Hon. John W. Holcomb<br><br>Discovery Cut-Off Date: August 19, 2022<br>Pre-Trial Conference Date: Nov. 18, 2022<br>Trial Date: December 5, 2022 |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 16, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in courtroom 9D before the Honorable John W. Holcomb, located at 411 W. 4th Street, Santa Ana, California 92701-4516, Plaintiff Joseph Diaz, Jr. shall, and hereby does, move pursuant to California Code of Civil Procedure Section 425.16 ("the anti-SLAPP statute") and Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), to strike and dismiss Defendants Ralph Heredia ("Heredia") and Heredia Boxing Management's ("HBM") (collectively "Defendants") Counterclaims (Dkts. 145 & 146). Plaintiff also respectfully requests an award of attorneys' fees in the amount of $12,075.00 for the attorneys' fees and costs spent in preparing this anti-SLAPP motion to strike. (White Decl. ¶¶15-16.)

Good cause exists to grant this motion. Defendants wholly fail to state a claim upon which relief may be granted such that the Counterclaims must be dismissed. Because Defendants cannot meet their burden to show a probability of prevailing on the merits, as fully detailed in this Motion, the Counterclaims must also be stricken.

This motion is made following significant but unsuccessful efforts by Plaintiff to meet and confer with Defendants' counsel pursuant to Local Rule ("LR") 7-3 due to Defendants refusal to engage in meet and confer discussions.  As detailed in the Declaration of Andrew D. White, Plaintiff made significant efforts to hold a meet and confer conference with Defendants in an effort to reach a resolution of the issues raised by this motion.  (White Decl. ¶¶2-13) Although Plaintiff complied with LR 7-3, Defendants refused to engage in meet and confer discussions requiring the filing of this motion.

This motion is based upon this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the Declaration of Andrew D. White, the [Proposed] Order, the pleadings, records and papers filed in this action, and such other and further evidence as may be presented at or before the hearing on this motion.

1

2  Dated:  October 28, 2022          **VGC, LLP**

3                                             By:___/s/ Andrew D. White_____

4                                             James L. Greeley

5                                             Diyari Vázquez
                                              Andrew D. White
6                                             Gina Simas

7                                             Attorneys for Plaintiff
                                              JOSEPH DIAZ, JR.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**I.** INTRODUCTION ...................................................................................................1

**II.** STATEMENT OF FACTS APPLICABLE TO THIS MOTION ...........................1

**III.** PROCEDURAL BACKGROUND .......................................................................3

**IV.** DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6). ................................................................................6

    A. Defendant's Counterclaims for Abuse of Process Fail................................7

    B. Defendant's Counterclaims for Defamation/Business Disparagement are Barred ....8

    C. Defendant's Counterclaims for an Accounting are Improper and Must Be Dismissed ....................................................................................... 9

    D. Defendant Heredia's Breach of Oral Contract Counterclaim is Fatally Uncertain........................................................................................... 10

    E. Defendant Heredia's Counterclaims for Attempted Extortion Fails .................... 11

    F. The Economic Loss Doctrine Bars Defendant Heredia's Counterclaim for Fraudulent Inducement ......................................................... 12

**V.** DEFENDANTS' COUNTERCLAIMS ARISE FROM PROTECTED ACTIVITY AND MUST BE STRIKEN ............................................................ 13

    A. Defendant's Counterclaims are Based on the Filing of Diaz's Complaint and Statements Made During Litigation - A Protected Activity ................................. 14

    B. Plaintiff's Alleged Actions are Protected by the Litigation Privilege.................. 16

    C. Defendants' Cannot Meet Their Burden to Show That They Are Likely to Prevail on the Merits of Any of Their Counterclaims

    D. Diaz is Entitled to Attorneys' Fees Incurred in Bringing this anti-SLAPP Motion18

**VI.** CONCLUSION ............................................................................................ 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Abraham v. Lancaster Community Hospital,
  217 Cal.App.3d 796 (1990) ................................................................7

Action Apartment Ass'n v. City of Santa Monica,
  41 Cal. 4th 1232 (2007) ............................................................15, 16

Adams v. Superior Court,
  2 Cal.App.4th 521 (1992) ................................................................7

Am. Shooting Ctr., Inc. v. Secfor Int'l,
  2015 WL 1914924 (S.D. Cal. Apr. 27, 2015) ...............................12

Ashcroft v. Iqbal,
  556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......7

Baral v. Schnitt,
  1 Cal.5th 376 (2016) ...............................................................14, 18

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................................................7

Bergstein v. Stroock & Stroock & Lavan LLP,
  236 Cal. App. 4th 793 (2015) ........................................................15

Bernson v. Browning-Ferris Industries, Inc.,
  7 Cal.4th 926 (1994) ......................................................................8

Bidna v. Rosen,
  19 Cal.App.4th 27 (1993) ...............................................................7

Blatty v. New York Times Co.,
  42 Cal.3d 1033 (1986) ...................................................................9

Booker v. Rountree,
  155 Cal. App. 4th 1366 (2007) ..................................................8, 16

Brea v. McGlashan,
  3 Cal.App.2d 454 (1934) ................................................................9

Briggs v. Eden Council for Hope & Opportunity,

   19 Cal. 4th 1106 (1999) ................................................................................17

Cabral v. Martins,

   177 Cal. App. 4th 471 (2009) ......................................................................15

Contreras v. Dowling,

   5 Cal. App. 5th 394 (2016) .........................................................................15

Erlich v. Menezes,

   21 Cal. 4th 543 (1999) ................................................................................12

Equilon Enterprises v. Consumer Cause, Inc.,

   29 Cal. 4th 53 (2002) ..................................................................................17

Freeman & Mills, Inc. v. Belcher Oil Co.,

   11 Cal. 4th 85 (1995) ..................................................................................12

Fuhrman v. Cal Satellite Sys., Inc.,

   179 Cal. App. 3d 408 (1986) ................................................................11, 12

Gardner v. Martino,

   563 F.3d 981 (9th Cir. 2009) ........................................................................9

Gottesman v. Santana,

   2017 U.S. Dist. LEXIS 104548 (S.D. Cal. July 6, 2017) ...........................10

Graham-Sult v. Clainos,

   756 F.3d 724 (2014) ....................................................................................18

Herring Networks, Inc. v. Maddow,

   8 F.4th 1148, 110 Fed. R. Serv. 3d 341 (9th Cir. 2021) .............................14

Hilton v. Hallmark Cards,

   599 F.3d 894 (9th Cir. 2010) ......................................................................14

James Glidewell Dental Ceramics v. Keating Dental Arts,

   2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ..............................................15

Jolly v. Eli Lilly & Co.,

   44 Cal.3d 1103 (1988) ..................................................................................8

Kashian v. Harriman,

   98 Cal. App. 4th 892 (2002) ........................................................................ 14

Ketchum v. Moses,

   24 Cal. 4th 1122(2001) ............................................................................. 18

Langan v. United Servs. Auto. Ass'n,

   69 F. Supp. 3d 965 (N.D. Cal. 2014) ........................................................ 10

Lucky Kim Int'l, Inc. v. SEO in Corp.,

   2010 WL 11549638 (C.D. Cal. June 3, 2010) ............................................ 8

Maleti v. Wickers,

   82 Cal. App. 5th 181 (2022) ....................................................................... 7

Maloney v. T3Media, Inc.,

   94 F. Supp. 3d 1128 (C.D. Cal. 2015) ...................................................... 13

Manufactured Home Communities, Inc. v. County of San Diego,

   655 F.3d 1171 (9th Cir. 2011) .................................................................. 14

McGarry v. Univ. of San Diego,

   154 Cal. App. 4th 97 (2007) ..................................................................... 17

Media v. Barlow,

   2021 U.S. Dist. LEXIS 243264 (C.D. Cal. May 1, 2021) ......................... 11

Metabolife Int'l, Inc. v. Wornick,

   264 F.3d 832 (9th Cir. 2001) .................................................................... 13

Metabolife Intern., Inc. v. Wornick,

   213 F.Supp.2d 1220 (S.D. Cal. 2002) ...................................................... 19

Mindys Cosmetics, Inc. v. Dakar

   611 F.3d 590 (9th Cir. 2010) .................................................................... 14

N. Cty. Communs Corp. v. Verizon Global Networks, Inc.,

   685 F. Supp. 2d 1112 (S.D. Cal. 2010) .................................................... 10

Navellier v. Sletten,

   106 Cal.App.4th 763 (2003) ................................................................ 15, 18

Neville v. Chudacoff,

   160 Cal. App. 4th 1255 (2008) ................................................................. 15

New.Net, Inc. v. Lavasoft,

   356 F. Supp. 2d 1090 (C.D. Cal. 2004) .................................................... 19

Okorie v. L.A. Unified Sch. Dist.,

   14 Cal. App. 5th 574 (2017) .................................................................... 14

Olsen v. Harbison,

   191 Cal. App. 4th 325 (2010) .................................................................. 16

Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,

   42 Cal.3d 1157 (1986) .............................................................................. 7

Overstock.com, Inc. v. Gradient Analytics, Inc.,

   151 Cal. App. 4th 688(2007) ................................................................... 18

Partington v. Bugliosi,

   56 F.3d 1147 (9th Cir. 1995) ..................................................................... 9

Planned Parenthood Federation of Am., Inc. v. Ctr. for Med. Progress,

   890 F.3d 828 (9th Cir. 2018) ............................................................ 13, 14

Pollock v. University of Southern California,

   112 Cal.App.4th 1416 (2003) ........................................................ 7, 8, 16

Raiser v. Ventura Coll. of L.,

   2009 WL 10692058 (C.D. Cal. Sept. 1, 2009) ....................................... 12

Robinson Helicopter Co. v. Dana Corp.,

   34 Cal. 4th 979 (2004) ...................................................................... 12, 13

Rohde v. Wolf,

   154 Cal. App. 4th 28 (2007) ............................................................. 8, 16

Rosenaur v. Scherer,

   88 Cal. App. 4th 260 (2001) .................................................................... 19

Rubin v. Green,

   4 Cal. 4th 1187 (1993) ............................................................................. 16

*Rusheen v. Cohen,*

    37 Cal. 4th 1048 (2006)................................................................................16

*Sarver v. Chartier,*

    813 F.3d 891 (9th Cir. 2016)........................................................................14

*Shively v. Bozanich,*

    31 Cal. 4th 1230 (2003)..................................................................................8

*Silberg v. Anderson,*

    50 Cal.3d 205 (1990) .........................................................................7, 11, 16

*St. James Church of Christ Holiness v. Superior Court,*

    135 Cal.App.2d 352 (1955)...........................................................................10

*Summit Bank v. Rogers,*

    206 Cal. App. 4th 669 (2012) .........................................................................9

*Taheri Law Group v. Evans,*

    160 Cal. App. 4th 482 (2008) .......................................................................15

*Teselle v. McLoughlin,*

    173 Cal.App.4th 156 (2009)......................................................................9, 10

*Thomas v. Fry's Elecs., Inc.,*

    400 F.3d 1206 (9th Cir. 2005)......................................................................14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,*

    190 F.3d 963 (9th Cir. 1999) .............................................................13, 14, 18

*Vess v. Ciba-Geigy Corp. USA,*

    317 F.3d 1097 (9th Cir. 2003).......................................................................11

*Wilder v. CBS Corporation, et al.,*

    2016 WL 693070...........................................................................................18

*ZURU, Inc. v. Glassdoor, Inc.,*

    2022 U.S. Dist. LEXIS 121871 (N.D. Cal. July 11, 2022) ...........................9

# $\underline{\text{S{\scriptsize TATUTES}}}$

Cal. Civ. Code § 47(b) ...................................................................................... 16

Cal. Civ. Code § 47(b)(2) .................................................................................. 7

Cal. Code Civ. Proc. § 312 ................................................................................ 8

Cal. Code Civ. Proc. § 340 (c) .......................................................................... 8

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................ 13, 18

Fed. R. Civ. P. 9(b) .................................................................................... 11, 13

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiff Joseph Diaz, Jr. ("Plaintiff" or "Diaz") commenced this action in state court when he filed a complaint on October 7, 2020, in the Superior Court for San Bernardino County, California.  After being removed to this Court the next month, the parties have been actively litigating this case for the past two plus years, engaging in written discovery, taking depositions, filing various motions and attending hearings before this Court. During this time, Defendants Ralph Heredia ("Heredia") and Heredia Boxing Management ("HBM") (collectively, "Defendants") never raised the possibility of filing a Counterclaim in this matter.  Nevertheless, in response to the Second Amended Complaint ("SAC") filed by Diaz on September 2, 2022, Defendants filed an answer and first Counterclaim against Plaintiff. [See Dkts. 145 & 146]

Defendants admit that they bring their Counterclaims in retaliation for Plaintiff exercising his constitutional right to file a lawsuit against Defendants and his First Amendment right to free speech. California's anti-SLAPP statute applies because the challenged acts giving rise to the Counterclaims are in furtherance of free speech, are protected litigation activity, and are in connection with matters of public interest. The allegations in the Counterclaims are rife with unsubstantiated, defamatory and salacious claims which are clearly filed with the intention to promote public scandal, circulate defamatory statements about Plaintiff and his counsel and publicize Diaz's private and confidential information. Defendants wholly fail to state a claim upon which relief may be granted such that the Counterclaims must be dismissed. Because Defendants cannot meet their burden to show a probability of prevailing on the merits, as fully detailed in this Motion, the Counterclaims must also be stricken.

**II.     STATEMENT OF FACTS APPLICABLE TO THIS MOTION**

Defendant Heredia describes the nature of his counterclaims against Diaz as resulting from Heredia's (erroneously) belief that Diaz "maliciously prosecuted this action against Heredia, knowing it to be false and only for purposes of harassment and

to dismantle his reputation ….” “Heredia was unaware that Diaz would be filing suit against him. Instead of resolving this as a professional Diaz decided to welch on his obligations and attempt to intimidate Heredia into submission.” (Dkt 146 ¶ 137.) Similarly, Defendant HBM describes the nature of its counterclaims as arising from Diaz's purported “malicious[] prosecut[ion of] this action against HBM” and statements that Diaz purportedly made to the mediation and in connection with this (and other) litigation. (Dkt 145 ¶ 136.)

Defendant Heredia has asserted causes of action in the Counterclaim for (1) Breach of Oral Contract, (2) Attempted Extortion, (3) Abuse of Process, (4) Defamation, (5) Fraudulent Inducement, and (6) Accounting.  Defendant HBM has asserted three causes of action for (1) Abuse of Process, (2) Defamation/Business Disparagement, and (3) Accounting. Defendants support their allegations by attacking Diaz for engaging in protected activity. Defendants allege, among other things:

- VGC and Diaz implemented a strategy whereby Diaz could … conterminously wage asymmetrical “warfare” against the Heredias' reputation in the boxing community through blatant falsehoods promulgated in this frivolous lawsuit ... (Dkt. No. 146 ¶ 158; Dkt No. 145 ¶ 158.)
- Diaz's declaration under oath, submitted in support of the arbitration proceedings, accuses Ralph and Moses Heredia of stealing. Notably, however, his allegations are all couched in language reflecting that his statements are made under the advice and direction of counsel (“my attorneys have informed me…;” “my attorneys have also informed me…;” “prior to engaging my attorneys, I did not understand the legal and practical significance…”). It has become apparent that Diaz was instructed to make these accusations not because they were true but because they supported the concocted legal strategy, one designed to extort, demoralize, and disparage the Heredias into submission and to walk away from the Boxer-Management Contract and provide Diaz cover so that he could avoid the consequences of his blatant breach (i.e., his contract with MTK) and not have to pay back his debts – a modern day welch scam of titanic proportions. (Dkt. No. 146 ¶ 159; Dkt No. 145 ¶ 159.)
- To understand how insidious the scheme evidenced in this litigation is… Through this lens, it becomes clear that Diaz's allegations regarding the Heredias, which he knew to be false, were made for the sole purpose of

harming Heredia's reputation and preventing him from securing other fighters in the industry. (Dkt. No. 146 ¶¶ 160-161; Dkt No. 145 ¶¶ 160-161.)

- Statements from the Arbitration Transcripts Show Diaz's Knowing Mendacity (Dkt. No. 146 at p. 45, ¶¶ 163-166; Dkt. No. 145 at p. 52, ¶¶ 163-166)

- Diaz knowingly filed a meritless action against Heredia to damage Moses and Ralph Heredia's reputation within the boxing and managerial industry. (Dkt. No. 146 ¶ 197; Dkt. No. 145 ¶ 197.)

- Additional False Allegations Made Against the Heredias by Diaz…Diaz caused his counsel to send a letter to GBP containing the following statements… This is yet another example of the abusive conduct Diaz and VGC have engaged in to further their defamatory campaign against the Heredias… This lawsuit has been advanced on pure greed… the scheme devised by Diaz and VGC was designed to ruin the reputation of Heredias in the boxing community by fabricating allegations that Heredia has "stolen" money and property from Diaz…. (Dkt. No. 146 at p. 69 ¶¶ 189-194; Dkt No. 145 at p. 76 ¶¶ 189-194.)

## III. PROCEDURAL BACKGROUND

On August 15, 2022, the Court issued an Order granting, in part, Defendants' Motions for Judgment on the Pleadings (the "Order"). [See Dkt. 138.]  The Court granted Diaz leave to amend the complaint. [Id.]  Diaz filed a Second Amended Complaint on September 2, 2022. [See Dkt. 144.]

On September 23, 2022, Defendants filed an Answer to Plaintiff's SAC and Counterclaims. [See Dkt. 145 & 146.] After reviewing the lengthy Counterclaims, Plaintiff determined the specious allegations therein were subject to a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), motion to strike pursuant to Rule 12(f), as well as a special motion to strike pursuant to California Code of Civil Procedure section 425.16 pursuant to California's anti-SLAPP statute. [Declaration of Andrew D. White ("White Decl.") ¶4.] Plaintiff sent Defendants a detailed meet and confer letter on October 3, 2022 explaining in detail the basis for his contemplated motions and inviting Defendants to schedule a time for a call to meet and confer pursuant to L.R. 7-3. [Id. at ¶4.]  In order to have a meaningful meet and confer conference, Plaintiff also asked in anticipation of the

1    conference for Defendant to provide their position in writing with citation to legal
2    authority to support their position. [Id. at ¶4.] Defendants did not respond to Plaintiff's
3    meet and confer letter.  As a result, on October 7, 2022, Plaintiff emailed Defendants
4    to confirm Plaintiff had not received a response to the meet and confer letters and
5    would therefore interpret the failure to respond as Defendants' refusal to meet and
6    confer per L.R. 7-3. [Id. at ¶5.]

7         Plaintiff then received a voice message from an attorney named David Keesling
8    who purports to represent Defendants. [Id. at ¶6.] In his voice message, Mr. Keesling
9    stated he is a Partner at the Federal Practice Group and that he had a copy of the meet
10   and confer letters which he stated "looked pretty good."  [Id.] In his message, Mr.
11   Keesling stated he wanted to coordinate a meet and confer conference to resolve the
12   issue presented by Plaintiff and proposed to schedule a conference the next week, on
13   either October 12 or 13, 2022. [Id.] Recognizing a conference on those dates would
14   create a potential problem with Plaintiff's October 14, 2022 deadline to file a response
15   to the Counterclaims, in his message, Mr. Keesling offered to stipulate to extend
16   Plaintiff's filing deadline. [Id.]

17        On October 7, 2022, after receiving Mr. Keesling's phone message, Plaintiff
18   called him back to have a conversation. [Id. at ¶7.] During the conversation, Mr.
19   Keesling offered to draft a stipulation and order to allow Plaintiff a two-week extension
20   from October 14, 2022 to October 28, 2022, to file a response to Defendants'
21   Counterclaims.  [Id.] During this conversation it was also agreed the parties would hold
22   the L.R. 7-3 meet and confer conference on October 14, 2022. [Id.] During this
23   conversation Plaintiff also notified Mr. Keesling that, in the event the parties could not
24   obtain an order from the Court granting a stipulation by the end of the day on
25   Wednesday, October 12, 2022, Plaintiff would need to prepare and file the
26   contemplated motions so time was of the essence in preparing a stipulation and order
27   for filing with the Court. [Id.]
28   ///

PLAINTIFF'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Plaintiff did not receive the draft stipulation and order to extend Plaintiff's deadline to respond to the Counterclaims until Tuesday, October 11, 2022 at 4:03 p.m. [Id. at ¶8.] Plaintiff sent back proposed changes to the draft stipulation on the morning of Wednesday, October 12, 2022, and Defendants filed the stipulation and order the same day.  [Id.]

On Thursday, October 13, 2022, as Plaintiff had not received indication that the order extending the deadline for Plaintiff to respond would be signed by this Court before the October 14, 2022 deadline, and Defendants declined alternative solutions short of filing the two contemplated motions, Plaintiff emailed the Court's Clerk in a final effort to secure an extension of the deadline. [Id. at ¶9.] Thereafter, on October 13, 2022, the Court graciously confirmed the order extending the deadline for Plaintiff to respond was approved and would hit the docket shortly. [Id.]

After Plaintiff received confirmation from the Court that the order extending the deadline for Plaintiff to respond had been approved, on October 13, 2022, Plaintiff emailed Mr. Keesling to notify him the Court had approved the order and attached a copy of the signed order. [Id. at ¶10.] In the same email Plaintiff asked when Mr. Keesling was available the next week to hold an L.R. 7-3 meet and confer conference and provided Plaintiff's availability of October 18 through 20, 2022. [Id.]

Later in the day on October 13, 2022, Plaintiff spoke with Defendants' counsel David Keesling. [Id. at ¶11.] During the call, Mr. Keesling advised he would review his schedule for the next week and respond to Plaintiff's prior email with his availability to schedule a meet and confer conference in the next week. [Id.]

On Tuesday, October 18, 2022, having heard nothing from Defendants' counsel, Plaintiff followed up on previous emails seeking to schedule an L.R. 7-3 meet and confer conference. [Id. at ¶12.]  Plaintiff asked Mr. Keesling if he was available on either October 19 or 20, 2022, to hold a meet and confer conference. [Id.] Plaintiff also advised Mr. Keesling that, to avoid the situation Plaintiff was put in before the stipulation extending Plaintiff's deadline to respond was granted, if the parties were

not able to hold a meet and confer conference by 5:00 p.m. on Friday, October 21, 2022, Plaintiff would interpret that as Defendants' refusal to meet and confer forcing Plaintiff to prepare and file the motions contemplated.  [Id.]

On Monday, October 24, 2022, having received no communication from Defendants' counsel since October 13, 2022, and having failed to respond to Plaintiff's diligent efforts to schedule a timely L.R. 7-3 meet and confer conference, Plaintiff tried to call Mr. Keesling in a final effort to avoid having to burden the Court with this motion. [Id. at ¶13.] Mr. Keesling did not answer Plaintiff's call, so Plaintiff left a detailed voice message. [Id.] As of the preparation of this motion Plaintiff has not received a return call or communication of any kind from Defendants and have not been able to hold an L.R. 7-3 meet and confer conference. [Id.]

Plaintiff is mindful of the admonitions given by the Court in the Order [Dkt. 138], and as it always does, has strived to act with the professionalism this Court expects. [Id. at ¶14.] It is not Plaintiff's intention to burden the Court with unnecessary law and motion practice.  However, the Counterclaims filed by Defendants are so severely deficient and violative of California's anti-SLAPP statutes that Plaintiff was forced to take action to remedy such deficiencies. Plaintiff exhausted all efforts to meet and confer with Defendants pursuant to L.R. 7-3 before filing this motion. [Id. at ¶14.] Despite Plaintiff's efforts, Defendants have forced the filing of this motion.

Defendants' Counterclaims at issue in this motion are just the type of unprofessional, inappropriate and personal attacks on Plaintiff and his counsel that the Court sought to discourage in the Order, and are exactly the type of lawsuit California's anti-SLAPP statute is meant to discourage.  Plaintiff respectfully requests that the Court grant this motion and dismiss the Counterclaims in their entirety based upon Rule 12(b)(6) and/or dismiss or strike the allegations of the Counterclaims as set forth below pursuant to Rule 12(f) and California Code of Civil Procedure §425.16.

///

///

## IV.   DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6).

Under Rule 12(b)(6), a counter-defendant may move to dismiss for failure to state a claim upon which relief can be granted. A counterclaimant must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the claimant pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Here, Defendants have not met their burden.

### A.   Defendants' Counterclaims for Abuse of Process Fail.

Defendants purport to bring abuse of process claims against Plaintiff based on the allegation that Diaz "undertook a specific legal procedure, i.e., he sued [Defendants] in this matter, Case No. 5:20-cv-02332-JWH-KK… Diaz intentionally used this legal procedure for an improper purpose that the procedure was not designed to achieve…" (See Dkt 146 ¶¶ 217-218; Dkt 145 ¶¶ 204-205.) But it is well settled that "the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d 1157, 1169 (1986). "Abuse of process claims include lawsuits involving improper uses of the ***tools*** afforded litigants…" once they are in a lawsuit. Maleti v. Wickers, 82 Cal. App. 5th 181, 230 (2022) (collecting cases) (emphasis in original); see also Bidna v. Rosen, 19 Cal.App.4th 27, 40 (1993). Defendants do not (and could not) make any allegations of misuse of the ***tools*** of litigation in order to support their purported claims for abuse of process. Bidna, 19 Cal.App.4th at 40. Therefore, Defendants' abuse of process claim fails.

In addition, the tort of abuse of process is barred by the litigation privilege, which protects a "publication or broadcast .... in any ... judicial proceeding...." Cal. Civ. Code § 47(b)(2). Section 47(b)(2) is a defense to an abuse of process action. Pollock v. University of Southern California, 112 Cal.App.4th 1416, 1429-30 (2003)

1   (citing <u>Abraham v. Lancaster Community Hospital</u>, 217 Cal.App.3d 796, 824 (1990).)

2   "The privilege is broadly applied to protect most publications within lawsuits provided

3   there is some connection between the lawsuit and the publication." <u>Adams v. Superior</u>

4   <u>Court</u>, 2 Cal.App.4th 521, 529 (1992); <u>Silberg v. Anderson</u>, 50 Cal.3d 205, 212 (1990).

5   "Doubts about the privilege's applicability are resolved in favor of its use." <u>Pollock</u>,

6   112 Cal.App.4th at 1430; <u>Lucky Kim Int'l, Inc. v. SEO in Corp.</u>, 2010 WL 11549638,

7   at *3 (C.D. Cal. June 3, 2010) (finding cause of action for abuse of process arose from

8   litigation activity "because it arises when one uses the court's process for a purpose

9   other than that for which the process was designed").

10       What is more, as discussed below, "it's hard to imagine an abuse of process

11   claim that would not fall under the protection of the [anti-SLAPP] statute." <u>Booker v.</u>

12   <u>Rountree</u>, 155 Cal. App. 4th 1366, 1370 (2007); <u>Rohde v. Wolf</u>, 154 Cal. App. 4th 28,

13   35 (2007) ("Section 425.16 is construed broadly, to protect the right of litigants to the

14   utmost freedom of access to the courts without [the] fear of being harassed

15   subsequently by derivative tort actions."). Therefore, Defendants' abuse of process

16   claim must be dismissed.

17       **B.**   **<u>Defendants' Counterclaims for Defamation/Business Disparagement</u>**

18            **<u>are Barred.</u>**

19        Defendants purport to assert claims for defamation/business disparagement

20   against Plaintiff based on purported statements that they contend were published in the

21   media on December 27, 2020, February 13, 2021 and July 9, 2021. [<u>See</u> Dkt 146 at ¶

22   222; Dkt 145 at ¶ 209.] The statute of limitations for defamation, however, requires

23   that an action be filed within one year of accrual. <u>Shively v. Bozanich</u>, 31 Cal. 4th

24   1230, 1246-47 (2003) (citing <u>Cal. Code Civ. Proc</u>. § 340 (c)). In a claim for defamation,

25   as with other tort claims, the period of limitations commences when the cause of action

26   accrues. <u>Cal. Code Civ. Proc</u>. § 312. It is well settled that a cause of action for

27   defamation accrues at the time the defamatory statement is "published." <u>Bernson v.</u>

28   <u>Browning-Ferris Industries, Inc.</u> (1994) 7 Cal.4th 926, 931 (1994); <u>Jolly v. Eli Lilly &</u>

Co., 44 Cal.3d 1103, 1109 (1988). Therefore, Defendants' defamation claims fail and must be dismissed.

In addition, the statements that Defendants allege are defamatory are: "Watch who you are dealing with cause a lot of people aren't what they make themselves out to me"; "a lot of people that want to take a part of my exposure and talent and make some money off of me because they feel like they can. I mean these guys are all greedy mother f[]' man and its [sic] bull[]"; "for a manager to come in here and try to rob me and take my money is f[]ing wrong"; "Life [sic] been good after I got rid of s[]t managers and got advisors & my own lawyers to protect me. To all the young fighters that aren't knowledgeable make sure you have your own lawyer before signing to any management or promotional company for your best interest." [Dkt 145 ¶ 209; Dkt 146 ¶ 222.] These are undoubtedly statement of opinion.

Statements of opinion are not actionable statements. Indeed, statements of opinion are protected by the First Amendment. Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir. 1995). "Even if a statement of pure opinion is harmful to a person's reputation, it cannot give rise to a claim for defamation." ZURU, Inc. v. Glassdoor, Inc., 2022 U.S. Dist. LEXIS 121871 (N.D. Cal. July 11, 2022) (citing Gardner v. Martino, 563 F.3d 981, 988 (9th Cir. 2009) (affirming dismissal of a defamation claim because the claim was based on statements of "nonactionable opinion"); Summit Bank v. Rogers, 206 Cal. App. 4th 669, 695-96 (2012) ("Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected.").)

Moreover, the statements alleged by Defendants do not specifically refer to either of them. [Dkt 145 ¶ 209; Dkt 146 ¶ 222.]  To be defamatory, "[t]he statement also must specifically refer to or concern the defamed plaintiff in some way." Blatty v. New York Times Co., 42 Cal.3d 1033, 1042 (1986). Defendants' defamation claims fail and must be dismissed.

///

///

1
2

    **C.**    <u>**Defendants' Counterclaims for an Accounting are Improper and Must Be Dismissed.**</u>

3
4
5
6
7
8
9
10
11
12
13

    A cause of action for an accounting requires a showing that a relationship exists between the parties that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. <u>Teselle v. McLoughlin</u>, 173 Cal.App.4th 156, 179 (2009) (citing <u>Brea v. McGlashan</u>, 3 Cal.App.2d 454, 460 (1934)). "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." <u>Teselle</u>, 173 Cal.App.4th at 179 (citing <u>St. James Church of Christ Holiness v. Superior Court</u>, 135 Cal.App.2d 352, 359 (1955)). Here, Defendants allege the sums certain that they purportedly "loaned" to Diaz, which they seek to recover. (Dkt 146 ¶¶ 204, 236-238; Dkt 145 ¶ 217.) Defendants' claims for an accounting are therefore improper and must be dismissed.

14
15

    **D.**    <u>**Defendant Heredia's Breach of Oral Contract Counterclaim is Fatally Uncertain.**</u>

16
17
18
19
20
21
22
23
24

    In the first claim in his SAC, Heredia purports to allege breach of an oral contract by vaguely alleging that he paid monies to certain individuals and entities on behalf of Plaintiff. [Dkt 146 ¶¶ 203-210.] But in order to survive a motion to dismiss a breach of oral contract claim, Heredia "must allege the material terms of an agreement which creates the obligation the defendant is said to have breached." <u>Langan v. United Servs. Auto. Ass'n</u>, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (dismissing a breach of contract claim when the complaint offers "no way for the Court [to] know even generally what the terms of the contract or contracts were.") Heredia has not done so and the claim must be dismissed.

25
26
27
28

    To be sure, Heredia never details the material terms of any oral agreement he supposedly entered into with Diaz. For instance, Heredia fails to allege any facts regarding how the purported contracts were formed, the material terms of the purported agreements including but not limited to any purported repayment terms, and the date(s)

and manner in which Heredia contends that Diaz purportedly breached any oral agreement. See, e.g., N. Cty. Communs Corp. v. Verizon Global Networks, Inc., 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (finding that the defendant did not adequately allege a breach of contract claim where it failed to "plead, among other things, the nature of the contract, dates pertinent to the contract, and other relevant terms that would put [plaintiff] on notice of the basis of" the claim); Gottesman v. Santana, 2017 U.S. Dist. LEXIS 104548, at * 8-9 (S.D. Cal. July 6, 2017) (finding allegations insufficient to allow a party to appropriately respond when, "[a]mong other things, these allegations do not provide any specifics regarding the material terms of the verbal contract between [the parties], much less when this contract was allegedly formed and breached").) To the contrary, Heredia admits in his allegations that "Diaz became angry and said he did not want to pay Mr. St. Pierre," yet, against Diaz's wishes, "Heredia sent $2,000.00 to Mr. St. Pierre to mitigate the situation." [Dkt 146 ¶¶ 175-176.] Heredia's own allegations disprove the existence of an oral agreement with Diaz. Heredia has failed to adequately plead a claim for breach of oral contract.

### E.    Defendant Heredia's Counterclaim for Attempted Extortion Fails.

Heredia attempts to bring a claim for "attempted extortion" against Plaintiff alleging that "Diaz, or an agent of Diaz's at Diaz's specific direction" sent Heredia a "threatening communication" for purposes of obtaining "the cessation of any legal claims or defenses against Diaz by Heredia." [Dkt 146 ¶¶ 212-215.] While it is not clear if there even is a recognizable cause of action for "attempted extortion," California courts recognize extortion as civil tort cause of action for "moneys obtained by duress, a form of fraud." Fuhrman v. Cal Satellite Sys., Inc., 179 Cal. App. 3d 408 (1986) (disapproved on other grounds by Silberg v. Anderson, 50 Cal. 3d 205 (1990)). "Because extortion is in substance a fraud claim, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b), which requires that allegations of fraud be made 'with particularity.'" Media v. Barlow, 2021 U.S. Dist. LEXIS 243264, at *37 (C.D. Cal. May 1, 2021) (citing Fed. R. Civ. P. 9(b)). To satisfy

this standard, plaintiffs must allege "the who, what, when, where, and how of the misconduct charged." <u>Vess v. Ciba-Geigy Corp.</u> USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, Heredia purports to bring a claim for "attempted extortion," but fails to make the necessary allegations to comply with the heightened pleading requirements. [Dkt 146 ¶¶ 212-215.]

Moreover, Heredia fails to specifically allege what, if any, damages he suffered as a result of the purported attempted extortion. <u>Fuhrman</u>, 179 Cal.App.3d at 426 (referring to the failure to pleading damages as the plaintiff's extortion claim's "fatal flaw"); <u>Am. Shooting Ctr., Inc. v. Secfor Int'l</u>, 2015 WL 1914924, at *4, *10 (S.D. Cal. Apr. 27, 2015) (dismissing counterclaim where the counterclaimant failed to allege "damages . . . proximately caused by the alleged attempted extortion"); <u>Raiser v. Ventura Coll. of L.</u>, 2009 WL 10692058, at *2-3 (C.D. Cal. Sept. 1, 2009) (relying on <u>Fuhrman</u> and dismissing an "attempted extortion" claim for failure to allege damages). To the contrary, Heredia admits that he did not succumb to the purported attempted extortion and, instead of stopping "defending this legal action brought by Diaz," Heredia filed counterclaims. [Dkt. 146 ¶¶ 202, 212-215.] Heredia's claim for attempted extortion is not sufficiently plead and must fail.

## F.    <u>The Economic Loss Doctrine Bars Defendant Heredia's Counterclaim for Fraudulent Inducement.</u>

Heredia alleges that "[a]s a result of Diaz's fraudulent concealment of his anticipatory breach of his agreement with the Heredias, and abandonment of his obligations to repay Heredia for the financial assistance Heredia had provided him with, Heredia has suffered actual damages." [Dkt. 146 ¶ 234.] The economic loss rule limits a party to a contract "to recover[ing] in contract for purely economic loss due to disappointed expectations," rather than in tort, "unless he can demonstrate harm above and beyond a broken contractual promise." <u>Robinson Helicopter Co. v. Dana Corp</u>., 34 Cal. 4th 979 (2004). Stated differently, a party to a contract generally cannot recover for pure economic loss—i.e., damages that are solely monetary—that resulted from a

breach of contract unless the party can show a violation of some independent duty arising in tort. <u>Erlich v. Menezes</u>, 21 Cal. 4th 543 (1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.") (quoting <u>Freeman & Mills, Inc. v. Belcher Oil Co</u>., 11 Cal. 4th 85 (1995)). The rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." <u>Robinson</u>, 34 Cal. 4th at 988. Given that Heredia has only alleged he suffered economic losses, the economic loss rule bars his fraudulent concealment claim. <u>Robinson</u>, 34 Cal. 4th at 988.

In addition, Heredia has fatally failed to allege with the requisite particularity the elements of this claim. <u>Fed. R. Civ. P</u>. 9(b). Heredia does not allege with any particularity the dates, amounts of monies, or the circumstances under which Heredia contends that Diaz supposedly fraudulently induced Heredia to provide him with the monies. [Dkt. 146 ¶ 229-234.] Heredia's purported claim for fraudulent inducement must therefore be dismissed.

## V. DEFENDANTS' COUNTERCLAIMS ARISE FROM PROTECTED ACTIVITY AND MUST BE STRICKEN

All of Defendants' counterclaims should not just be dismissed but also stricken pursuant to California's anti-SLAPP statute and fees awarded.

California Code of Civil Procedure section 425.16(b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition … under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." <u>Cal. Civ. Proc. Code</u> § 425.16(b)(1). Section 425.16, "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 839 (9th Cir. 2001). While

"framed as a rule of state procedure, California's anti-SLAPP statute protects substantive rights and thus applies in federal court." Maloney v. T3Media, Inc., 94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) (citing U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999). Anti-SLAPP motions may be brought against California state law claims filed in federal court. See Planned Parenthood Federation of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828 (9th Cir. 2018); Herring Networks, Inc. v. Maddow, 8 F.4th 1148, 110 Fed. R. Serv. 3d 341 (9th Cir. 2021); U.S. ex rel. Newsham, 190 F.3d at 970-73; Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam).

A court evaluates an anti-SLAPP motion in two steps. Sarver v. Chartier, 813 F.3d 891, 901 (9th Cir. 2016). First, the defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech." Id. The showing of protected activity is "not an onerous one." Okorie v. L.A. Unified Sch. Dist., 14 Cal. App. 5th 574, 590 (2017). Indeed, the Ninth Circuit Court of Appeals has consistently determined that California's anti-SLAPP statute must be "construed broadly." Hilton v. Hallmark Cards, 599 F.3d 894, 905 (9th Cir. 2010); Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) ("we follow the California Legislature's direction that the anti-SLAPP statute be 'construed broadly'"); Manufactured Home Communities, Inc. v. County of San Diego, 655 F.3d 1171 (9th Cir. 2011) ("[t]he Legislature instructed courts that the statute 'shall be construed broadly'"). Second, the court evaluates whether plaintiff has "establish[ed] a reasonable probability that the plaintiff will prevail on his or her ... claim." Sarver, 813 F.3d at 901. In the second step, the burden is on the plaintiff to "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. ... If [it is] not, the claim is stricken." Baral v. Schnitt, 1 Cal.5th 376, 396 (2016). In making this showing, the non-moving parties must show that they have a reasonable probability of surviving defenses, specifically including the litigation privilege of California Civil Code Section

14

47(b). <u>Kashian v. Harriman</u>, 98 Cal. App. 4th 892, 906 (2002). If the motion is "based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." <u>Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress</u>, 890 F.3d at 834. Both prongs are satisfied here.

A.    **<u>Defendants' Counterclaims are Based on the Filing of Diaz's Complaint and Statements Made During Litigation–A Protected Activity.</u>**

California law holds that "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti–SLAPP statute." <u>Contreras v. Dowling</u>, 5 Cal. App. 5th 394, 409 (2016) (quoting <u>Cabral v. Martins</u>, 177 Cal. App. 4th 471, 480 (2009)). California "courts have adopted a fairly expansive view of what constitutes litigation related activities within the scope of section 425.16." <u>Neville v. Chudacoff</u>, 160 Cal. App. 4th 1255, 1268 (2008). This includes "[s]tatements made in litigation, or in connection with litigation." <u>Bergstein v. Stroock & Stroock & Lavan LLP,</u> 236 Cal. App. 4th 793, 803 (2015). Indeed, the "[p]leadings and process in a case are generally viewed as privileged communications." <u>Navellier v. Sletten</u>, 106 Cal.App.4th 763, 770 (2003). It is well-settled law that the act of filing a lawsuit is protected petitioning activity within the meaning of the California anti-SLAPP statute. <u>Action Apartment Ass'n v. City of Santa Monica</u>, 41 Cal. 4th 1232, 1249 (2007) (quoted in <u>James Glidewell Dental Ceramics v. Keating Dental Arts</u>, No. SACV11-01309-DOC, 2013 WL 655314, at *13 (C.D. Cal. Feb. 21, 2013))

Here, the fact that Diaz's alleged conduct is protected litigation activity is confirmed by the Counterclaims' own allegations. (Dkt. No. 145 ¶¶ 158-166, 189-197; Dkt No. 146 ¶ 158-166, 189-197.) Defendants' counterclaims are a plain attempt "to thwart [Diaz's] fundamental right of access to the courts ...." <u>Taheri Law Group v. Evans</u>, 160 Cal. App. 4th 482, 491 (2008); <u>Contreras</u>, 5 Cal. App. 5th at 399

15

("Contreras's cause of action against Dowling arises out of protected activity, because the only actions Dowling himself is alleged to have taken are all ***communicative acts by an attorney representing clients in pending or threatened litigation. Such acts are unquestionably protected***.") (Emphasis added).   Accordingly, California's anti-SLAPP statute is applicable to the Counterclaims made by Defendants herein and must be stricken.

### B.   Plaintiff's Alleged Actions are Protected by the Litigation Privilege.

California's litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241 (2007) (alteration in original); see also Cal. Civ. Code § 47(b). This privilege has been summarized as follows: "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." Silberg v. Anderson, 50 Cal. 3d 205, 219–20 (1990). "The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." Olsen v. Harbison, 191 Cal. App. 4th 325, 333 (2010); see also Rubin v. Green, 4 Cal. 4th 1187, 1194-95 (1993) (citing cases applying the litigation privilege of Section 47 broadly to include "communications with 'some relation' to an anticipated lawsuit").

The litigation privilege bars each claim against Diaz because, as here, "where the gravamen of the complaint is a privileged communication ... the privilege extends to necessarily related noncommunicative acts." Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006). Indeed, the privilege has been applied specifically in the context of abuse of process claims. Pollock v. University of Southern California, 112 Cal.App.4th 1416,

16

1431 (2003) (declaration "functions as written testimony," is a "communication, not conduct," and "is exactly the sort of communication the privilege is designed to protect"); Booker v. Rountree, 155 Cal. App. 4th 1366, 1370 (2007) ("it's hard to imagine an abuse of process claim that would not fall under the protection of the [anti-SLAPP] statute."); Rohde v. Wolf, 154 Cal. App. 4th 28, 35 (2007) ("Section 425.16 is construed broadly, to protect the right of litigants to the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions.").

Here, all of the claims against Diaz arise out of conduct or statements made during or contemplating litigation, including Diaz's declaration under oath. These are exactly the types of communications the litigation privilege is designed to protect, and the anti-SLAPP statute is meant to preserve. The California Supreme Court "has definitively held [that] statements in relation to pending or upcoming litigation (a 'public issue') are covered by Section 425.16." Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123 (1999) ("Any matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect.") For such communications there is no "separate requirement that they be shown to be 'an issue of public significance.'" Id. Indeed, several courts have held that a letter or communications, sent in connection with pending or anticipated litigation is a communication protected under section 425.16(e)(1) and (e)(2). See, e.g., Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002) (intent to sue notices are protected); Briggs, 19 Cal. 4th at 1123 ("communications preparatory to or in anticipation of the bringing an action" are protected). The statements at issue here and upon which the Counterclaims are based are all protected by both SLAPP suit protection and the litigation privilege.

///

1  **C.**   **Defendants' Cannot Meet Their Burden to Show That They Are**
2  **Likely to Prevail on the Merits of Any of Their Counterclaims**

3  Because Plaintiff has satisfied the threshold showing above, the burden now
4  shifts to Defendants to demonstrate that "there is a reasonable probability [they] will
5  prevail on the merits at trial" by "show[ing] both that the claim is legally sufficient and
6  there is admissible evidence that, if credited, would be sufficient to sustain a favorable
7  judgment." <u>McGarry v. Univ. of San Diego</u>, 154 Cal. App. 4th 97, 111 (2007). This
8  second step is a "summary judgment-like" analysis. <u>Baral</u>, 1 Cal.5th at 384.  "[A]
9  plaintiff opposing an Anti-SLAPP motion cannot rely on allegations in the complaint,
10 but must set forth ***evidence that would be admissible at trial***." <u>Overstock.com, Inc. v.</u>
11 <u>Gradient Analytics, Inc.</u>, 151 Cal. App. 4th 688, 699 (2007) (emphasis added). Plaintiffs
12 must proffer a prima facie showing of facts supporting judgment in their favor.
13 <u>Navellier</u>, 29 Cal. 4th at 89.

14 Here, Defendants cannot meet their burden.  Plaintiff's right to file a lawsuit is
15 undoubtedly protected and privileged activity.  Further, Defendants cannot establish,
16 with admissible evidence, a reasonable probability of prevailing because, for the same
17 reasons explained above supporting Plaintiff's motion to dismiss each cause of action
18 based upon Rule 12(b)(6), Defendants' claims fail ***as a matter of law***. <u>Wilder v. CBS</u>
19 <u>Corporation, et al</u>, 2016 WL 693070, at *11 (granting anti-SLAPP motion where
20 plaintiff's interference claim failed pursuant to Rule 12(b)(6) motion).

21 Accordingly, Defendants cannot meet their burden to make a prima facie
22 showing that the factual allegations in their Counterclaim have merit. <u>Graham-Sult v.</u>
23 <u>Clainos</u>, (2014) 756 F.3d 724, 740-741. For each of these reasons, the Court should
24 strike the Counterclaims pursuant to California's Anti-SLAPP statute.

25 ///
26 ///
27 ///
28 ///

### D.   Diaz is Entitled to Attorneys' Fees Incurred in Bringing this anti-SLAPP Motion.

The California anti-SLAPP statute mandates that the "prevailing defendant on a special motion to strike ***shall*** be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added). Thus, an award of attorneys' fees to the prevailing defendant is mandatory. The attorneys' fees provision was intended "to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001) (internal quotations and citation omitted). This provision applies in federal court. See U.S. ex rel. Newsham, 190 F.3d at 972-73; New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) (awarding mandatory attorneys' fees to moving party); see also Metabolife Intern., Inc. v. Wornick 213 F.Supp.2d 1220 (S.D. Cal. 2002) (awarding "billed fees of $90,270, unbilled fees of $4,410, expenses of $3,893, fee application fees of $13,680, for a total of $112,253"); Rosenaur v. Scherer 88 Cal. App. 4th 260, 273 (2001) (affirming award of "costs and attorney fees in the total amount of $65,386.61"). Accordingly, Diaz requests that the Court also award his attorneys' fees in the amount of $12,075.00 incurred as a result of bringing this anti-SLAPP motion. [White Decl. ¶¶15-16.]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion to dismiss the Counterclaims pursuant to Rule 12(b)(6) and strike all of Defendants' claims pursuant to California's anti-SLAPP statute. Plaintiff also

///
///
///
///
///

1 | respectfully requests that the Court order Defendants to pay Plaintiff for his attorneys'
2 | fees.

3 |                                   *Respectfully submitted*,

4 | Dated:  October 28, 2022          **VGC, LLP**

5 |

6 |                          By:___*/s/ Andrew D. White*_____

7 |                                James L. Greeley
                                   Diyari Vázquez
8 |                                Andrew D. White
                                   Gina Simas
9 |                                Attorneys for Plaintiff,
10 |                               JOSEPH DIAZ, JR.

11 |

1

2

## **CERTIFICATE OF SERVICE**

3

4

5

6

7

I, Diyari Vázquez, hereby certify that on October 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document to the non-CM/ECF participants indicated on the Manual Notice List.

8

9

10

Dated: <u>October 28, 2022</u>          By:_____/s/_*Diyari Vázquez*_____

                                             Diyari Vázquez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE