From
    Andrew White
To
    rdhungana@fedpractice.com; emontalvo@fedpractice.com
Cc
    'Daisy Chung'; 'Lou Michels'; 'Laura Berry'; 'Saroja Koneru'; 'Cristina Lagarde'; 'Diyari Vazquez'; 'Gina Simas'
Recipients
    rdhungana@fedpractice.com; emontalvo@fedpractice.com; DChung@fedpractice.com; lmichels@fedpractice.com; lberry@fedpractice.com; SKoneru@fedpractice.com; clagarde@fedpractice.com; dvazquez@vgcllp.com; gsimas@vgcllp.com

Rajan/Eric,

We have not received a response from you to our meet and confer letters. We will therefore interpret this as your refusal to meet and confer per L.R. 7-3. Please let us know if we are somehow mistaken.

_____

**Andrew D. White, Esq. - Litigation Partner**

**1515 7th Street, No. 106**

**Santa Monica, CA 90401**

**m: 714.907.5032 | email: awhite@vgcllp.com**

www.vgcllp.com

The contents of this e-mail message and its attachments are intended solely for the addressee(s). This e-mail transmission may be confidential and subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments. UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (18 U.S.C. 2510-2522).

**From:** Andrew White <awhite@vgcllp.com> **Sent:** Monday, October 3, 2022 4:30 PM **To:** rdhungana@fedpractice.com; emontalvo@fedpractice.com **Cc:** 'Erik Cox' <ECox@fedpractice.com>; 'Daisy Chung' <DChung@fedpractice.com>; 'Lou Michels' <lmichels@fedpractice.com>; 'Laura Berry' <lberry@fedpractice.com>; 'Saroja Koneru' <SKoneru@fedpractice.com>; 'Cristina Lagarde' <clagarde@fedpractice.com>; 'Diyari Vazquez' <dvazquez@vgcllp.com> **Subject:** Joseph Diaz, Jr. v. Ralph Heredia, et al.

Rajan/Eric,

Please see attached letters.

_____

**Andrew D. White, Esq. - Litigation Partner**

**1515 7th Street, No. 106**

**Santa Monica, CA 90401**

**m: 714.907.5032 | email: awhite@vgcllp.com**

www.vgcllp.com

The contents of this e-mail message and its attachments are intended solely for the addressee(s). This e-mail transmission may be confidential and subject to privilege protecting communications between attorneys or solicitors and their clients. If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments. UNAUTHORIZED INTERCEPTION PROHIBITED BY FEDERAL LAW (18 U.S.C. 2510-2522).

# image001.png

# image001.png

# 2022-10-03 Letter re anti-SLAPP.pdf

# 2022-10-03 Letter re anti-SLAPP.pdf

NEW YORK | LOS ANGELES | SAN FRANCISCO

ANDREW D. WHITE | AWHITE@VGCLLP.COM | T: 714-907-5032 October 3, 2022 VIA ELECTRONIC MAIL ONLY Eric S. Montalvo Rajan O. Dhungana Federal Practice Group 1750 K Street, N.W., Suite 900 Washington, D.C. 20006 Emontalvo@fedpractice.com rdhungana@fedpractice.com

Re: Diaz v. Heredia, Case No. 5:20-cv-02332-JWH-KKx Local Rule 7-3 Meet and Confer re Special Motion to Strike

Eric and Rajan: This letter shall serve as Mr. Diaz's attempt to meet and confer pursuant to Local Rule 7-3 prior to the filing of his special motion to strike pursuant to California Code of Civil Procedure section 425.16. The continued maintenance of Ralph Heredia's and Heredia Boxing Management's (collectively, "Defendants") counterclaims against Mr. Diaz will expose the Defendants, first, to dismissal and an award of my attorneys' fees under California's anti-SLAPP statute and, then, expose both the Defendants and their counsel of record to damages for malicious prosecution based on the harm caused by the Defendants requiring Mr. Diaz to "expend financial and emotional resources to defend against a baseless claim." Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1131 (1990). As you well know, California's anti-SLAPP statute authorizes a special motion to strike against "SLAPP" lawsuits (Strategic Lawsuits Against Public Participation). The express purpose of the law is to quickly identify and dispose of meritless lawsuits "brought primarily to chill the valid exercise of [a party's] constitutional rights of freedom of speech and petition for the redress of grievances," which expressly includes actions taken in the context of legal representation. Cal. Civ. Proc. Code § 425.16(a). In evaluating an anti-SLAPP motion, courts engage in a two-step analysis. In the first step, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). The showing of protected activity is "not an onerous one." Okorie v. L.A. Unified Sch. Dist., 14 Cal. App. 5th 574, 590 (2017). Indeed, the Ninth Circuit Court of Appeals has consistently determined that California's anti-SLAPP statute must be "construed broadly." Hilton v. Hallmark

mailto:Emontalvo@fedpractice.com
mailto:rdhungana@fedpractice.com

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re Special Motion to Strike Page 2 Cards, 599 F.3d 894, 905 (9th Cir. 2010); Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) ("we follow the California Legislature's direction that the anti-SLAPP statute be 'construed broadly'"); Manufactured Home Communities, Inc. v. County of San Diego, 655 F.3d 1171 (9th Cir. 2011) ("[t]he Legislature instructed courts that the statute 'shall be construed broadly'"). "If the court determines relief is sought based on allegations arising from activity protected by the statute, it proceeds to the second step." Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Assn., 13 Cal. App. 5th 757, 776 (2017). In the second step, the burden is on the plaintiff to "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. ... If [it is] not, the claim is stricken." Baral v. Schnitt, 1 Cal.5th 376, 396 (2016) (emphasis added). A. Mr. Diaz's right to file a lawsuit and statements made by his attorneys in the lawsuit

are protected activity. California law holds that "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti–SLAPP statute." Contreras v. Dowling, 5 Cal. App. 5th 394, 409 (2016) (quoting Cabral v. Martins, 177 Cal. App. 4th 471, 480 (2009)). California "courts have adopted a fairly expansive view of what constitutes litigation related activities within the scope of section 425.16." Neville v. Chudacoff 160 Cal. App. 4th 1255, 1268 (2008). This includes "[s]tatements made in litigation, or in connection with litigation." Bergstein v. Stroock & Stroock & Lavan LLP, 236 Cal. App. 4th 793, 803 (2015). Indeed, the "[p]leadings and process in a case are generally viewed as privileged communications." Navellier v. Sletten, 106 Cal.App.4th 763, 770 (2003). The fact that Mr. Diaz's alleged conduct was protected litigation activity is confirmed by the counterclaim's own allegations that:

• VGC and Diaz implemented a strategy whereby Diaz could … conterminously wage asymmetrical "warfare" against the Heredias' reputation in the boxing community through blatant falsehoods promulgated in this frivolous lawsuit ... (Dkt. No. 146 ¶ 158; Dkt No. 145 ¶ 158.)

• Diaz's declaration under oath, submitted in support of the arbitration proceedings, accuses Ralph and Moses Heredia of stealing. Notably, however, his allegations are all couched in language reflecting that his statements are made under the advice and direction of counsel ("my attorneys have informed me…;" "my attorneys have also informed me…;" "prior to engaging my attorneys, I did not understand the legal and practical significance…"). It has become apparent that Diaz was instructed to make these accusations not because they were true but because they supported the concocted legal strategy, one designed to extort, demoralize, and disparage the Heredias into submission and to walk away from the Boxer- Management Contract and provide Diaz cover so that he could avoid the consequences of his blatant breach (i.e., his contract with MTK) and not have to pay back his debts – a modern day welch scam of titanic proportions. (Dkt. No. 146 ¶ 159; Dkt No. 145 ¶ 159.)

• To understand how insidious the scheme evidenced in this litigation is… Through this lens, it becomes clear that Diaz's allegations regarding the Heredias, which he knew to be false,

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re Special Motion to Strike Page 3

were made for the sole purpose of harming Heredia's reputation and preventing him from securing other fighters in the industry. (Dkt. No. 146 ¶¶ 160-161; Dkt No. 145 ¶¶ 160-161.)

- Statements from the Arbitration Transcripts Show Diaz's Knowing Mendacity (Dkt. No. 146 at p. 45, ¶¶ 163-166; Dkt. No. 145 at p. 52, ¶¶ 163-166)

- Diaz knowingly filed a meritless action against Heredia to damage Moses and Ralph Heredia's reputation within the boxing and managerial industry. (Dkt. No. 146 ¶ 197; Dkt. No. 145 ¶ 197.)

- Additional False Allegations Made Against the Heredias by Diaz…Diaz caused his counsel to send a letter to GBP containing the following statements… This is yet another example of the abusive conduct Diaz and VGC have engaged in to further their defamatory campaign against the Heredias… This lawsuit has been advanced on pure greed… the scheme devised by Diaz and VGC was designed to ruin the reputation of Heredias in the boxing community by fabricating allegations that Heredia has "stolen" money and properly from Diaz…. (Dkt. No. 146 at p. 69 ¶¶ 189-194; Dkt No. 145 at p. 76 ¶¶ 189-194.)

Defendants' counterclaims are a plain attempt "to thwart [Mr. Diaz's] fundamental right of access to the courts ...." Taheri Law Group v. Evans, 160 Cal. App. 4th 482, 491 (2008); Contreras, 5 Cal. App. 5th at 399 ("Contreras's cause of action against Dowling arises out of protected activity, because the only actions Dowling himself is alleged to have taken are all communicative acts by an attorney representing clients in pending or threatened litigation. Such acts are unquestionably protected.") (Emphasis added). B. Mr. Diaz's alleged actions are protected by the litigation privilege. California's litigation privilege applies to "any communication (1) made in judicial or quasi- judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241 (2007) (alteration in original); see also Cal. Civ. Code § 47(b). This privilege has been summarized as follows: "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." Silberg v. Anderson, 50 Cal. 3d 205, 219–20 (1990). "The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." Olsen v. Harbison, 191 Cal. App. 4th 325, 333 (2010); see also Rubin v. Green, 4 Cal. 4th 1187, 1194-95 (1993) (citing cases applying the litigation privilege of Section 47 broadly to include "communications with 'some relation' to an anticipated lawsuit"). The litigation privilege will bar each claim against Mr. Diaz because, as here, "where the gravamen of the complaint is a privileged communication ... the privilege extends to necessarily related noncommunicative acts." Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006). Indeed, the privilege has been applied specifically in the context of abuse of process claims. Pollock v. University of Southern California, 112 Cal.App.4th 1416, 1431 (2003) (declaration "functions as written testimony," is a "communication, not conduct," and "is exactly the sort of communication the privilege is designed to protect"); Booker v. Rountree, 155 Cal. App. 4th 1366, 1370 (2007) ("it's

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re Special Motion to Strike Page 4 hard to imagine an abuse of process claim that would not fall under the protection of the [anti- SLAPP] statute."); Rohde v. Wolf, 154 Cal. App. 4th 28, 35 (2007) ("Section 425.16 is construed broadly, to protect the right of litigants to the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions."). Mr. Diaz will succeed on his anti- SLAPP motion to strike and, once he does, will be entitled to a mandatory award of its attorneys' fees and costs.

C. Defendants will not be able to meet their burden to show a probability of prevailing on the merits.

Given that Mr. Diaz's right to file a lawsuit is undoubtedly protected and privileged activity, the burden will shift to Defendants to "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. ..." Baral v. Schnitt, 1 Cal. 5th at 396. As detailed in the concurrently served meet and confer letter regarding the fatal deficiencies in Defendants' counterclaims, Defendants will be unable to meet their burden. D. Mr. Diaz will be entitled to mandatory attorneys' fees. As set forth above, the counterclaim will be a dismissed pursuant to the anti-SLAPP statute. Under California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney[] fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 971 (9th Cir. 1999) ("The prevailing party on a special motion to strike is entitled to attorney's fees and costs to compensate them for the expense of responding to the SLAPP suit and the motion.")

To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." Graham-Sult v. Clainos, 756 F.3d 724, 752 (9th Cir. 2014) (quoting Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi, 141 Cal. App. 4th 15, 19 (2006); see also Metabolife Intern., Inc. v. Wornick 213 F.Supp.2d 1220 (S.D. Cal. 2002) (awarding "billed fees of $90,270, unbilled fees of $4,410, expenses of $3,893, fee application fees of $13,680, for a total of $112,253"); Rosenaur v. Scherer 88 Cal. App. 4th 260, 273 (2001) (affirming award of "costs and attorney fees in the total amount of $65,386.61"). We therefore ask that Defendants voluntarily dismiss their counterclaims. We are hopeful we can work to resolve these issues without the need of court intervention. To that end, please let me know a convenient time for a call to discuss on or before Wednesday, October 5, 2022. In an effort to have a meaningful meet and confer, we ask that, in anticipation of a phone call, you please provide us with your position in writing along with any legal authority to support that position. If we do not hear from you, we will assume that you are refusing to further meet and confer and will move forward with preparing and filing Mr. Diaz's motions.

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re Special Motion to Strike Page 5 In the meantime, please do not hesitate to contact us with any questions. Very truly yours,

Andrew D. White Litigation Partner VGC, LLP

- A. Mr. Diaz's right to file a lawsuit and statements made by his attorneys in the lawsuit are protected activity.
- B. Mr. Diaz's alleged actions are protected by the litigation privilege.
- California's litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connect...
- The litigation privilege will bar each claim against Mr. Diaz because, as here, "where the gravamen of the complaint is a privileged communication ... the privilege extends to necessarily related noncommunicative acts." Rusheen v. Cohen, 37 Cal. 4th ...
- C. Defendants will not be able to meet their burden to show a probability of prevailing on the merits.
- D. Mr. Diaz will be entitled to mandatory attorneys' fees.

# 2022-10-03 Meet and Confer LTR re MTD and MTS.pdf

# 2022-10-03 Meet and Confer LTR re MTD and MTS.pdf

ANDREW D. WHITE | AWHITE@VGCLLP.COM | T: 714-907-5032 October 3, 2022 VIA ELECTRONIC MAIL ONLY Eric S. Montalvo Rajan O. Dhungana Federal Practice Group 1750 K Street, N.W., Suite 900 Washington, D.C. 20006 Emontalvo@fedpractice.com rdhungana@fedpractice.com

Re: Diaz v. Heredia, Case No. 5:20-cv-02332-JWH-KKx Local Rule 7-3 Meet and Confer re Motion to Dismiss and Motion to Strike

Eric and Rajan: This letter shall serve as Mr. Diaz's attempt to meet and confer pursuant to Local Rule 7-3 prior to the filing of his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike pursuant to Federal Rule of Civil Procedure 12(f). A. Defendants' Counterclaims are Subject to Dismissal Under Federal Rule of Civil Procedure 12(b)(6), a counter-defendant may move to dismiss for failure to state a claim upon which relief can be granted. A counterclaimant must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the claimant pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Defendants Ralph Heredia and Heredia Boxing Management (collectively, "Defendants") have not met these standards.

1. Defendants' Counterclaims for Abuse of Process Lack Merit and Will Fail It is well settled that "the mere filing or maintenance of a lawsuit—even for an improper purpose— is not a proper basis for an abuse of process action." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d 1157, 1169 (1986). "Abuse of process claims include lawsuits involving improper uses of the tools afforded litigants…" once they are in a lawsuit. Maleti v. Wickers, 82 Cal. App. 5th 181, 230 (2022) (collecting cases) (emphasis in original); see also Bidna v. Rosen, 19 Cal.App.4th 27, 40 (1993). Defendants' abuse of process claims are based

mailto:Emontalvo@fedpractice.com
mailto:rdhungana@fedpractice.com

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re MTD and MTS Page 2 on the allegation that Mr. Diaz "undertook a specific legal procedure, i.e., he sued [Defendants] in this matter, Case No. 5:20-cv-02332-JWH-KK.… Diaz intentionally used this legal procedure for an improper purpose that the procedure was not designed to achieve…" (Dkt 146 ¶¶ 217-218; Dkt 145 ¶¶ 204-205). Defendants do not (and could not) make any allegations of misuse of the tools of litigation in order to support their purported claims for abuse of process. Bidna, 19 Cal.App.4th at 40. Therefore, Defendants' abuse of process claim will fail. In addition, the tort of abuse of process is barred by the litigation privilege, which protects a "publication or broadcast …. in any … judicial proceeding...." Cal. Civ. Code § 47(b)(2). Section 47(b)(2) is a defense to an abuse of process action. Pollock v. University of Southern California, 112 Cal.App.4th 1416, 1429-30 (2003) (citing Abraham v. Lancaster Community Hospital, 217 Cal.App.3d 796, 824 (1990).) "The privilege is broadly applied to protect most publications within lawsuits provided there is some connection between the lawsuit and the publication." Adams v. Superior Court, 2 Cal.App.4th 521, 529 (1992); Silberg v. Anderson, 50 Cal.3d 205, 212 (1990). "Doubts about the privilege's applicability are resolved in favor of its use." Pollock, 112 Cal.App.4th at 1430; Lucky Kim Int'l, Inc. v. SEO in Corp., 2010 WL 11549638, at *3 (C.D. Cal. June 3, 2010) (finding cause of action for abuse of process arose from litigation activity "because it arises when one uses the court's process for a purpose other than that for which the process was designed"). What is more, as discussed in the concurrently served meet and confer letter regarding Mr. Diaz's anti-SLAPP motion to strike, "it's hard to imagine an abuse of process claim that would not fall under the protection of the [Anti-SLAPP] statute." Booker v. Rountree, 155 Cal. App. 4th 1366, 1370 (2007); Rohde v. Wolf, 154 Cal. App. 4th 28, 35 (2007) ("Section 425.16 is construed broadly, to protect the right of litigants to the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions."). Therefore, Defendants' abuse of process claim will be stricken, and Mr. Diaz will be entitled to collect his attorneys' fees.

2. Defendants' Counterclaims for Defamation/Business Disparagement are Barred

Defendants admit that Mr. Diaz's statements that they contend are defamatory were published in the media on December 27, 2020, February 13, 2021 and July 9, 2021. The statute of limitations for defamation, however, requires that an action be filed within one year of accrual. Shively v. Bozanich, 31 Cal. 4th 1230, 1246-47 (2003) (citing Cal. Code Civ. Proc. § 340 (c)). In a claim for defamation, as with other tort claims, the period of limitations commences when the cause of action accrues. Cal. Code Civ. Proc. § 312. It is well settled that a cause of action for defamation accrues at the time the defamatory statement is "published." Bernson v. Browning-Ferris Industries, Inc. (1994) 7 Cal.4th 926, 931 (1994); Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109 (1988). Therefore, Defendants' defamation claims will fail. In addition, the statements that Defendants allege are defamatory are statements of opinion and therefore not actionable statements. Indeed, statements of opinion are protected by the First Amendment. Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir. 1995). "Even if a statement of pure opinion is harmful to a person's reputation, it cannot give rise to a claim for defamation." ZURU, Inc. v. Glassdoor, Inc., 2022 U.S. Dist. LEXIS 121871 (N.D. Cal. July 11, 2022) (citing Gardner v. Martino, 563 F.3d 981, 988 (9th Cir. 2009) (affirming dismissal of a defamation claim

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re MTD and MTS Page 3 because the claim was based on statements of "nonactionable opinion"); Summit Bank v. Rogers, 206 Cal. App. 4th 669, 695-96 (2012) ("Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected.").) And the statements alleged by Defendants do not specifically refer to either of them. To be defamatory, "[t]he statement also must specifically refer to or concern the defamed plaintiff in some way." Blatty v. New York Times Co., 42 Cal.3d 1033, 1042 (1986). Defendants' defamation claims will fail.

3. Defendants' Counterclaims for an Accounting are Improper A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. Teselle v. McLoughlin, 173 Cal.App.4th 156, 179 (2009) (citing Brea v. McGlashan, 3 Cal.App.2d 454, 460 (1934)). "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." Teselle, 173 Cal.App.4th at 179 (citing St. James Church of Christ Holiness v. Superior Court, 135 Cal.App.2d 352, 359 (1955)). Here, Defendants allege the sums certain that they purportedly "loaned" to Mr. Diaz, which they seek to recover. (Dkt 146 ¶ 204; Dkt 145 ¶ 217.) Defendants' request for an accounting is therefore improper.

4. Heredia's Breach of Oral Contract Counterclaim is Fatally Uncertain In order to survive a motion to dismiss a breach of oral contract claim, Defendants "must allege the material terms of an agreement which creates the obligation the defendant is said to have breached." Langan v. United Servs. Auto. Ass'n, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (dismissing a breach of contract claims when the complaint offers "no way for the Court [to] know even generally what the terms of the contract or contracts were.") Heredia has not done so. Instead, Heredia alleges that he paid monies to certain individuals and entities on behalf of Mr. Diaz, but Heredia never details the material terms of any oral agreement entered into with Mr. Diaz. For instance, Heredia fails to allege any facts regarding how the purported contracts were formed, the material terms of the purported agreements including but not limited to any purported repayment terms, and the date(s) and manner in which Heredia contends that Mr. Diaz purportedly breached any oral agreement. See, e.g., N. Cty. Communs Corp. v. Verizon Global Networks, Inc., 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (finding that the defendant did not adequately allege a breach of contract claim where it failed to "plead, among other things, the nature

of the contract, dates pertinent to the contract, and other relevant terms that would put [plaintiff] on notice of the basis of" the claim); Gottesman v. Santana, 2017 U.S. Dist. LEXIS 104646, at *8-9 (S.D. Cal. July 8, 2017) (finding allegations insufficient to allow a party to appropriately respond when, "[a]mong other things, these allegations do not provide any specifics regarding the material terms of the verbal contract between [the parties], much less when this contract was allegedly formed and breached").) To the contrary, Heredia admits in his allegations that "Diaz became angry and said he did not want to pay Mr. St. Pierre," yet, against Mr. Diaz's wishes, "Heredia sent $2,000.00 to Mr. St. Pierre to mitigate the situation." (Dkt 146 ¶¶ 175-176). Heredia's own allegations disprove the existence of an oral agreement with Mr. Diaz.

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re MTD and MTS Page 4

5. Heredia's Counterclaim for Attempted Extortion also Fails California courts recognize extortion as civil tort cause of action for "moneys obtained by duress, a form of fraud." Fuhrman v. Cal Satellite Sys., Inc., 179 Cal. App. 3d 408 (1986) (disapproved on other grounds by Silberg v. Anderson, 50 Cal. 3d 205 (1990)). "Because extortion is in substance a fraud claim, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b), which requires that allegations of fraud be made 'with particularity.'" Media v. Barlow, 2021 U.S. Dist. LEXIS 243264, at *37 (C.D. Cal. May 1, 2021) (citing Fed. R. Civ. P. 9(b)). To satisfy this standard, plaintiffs must allege "the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Heredia has failed to make these necessary allegations. Moreover, Heredia fails to specifically allege what, if any, damages he suffered as a result of the purported attempted extortion. Fuhrman, 179 Cal.App.3d at 426 (referring to the failure to pleading damages as the plaintiff's extortion claim's "fatal flaw"); Am. Shooting Ctr., Inc. v. Secfor Int'l, 2015 WL 1914924, at *4, *10 (S.D. Cal. Apr. 27, 2015) (dismissing counterclaim where the counterclaimant failed to allege "damages . . . proximately caused by the alleged attempted extortion"); Raiser v. Ventura Coll. of L., 2009 WL 10692058, at *2-3 (C.D. Cal. Sept. 1, 2009) (relying on Fuhrman and dismissing an "attempted extortion" claim for failure to allege damages). To the contrary, Heredia admits that he did not succumb to the purported attempted extortion and, instead of stopping "defending this legal action brought by Diaz," Heredia filed counterclaims. (Dkt. 146 ¶¶ 202, 212-215). Heredia's claim will also fail.

6. The Economic Loss Doctrine Bars Heredia's Counterclaim for Fraudulent Inducement

Heredia alleges that "[a]s a result of Diaz's fraudulent concealment of his anticipatory breach of his agreement with the Heredias, and abandonment of his obligations to repay Heredia for the financial assistance Heredia had provided him with, Heredia has suffered actual damages." (Dkt. 146 ¶ 234). The economic loss rule limits a party to a contract "to recover[ing] in contract for purely economic loss due to disappointed expectations," rather than in tort, "unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004). Stated differently, a party to a contract generally cannot recover for pure economic loss—i.e., damages that are solely monetary—that resulted from a breach of contract unless the party can show a violation of some independent duty arising in tort. Erlich v. Menezes, 21 Cal. 4th 543 (1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.") (quoting Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85 (1995))). The rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." Robinson, 34 Cal. 4th at 988. Given that Heredia has only alleged he suffered economic losses, the economic loss rule bars his fraudulent concealment claim. Robinson, 34 Cal. 4th at 988. In addition, Heredia has fatally failed to allege with the requisite particularity the elements of this claim. Fed. R. Civ. P. 9(b). Heredia does not allege with any particularity the dates, amounts of monies, or the circumstances under which Heredia contends that Mr. Diaz supposedly fraudulently induced Heredia to provide his with the monies.

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re MTD and MTS Page 5 B. Defendants' Counterclaims are Subject to a Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). "Scandalous" has been defined to include (i) allegations that "unnecessarily" question a person's moral character; (ii) allegations that cast a "cruelly" derogatory light on a person; and (iii) vulgar or repulsive allegations that diminish the dignity of the court. Anderson v. Davis Polk & Wardwell LLP, 850 F.Supp.2d 392, 416 (SD NY 2012); Righthaven LLC v. Democratic Underground, LLC, 791 F.Supp.2d 968, 977 (D NV 2011). Even if an allegation is relevant to plaintiff's claim, it may still be stricken if it is scandalous or set out in "needless detail." Tucker v. American Int'l Group, Inc., 936 F.Supp.2d at 16; Asher & Simons, P.A. v. j2 Global Canada, Inc., 965 F.Supp.2d 701, 704 (D MD 2013) (even though Rule that 12(f) motions are disfavored "relaxed" as to allegations deemed scandalous). In addition, "[s]uperfluous historical allegations are a proper subject of a motion to strike." Fantasy, Inc., 984 F.2d at 1527. Allegations that cause delay, confusion of issues, and unnecessarily complicate proceedings are examples of prejudice that may properly be stricken. Id. at 1528; see also Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F.Supp.2d 1028, 1033 (C.D.Cal.2002) (superfluous pleadings causing unwarranted inferences to be drawn by the trier of fact may be properly stricken). Defendants' counterclaims are filled with wholly irrelevant allegations that are undoubtedly included in an attempt to publicly embarrass Mr. Diaz and create scandal. See, e.g., Paragraphs 150, 153-158 (allegations related to MTK), 137, 143-146, 156, 166, 168, 182, 185 (allegations regarding Diaz's "demons"), 137, 143, 146, 156, 168-169, 174-179, 180, 182 (allegations regarding Diaz's finances); 143, 152, 185, 189-190, (allegations regarding Diaz's purported legal troubles); 182-183 (allegations regarding Diaz's weight); 180-181 (allegations regarding Diaz's supposed gambling habits). The Court will strike these unnecessary, immaterial, impertinent allegations that were merely inserted to create scandal and further attempt to use the litigation process to damage Mr. Diaz. We therefore ask that Defendants voluntarily dismiss their counterclaims. We are hopeful we can work to resolve these issues without the need of court intervention. To that end, please let me know a convenient time for a call to discuss on or before Wednesday, October 5, 2022. In an effort to have a meaningful meet and confer, we ask that, in anticipation of a phone call, you please provide us with your position in writing along with any legal authority to support that position. If we do not hear from you, we will assume that you are refusing to further meet and confer and will move forward with preparing and filing Mr. Diaz's motions.

Eric Montalvo Re: Local Rule 7-3 Meet and Confer re MTD and MTS Page 6 In the meantime, please do not hesitate to contact me with any questions. Very truly yours,

Andrew D. White Litigation Partner VGC, LLP