UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DIAZ, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>RALPH HEREDIA, true name RAFAEL HEREDIA TARANGO, a/k/a RAFAEL HEREDIA, a/k/a RAFAEL BUSTAMANTE; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 5:20-cv-02332-JWH-KK<br><br>**ORDER REGARDING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS, OR IN THE ALTERNATIVE, MOTION TO STRIKE [ECF No. 155]** |
| RALPH HEREDIA,<br><br>    Counterclaimant,<br><br>  v.<br><br>JOSEPH DIAZ. JR.,<br><br>    Counterdefendant. | |
| HEREDIA BOXING MANAGEMENT,<br><br>    Counterclaimant,<br><br>  v.<br><br>JOSEPH DIAZ. JR.,<br><br>    Counterdefendant. | |

Before the Court is the motion of Plaintiff and Counterdefendant Joseph Diaz, Jr. to dismiss the amended counterclaims of Defendants and Counterclaimants Ralph Heredia and Heredia Boxing Management ("HBM") (jointly, "Counterclaimants").[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## I.  BACKGROUND

The parties are familiar with the factual background of this action; therefore, the Court will summarize only those facts relevant to this order.[3] Counterclaimants filed two separate-but-overlapping Amended Counterclaims relating to oral agreements between Diaz and Counterclaimants. In addition, HBM claims that Diaz disparaged HBM's business in various public statements.[4] Counterclaimants filed their Amended Counterclaims in September 2022, in connection with their Answers to Diaz's Second Amended Complaint; Counterclaimants filed their separate Answers to the Second

---

[1]  Pl.'s Combined Mot. to Dismiss Defs.' Am. Counterclaims and Mot. to Strike Portions of Defs.' Am. Counterclaims (the "Motion") [ECF No. 155].

[2]  The Court considered the documents of record in this action, including the following papers: (1) Def. Heredia's Am. Counterclaim ("Heredia's Amended Counterclaim") (including its attachments) [ECF No. 151]; (2) Def. HBM's Am. Counterclaim ("HBM's Amended Counterclaim") (including its attachments) [ECF No. 152]; (3) Motion (including its attachments); (4) Defs.' Opp'n to the Motion (the "Opposition") [ECF No. 157]; and (5) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 158].

[3]  *See* Order Regarding Mots. for J. on the Pleadings ("Order re: Judgment on the Pleadings") [ECF No. 138].

[4]  *See generally* Heredia's Amended Counterclaim; HBM's Amended Counterclaim (jointly, the "Amended Counterclaims").

Amended Complaint in September 2022, and both Heredia and HBM included counterclaims in their Answers.[5]

Diaz filed his first motion to dismiss Counterclaimants' counterclaims in October 2022, in addition to a motion to strike the counterclaims.[6] In lieu of opposing Diaz's motions, Counterclaimants filed the operative Amended Counterclaims in November 2022. Heredia's Amended Counterclaim asserts one claim for breach of contract, whereas HBM's Amended Counterclaim makes claims for breach of contract and business disparagement/defamation.[7] In the instant combined Motion, Diaz renews his previous requests that the Court dismiss and strike the Amended Counterclaims.[8]

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[5]  *See* Def. Heredia's Answer to Am. Compl. & First Counterclaim [ECF No. 145]; Def. HBM's Answer to Am. Compl. & First Counterclaim [ECF No. 146].

[6]  Pl.'s Mot. to Dismiss Defs.' Counterclaims [ECF No. 149]; Pl.'s Mot. to Strike Defs.' Counterclaims [ECF No. 150].

[7]  *See* Amended Counterclaims.

[8]  *See* Motion.

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

B.   Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

C.   Rule 12(f)—Motion to Strike

"Rule 12(f) allows a court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Armstead v. City of Los Angeles*, 66 F. Supp. 3d 1254, 1271 (C.D. Cal. 2014) (quoting Fed. R. Civ. P. 12(f)). The Court "must view the pleading in [the] light most favorable to the pleading party." *Oracle America, Inc. v. Micron Technology, Inc.*, 817 F. Supp. 2d 1128, 1131 (N.D. Cal. 2011). The Ninth Circuit applies

"the 'fair notice' standard, and not the heightened pleading standard identified by *Twombly* and *Iqbal*, when evaluating motions to strike affirmative defenses." *Staggs v. Doctor's Hosp. of Manteca*, 2016 WL 3027742, at *1 (E.D. Cal. May 26, 2016) (citing *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015). Under the fair notice standard, defendants are required to describe the defense in only general terms. *See Kohler*, 779 F.3d at 1019.

Motions to strike are "disfavored" in the Ninth Circuit. *See Staggs*, 2016 WL 3027742, at *2 (alerting moving counsel that "the fair notice standard for pleading affirmative defenses and the disfavor with which courts view these motions limits the likelihood of a successful motion to strike affirmative defenses. The Court anticipates that counsel will carefully consider the strategic value of motions to strike affirmative defenses in the future.") Because of their disfavored status, "courts often require a showing of prejudice by the moving party before granting the requested relief." *Diamond Resorts U.S. Collection Development, LLC v. Reed Hein & Assocs., LLC*, 2020 WL 8475976, at *1 (D. Nev. May 13, 2020).

### III.  ANALYSIS

**A.    Counterclaimants' Late-Filed Opposition**

This District's Local Rules require parties to file oppositions to motions no later than 21-days before the date designated for the hearing of the motion. *See* L.R. 7-9. The Local Rules also outline the consequences for parties that fail to adhere to the District's deadlines:

> The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion, with the exception that a motion pursuant to F.R.Civ.P. 56 may not be granted solely based on the failure to file an opposition.

L.R. 7-12.  Furthermore, parties who make late filings are subject to sanctions:

> A party filing any document in support of, or in opposition to, any motion noticed for hearing as above provided after the time for filing the same shall have expired, also shall be subject to the sanctions of L.R. 83-7 and the F.R.Civ.P.

L.R. 7-13.  The upshot of these Local Rules is that this Court has the discretion to disregard late-filed papers and to sanction the parties that filed those papers. *See Douglass v. Lin*, 2020 WL 7407917 (C.D. Cal. Sept. 10, 2020), *report and recommendation adopted*, 2020 WL 7406789 (C.D. Cal. Dec. 17, 2020) ("Local Rule 7-12 provides that '[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.'").

      Here, Counterclaimants filed their Opposition to the Motion on December 2, 2022, which was less than 21-days before the scheduled hearing for the Motion on December 16, 2022.[9]  Counterclaimants' failure to adhere to this Court's deadlines was not a mere harmless error; it prevented Diaz from adequately responding in his Reply to Counterclaimants' arguments.[10] Furthermore, this was not the first time Counterclaimants have been admonished by this Court; this Court previously warned Counterclaimants that "the Court is frustrated and disappointed that this case has not been litigated with the professionalism that the Court expects."[11]

      Although it is within the discretion of this Court to grant the instant Motion as unopposed, in the interest of justice this Court will evaluate the individual claims on their merits.  But Counterclaimants are forewarned that

---

[9]    *See* Opposition.
[10]  *See* Reply.
[11]  Order re: Judgment on the Pleadings 2:1-3.

further failures to comply with this Court's deadlines will result in the issuance of monetary sanctions under L.R. 83-7.

### B.     Diaz's Objections to the Filing of the Amended Counterclaims

Diaz objects to Counterclaimants' amendment of their initial counterclaims without seeking leave of court, noting that Diaz had filed dispositive motions relating to Counterclaimants' initial counterclaims. Specifically, Diaz asserts that leave of court was required by Counterclaimants to amend their counterclaims because Diaz had challenging the counterclaims under California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Civ. Code § 425.16.[12] Perhaps anticipating the Counterclaimants' response that a party may amend a pleading as a matter of course within 21 days after service of a motion under Rule 12(b), (e), or (f), *see* Fed. R. Civ. P. 15(a)(1)(B), Diaz contends that as the "prevailing party" under his § 425.16 anti-SLAPP motion, he would still be entitled to attorneys' fees as provided by the statute.[13]

Diaz's analysis of the interplay between the Federal Rules of Civil Procedure and state law-based anti-SLAPP motions is both incorrect and misleading. Diaz cites *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (2018), is support of his argument that attorneys' fees are mandatorily awarded to the prevailing party in anti-SLAPP motions,[14] but Diaz confuses the Ninth Circuit's holding. A more careful reading of *Planned Parenthood* shows that Counterclaimants were entitled to amend their counterclaims under the Federal Rules.

---

[12]     Motion 4:18-5:3.
[13]     *Id.* at 5:9-14.
[14]     *Id.* at 5:15-20.

-7-

In *Planned Parenthood*, the Ninth Circuit considered an interlocutory appeal from a district court's order denying the defendant's motion to dismiss and to strike under § 425.16. The Ninth Circuit noted that the "degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure has been hotly disputed" and looked to *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239 (9th Cir. 2012)—an unpublished and non-precedential decision—to assess under what standards anti-SLAPP motions would be evaluated by federal courts. *Planned Parenthood*, 890 F.3d at 833.

The Ninth Circuit concluded that *Z.F.*'s "reasoning [was] persuasive and we hereby adopt it," and affirmed *Z.F.*'s instruction that "[i]f a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Id.* (citing *Z.F.*, 482 F. App'x at 240).

The Ninth Circuit additionally held that "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 843. Alternatively, "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

Diaz's argument for attorneys' fees must be rejected because his initial motion to strike must be evaluated under Rule 12 standards, and Counterclaimants properly filed an amendment to their counterclaims under Rule 15(a)(1)(B). For this Court to hold otherwise "would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil

-8-

Procedure while in a federal district court." *Id.* The Ninth Circuit's direction is clear that "if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail," *id.*, and Diaz cannot be considered a "prevailing party" under § 425.16 when Counterclaimants properly amended their counterclaims under the Federal Rules.[15] Any motion by Diaz for attorneys' fees under § 425.16 is hereby **DENIED**.

### C. Counterclaimants' Breach of Contract Claims

Diaz moves to dismiss both Heredia and HBM's breach of contract claim. "The elements of a claim for breach of contract are: 'the existence of the contract, performance by or excuse for nonperformance by the plaintiff, breach by the defendant, and damages.'" *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citing *First Comm'l Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)). Additionally, "[t]o state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in *haec verba* or according to legal effect." *Id.* (citing *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)). Furthermore, "[a] plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint." *Id.*

While it is unnecessary for a breach-of-contract claimant to plead the terms of the alleged contract with exact precision, the court must be able to understand generally what material obligations of the contract were allegedly breached. *See James River Ins. Co. v. DCMI, Inc.*, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012); *see also N. Cnty. Commc'ns Corp. v. Verizon Glob. Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (holding that breach of contract claims must plead at least the "nature of the contract, dates pertinent to the contract, and other relevant terms that would put [defendant] on notice").

---

[15] *Id.* at 6:17-24.

Here, Heredia alleges in his Amended Counterclaim that Diaz entered into several oral contracts with Heredia, taking place across a multitude of dates for a total of $48,841.95.[16] Heredia's Amended Counterclaim alleges that Heredia operated an open tab for Diaz and that "additional requests would be adding to the total amount he owed to Heredia."[17] Heredia asserts that Diaz understood that those debts would be repaid to Heredia out of future fight purses that Diaz earned and that "Diaz accepted the loans and agreed to repay them."[18]

Heredia's Amended Counterclaim fails to plead a breach of contract claim sufficiently, however, because the terms of the oral contract are too vague to have legal effect. Heredia's conclusory assertion that he "did all, or substantially all, of the significant things that the oral contracts required him to do" is woefully insufficient,[19] and his Amended Counterclaim makes no mention of when or how this money was to be repaid to Heredia—only that there was an "understanding that it would be repaid to Heredia out of future fight purses Diaz earned."[20] Because there are no temporal limits to the debt, or structure regarding when or how Diaz would repay those debts through future fights, it is impossible for Diaz to have been "on notice" to adhere to the terms of the oral contract. *See Verizon*, 685 F. Supp. 2d at 1122. Furthermore, Heredia's itemization of money owed in the Amended Counterclaim makes several nebulous allegations such as "$2,500 payment to Breezh Nunez, Diaz's girlfriend, because Diaz's account had a negative balance."[21] Those claims do

---

[16] Heredia's Amended Counterclaim ¶¶ 39-49.
[17] *Id.* at ¶ 41.
[18] *Id.* at ¶¶ 42-45.
[19] *Id.* at ¶ 44.
[20] *Id.* at ¶ 42.
[21] *Id.* at ¶ 39.

not even allege that the loan was made at Diaz's request, only on his behalf and for the benefit of his girlfriend, and at various points those claims do not even cite a dollar amount owed—only that a "multi-thousand dollar payment" was made on behalf of Diaz.[22]  As a result, Heredia's Amended Counterclaim is **DISMISSED with leave to amend**.

        HBM's Amended Counterclaim similarly fails to plead a claim for breach of contract sufficiently.  Instead of outlining the terms and conditions of the oral contract between HBM and Diaz, the Amended Counterclaim merely asserts that "HBM agreed to pay certain expenses associated with particular fights on Diaz's behalf . . . ."[23]  HBM alleges that Diaz owes it $39,168.40 in connection with two separate fights, but it merely alleges that the money was for "expenses," and it fails to identify when or how the money was expected to be repaid by Diaz.[24]  For reasons substantially similar to those of Heredia's Amended Counterclaim, HBM's Amended Counterclaim is **DISMISSED with leave to amend**.

### D.  HBM's Business Disparagement/Defamation Claim

        Finally, Diaz moves to dismiss HBM's second claim for business disparagement or defamation.  Although HBM groups these two types of claims together in its second claim for relief, business disparagement and defamation are separate types of claims with different legal standards.  Any potential defamation claims against Diaz are barred by a one-year statute of limitations, *see Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 (2003), *as modified* (Dec. 22, 2003), as all of Diaz's alleged defamatory statements took place no later than November 5, 2021.[25]  In its late-filed Opposition, HBM does not even attempt to defend its

---

[22]   *Id.*
[23]   HBM's Amended Counterclaim ¶ 58.
[24]   *Id.* at ¶¶ 61 & 62.
[25]   *Id.* at ¶ 77.

second claim under a defamation theory, so the Court will analyze the claim under business disparagement.

Unlike defamation, a business disparagement claim under Cal. Civ. Proc. Code § 339 has a two-year statute of limitations. *See Guess, Inc. v. Superior Ct.*, 176 Cal. App. 3d 473, 475 (1986). A business disparagement claim is substantively similar to a trade libel claim; both "are injurious falsehoods that interfere with business . . . not directed at the plaintiff's personal reputation, but rather at the goods a plaintiff sells or the character of his other business . . . ." *Id.* (citing *Idaho Norland Corp. v. Caelter Indus., Inc.*, 509 F. Supp. 1070, 1071 (D. Colo. 1981)).

Under California law, "trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage." *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 459 F. Supp. 3d 1294, 1300 (C.D. Cal. 2020) (citing *Films of Distinction, Inc. v. Allegro Film Prod., Inc.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998)). To state a claim for trade libel, a plaintiff must show: "(1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 679 F. Supp. 2d 1120, 1140 (C.D. Cal. 2009). "The Supreme Court of California has recognized that construing these elements too broadly would lead to 'vexatious lawsuits over perceived slights' between competitors." *Rumble*, 459 F. Supp. 3d at 1300 (citing *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 294 (2014) (internal quotations omitted)). Accordingly, certain elements of trade libel claims require specific allegations, including that a plaintiff must allege "a false or misleading statement that . . . clearly derogates [the plaintiff's] product or business." *Hartford*, 59 Cal. 4th at 284.

Here, HBM's Amended Counterclaim fails to plead that Diaz specifically identified HBM or that Diaz's statements induced others not to deal with

HBM.[26] Although HBM claims that Diaz's statements "would be obviously understood to refer to his sole previous managers, the Heredias (and, by extension, to HBM),"[27] and that Diaz's comments were implicitly directed at HBM,[28] California law requires that "[d]isparagement by 'reasonable implication' requires more than a statement that may conceivably or plausibly be construed as derogatory." *Id.* at 295. Instead, disparagement by "reasonable implication" requires an inference that is "clear or necessary." *Id.* HBM's Amended Counterclaim fails to meet that heightened standard. *See Nestle USA, Inc. v. Crest Foods, Inc.*, 2019 WL 2619635, at *10 (C.D. Cal. Mar. 8, 2019) (dismissing a trade libel claim after finding that alleged communications "presented subtle, implied comments that were not clearly disparaging"); *see also Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980) (cautioning courts against "scrutinizing what is not said to find a defamatory meaning which the [statement] does not convey to a lay reader" (internal quotation omitted)). Accordingly, HBM's claim for business disparagement is **DISMISSED with leave to amend**.

E.  **Diaz's Motion to Strike**

Because all of Counterclaimants' Amended Counterclaims have been dismissed in their entirety, Diaz's separate motion to strike Counterclaimants' pleadings is **DENIED as moot**. *See Hagemann v. City of El Cajon*, 2006 WL 8455372 (S.D. Cal. Feb. 1, 2006) (denying the defendants' motion to strike as moot for claims that were dismissed under a concurrent Rule 12(b)(6) motion to dismiss).

IV.  **DISPOSITION**

For the foregoing reasons, the Court hereby **ORDERS** as follows:

---

[26]   *Id.* at ¶¶ 70(a)-(d).
[27]   *Id.* at ¶ 72.
[28]   *Id.* at ¶ 73.

1. Diaz's request for attorneys' fees under California anti-SLAPP statute, Cal. Civ. Code § 425.16, is **DENIED**.

2. Diaz's Motion to strike is **DENIED as moot**.

3. Diaz's Motion to dismiss is **GRANTED** in that:

    a. Heredia's Amended Counterclaim for breach of contract is **DISMISSED with leave to amend**; and

    b. HBM's Amended Counterclaims for breach of contract and defamation/business disparagement are **DISMISSED with leave to amend**.

4. Counterclaimants are **DIRECTED** to file amended pleadings, if at all, no later than January 19, 2024. If Counterclaimants choose to file amended pleadings, then they are also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Amended Counterclaims that provides the Court with a redline version that shows the amendments. If Counterclaimants fail to file their amended pleadings by January 19, 2024, then the Court will **DISMISS** Counterclaimants' Amended Counterclaims **with prejudice**.

5. If Counterclaimants file amended pleadings, then Diaz is **DIRECTED** to file his responses thereto no later than February 2, 2024.

**IT IS SO ORDERED.**

Dated: January 4, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE