Rajan O. Dhungana (SBN: 297794)
rdhungana@fedpractice.com
FEDERAL PRACTICE GROUP
431 N. Brookhurst St, Suite 130
Anaheim, CA 92801
Telephone: (310) 795-6905

Eric S. Montalvo (admitted *Pro Hac Vice*)
emontalvo@fedpractice.com
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Fax: (888) 899-6083

*Attorneys for Defendant / Counterclaim Plaintiffs*
Ralph Heredia & Heredia Boxing Management

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# (EASTERN DIVISION)

| | |
|---|---|
| Joseph Diaz, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> RALPH HEREDIA; JOHN DOE, ESQ.; and JANE DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 5:20-cv-02332-JWH-KK <br><br> **DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM** |

**DEFENDANT HEREDIA BOXING MANAGEMENT'S
SECOND AMENDED COUNTERCLAIM**

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 1

Pursuant to the Court's January 4, 2024 *Order Regarding Plaintiff's Motion to Dismiss Counterclaimants' Amended Counterclaims, or in the Alternative Motion to Strike* [ECF No. 170], Defendant Heredia Boxing Management ("HBM"), by counsel, asserts its second amended counterclaims against Plaintiff Joseph P. Diaz Jr. ("Diaz"), and states as follows:

## JURISDICTION AND VENUE

1. Diaz has asserted that jurisdiction is proper in this Court because Diaz's Muhammad Ali Boxing Reform Act claim arises under federal law, 15 U.S.C. § 6301, *et seq.*, and that the Court has jurisdiction over that claim pursuant to 28 U.S.C. § 1331. Diaz's additional claims are brought pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a)

2. Stipulating solely for the purposes of Heredia's counterclaims that Diaz's Muhammad Ali Boxing Reform Act claim is jurisdictionally proper, Heredia's counterclaims are brought pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a) as so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Diaz is subject to the Court's personal jurisdiction because the counterclaims arise out of the same actions or occurrences that are the subject of his

claims, and because he consented to personal jurisdiction in this Court by prosecuting his complaint in this Court.

4. Venue for the counterclaims is proper in this District because Diaz resides in this District and HBM is headquartered in this District.

**PARTIES**

5. According to his Second Amended Complaint, plaintiff and counterclaim defendant Joseph Diaz, Jr. ("Diaz") is an individual residing in San Bernardino County, California.

6. Defendant and counterclaim plaintiff Heredia Boxing Management ("HBM") is a California corporation headquartered in La Verne, California.

**FACTUAL ALLEGATIONS**

7. HBM is a California corporation, owned and operated by Moses Heredia and Defendant Ralph Heredia in support of Moses Heredia's management of professional boxers.

8. HBM's operations are inextricably linked to the Heredias' efforts to manage profession boxers.

9. The relationship between Ralph Heredia and Diaz goes back over ten years. In the lead-up to the 2012 Olympics in London, Diaz was attempting to qualify for the U.S. men's boxing team and came to the attention of Heredia and his brother, Moses.

10. After the Olympics, Diaz entered into a Boxer-Manager Contract with the Heredias through Moses Heredia's company, Heredia Boxing Management (HBM), and pursued a professional boxing career under their guidance.

11. The operative Boxer-Manager Contract during all periods relevant to this cause of action was effective as of February 23, 2017, and was for a five-year term.

12. For years, Diaz and the Heredias enjoyed a good working relationship.

13. Despite the warm relationship between them, Heredia was aware that Diaz struggled with poor money management habits.

14. Over the years, Heredia observed that Diaz struggled to adequately manage his finances, and would often spend the income from his fights nearly as quickly as he had earned it. Diaz frequently appeared to be nearly destitute.

15. Throughout the course of their relationship, Diaz routinely asked Heredia to loan him sums of money for a variety of personal expenses. These requests typically came by text message from Diaz to Heredia, or from members of Diaz's family or intimate circle to Heredia acting, upon information and belief, upon Diaz's behalf.[1]

---

[1] See, e.g., text message/email exchanges between Heredia and Diaz, previously made part of the record in ECF Document No. 146-1, pp. 2-25, 29, 31, 33, 35, 39, 41, 43, 45, 53, 55, and 67.

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 4

16. Heredia would routinely loan Diaz sums of money as requested, with Diaz's understanding that the sums were to be repaid.

17. Diaz's understanding that he was required to repay these loans was acknowledged on multiple occasions by Diaz.

18. The loans from Heredia to Diaz were structured as advances to Diaz against earnings from future fight purses.[2]

19. Heredia loaned these sums of money to Diaz in furtherance of his work on behalf of HMB; Diaz was, at the time, one of their top fighters, and HBM had a vested interest in assisting Diaz to success.

20. But for his role at HBM, Heredia would not have loaned the sums of money to Diaz.

21. In spite of repeated promises to repay Heredia for the advanced sums, Diaz never did so.

22. In addition to the sums disbursed to Diaz by Heredia for personal expenses, HBM also advanced sums to Diaz to cover expenses associated with certain fights, e.g., training camps, travel expenses, hotel expenses, etc.

---

[2] "The use of the word 'advances' is of significance in determining whether the parties made an express agreement to reimburse respondent, because such word indicates, when used in relation to money, an agreement to reimburse the one who made the advances." *Haseltine v. Haseltine,* 203 Cal. App. 2d 48, 52, 12 Cal. Rptr. 238 (Cal. App. 1st Dist. 1962) (citing to *Semi-Tropic Spiritualists Ass'n v. Johnson,* 163 Cal. 639, 642, 126 P. 488).

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 5

23. HBM was not required to pay these sums on Diaz's behalf pursuant to the Boxer-Manager Contract; HBM paid them to protect its investment in Diaz's success as a fighter, with the expectation and understanding, acknowledged by Diaz, that the sums would be repaid from future fight purses.

24. Upon information and belief, Diaz has never made restitution to HBM for expenses advanced on his behalf from the following fights:

- $31,093.40 in expenses paid by HBM on Diaz's behalf in connection with the January 30, 2020 Tevin Farmer fight; and

- $8,075.00 in expenses paid by HBM on Diaz's behalf in connection with the September 21, 2019 Jesus Cuadro fight.[3]

25. Although bouts came and went, and purses were disbursed to Diaz, the advances from Heredia and HBM were never fully repaid.

26. After winning the world featherweight championship from Tevin Farmer in January of 2020, Diaz was approached by MTK Global (MTK) to join their lineup of managed boxers, even though Diaz had an active management contract with HBM.

---

[3] Evidence of some of these requested expenses may be observed in the photograph of the document previously made part of the record in ECF Document No. 146-1, p. 55. This document also evidences Diaz's offers of terms of repayment, and that the same would come from future fight purses.

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 6

27. Upon information and belief, MTK retained counsel from VGC, LLP to represent Diaz in splitting away from his relationship with HBM.

28. MTK has cultivated a notorious reputation for "stealing" fights from European managers without consequence.

29. MTK sought to expand to U.S. fights, and, upon information and belief, Diaz was one of the first U.S.-based fighters targeted by MTK.

30. Heredia received a text message from Diaz on August 9, 2020, notifying him that he had signed a "business advisory agreement" with MTK, which would be publicly announced the next day.

31. Under the terms of the Boxer-Manager Contract, Diaz was not permitted to enter into such an agreement without the written permission of his manager.

32. As a result of Diaz's actions, Moses Heredia properly and timely filed for arbitration before the California State Athletic Commission, as required by the Boxer-Manager Contract.

33. As part of the demand in Arbitration, the Heredias made claims for all loans or advances that had been made to Diaz, thereby putting Diaz on notice that all loans or advances he had been given were required to be repaid, and were immediately due and owed.

34. Upon information and belief, recognizing that his position in the arbitration was weak, Diaz concocted the attendant lawsuit with the goal of depleting the Heredias' resources and publicly ruining their reputation in the boxing community.

35. Within the boxing world, a manager stealing money from a fighter is a professional death sentence. Fighters do not want to work with a manager they believe will steal from them.

36. Because of his elite position within the boxing world, Diaz knew, or had reason to know, that his allegations against the Heredias would be certain to attract attention from media outlets focused on the world of boxing.

37. Upon information and belief, Diaz concocted his claims in this lawsuit, despite knowing (or having reason to know), by virtue of information in his possession, that the Heredias had not stolen from him, and that he in fact owed them money.

38. Diaz therefore knew, or should have known, that his claims were meritless; therefore, the only purpose it served was to disparage the Heredias' reputation in the boxing community and force them to expend considerable resources in litigation.

39. Discovery responses and documents were provided to Heredia by Diaz in July 2022 as part of this litigation.

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 8

40. A review of the production from Diaz revealed no evidence supports his claim that Heredia owes him any money by virtue of theft or withholding; rather, the evidence in Diaz's production confirmed that it is Diaz who owes money to Heredia and HBM.

41. Since the time that Diaz requested, and received, advances on expenses prior to the Jesus Cuadro and Tevin Farmer fights from HBM, Diaz has participated in six (6) boxing matches (the source of income from which he was to repay the advances), to wit:

- Shavkatdzhon Rakhimov: February 13, 2021, upon information and belief, guaranteed purse of $400,000.00;[4]

- Javier Fortuna: July 9, 2021, upon information and belief, guaranteed purse of $300,000.00;

- Devin Haney: December 4, 2021, upon information and belief, guaranteed purse of $500,000.00;

- William Zepeda: October 29, 2022, upon information and belief, guaranteed purse of $450,000.00;

---

[4] Information from media sources suggests this figure was originally $500,000.00; however, Diaz failed to make weight before the fight, and was fined $100,000.00 by the California State Athletic Commission, which was taken from his purse and divided equally between the Commission and Rakhimov.

- Mercito Gesta: March 18, 2023, upon information and belief, guaranteed purse of $80,000.00; and

- Jerry Perez: July 8, 2023, guaranteed purse unknown.[5]

42. Diaz did not, and has not, undertaken to repay his acknowledged and demanded loan obligations from the proceeds of any of the above fights.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## Breach of Contract

43. HBM incorporates by reference and realleges each and every allegation contained in the paragraphs above as though fully set forth herein.

44. HBM agreed to pay certain expenses associated with particular fights on Diaz's behalf, e.g., training camps, travel expenses, hotel expenses, etc.

45. Diaz induced, understood, and accepted the payment of his expenses by HBM on the premise that he would be required to repay these sums to HBM out of future fight purses.

46. Diaz' request for HBM to pay his expenses in advance, and HBM's agreement to do so, constituted an oral contract between them.

---

[5] These "guaranteed purses" are based upon media reports connected with each fight; they do not account for any pay-per-view share or victor's purse associated with each bout; in other words, upon information, Diaz made not *less than* the reported guaranteed purse for each fight.

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 10

47. HBM advanced the following sums for expenses on Diaz's behalf:

- $31,093.40 in expenses paid by HBM on Diaz's behalf in connection with the January 30, 2020 Tevin Farmer fight; and

- $8,075.00 in expenses paid by HBM on Diaz's behalf in connection with the September 21, 2019 Jesus Cuadro fight.

48. Pursuant to their agreement, HBM performed its portion of agreement by paying, either to Diaz directly or to the appropriate entity at Diaz's request, the sums of money requested by Diaz.[6]

49. All conditions for Diaz's performance to repay the advances were met, i.e., Diaz accepted the advances made on his behalf by HBM to cover his expenses.

50. Diaz acknowledged that he was expected and required to return the sums advanced by HBM from the proceeds of future bout purses; in fact, Diaz offered terms for this very method of repayment, with interest, at the time he requested said advances.[7]

---

[6] "A contract is supported by an adequate consideration if there is some benefit to the promisor or detriment to the promisee." *S. Cal. Enters. v. D.N. & E. Walter & Co.,* 78 Cal. App. 2d 750, 760, 178 P.2d 785 (Cal. App. 2nd Dist. 1947).

[7] The fact that there are no established terms for repayment is not a bar to recovery because when money is lent, the law implies a promise to repay the loan. *Brown v. Spencer,* 163 Ca. 589, 595, 126 P. 493, 496 (Cal. 1912).

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 11

51. Diaz failed to pay back the sums owed to HBM, either upon demand or within a reasonable time, as the oral contracts required him to do as a matter of law.[8]

52. HBM was materially harmed by the failure to repay the loans.

53. Diaz's breach of the oral contracts was a substantial factor in causing the harm to HBM.

54. HBM has suffered actual damages in an amount to be proved at trial, but upon present information and belief, an amount not less than $39,168.40.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff Heredia Boxing Management prays for judgment and an award against Counterclaim Defendant Diaz as follows:

1. For compensatory damages in an amount to be determined at trial;

2. For pre- and post-judgment interest at the maximum rate allowed by law;

---

[8] "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." CA CIVIL § 1657. "What is a reasonable time is a question of fact." *Palmquist v. Palmquist*, 212 Cal. App. 2d 322, 331 (Cal. Ct. App. 1963). Reasonable diligence and good faith must be required in such instances and it is the duty of the court to hear evidence and therefrom fix a time which would be fair. *Pitzer v. Wedel*, 73 Cal. App. 2d 86, 91, 165 P.2d 971, 974 (Cal. App. 4th Dist. 1946) (citing to *Gazos Creek Mill, etc., Co. v. Coburn*, 8 Cal. App. 150, 96 P. 359). What constitutes such a reasonable time ordinarily presents a question of fact, dependent upon the circumstances of the case. *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.*, 9 Cal.App.4th 373, 381, 11 Cal. Rptr. 2d 524 (Cal. App. 2nd Dist. 1992).

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 12

3. For recovery of reasonable attorneys' fees;

4. For the costs of the suit; and

5. For such other and further relief as the Court deems just and proper.

Jury trial is demanded.

Dated: January 19, 2024  Respectfully submitted,

/s/ *Rajan O. Dhungana*
Rajan O. Dhungana (SBN: 297794)
FEDERAL PRACTICE GROUP
431 N. Brookhurst St, Suite 130
Anaheim, CA 92801
Telephone: (310) 795-6905
rdhungana@fedpractice.com

/s/ *Eric S. Montalvo*
Eric S. Montalvo (*Pro Hac Vice*)
FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Fax: (888) 899-6053
emontalvo@fedpractice.com

*Attorneys for Defendant / Counterclaim Plaintiff* Ralph Heredia

DEFENDANT HEREDIA BOXING MANAGEMENT'S SECOND AMENDED COUNTERCLAIM - 13

# CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2024, I filed the foregoing Defendant Heredia Boxing Management's Second Amended Counterclaim with the Clerk of the Court and sent a copy of such filing via the CM/ECF system.

Furthermore, I sent a copy via email to the following:

James L. Greeley (SBN 218975)
  jgreeley@vgcllp.com
Diyari Vázquez (SBN 222461)
  dvazquez@vgcllp.com
Gina M. Simas (SBN 205367)
  gsimas@vgcllp.com
Andrew D. White (SBN 222628)
  awhite@vgcllp.com
VGC, LLP
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone: (424) 256-8296

*Attorneys for Plaintiff / Counterclaim Defendant*
Joseph Diaz, Jr.


Dated: January 19, 2024

                      Respectfully submitted,

                      /s/ *Eric S. Montalvo*
                      Eric S. Montalvo (Admitted *Pro Hac Vice*)
                      FEDERAL PRACTICE GROUP
                      1750 K Street, N.W., Suite 900
                      Washington, D.C. 20006
                      Telephone: (202) 862-4360
                      emontalvo@fedpractice.com